# Exhibit 1



September 16, 2025

Gregory Faulkner
Chairperson
Panel for Educational Policy
New York City Department of Education
65 Court St.
Brooklyn, NY 11201

Dear Chairperson Faulkner:

This letter is to notify you that the U.S. Department of Education's (Department) Office for Civil Rights (OCR) has identified a civil rights compliance issue with the New York City Department of Education and New York City Public Schools (collectively "NYC DOE"). OCR is deeply concerned about NYC DOE's *Guidelines to Support Transgender and Gender Expansive Students* (*Guidelines*), the text of which authorizes discrimination on the basis of sex in violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.*, and its implementing regulation, 34 C.F.R. Part 106.[1]

By statute, the Magnet School Assistance Program (MSAP) provides discretionary grants to local educational agencies (LEAs) or consortia of LEAs to operate magnet schools that promote desegregation in order to "increase interaction among students of different social, economic, ethnic, and racial backgrounds."[2] Five consortia of New York City community school districts are currently being reviewed for continued funding under the program.[3] Prior to grant disbursement, OCR's Assistant Secretary for Civil Rights must sign an assurance for each consortium that the applicant will "not engage in discrimination based on race, religion, color, national origin, sex, or disability."[4]

---

[1] The Title IX regulations that took effect on August 14, 2020, are in force. *See Tennessee v. Cardona*, 762 F. Supp. 3d 615, 626-28 (E.D. Ky. 2025).

[2] 20 U.S.C. § 7231d(b)(1)(A).

[3] These consortia are CSD 4-2-6 Manhattan Inter-district Consortium, CSD 7-10-11 Bronx Inter-district Consortium, CSD 19-27 Brooklyn & Queens Inter-district Consortium, CSD 28-29 Queens Inter-district Consortium, and CSD 32-16 Brooklyn Inter-district Consortium.

[4] 20 U.S.C. § 7231d(b)(2)(C), stating that an applicant "will not engage in discrimination based on race, religion, color, national origin, sex, or disability in--

Here, the *Guidelines* violate Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.*, and its implementing regulation, 34 C.F.R. Part 106, in its provision, or lack thereof, regarding sex-segregated facilities, athletic opportunities, and overnight sleeping accommodations as part of extracurricular activities.

The *Guidelines* state that "[t]ransgender and expansive students must be provided access to facilities (restrooms, locker rooms, or changing rooms) consistent with their gender identity asserted at school." The *Guidelines* further state that, "[f]or students who are gender fluid, the school should work with the student to facilitate restroom and locker room access that affirms their identity." This suggests that students can move in and out of intimate facilities reserved for both sexes on a day-to-day basis simply by asserting a change in their gender identity.

The *Guidelines* also permit students "to participate in physical education, intramural sports, and competitive athletic activities and contact sports in accordance with the student's gender identity asserted at school." Elsewhere they state that "[s]tudents must be permitted to participate in all school activities (for example, overnight field trips) in accordance with their gender identity asserted at school. Requests for arrangements to address privacy concerns will be addressed on a case-by-case basis." As a result, students are expected to bunk with a member of the opposite sex if an opposite-sex student asserts that he or she identifies as the same gender. This cannot be right.

The *Guidelines* further state that "[a] transgender or gender expansive student may not be required to use an alternative facility (e.g., a single-occupancy restroom instead of the locker room) or a facility that conflicts with the student's gender identity asserted at school." This means that male students who identify as female or transgender are given unqualified access to female intimate spaces.

Title IX's commitment to sex-separated intimate facilities and athletics is based on immutable biological differences, well-established privacy interests, and ensuring the safety of all students when in enclosed and vulnerable spaces and engaged in the

---

    (i) the hiring, promotion, or assignment of employees of the applicant or other personnel for whom the applicant
        has any administrative responsibility;
   (ii) the assignment of students to schools, or to courses of instruction within the schools, of such applicant, except
        to carry out the approved plan; and
   (iii) designing or operating extracurricular activities for students[.]"

competitive, physical activity of sport.[5] This is not only permissible and advisable but often necessary to ensure equal opportunities for girls and women and prevent a hostile educational environment. When recipients of Federal funding require schools to treat "trans-identifying" males as if they were "females," including in intimate traditionally sex-separate facilities, they defeat the very purpose of Title IX: to ensure equal opportunities for women while not jeopardizing their privacy, safety, or other rights. *See, e.g.*, *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 559-61 (E.D. Ky. 2024). Simply put, allowing males in girls' sports, intimate facilities, or private spaces, such as with overnight sleeping accommodations, violates Title IX by creating a hostile educational environment or by denying females equal access to benefits of education programs or activities. The same can be said when female students are permitted to enter private spaces reserved for male students.

The consequences of the NYC DOE's policy are predictable: students are subject to hostile educational environments or denied equal access to benefits of education programs or activities or will be in the future.

As a result of these findings, I will not certify NYC DOE's grant under 20 U.S.C. § 7231d(c). Likewise, NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government.

To comply with the law, OCR requires that NYC DOE amend its *Guidelines to Support Transgender and Gender Expansive Students* and take the following steps:

1. Adopt biology-based definitions for the words 'male' and 'female' pursuant to Title IX;
2. Issue a public statement to parents, students, and staff stating that New York City Public Schools will comply with Title IX and specifying that it will not allow males to compete in female athletic programs or occupy intimate facilities designated for females;

---

[5] In *Adams v. School of St. Johns County*, the court observed that sex-separated intimate facilities "date[]back to ancient times" and serve to protect the privacy and safety interests that arise from the physical differences of the sexes. 57 F.4th 791, 805 (11th Cir. 2022) (en banc) (internal quotation marks and citations omitted). Notably, when she was a law professor, the late Justice Ruth Bader Ginsburg, who graduated from Brooklyn's James Madison High School, reasoned that "separate places to disrobe, sleep, and perform personal bodily functions are permitted, in some situations required, by regard for individual privacy." *Id.* at 804 (quoting Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendments*, WASH. POST, Apr. 7, 1975, at A21) (cleaned up).

3. Specify that New York City Public Schools must provide intimate facilities such as locker rooms and bathrooms accessible to its students strictly separated on the basis of sex and comparably provided to each sex;
4. Specify that New York City Public Schools must provide sleeping arrangements during overnight activities and athletic trips to its students strictly separated on the basis of sex and comparably provided to each sex;
5. Specify that Title IX forbids schools from allowing boys or men to participate in any athletic program designated for girls or women, ensuring that only female students are eligible to join, participate, or be categorized or counted as a member of Girls' Team(s)/Category(s) and that all male students are ineligible to join, participate, or be categorized or counted as a member of Girls' Team(s)/Category(s); and
6. Rescind any guidance that violates Title IX, remove or revise any internal and public-facing statements or documents that are inconsistent with Title IX, and notify all parents, students, and staff of such rescissions and revisions.

Pursuant to 34 C.F.R. § 75.253(g), you may request reconsideration of this decision. In order for this decision to be reconsidered, please notify OCR as to whether NYC DOE will agree to take the remedial steps described above to ensure it is in compliance with Title IX and its implementing regulations by 5 p.m. ET Friday, September 19, 2025.

Sincerely,

/s/
Craig W. Trainor
Acting Assistant Secretary for Civil Rights

**CC:** Melissa Aviles-Ramos, Chancellor, New York City Public Schools
Josephine Cohen, Director, Magnet Schools Assistance Program
Jenna Krueger-Utter, Project Director, Magnet Schools Assistance Program
Todd Levitt, Director, Magnet Schools Assistance Program
Shannon Lynch, Director, Magnet Schools Assistance Program