UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK*,*

                  Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
EDUCATION, LINDA MCMAHON, in her
capacity as Secretary of the United States
Department of Education, KIMBERLY M.
RICHEY, in her capacity as Assistant Secretary
for Civil Rights, and LINDSEY M. BURKE, in
her capacity as Deputy Chief of Staff for Policy
and Programs,

                Defendants.

No. 25 Civ. 08547 (AS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2695
*Attorney for Defendants*

STANLEY E. WOODWARD, JR.
Associate Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

JEFFREY OESTERICHER
Assistant United States Attorney
    - Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................... 1

BACKGROUND ........................................................................................................ 4

    I.    The Federal Magnet School Assistance Program ................................................. 4

    II.   ED Non-Continues NYCPS' MSAP Grants and Funding As No Longer in the Best Interests of the Federal Government.................................................................. 5

    III.  The Current Action ........................................................................................... 7

LEGAL STANDARD .................................................................................................. 8

    I.    Legal Standard Governing Motion to Dismiss ................................................... 8

    II.   Legal Standard Governing Preliminary Injunctions ........................................... 9

ARGUMENT ........................................................................................................... 10

    I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims ............................ 10

        A.   The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims....................................................................................................... 10

        B.   Plaintiff's APA Claims Are Unreviewable Because the Decision to Non-Continue Funding Is Committed to the Agency's Discretion ........................................... 14

    II.   Plaintiff Fails to State a Claim Under the APA and Is Unlikely to Succeed on the Merits .............................................................................................................. 17

        A.   Defendants Observed All Procedures Required by Law When Non-Continuing the MSAP Grants (Counts I and II)............................................................... 17

        B.   The Agency's Actions Were Not Arbitrary and Capricious (Count III)....................... 21

        C.   No Further Notice and Comment Rulemaking Was Required (Count IV) .................. 23

        D.   The Agency's Actions Were Not Contrary to Law (Count V) ..................................... 23

    III.  Plaintiff Has Failed to Satisfy the Other Preliminary Injunction Factors......................... 24

CONCLUSION......................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004) ................................................................................ 11

*American Association of University Professors v. United States Department of Justice*,
  No. 25 Civ. 2429, 2025 WL 1684817 (S.D.N.Y. Jun. 16, 2025).................................. 13, 14, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... 9, 18

*Atterbury v. U.S. Marshals Serv.*,
  805 F.3d 398 (2d Cir. 2015) .............................................................................. 11

*B.K. Instrument, Inc. v. United States*,
  715 F.2d 713 (2d Cir.1983) .............................................................................. 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................ 8, 9, 18

*Board of Educ. for Silver Consolidated Schools v. McMahon*,
  No. 25 Civ. 586 (WJ) (GBW), 2025 WL 2017177 (D.N.M. Jul. 18, 2025) ...................... 12, 16

*Cantor Fitzgerald Inc. v. Lutnick*,
  313 F.3d 704 (2d Cir. 2002) .............................................................................. 18

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ............................................................................... 9

*Ctr. for Auto Safety v. Dole*,
  846 F.2d 1532 (D.C. Cir. 1988) ......................................................................... 15

*De Jesus v. Sears, Roebuck & Co., Inc.*,
  87 F.3d 65 (2d Cir. 1996) ................................................................................ 18

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025)................................................................................... 10, 11

*Fairfax Cnty. School Bd. v. McMahon*,
  No. 25 Civ. 1432 (RDA/LRV), 2025 WL 2598622 (E.D.V.A. Sep. 5, 2025)...................... 10

*Falls Riverway Realty, Inc. v. City of Niagara Falls*,
  754 F.2d 49 (2d Cir. 1985) ............................................................................... 12

*FDA v. Wages & White Lion Invs. L.L.C.,*
  604 U.S. 542 (2025) ................................................................................ 22

*Feldman L. Grp. P.C. v. Liberty Mut. Ins. Co.,*
  819 F. Supp. 2d 247 (S.D.N.Y. 2011) ................................................ 18, 19

*Giammatteo v. Newton,*
  452 F. App'x. 24 (2d Cir. 2011) ............................................................ 8

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007) .................................................................... 9

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002) .............................................................................. 10

*Heckler v. Chaney,*
  470 U.S. 821 (1985) .............................................................................. 15

*Hinds Cnty., Miss. v. Wachovia Bank N.A.,*
  953 F. Supp. 2d 495 (S.D.N.Y. 2013) .................................................... 9

*Holowecki v. Fed. Exp. Corp.,*
  440 F.3d 558 (2d Cir. 2006) .................................................................. 7

*Ingersoll-Rand Co. v. United States,*
  780 F.2d 74 (D.C. Cir. 1985) ................................................................ 11

*Kamen v. American Tel. & Tel. Co.,*
  791 F.2d 1006 (2d Cir. 1986) ................................................................ 8

*L–7 Designs, Inc. v. Old Navy, LLC,*
  647 F.3d 419 (2d Cir. 2011) .................................................................. 18

*Lincoln v. Vigil,*
  508 U.S. 182 (1993) .......................................................................... 15, 16

*Lunney v. United States,*
  319 F.3d 550 (2d Cir. 2003) .............................................................. 16, 17

*Maine v. United States Dep't of Agric.,*
  778 F. Supp. 3d 200 (D. Maine 2025) .................................................... 18

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000) .................................................................. 8

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012)................................................................................ 10

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ............................................................... 11

*National Institutes of Health v. American Public Health Association*,
  145 S. Ct. 2658 (2025)................................................................. 11, 24, 25

*New Jersey v. Bessent*,
  149 F.4th 127 (2d Cir. 2025)................................................................... 21

*New York v. National Science Foundation*,
  No. 25 Civ. 4452 (JPC), 2025 WL 2180478 (S.D.N.Y. Aug. 1, 2025) ..................................... 14

*New York v. Trump*,
  778 F. Supp. 3d 578 (S.D.N.Y. 2025) ...................................................... 22

*Nken v. Holder*,
  556 U.S. 418 (2009).................................................................................. 25

*Nokia Corp. v. InterDigital, Inc.*,
  645 F.3d 553 (2d Cir. 2011) .................................................................... 25

*NYLAG v. DeVos*,
  527 F. Supp. 3d 593, 604 (S.D.N.Y. 2021) ............................................. 21

*Reyes v. SBA*,
  No. 22 Civ. 6765 (KPF), 2024 WL 1195051 (S.D.N.Y. Mar. 19, 2024)................................ 17

*Perry Capital LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ............................................................... 11

*Phillip Morris USA Inc. v. Scott*,
  56 U.S. 1301 (2010)........................................................................... 24, 25

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*,
  175 F.3d 132 (2d Cir. 1999) ............................................................... 10, 14

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point*,
  709 F. Supp. 3d 118 (S.D.N.Y. 2024) ........................................................ 9

*United States Conf. of Cath. Bishops v. U.S. Dep't of State*,
  770 F. Supp. 3d 155 (D.D.C. 2025) ......................................................... 14

*Up State Fed. Credit Union v. Walker*,
 198 F.3d 372 (2d Cir. 1999) ................................................................ 11, 12

*We The Patriots USA, Inc. v. Hochul*,
 17 F.4th 266 (2d Cir. 2021) ...................................................................... 9

*Winter v. Nat. Res. Def. Council*, Inc.,
 555 U.S. 7 (2008) ........................................................................................ 9

**Statutes**

5 U.S.C. § 701(a)(2) .................................................................................... 14, 15

5 U.S.C. § 702 ............................................................................................. 10, 15

20 U.S.C. § 1683 ......................................................................................... 10, 15

20 U.S.C. § 7231a ............................................................................................... 4

20 U.S.C. § 7231b ............................................................................................... 4

20 U.S.C. § 7231d ............................................................................................. 17

20 U.S.C. § 7231d(b)(2)(C) .......................................................................... 23, 24

20 U.S.C. § 7231d(c) ................................................................................... 4, 6, 21

20 U.S.C. § 7231h(a) .......................................................................................... 4

28 U.S.C. § 1491(a)(1) ...................................................................................... 10

**Regulations**

2 C.F.R. Part 200 .............................................................................................. 20

2 C.F.R. § 200.342 ................................................................................... 5, 19, 20

2 C.F.R. § 200.344 .............................................................................................. 5

20 C.F.R. § 75.253(a) ....................................................................................... 10

34 C.F.R. Part 75 ............................................................................................. 4, 6

34 C.F.R. § 75.25(a)(5) ..................................................................................... 23

34 C.F.R. § 75.251 .............................................................................................. 4

34 C.F.R. § 75.253 ....................................................................................... 12, 13, 24

34 C.F.R. § 75.253(a) ............................................................................................ 16

34 C.F.R. § 75.253(a)(5) ................................................................................... passim

34 C.F.R. § 75.253(b) ...................................................................................... 16, 23

34 C.F.R. § 75.253(f) .............................................................................................. 18

34 C.F.R. § 75.253(g) ...................................................................................... 5, 6, 19

34 C.F.R. § 75.253(g)(1)(i) ................................................................................... 20

34 C.F.R. § 75.253(h) ................................................................................... 3, 5, 7, 17

Defendants the United States Department of Education ("ED"), Linda McMahon, in her capacity as Secretary of the United States Department of Education, Kimberly M. Richey, in her capacity as Assistant Secretary for Civil Rights[1], and Lindsey M. Burke, in her capacity as Deputy Chief of Staff for Policy and Programs (collectively, the "Government" or "Defendants") submit this memorandum of law in support of their motion to dismiss the Complaint (Dkt. No. 1) filed by plaintiff the Board of Education of the City School District of the City of New York, operating as New York City Public Schools (the "Plaintiff" or "NYCPS") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and in opposition to Plaintiff's motion for a preliminary injunction, Dkt. No. 4.

## PRELIMINARY STATEMENT

NYCPS rushed into court seeking the extraordinary relief of a preliminary injunction for a case that does not belong in this Court to begin with. NYCPS challenges ED's discretionary decision, as of the start of the new fiscal year, to no longer fund NYCPS' federal Magnet School Assistance Program ("MSAP") grants. The grants were non-continued under 34 C.F.R. § 75.253(a)(5), a term and condition of the grants, as no longer in the best interests of the Federal Government due to Title IX concerns stemming from NYCPS' Guidelines to Support Transgender and Gender Expansive Students (the "Guidelines"). NYCPS asks this Court to substitute its judgment for that of the agency and order the continuation of its MSAP grants and funding for the next fiscal year—grant continuations and funding that ED *never* authorized. Plaintiff similarly seeks a preliminary injunction to access grant funds that it could have but failed to spend during

---

[1] Assistant Secretary Richey was automatically substituted as a defendant in this action pursuant to Fed. R. Civ. P. 25(d).

the last fiscal year, which are only made available at ED's discretion. Plaintiff is not entitled to relief, much less injunctive relief.

First, this Court lacks subject matter jurisdiction under the Tucker Act as this is a contractual dispute that can only be brought in the Court of Federal Claims. The ED-NYCPS grants are contracts, and the non-continuation decision was made based on the terms of those contracts. As the Supreme Court held in a similar case involving ED grants, where a plaintiff seeks the continuation of a grant and the award of grant funding, the dispute is contractual in nature and this Court lacks jurisdiction over it. Second, this Court lacks subject matter jurisdiction over Plaintiff's APA claims because the decision to non-continue funding is committed to ED's discretion and the relevant statutes and regulations give the agency broad discretion to decide whether to continue an MSAP grant and provide the Court with no meaningful standard by which to evaluate ED's decision that the MSAP grants were no longer in the interest of the federal government.

Plaintiff also fails to state a claim under the Administrative Procedure Act ("APA") and is unlikely to succeed on the merits. Therefore, not only should the preliminary injunction be denied, but this case should be dismissed. A significant portion of Plaintiff's claims rest on the notion that Title IX procedures were not followed and that the Guidelines, in their view, complied with Title IX. But it is clear from the non-continuation notices incorporated into the Complaint that the grants were non-continued under 34 C.F.R. § 75.253(a)(5), a term and condition of the grants, as no longer in the best interests of the Federal Government—not Title IX. Accordingly, Plaintiff's claims that the Government failed to follow Title IX procedures (Count I), and that the non-continuation decision was contrary to law (Count V) should be dismissed. For similar reasons, Plaintiff's claim that the Government's interpretation of Title IX did not go through notice-and-comment rulemaking (Count IV) lacks merit. The substantive Title IX regulations are unchanged, and the

separate regulatory requirement that an MSAP grant can only be continued if the agency determines that it is in the best interest of the Federal Government did go through notice-and-comment.

Moreover, Plaintiff was provided with a meaningful opportunity to object and seek reconsideration (Count II). The non-continuation notices go into significant detail regarding ED's concerns, how NYCPS could address them, and the circumstances under which the decision would be reconsidered and reversed. Nor was the decision arbitrary or capricious (Count III). The agency explained its decision to non-continue the grants in detail and considered all relevant criteria. That Plaintiff has a substantive disagreement with the ultimate decision is not a basis to vacate the decision as arbitrary and capricious. In addition, the preliminary injunctive relief sought by Plaintiff—a no-cost extension providing it with full access to funds available to it but not spent during the last fiscal year—is committed to agency discretion under 34 C.F.R. § 75.253(h).

Finally, Plaintiff has not established that it would be irreparably harmed or that the balance of equities tips in its favor. The Supreme Court has recently held that the Government is irreparably harmed where grant funds are released to a plaintiff which cannot be recouped. In contrast, Plaintiff failed to disclose that it continues to have access to last fiscal year's unspent funds during a 120-day liquidation period that expires on January 29, 2026. During the liquidation period, Plaintiff can use the funds for obligations incurred by it on or before the effective date of the non-continuation, September 30, 2025. Indeed, NYCPS has already withdrawn over $1 million in funds since the non-continuation went into effect. Accordingly, the Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6), and the motion for preliminary injunction should be denied.

# BACKGROUND

## I.    The Federal Magnet School Assistance Program

A magnet school is a public elementary or secondary school that offers "'a special curriculum capable of attracting substantial numbers of students of different racial backgrounds.'" Compl. ¶ 17 (quoting 20 U.S.C. § 7231a). ED, through MSAP, awards grants providing federal funds to eligible local educational agencies ("LEA") or consortia to establish and operate magnet schools. Compl. ¶ 20; 20 U.S.C. § 7231b. To receive the grant award, the LEA must meet certain eligibility requirements, including that the Assistant Secretary of Education for Civil Rights determines that the applicant will not engage in discrimination on the basis of race, religion, color, national origin, sex, or disability. Compl. ¶¶ 23-24; 20 U.S.C. § 7231d(c). The grants can be awarded for a period of up to five fiscal years. Compl. ¶ 22; 20 U.S.C. § 7231h(a). Regardless of whether the grant is for a single year or multiple years, the grant award notification ("GAN") includes terms and conditions agreed to by the recipient in exchange for receiving the funds. Declaration of Jennifer Todd ("Todd Decl.") ¶ 4.

In the case of a multi-year grant, funding is usually only provided for the initial budget period of not more than 12 months, and, in each subsequent year, ED must determine whether to continue the grant. Compl. ¶ 27; 34 C.F.R. § 75.251. The GANs incorporate 34 C.F.R. Part 75 as a term and condition of the grant. Todd Decl. ¶ 4. That term permits ED to non-continue[2] grant funding after the first budget period if the recipient fails to meet enumerated requirements, including that the Secretary determine "that continuation of the project is in the best interest of the

---

[2] Grant non-continuation is distinct from grant termination. Todd Decl. ¶ 5; *see Department Grant Discontinuation and Termination Process*, ED, https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes (last visited October 30, 2025). Termination ends the grants on the date specified in the termination letter—typically the same day as the letter. *Id*. Non-continuation declines to continue the grant beyond the end of the current approved budget period. *Id*.

Federal Government." 34 C.F.R. §§ 75.253(a)(5), (f). The GANs also specifically state that the award is only for the initial budget period, and that continuation of funding is dependent on future funding decisions by ED, which will consider, among other things, whether doing so would be in the best interests of the federal government. Todd Decl. ¶ 6.

If a multi-year grant is non-continued, the Secretary must "notify the grantee of the decision, the grounds on which it is based, and consistent with 2 C.F.R. § 200.342, provide the grantee with an opportunity to request reconsideration of the decision." 34 C.F.R. § 75.253(g); Compl. ¶ 31. The grantee must seek reconsideration by the date stated in the notice of non-continuation and "[s]et forth the basis for disagreeing with the Secretary's decision not to make a continuation award and include relevant supporting documentation." 34 C.F.R. §§ 75.253(g)(1)(i)-(ii).

"If the Secretary decides not to make a continuation award . . ., the Secretary may authorize a no-cost extension of the last budget period of the grant in order to provide for the orderly closeout of the grant." *Id*. § 75.253(h). A no-cost extension is at the discretion of the Secretary, and allows funds allocated but not spent during the grant performance period to be used beyond the performance period. *Id*.; Todd Decl. ¶ 8; Compl. ¶ 32. Even if a no-cost extension is not authorized, the MSAP grant recipient continues to have access to any previously authorized unspent funds during a 120-day liquidation period. Todd Decl. ¶ 9; 2 C.F.R. § 200.344. During this period, the recipient can continue to use the funds for obligations incurred by it on or before the effective date of the non-continuation or for reasonable grant winddown and closeout costs. Todd Decl. ¶ 9.

## II.    ED Non-Continues NYCPS' MSAP Grants and Funding As No Longer in the Best Interests of the Federal Government

In Fiscal Year ("FY") 2022 and FY 2023, NYCPS applied for MSAP grants of up to $3.5 million per year for a project period of up to five years. Compl. ¶¶ 34-39. In FY 2022, ED awarded

MSAP grants to three NYCPS projects: (1) Brooklyn Inter-District (Community School Districts 32 and 16); (2) Brooklyn and Queens Inter-District (Community School Districts 19 and 27); and (3) Queens Inter-District (Community School Districts 28 and 29). *Id*. ¶¶ 34, 39. In FY 2023, ED awarded MSAP grants to two NYCPS projects: (1) Bronx Inter-District (Community School Districts 7, 10, and 11); and (2) Manhattan Inter-District (Community School District 4, 2, and 6). *Id*. ¶¶ 36, 39. All five MSAP grants provided funding for an initial period, included 34 C.F.R. Part 75 as a term and condition of the grant award, and noted that continued funding for subsequent periods was subject to approval by the Secretary, who would consider, among other things, whether it was in the best interest of the Federal Government. Todd Decl. Exhibit ("Ex.") 1 at 3-4; Ex. 2 at 3-4; Ex. 3 at 3-4; Ex. 5 at 3-4, and Ex. 6 at 3-4.

On September 16, 2025, Acting Assistant Secretary for Civil Rights Craig W. Trainor notified NYCPS that its MSAP grants were being non-continued as "no longer in the best interest of the Federal Government" *Id*., Ex. 8 (the "September 16 Letter"), at 3; Compl. ¶¶ 51, 53. In the letter, ED stated that it was "deeply concerned about NYC DOE's *Guidelines to Support Transgender and Gender Expansive Students* . . . ," September 16 Letter at 1; detailed how NYCPS' policy conflicted with Title IX, *id*.; declined to certify NYCPS as compliant with 20 U.S.C. § 7231d(c), the MSAP anti-discrimination provision, *id*. at 3; identified 34 C.F.R. § 75.253(a)(5) as the basis for non-continuation of the MSAP grants, *id*.; provided specific steps that Plaintiff could take to address ED's concerns, *id*. at 3-4; and informed Plaintiff that the decision would be reconsidered under 34 C.F.R. § 75.253(g) if it agreed to take the steps outlined in the letter by September 19, 2025, *id*. at 4. Plaintiff responded by September 19 and sought a 30-day extension to the reconsideration deadline. Compl. ¶ 57. ED granted an extension to September 23, 2025. *Id*. ¶ 59.

According to Plaintiff, it never sought reconsideration. *Id*. ¶ 60. Nonetheless, on September 26, 2025, ED interpreted Plaintiff's September 19 Letter along with its failure to submit additional information by the September 23 deadline as an insufficient basis for reconsideration. Todd Decl. ¶ 16, Ex. 9 ("September 26 Letter"); Compl. ¶¶ 60-63.[3] The September 26 Letter also informed NYCPS that ED was "electing, consistent with 34 C.F.R. § 75.253(h), to not authorize further no-cost extensions for grant awards identified for non-continuation." September 26 Letter at 2; Compl. ¶ 64.

Plaintiff alleges that approximately $11 million in FY 2025 MSAP grant funding remained and was eligible for use in FY 2026 if the no-cost extension was authorized. *Id*. ¶ 48. On September 29, ED issued new GANs to NYCPS effectuating ED's election to not authorize a no-cost extension. *Id*. ¶ 65; Todd Decl., Ex. 10. Nonetheless, NYCPS continues to have access to the unspent funds for use during a 120-day liquidation period that expires on January 29, 2026. Todd Decl. ¶ 18. During this four-month window, it can continue to the use the funds for obligations incurred by NYCPS on or before the effective date of the non-continuation, September 30, 2025, or for reasonable grant winddown and closeout costs. *Id*. In fact, since the non-continuation took effect on October 1, NYCPS has already withdrawn over $1 million in MSAP funds. *Id*. ¶ 19.

## III.    The Current Action

Plaintiff filed its Complaint in this matter on October 15, 2025. *See* Dkt. No. 1. The Complaint asserts five claims, all under the APA, and all stemming from the Government's non-continuation of NYCPS' MSAP grants and funding. *Id*. Counts I and II assert that the Government

---

[3] The September 16 Letter and September 26 Letter are referenced throughout the Complaint, Compl. ¶¶ 1, 50-57, and 60-64, and may be considered by the Court in the context of Defendants' motion to dismiss. *See Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) (court may consider document "integral to the complaint" in considering a motion to dismiss), *aff'd*, 552 U.S. 389 (2008).

violated the APA by non-continuing the MSAP grants and funding without observing procedures required by law under Title IX (Count I), *id*. ¶¶ 100-108, and the MSAP statutes and implementing regulations (Count II), *id*. ¶¶ 109-115. Count III alleges that the non-continuation of the MSAP grants and funding was arbitrary and capricious. *Id*. ¶¶ 116-127. Count IV alleges that ED violated the notice and comment rulemaking requirements of the APA when it made its non-continuation decision based upon a "new interpretation" of Title IX. *Id*. ¶¶ 128-134. Count V alleges that the discontinuation of the MSAP grants was contrary to law because it was based on an allegedly erroneous interpretation of Title IX. *Id*. ¶¶ 135-141. Plaintiff seeks an order restoring its MSAP grants and funding. *Id*. ¶¶ 108, 115, 127, 134, and Prayer for Relief.

On October 16, 2025, Plaintiff moved by order to show cause for a preliminary injunction. Dkt. No. 4. Plaintiff seeks the reversal of ED's discretionary decision to not authorize a no-cost extension following non-continuation of the MSAP grants, thus allowing Plaintiff to access $11 million in funds during the pendency of this lawsuit. *See* Plaintiff's Memorandum of Law In Support of Motion for Preliminary Injunction, Dkt. No. 8 ("Br.") at 25.

## LEGAL STANDARD

### I.     Legal Standard Governing Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x. 24, 27 (2d Cir. 2011).

On a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Legal conclusions "must be supported by factual allegations," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Further, "[a] court may take into account any written instrument attached to the complaint, as well as statements and documents 'incorporated in the complaint by reference' without converting a motion to dismiss into one for summary judgment." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 953 F. Supp. 2d. 495, 496 n.1 (S.D.N.Y. 2013) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

## II.    Legal Standard Governing Preliminary Injunctions

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008). "When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

## ARGUMENT

**I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims**

**A.  The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims**

As an initial matter, this Court lacks subject matter jurisdiction over Plaintiff's claims as they are in essence contract claims that can only be brought in the Court of Federal Claims. *See Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*, 175 F.3d 132, 143 (2d Cir. 1999) ("Where a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims."). Although the APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages," 5 U.S.C. § 702, that waiver of sovereign immunity does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting 5 U.S.C. § 702). This exception "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 215 (2012).

"[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money,'" precisely what Plaintiff seeks here.[4] *See California*, 604 U.S. at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)). This

---

[4] Plaintiff asserts that 20 U.S.C. § 1683 provides for judicial review under the APA. Compl. ¶ 105. Plaintiff is in error. First, 20 U.S.C. § 1683 only applies to action taken pursuant to Section 1682, but ED's actions were under 20 C.F.R. § 75.253(a)—a term and condition of the GANs—not § 1682, which applies to Title IX enforcement. Second, even if § 1683 applies—which it does not—under the Tucker Act, judicial review would be available in the Court of Federal Claims—not the district court. *See Fairfax Cnty. School Bd. v. McMahon*, No. 25 Civ. 1432 (RDA/LRV), 2025 WL 2598622, at *5 (E.D.V.A. Sep. 5, 2025).

jurisdictional divide ensures that contract claims against the Government are channeled to the court that has "unique expertise" in that area. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). In *California*, the Supreme Court recently applied these principles to ED grants and concluded that the Government was likely to succeed in showing that the district court lacked jurisdiction over a challenge to the Government's termination of education-related grants. *See California*, 604 U.S. at 651. And, in *National Institutes of Health ("NIH") v. American Public Health Association*, 145 S. Ct. 2658 (2025) (per curiam), the Court reaffirmed its holding in *California* that "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Id.* (citing *California*, 604 U.S. at 651).

Accordingly, regardless of how a claim is styled, a district court lacks jurisdiction if the claim "is in 'its essence' contractual." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)); *see also Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004). "Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [his] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) and *Megapulse*, 672 F.2d at 968). Here, both prongs establish that Plaintiff's claims are in essence contractual claims for payment of the discontinued funding.

First, though Plaintiff, like the plaintiff in *California*, styles its claims as stemming from the APA, the core of its claims is that the Government impermissibly discontinued its MSAP grant agreements and funding. *See, e.g.*, Compl. ¶¶ 3 ("The immediate effect of the Department's actions is the . . . loss of approximately $11 million in carryover MSAP funding previously awarded . . . for the previous fiscal year, FY 2025, but now rendered unavailable in FY 2026 by the sudden discontinuance of the grant, effective October 1, 2025. It also means the abrupt end to grant funding for the remaining period of the five year-grants. An additional $36 million in federal support had been promised to the Schools under the five-year grants . . . ."), 8 ("NYCPS brings this action to . . . order that the Department's Discontinuation of NYCPS' MSAP grants be vacated and set aside . . . ."), 96 ("As a direct result of the Department's unlawful decision to discontinue NYCPS' MSAP grant funds, the educational programs at each of these Schools . . . will suffer."), 108 ("NYCPS is entitled to a declaratory order and an order and judgment enjoining the Department's discontinuation of NYCPS's MSAP grants . . . ."), 115 (same), 127 (same), 134 (same), and Prayer For Relief (same and requesting that the Court "[d]eclare and enjoin the Department from freezing, terminating or otherwise interfering with any NYCPS' MSAP grant funding . . . ."). The source of the right Plaintiff is asserting is therefore the grant agreements themselves, and not an "independent, non-contractual source." *Up State Fed. Credit Union*, 198 F.3d at 376. In the absence of the grants, "'no cause of action would exist at all.'" *Id*. at 377 (quoting *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55 (2d Cir. 1985)); *see also Board of Educ. for Silver Consolidated Schools v. McMahon*, No. 25 Civ. 586 (WJ) (GBW), 2025 WL 2017177, at *5-8 (D.N.M. Jul. 18, 2025) (dismissing claims against ED seeking reversal of grant non-continued under 34 C.F.R. § 75.253 under the Tucker Act because "[r]ather than challenging a regulatory

action with some monetary implications, Plaintiff seeks payment of 'the grant monies' it claims 'entitlement to'").

In fact, 34 C.F.R. § 75.253(a)(5), the provision under which the grants were non-continued as no longer in the best interests of the Federal Government, Todd Decl. ¶ 15, Ex. 8; Compl. ¶ 86, is incorporated into the MSAP grant agreements as a contractual term. Todd Decl., Ex. 1 at 3-4; Ex. 2 at 3-4; Ex. 3 at 3-4; Ex. 5 at 3-4, and Ex. 6 at 3-4. In addition, the MSAP grant agreements specifically include the following as a term and condition of the grant:

> THIS AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF: . . .
>
> 2) THE SECRETARY DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTERESTS OF THE GOVERNMENT; . . .

*Id*. As such, the Government non-continued the grants pursuant to the terms and conditions of their award, *id*., and Plaintiff's claims sound in contract. *Cf. American Association of University Professors v. United States Department of Justice*, No. 25 Civ. 2429, 2025 WL 1684817, at *15 (S.D.N.Y. Jun. 16, 2025) (citing contract term and provision as basis for terminating funding and noting that Title VI—which is procedurally identical to Title IX—is not the "sole and exclusive legal tool" available to an agency to terminate funding based on alleged religious discrimination).

Second, the remedies Plaintiff seeks also plainly sound in contract. Plaintiff seeks an order: (1) "enjoining the Department's Discontinuation of NYCPS's MSAP grants," Compl. ¶¶ 108, 115, 127, 134; (2) "[p]reliminarily and permanently enjoin[ing] the Department from implementing, maintaining or reinstating the Discontinuation, or otherwise taking any other action to suspend, terminate, or refuse to continue the NYCPS' MSAP grants for the FY25 and FY26 periods," *id*. at Prayer for Relief (b); (3) ordering the continuation of the NYCPS MSAP grants, *id*. at Prayer for

Relief (c); and (4) enjoining "the Department from freezing, terminating or otherwise interfering with any NYCPS' MSAP grant funding . . . ," *id.* at Prayer for Relief (d). In other words, Plaintiff requests that the Court order the continuation of a contractual agreement with ED and the continued payment of funding to it. However, the Tucker Act "specifically bar[s] . . . any 'injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining of money damages.'" *Presidential Gardens Assocs.*, 175 F.3d at 143 (quoting *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983)). Where, as here, "'the prime objective of the plaintiff is to obtain money from the Government,'" this Court lacks jurisdiction.[5] *See id.* (quoting *B.K. Instrument, Inc.,* 715 F.2d at 727); *see also United States Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *appeal dismissed,* No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) (where Government terminated funding pursuant to an agreement, concluding court lacked jurisdiction, in part because "this Court cannot order the Government to pay money due on a contract"); *Presidential Gardens Assocs.*, 175 F.3d at 143 ("Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States.").

## B. Plaintiff's APA Claims Are Unreviewable Because the Decision to Non-Continue Funding Is Committed to the Agency's Discretion

This Court lacks subject matter jurisdiction over this case for the additional reason that the non-continuation of the NYCPS' MSAP grants is quintessential agency action "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C.

---

[5] Plaintiff's preliminary injunction request, which is solely focused on the restoration of funding, further makes plain that its primary objective is to obtain money from the Government. Br. at 25; *see New York v. National Science Foundation*, No. 25 Civ. 4452 (JPC), 2025 WL 2180478, at *12 (S.D.N.Y. Aug. 1, 2025) (finding that plaintiffs "primarily asserted a right to payment of the funds promised in the grant awards" based, in part, on plaintiffs' preliminary injunction brief that "reveals their focus on the termination of the grant awards").

§ 701(a)(2). While the APA establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either final agency action or an agency's failure to act, 5 U.S.C. §§ 702, 706(1)-(2), the waiver of sovereign immunity is limited. It does not apply in circumstances where "agency action is committed to agency discretion by law," *id.* § 701(a)(2). Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988).[6]

The Supreme Court has long recognized that an agency's determination of how to allocate appropriated funds among competing priorities and recipients—precisely what Plaintiff challenges here—is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that there is no waiver of sovereign immunity where agency action requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id.* (citations and internal quotation marks omitted). An "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (citations and internal quotation marks omitted). So long as the agency abides by the relevant

---

[6] As noted above, 20 U.S.C. § 1683 does not apply because ED did not act under § 1682. *See supra* note 4. As such, there is no basis to review the agency's discretionary decision to non-continue the grants.

statutes (and whatever obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id*.

Here, the decision to non-continue funding was peculiarly within ED's expertise and discretion. The September 16 letter made clear that "NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government." September 16 Letter at 3. That regulation is broadly drawn and provides the Court with no meaningful standards by which to evaluate the agencies' decision. *See Lunney v. United States*, 319 F.3d 550, 557-58 (2d Cir. 2003).

Instead, the regulation merely states that "[a] grantee, in order to receive a continuation award from the Secretary . . . must . . . [r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a), (a)(5). In determining whether a grantee is eligible for a continuation of their award, "the Secretary may consider *any* relevant information regarding grantee performance." 34 C.F.R. § 75.253(b) (emphasis added). Because these provisions are so broadly stated, at least one court has come to the same conclusion. *See Bd. of Educ. for Silver Consolidated Schs.*, 2025 WL 2017177, at *11 (opining that a non-continuation of a grant under 34 C.F.R. § 75.253(a)(5) "which concerned how to allocate a grant award that is, purportedly, not in the best interest of the Government—seems like a quintessential decision committed to agency discretion by law").

This is particularly true regarding the relief that Plaintiff's motion for preliminary injunction seeks. Plaintiff is clear that it seeks a preliminary injunction to rescind ED's denial of a no-cost grant extension and allow NYCPS to be able to access and use $11 million in carryover funds from the FY 2025 MSAP grants. *See, e.g.*, Br. at 25. But that decision is wholly discretionary. The relevant regulation states only: "If the Secretary decides not to make a continuation award

under this section, the Secretary *may* authorize a no-cost extension of the last budget period of the grant in order to provide for the orderly closeout of the grant." 34 C.F.R. § 75.253(h) (emphasis added); *see also Reyes v. SBA*, No. 22 Civ. 6765 (KPF), 2024 WL 1195051, at *5-6 (S.D.N.Y. Mar. 19, 2024) (holding that claims regarding the denial of an EIDL grant was unreviewable under the APA because "the word 'may' clearly connotes discretion . . . and [the] SBA's allocation of lump-sum appropriations is typically considered a discretionary act").

Because Plaintiff does not specify "some statute or regulation that would limit [ED's] discretion in this matter," Plaintiff's claims are committed to agency discretion and the Court lacks subject matter jurisdiction over them. *Lunney*, 319 F.3d at 558.

## II. Plaintiff Fails to State a Claim Under the APA and Is Unlikely to Succeed on the Merits

Plaintiff's claims should also be dismissed pursuant to Rule 12(b)(6) for the independent reason that they fail to state a claim under the APA. As such, Plaintiff's claims are also unlikely to succeed on the merits and its preliminary injunction motion should be denied.

### A. Defendants Observed All Procedures Required by Law When Non-Continuing the MSAP Grants (Counts I and II)

The Court should dismiss Counts I and II alleging that Defendants violated the APA by non-continuing the MSAP grants without observing the procedures required by Title IX (Count I) and the MSAP statutes and implementing regulations (Count II) for failure to state a claim. As to Count I, Plaintiff asserts that Defendants failed to observe the procedures required by Title IX, Compl. ¶¶ 100-108, even though the grants were non-continued under 34 C.F.R. § 75.253(a)(5)—not Title IX. September 16 Letter at 3 ("NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government"). While Title IX concerns were the basis for the Assistant Secretary declining to certify Plaintiff's compliance with anti-discrimination laws under 20 U.S.C. § 7231d, September 16 Letter at 4, ED

specifically relied upon 34 C.F.R. § 75.253(a)(5), incorporated as a term and condition of the grants, to non-continue the grants as no longer in the best interest of the Federal Government, *id.* at 3. This determination was within the Secretary's discretion. 34 C.F.R. § 75.253(f) ("The Secretary may decide not to make a continuation award if (1) A grantee fails to meet any of the requirements in paragraph (a) of this section . . . .").

Because Title IX's procedural requirements are inapplicable here, they cannot form the basis for an APA claim. Plaintiffs' vague and conclusory allegations to the contrary "are 'contradicted by more specific allegations or documentary evidence,'" and therefore "are not entitled to a presumption of truthfulness" regarding the basis for the MSAP grant non-continuation. *See Feldman L. Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 258 (S.D.N.Y. 2011) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421-22 (2d Cir. 2011) (internal quotation marks omitted)), *aff'd*, 476 F. App'x 913 (2d Cir. 2012); *see also, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555); *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (a court need not give "credence to [a] plaintiff's conclusory allegations"); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Plaintiff's citation to *Maine v. United States Dep't of Agric.*, 778 F. Supp. 3d 200 (D. Maine 2025) is similarly misplaced. Br. at 11-12. In *Maine*, the Court found that plaintiff's APA claim was likely to succeed because the Department of Agriculture did not dispute that it terminated funding under Title IX without following the required procedures. *Maine*, 778 F. Supp. 3d at 227-32. Here, as discussed above, Title IX is inapplicable because ED non-continued the MSAP grants

under an entirely different provision incorporated into the terms and conditions of the grants, 34 C.F.R. § 75.253(a)(5). September 16 Letter at 3. Accordingly, the Court should dismiss Count I for failure to state a claim pursuant to Rule 12(b)(6).

As to Count II, Plaintiff, without citation to any caselaw, alleges that Defendants violated the APA by not providing it with a "meaningful opportunity . . . to object to the decision not to continue, or to provide information and seek reconsideration" as required by 34 C.F.R. § 75.253(g) and 2 C.F.R. § 200.342. Br. at 12-13; Compl. ¶¶ 109-115. These conclusory allegations are not entitled to a presumption of truthfulness as they are contradicted by the September 16 and September 26 Letters, which are incorporated by reference into the Complaint, *see* Compl. ¶¶ 1, 7, 50-57, and 60-64. *See, e.g.*, *Feldman L. Grp. P.C.*, 819 F. Supp. 2d at 258.

The September 16 and 26 Letters demonstrate that Plaintiff received adequate notice and opportunity to provide information and seek reconsideration as required by 34 C.F.R. § 75.253(g). Under 34 C.F.R. § 75.253(g), "[i]f the Secretary decides not to make a continuation award under this section, the Secretary will notify the grantee of that decision, the grounds on which it is based, and, consistent with 2 C.F.R. § 200.342, provide the grantee with an opportunity to request reconsideration of the decision." *Id*. Consistent with this provision, the September 16 Letter specifically notified Plaintiff that Defendants were "deeply concerned" about the Guidelines, September 16 Letter at 1; detailed the specific basis for its concerns, *id*. at 2-3; identified 34 C.F.R. § 75.253(a)(5) as the basis for non-continuation of the MSAP grants, *id*. at 3; provided specific steps that Plaintiff could take to address Defendants' concerns, *id*. at 3-4; and informed Plaintiff that the decision would be reconsidered if it agreed to take the steps outlined in the letter, *id*. at 4. Plaintiff responded by September 19 and received an extension to September 23, 2025, to seek

reconsideration. Compl. ¶¶ 57-59. Yet, according to Plaintiff, it never sought reconsideration. *id*. ¶ 60.[7]

To the extent Plaintiff now argues that the extended deadline to seek reconsideration was insufficient and that the condition placed on seeking reconsideration in the September 16 Letter was impermissible, it does not cite any supporting authority. Br. at 12-13. Plaintiff also ignores that 34 C.F.R. § 75.253(g)(1)(i) leaves the date by which reconsideration will be considered to ED's discretion. *Id*. (requiring a request for reconsideration to be submitted by the date specified in the notice of non-continuation but not specifying a period of time between issuance of the notice and the reconsideration deadline). Similarly, the provision does not limit the ability to put conditions on reconsideration, and neither does 2 C.F.R. § 200.342, which only requires "an opportunity to object and provide information challenging the action." *Id*. As discussed above, Plaintiff was provided with this opportunity and either failed to seek it, Compl. ¶ 60, or failed to address the issues raised by ED in the September 16 Letter. *See* September 26 Letter, at 1-2. Finally, Plaintiff fails to reference ED's reconsideration process under 2 C.F.R. § 200.342,[8] let alone allege any violation of those procedures. *See, e.g.*, Compl. 109-115; Br. at 12-13. As such, Count II should be dismissed for failure to state a claim.[9]

---

[7] On September 26, 2025, ED interpreted Plaintiff's September 19 Letter along with its failure to submit additional information by the September 23 deadline as an insufficient request for reconsideration. September 26 Letter at 1-2.

[8] *Department Grant Discontinuation and Termination Process*, ED, https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes (last visited October 30, 2025).

[9] Plaintiff also cites to provisions of 2 C.F.R. Part 200 that govern terminations. Compl. ¶ 114 n.56. These provisions do not apply as NYCPS' grants were non-continued—not terminated. *See* September 16 Letter; September 26 Letter.

### B.    The Agency's Actions Were Not Arbitrary and Capricious (Count III)

A court's "review of agency action under the arbitrary and capricious standard of review is narrow and particularly deferential." *New Jersey v. Bessent*, 149 F.4th 127, 152 (2d Cir. 2025) (internal quotation marks and citation omitted). An agency action is arbitrary and capricious only "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *NYLAG v. DeVos*, 527 F. Supp. 3d 593, 604 (S.D.N.Y. 2021).

Even if ED's decision to non-continue the relevant grants were reviewable, ED made plain in its letters to NYCPS informing them of the decision to non-continue their MSAP grants that the agency had "specific concerns with [NYCPS] compliance with applicable federal civil rights laws." September 26 Letter at 1. Far from "summarily conclud[ing]" that there were Title IX concerns with the Guidelines, those concerns were set forth in detail in a four-page letter to NYCPS citing specific aspects of the Guidelines with supportive case law and other authorities. *See* September 16 Letter at 3-4. That Plaintiff has a "difference in view," *NYLAG*, 527 F. Supp. 3d at 604, does not render the decision arbitrary and capricious.

Plaintiff's argument that this constitutes a "change in position," because the decision to non-continue the grant "deviated from its prior determinations that the NYCPS Guidelines did not preclude" the Assistant Secretary for Civil Rights' certification of the grant under 20 U.S.C. § 7231d(c) and that the grant was in the best interest of the United States under 34 C.F.R. § 75.253(a)(5), is mistaken. *See* Br. at 14. This is not a "change in position" under the APA because there was no change in existing policy. "[F]or an agency position to constitute a 'policy' within the meaning of the change-in-position doctrine, it must typically have been set forth in some 'formal'

manner, such as a regulation, a guidance memorandum, or an agency enforcement action." *New York v. Trump*, 778 F. Supp. 3d 578, 596 (S.D.N.Y. 2025). But Plaintiffs do not allege—as they must—that the agency "had a pre-existing policy expressed in a guidance document or in some other formal fashion that was altered by" the non-continuation decision. *See id.* Nor did the agency go "back on any commitments made in guidance it provided" before making the non-continuation decision. *FDA v. Wages & White Lion Invs. L.L.C.*, 604 U.S. 542, 571 (2025). Instead, as detailed above, the relevant regulations "left the agency broad discretion to decide" whether any particular grant would be continued. *Id.* In other words, because no particular commitments had been made with respect to how the agency would view the Guidelines, there was no change in position under the APA.

Next, Plaintiff argues that the agency failed to consider NYCPS' reliance interests. But the agency was explicit in each of its grant award notifications that the "award supports only the budget period" described in the notification and that "the Secretary *considers* . . . continued funding if . . . the Department determines that continuing the project would be in the best interest of the Government." *See* Todd Decl. Ex. 1 at 3-4; Ex. 2 at 3-4; Ex. 3 at 3-4; Ex. 5 at 3-4, and Ex. 6 at 3-4 (emphasis added). In other words, from the very beginning of the contractual relationship, Plaintiff was on notice that it should not develop reliance interests because future years' funding was not guaranteed. And to the extent that NYCPS believed that it would receive a grant continuation, "a belief about how an agency is likely to exercise its . . . discretion is not a serious reliance interest." *Wages & White Lion Invs. L.L.C.*, 604 U.S. at 585 (citation and internal quotation marks omitted).

Finally, Plaintiff argues that the agency did not consider the criteria listed in the relevant regulation—namely, "information regarding grantee performance." Br. at 16. But that argument

ignores how broadly the particular regulation is drafted. 34 C.F.R. § 75.253(b) makes clear that "the Secretary may consider *any* relevant information regarding grantee performance." (emphasis added). That the agency had concerns regarding NYCPS' compliance with Title IX is relevant information regarding NYCPS's performance under the grant; grantees are prohibited by statute from "engag[ing] in discrimination based on . . . sex . . in . . . designing or operating extracurricular activities for students." 20 U.S.C. § 7231d(b)(2)(C); *see also* September 16 Letter at 2 (citing Title IX concerns in the operation of extracurricular activities). Plaintiff may substantively disagree with the finding of the agency, but ED plainly did not fail to consider statutory criteria in making its decision to non-continue the subject grants.

### C.    No Further Notice and Comment Rulemaking Was Required (Count IV)

Plaintiff next argues that the agency was required to follow notice-and-comment rulemaking procedures "when changing rules guiding its enforcement of Title IX." Br. at 16. But the agency did no such thing. As the agency explicitly acknowledged, "[t]he Title IX regulations that took effect on August 14, 2020, are in force." September 16 Letter at 1 n.1. The decision to non-continue the subject grants was made under an entirely different legal framework; there is no Title IX enforcement action at issue in this case. Instead, the grant was "non-continued under 34 C.F.R. § 75.25(a)(5)"—a regulation that was the product of notice-and-comment rulemaking— because the agency determined that the grants were "no longer in the best interest of the Federal Government." September 16 Letter at 3. That determination is entirely discretionary and fact-specific—there is no generally applicable rule that the agency has propounded that is subject to notice-and-comment rulemaking procedures.

### D.    The Agency's Actions Were Not Contrary to Law (Count V)

Plaintiff further cannot show that the agency's non-continuation decision was contrary to law. Plaintiff's entire argument hinges on whether a court would agree that the Guidelines violate

Title IX. *See* Br. at 17-21. But even if this Court disagrees with the agency's interpretation of the statute and found that the Guidelines do not violate Title IX, the agency's decision is not contrary to law. 34 C.F.R. § 75.253 provides, as a separate and independent requirement for a continuation award, that the grantee "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). Stated otherwise, even if the grantee is making substantial progress, submitting all required reports, and continuing to meet the eligibility requirements of the program (including the requirement that they remain in compliance with federal civil rights law, *see* 20 U.S.C. § 7231d(b)(2)(C)), the applicable regulations impose a clear and separate requirement that each project receive a current determination that continuation is in the best interest of the federal government. The agency, in its discretion, made the determination that it was not. *See* September 16 Letter at 3 ("NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government."); September 26 Letter at 1-2 ("[T]he determination under 34 C.F.R. § 75.253(a)(5) was whether NYC DOE's MSAP grant continues to be in the best interest of the federal government. Given the ongoing civil rights concerns impacting MSAP students . . . , I cannot make such a determination."). Because the agency's determination that the MSAP grants are not in the best interest of the federal government does not depend on whether the Guidelines violate Title IX as a matter of law, the agency's discretionary decision should not be vacated under the APA.

## III.    Plaintiff Has Failed to Satisfy the Other Preliminary Injunction Factors

Plaintiff fails to satisfy the remaining preliminary injunction factors. As to irreparable harm, the Supreme Court recently held that the government is irreparably harmed where grant funds are released to a plaintiff which "'cannot be recouped' and are thus 'irrevocably expended.'" *NIH*, 145 S. Ct. at 2658 (quoting *Phillip Morris USA Inc. v. Scott*, 56 U.S. 1301, 1304 (2010)). In

*NIH*, the Court found irreparable harm to the government from the release of grant funds to plaintiffs, who did "not state they will repay grant money if the Government ultimately prevails," and who contended that they lacked the resources to continue to fund their project without the funds as this was "inconsistent with the proposition that they have the resources to make the Government whole for money already spent." *Id*. The same is true here. NYCPS has not stated that it will repay the Government for the expended funds should the Government prevail. In fact, NYCPS affirmatively asks the Court to order "no or nominal security" in the event the Court grants the preliminary injunction.[10] Br. at 25-26 n.7. And, as in *NIH*, Plaintiff claims it cannot continue with its program without the funding, which is inconsistent with the notion that it will repay the Government for any expended funds. Br. at 22. As such, should the Government prevail, any funds released to Plaintiff would be "irrevocably expended." *NIH*, 145 S. Ct. at 2658.

In contrast, NYCPS continues to have access to the unspent funds for use during a 120-day liquidation period that expires on January 29, 2026. Todd Decl. ¶ 18. During the liquidation period, Plaintiff can use the funds for obligations incurred by it on or before the effective date of the non-continuation, September 30, 2025. *Id*. In fact, NYCPS has already withdrawn over $1 million in MSAP funds since the non-continuation went into effect. *Id*. ¶ 19.

The equities and public interest also weigh against issuing a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the

---

[10] If the Court grants Plaintiff's motion for a preliminary injunction, it should require Plaintiff to post a bond. Federal Rule of Civil Procedure 65(c) provides that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557-58 (2d Cir. 2011). Here, should the Government ultimately prevail in this action, it will potentially be at the cost of millions of dollars in grant funds. Therefore, the posting of a substantial bond is warranted.

party opposing a motion for preliminary injunctive relief). Plaintiff seeks unfettered access to over $11 million in carryover funds, access to which has always been at ED discretion. Todd Decl. ¶ 8. Plaintiff also complains that ED had "no apparent legitimate explanation" for issuing the non-continuation decision after the start of the school year. Br. at 24. However, this ignores that, by its own admission, continuation decisions are typically issued by ED after the start of the school year, which corresponds with the end of the Government's fiscal year, *see* Declaration of Serita Scott, Dkt. No. 7, ¶¶ 14-15, and that the grant award states that funding for future budget periods is not guaranteed, Todd Decl. ¶¶ 11, 13. NYCPS was therefore aware, when it budgeted for the current school year, that the MSAP funding may not be continued.

In contrast, Plaintiff is seeking to hamstring the Government from lawfully effectuating policy decisions with respect to funding, agency priorities, and combatting discrimination. There is no public interest in compelling federal agencies to make discretionary funding decisions. *See American Association of University Professors*, 2025 WL 1684817, at *14 (rejecting the plaintiffs' arguments regarding the public interest and equities because the court should not "direct the policies of the [Government] first and ask questions later").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction and dismiss Plaintiff's Complaint.

Dated:  New York, New York
       October 30, 2025

                    Respectfully submitted,

                    JAY CLAYTON
                    United States Attorney for the
                    Southern District of New York
                    *Attorney for Defendants*

By:     */s/ Jeffrey Oestericher*
                    JEFFREY S. OESTERICHER
                    Assistant United States Attorneys
                    86 Chambers Street, 3rd Floor
                    New York, New York 10007
                    Tel: (212) 637-2695

                    STANLEY E. WOODWARD, JR.
                    Associate Attorney General
                    ABHISHEK KAMBLI
                    Deputy Associate Attorney General
                    U.S. Department of Justice
                    950 Pennsylvania Avenue, NW
                    Washington, D.C. 20530
                    Stanley.Woodward@usdoj.gov
                    Abhishek.Kambli@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,746 words.

                  */s/ Jeffrey Oestericher*
                  Assistant United States Attorney