UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK

                             Plaintiff,

                v.

UNITED STATES DEPARTMENT OF EDUCATION,
 LINDA MCMAHON, in her official capacity as
Secretary of the United States Department of Education,
KIMBERLY M. RICHEY, in her capacity as Assistant
Secretary for Civil Rights, and LINDSEY M. BURKE, in
her capacity as Deputy Chief of Staff for Policy and
Programs,

                          Defendants.

------------------------------------------------------------------------x

                                   25-cv-08547 (AS)(OTW)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
AND IN FURTHER SUPPORT OF ITS MOTION FOR
PRELIMINARY INJUNCTION**


Dated: New York, New York
       November 5, 2025

                              MURIEL GOODE-TRUFANT
                              Corporation Counsel of
                               the City of New York
                              100 Church Street
                              New York, New York 10007
                              (212) 356-1000

                              *Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................iv

PRELIMINARY STATEMENT ...................................................................................... 1

FACTS ............................................................................................................................ 2

ARGUMENT .................................................................................................................. 5

I.        THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION.................. 5

      A.     This Court plainly has jurisdiction over the claims rooted in Title IX,
which more than suffice to support a preliminary injunction ..................... 6

           i.  This Court has jurisdiction over the action and
may vacate the Department's unlawful Title IX
finding during the pendency of NYCPS' lawsuit.................................. 7

           ii. The Court of Federal Claims is the wrong forum
for NYCPS' suit and would nullify
Congressional intent in Title IX. The Department
does not have unbridled discretion to ignore Title
IX's procedures, as it claims. ............................................................. 14

      B.     NYCPS is Entitled to a Preliminary Injunction ....................................... 15

           i.    NYCPS is Likely to Succeed on the Merits...................................... 15

           ii.  NYCPS has Demonstrated Irreparable Harm
and the Remaining Factors................................................................. 17

II.       DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.................... 19

      A.     Legal Standard on Motion to Dismiss ...................................................... 19

      B.     This Court has Jurisdiction to Decide this Lawsuit. ................................. 20

      C.     NYCPS Has Stated a Claim with Respect to Each of its Five
Causes of Action ..................................................................................... 22

           i.   NYCPS States a Claim for Violation of APA
Through Agency Action without Observance of
Title IX Procedure Required by Law.................................................. 22

ii.  NYCPS States a Claim for Violation of APA
Through Agency Action Taken Without
Observance of MSAP Procedure as Required by
Law ..................................................................................... 23

iii.  NYCPS States a Claim for Violation of APA
Through Arbitrary and Capricious Agency
Action ................................................................................. 25

iv.  NYCPS States a Claim for Violation of APA
Through Agency Action Without Notice and
Comment Rulemaking. ........................................................ 26

v.  NYCPS States a Claim for Violation of APA
Through Agency Action Contrary to Law ............................ 27

CONCLUSION .................................................................................... 28

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE ....................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C. v. Metro Sch. Dist. of Martinsville*,
  75 F.4th 760 (7th Cir. 2023) *cert. denied*, 2024 US LEXIS 440 (Jan. 16, 2024) .................. 28

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
  145 F.4th 39 (1st Cir. 2025) ......................................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 19, 20

*Ass'n of Am. Univs. v. Dep't of Defense*,
  Civil Action No. 25-11740-BEM, 2025 US Dist LEXIS 201095 (D. Mass.
  Oct. 10, 2025), ................................................................................................... 11, 21

*Board of Public Instruction v. Finch*,
  414 F.2d 1068 (5th Cir. 1969) ........................................................................... 16, 18

*Cmty Legal Servs. in E. Palo Alto v. United States HHS*,
  2025 U.S. App. LEXIS 26437 (9th Cir. Oct. 10, 2025) ........................................... 10

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ..................................................................................................... 26

*Dep't of Commerce v. New York*, 588 U.S. 752, (2019) ................................................ 25

*Department of Education v. California*,
  604 U.S. 650, 145 S. Ct. 966 (2025) ................................................................... 11, 12

*Doe v. Bayertown Area Sch. Dist.*,
  897 F.3d 518 (3d Cir. 2018) .................................................................................... 28

*Grimm v. Gloucester Cnty Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc
  denied*, 976 F.3d 399 (4th Cir. 2020), *cert denied*, 141 S. Ct. 2878 (June 28,
  2021) ...................................................................................................................... 28

*Lin Liu v. Smith*,
  515 F. Supp.3d 193 (SDNY 2021) .......................................................................... 27

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ................................................................................................ 14

*Maine v. U.S. Dep't of Agriculture*,
  778 F. Supp. 3d 200 (D. Me. 2025) .................................................................... 10, 15

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)......................................................................19

*Marks v. United States*,
430 U.S. 188 (1977)................................................................................21

*Martin Luther King, Jr. County v. Turner*,
785 F. Supp. 3d 863 (W.D. Wash 2025)....................................................12

*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020)................................................................................13

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982)................................................................21

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
___U.S.___, 145 S. Ct. 2658 (2025).............................................11, 13, 21

*New York v. U.S. Dep't of Homeland Sec.*,
969 F. 3d 42 (2d Cir. 2020)....................................................................15

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................................15

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ...............................................................28

*President & Fellows of Harvard. College. v. United States HHS*,
Civil Action No. 25-cv-11048-ADB, 2025 US Dist LEXIS 171326 (D. Mass.
Sep. 3, 2025) ....................................................................................10, 11

*Rhode Is. Coalition Against Dom. Violence v. Bondi*,
No. 25-279 WES, 2025 US Dist. LEXIS 153152 (D.R.I. Aug. 8, 2025) ...............12

*Rhode Is. Coalition Against Dom. Violence v. Kennedy*,
No. 25-cv-342-MRD-PAS, 2025 US Dist LEXIS 208816 (D.R.I. Oct. 23,
2025) .....................................................................................................12

*State of New York et al v. U.S. Dep't of Justice*,
No. 1:25-cv-00345-MSM-PAS, Dkt 64 (D.R.I. Sept. 10, 2025) ...........................27

*State of Washington, et al. v. U.S. Dep't of Health and Human Servs., et al.*,
No. 6:25-cv-01748-AA, Dkt. 81 (D. Or. Oct. 27, 2025) .....................................16, 26

*State of Washington v. U.S. Dept of Commerce*,
25-cv-1507, Dkt 33 (W.D. WA Oct 22, 2025) .....................................................21

*State of Washington v. U.S. Dep't of Educ.*,
   2025 U.S. Dist. LEXIS 207342, 25-cv-1228, Dkt 190
   (W.D. WA, Oct 21, 2025)......................................................................................21, 22

*State of Washington v. U.S. Dep't of Educ.*,
   2025 U.S. Dist. LEXIS 211521 (W.D. WA, Oct. 27, 2025)..................................24

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008)...................................................................................................15

**Statutes**

5 U.S.C. § 702............................................................................................................20

5 U.S.C. § 706......................................................................................................15, 20

20 U.S.C § 1682.......................................................................................................3, 9

20 U.S.C. § 1683.......................................................................................................14

20 U.S.C. §7231d(c) ...............................................................................................4, 8

28 U.S.C. § 1491.........................................................................................................6

**Other Authorities**

2 C.F.R. § 200.342.....................................................................................................23

2 C.F.R. § 200.............................................................................................................23

34 C.F.R. Part 6............................................................................................................3

34 C.F.R. §75.253 .................................................................................4, 8, 22, 23, 24

86 Fed. Reg. 32637 (June 22, 2021) .........................................................................26

89 Fed. Reg. 1982, 2002 (Jan. 11, 2024) .................................................................19

EO 14168 § 3(f) .........................................................................................................27

EO 14190 § 2(e) .........................................................................................................27

## PRELIMINARY STATEMENT

Plaintiff the Board of Education of the City School District of the City of New York, operating as New York City Public Schools ("NYCPS") submits this Memorandum of Law in Opposition to the Motion to Dismiss (ECF No. 23) of Defendants the United States Department of Education, Linda McMahon, Kimberly M. Richey,[1] and Lindsey M. Burke (collectively, the "Department"), and in further support of its Motion for a Preliminary Injunction (ECF No. 4).

Two weeks into the 2025-2026 school year, the Department announced out of thin air that it was discontinuing $36 million in funding for 19 magnet schools. Less than two weeks later, with three days left in the federal fiscal year, the Department announced that it was also shortening the performance period for the magnet school grants, immediately restricting NYCPS' use of approximately $11 million in unspent funds awarded in FY 2025 and slated to be carried over for use in the current (FY 2026) fiscal year. The Department based its decision on a purported "finding" that NYCPS' longstanding guidelines to support transgender students violate Title IX. But there was no notice, no investigation, and no hearing. In its haste, the Department skipped the exacting process required by Title IX and ignored Congressional intent. This unlawful action is causing profound harm to the magnet programs and the nearly 8,000 students they serve.

NYCPS moved for a preliminary injunction seeking to vacate the Department's unlawful denial of access to unspent FY 2025 carryover funds pending a final determination of this case, so that the magnet programs can continue to operate. In opposition, the Department makes a meritless jurisdictional argument and advances an unsupported theory that it has unbridled

---

[1] Per Fed. R. Civ. P. 25(d), Assistant Secretary Richey has automatically been substituted as a defendant in this action.

discretion with respect to grants. But its decision to discontinue the grants hinged on its procedurally infirm Title IX determination—the discontinuation letter's plain text proves it. Beyond attempting to recast its determination, it offers no meaningful legal argument opposing the preliminary injunction. Indeed, the Department essentially concedes that it did not follow Title IX's procedures; marshals no support for its assertion that NYCPS' guidelines violate Title IX; and does not dispute that NYCPS has demonstrated irreparable harm, where these fledgling magnet schools rely on this funding to operate. The Department's fleeting argument about the public interest and balance of equities holds no water, particularly given the hasty and punitive nature of its actions. The Court should therefore grant the preliminary injunction.

The Department's motion to dismiss fares no better. Because NYCPS has shown jurisdiction and a likelihood of success on its APA claims based on the Department's multiple failures to follow Title IX, the action survives the Department's motion. At this juncture, that is all that is needed to deny the motion to dismiss, because the Department made no attempt to meaningfully engage with the allegations in NYCPS's complaint. In any event, as explained below, NYCPS' remaining claims also pass muster and should not be dismissed for that additional reason.

## FACTS

NYCPS relies on the statements of facts in the Complaint, the Memorandum of Law filed in support of NYCPS' Motion for a Preliminary Injunction (ECF No. 8), and in the accompanying Declaration of Melissa Aviles-Ramos, Chancellor of the Board of Education ("Aviles-Ramos Decl."), and exhibits thereto, and the Declaration of Seritta Scott, Chief Financial

Officer of the Board of Education ("Scott Decl."), and exhibits thereto, all of which are incorporated by reference here. NYCPS highlights the following facts.

       *First,* in a letter dated September 16, 2025 (the "Discontinuation Letter"), then-Acting Assistant Secretary Craig Trainor of the Department's Office for Civil Rights ("OCR"), informed NYCPS that its five multi-year Magnet School Assistance Program ("MSAP") grants—which supported the establishment and operation of 19 NYCPS magnet schools located across the city—were being "non-continued" solely based on OCR's "findings" that NYCPS' Guidelines to Support Transgender and Gender Expansive Students (the "NYCPS Guidelines") violated Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1682 *et seq*., because they allowed transgender students to use bathrooms, changing room and locker room facilities, participate in athletic activities, and be provided with overnight accommodations on school trips, consistent with their gender identity (the "Discontinuation"). Aviles-Ramos Decl. ¶ 6 and Ex. 1:

> Here, *the Guidelines violate Title IX* of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1682 et seq., and its implementing regulation, 34 C.F.R. Part 6, in its provision, or lack thereof, regarding sex-segregated facilities, athletic opportunities, and overnight sleeping accommodations as part of extracurricular activities."
> …
> Simply put, allowing males in girls' sports, intimate facilities, or private spaces, such as with overnight sleeping accommodations, *violates Title IX* by creating a hostile educational environment or by denying females equal access to benefits of education or activities.

*Id*., pp. 1, 2, 3 (emphasis added).

       Notably, the Discontinuation Letter contained *10 references* to Title IX, and not a single reference to any other basis for the Discontinuation. *Id*. It then concluded by expressly stating that the Department based its decision not to certify, and to refuse to continue the NYCPS MSAP grants on its "findings" that NYCPS' Guidelines violate Title IX:

> *As a result of these findings*, I will not certify NYC DOE's grant under 20 U.S.C.
> §7231d(c). Likewise, NYC DOE's MSAP grant will be non-continued under 34 C.F.R.
> §75.253(a)(5) because it is no longer in the best interests of the Federal Government.

*Id*., p. 3 (emphasis added).

The Discontinuation Letter announced specific remedial actions that NYCPS must take to cure the asserted Title IX violation—and conditioned any reconsideration of the Department's decision to discontinue the MSAP grants on implementation of those steps. *Id*., pp. 2-3. The Department doubled down on that position in a Saturday, September 20, 2025 email from Trainor. The email flatly rejected a request by NYCPS for additional time to consider whether to seek reconsideration, and for information concerning the decision, instead standing on "[the Discontinuation Letter] and the authorities cited therein," but "grant[ed] [NYCPS] until 5:00 p.m. ET, on Tuesday, September 23, 2025, to implement the remedial measures articulated" in the Discontinuation Letter, which amounted to renouncing the Guidelines and adopting the Department's interpretation of Title IX, noting that "[f]ailure to do so will result in a denial of reconsideration, and [the] decision not to certify [NYCPS'] grant under 20 U.S.C. § 7231d(c) and non-continue its MSAP grant under 34 C.F.R. § 75.253(a)(5) will stand." *Id.*, ¶ 8 and Ex. 3.

*Second*, the Department attempted to distance itself from its Title IX finding. after NYCPS' September 19, 2025 letter pointedly asked why it had "deprived [NYCPS] of the procedures and due process required by federal regulations before discontinuing funding based on alleged non-compliance [with Title IX]." Aviles-Ramos Decl. ¶ 7 and Ex. 2, p. 1. The September 26, 2025 letter sent by Deputy Chief of Staff for Policy and Programs Lindsey M. Burke to NYCPS (the "Burke Letter") purporting to formally deny reconsideration of the Department's decision— even though NYCPS had not sought reconsideration given its open questions and the requirement

that it "implement the remedial measures articulated" in the Discontinuation Letter within 2 business days, *Id.*, ¶ 8 and Ex. 3—glaringly, contains not a single reference to Title IX. Instead, it describes the Discontinuation as having been based on "specific concerns with [NYCPS'] compliance with applicable federal civil rights laws," which led the Acting Assistant Secretary to be "unable to certify that the civil rights assurances [NYCPS] made as part of its MSAP grant would be met." Aviles-Ramos Decl. ¶ 9 and Ex. 4, p. 1. Attempting to pivot from what was expressly a Title IX enforcement decision, the Burke Letter premises its denial of "reconsideration" on those same "ongoing civil rights concerns … recognized by the Acting Assistant Secretary…." *Id.* The only "civil rights" mentioned by the Department were those protected by Title IX.

*Third*, on September 29, 2025, the Department issued amended Grant Award Notifications ("GANs") for each of the five MSAP grants which effectuated the Discontinuation of the grants and reset the end of their respective grant performance periods from September 30, 2027 or September 30, 2028, to September 30, 2025. Scott Decl. ¶¶ 23-24 and Ex. 2. The result of the Discontinuation, effected by the new GANs, was that the remaining funds that had previously been awarded to NYCPS for the FY25 budget period—and incorporated as carryover into the schools' budgets for costs incurred in the current fiscal year (FY26)—would no longer be available after September 30, 2025. *Id.* at 18, 24.

## ARGUMENT

## I.    THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION

This Court should issue a preliminary injunction restoring the grants to the status quo prior to the shortening of their performance periods for the reasons in NYCPS' opening brief,

to which the Department offers no compelling response. In opposition, the Department contests jurisdiction and suggests its actions are immune from judicial review. Both arguments are specious. Moreover, the Department effectively concedes NYCPS' showing of its likelihood of success on the merits, irreparable harm, and the broader equities. The Department rests its entire opposition to the preliminary injunction motion and its cross-motion to dismiss on a single false premise: that it never made a Title IX finding and instead simply exercised discretion with respect to the continuation of MSAP funding based on "concerns." *See, e.g*., Dep't Br. at 2, 18, 23. But the Department cannot now rewrite its non-continuation decision, which is an obvious Title IX enforcement action on its face. Given that the Department does not defend the procedure it followed (or failed to follow), or the substance of its "finding,"—unsupported, conclusory, contrary to law, and reached in violation of NYCPS' procedural rights—that the Guidelines violate Title IX, the court should issue a preliminary injunction to avert the immediate and profound harms that will befall thousands of school children if the Department's unlawful shortening of the performance period stands during the pendency of this lawsuit.

   a. **This Court plainly has jurisdiction over the claims rooted in Title IX, which more than suffice to support a preliminary injunction**

      The Department's central jurisdictional argument provides no basis to avoid a preliminary injunction. The Department incorrectly asserts that (1) regardless of the action challenged or relief sought, the Tucker Act, 28 U.S.C. § 1491, "impliedly forbids" this court from issuing any injunction relating to MSAP grants, because it vests the United States Court of Federal Claims with exclusive jurisdiction over all contract actions, Dep't Br. at 10-14, and (2) the

Department has unbridled discretion entirely immune from judicial review. *Id*., at 14-17. It is wrong on both fronts.

>    i. **This Court has jurisdiction over the action and may vacate the Department's unlawful Title IX finding during the pendency of NYCPS' lawsuit.**

This Court has jurisdiction over the action and may issue the preliminary injunction that NYCPS seeks. In arguing otherwise, the Department makes two errors: it unpersuasively attempts to recast its actions as merely managing grants according to their own terms, and misconstrues NYCPS' motion as seeking to compel an award of federal grant funding under a breach-of-contract theory. But the Department cannot rewrite history. It made an express Title IX finding without following Title IX's procedures, among other deviations from Title IX. Aviles-Ramos Decl., ¶ 6 and Ex. 1. And NYCPS seeks relief well within this court's authority to issue: a preliminary injunction setting aside the unlawful Discontinuation made in violation of Title IX to the extent it shortened the performance period—and thereby denied NYCPS the use of carryover funds from FY2025—without first following Title IX's mandated notice and hearing procedures.

*First*, try as it might, the Department cannot avoid that its actions were based on its finding that NYCPS' Guidelines violate Title IX—a finding it made without any other facts, investigation, or context, and without complying with its own statutory and regulatory requirements. In the Discontinuation Letter, the Department unlawfully notified NYCPS that it was non-continuing five MSAP grant awards effective the end of the FY25 budget period (i.e. September 30, 2025)—actions that had the immediate effect of preventing NYCPS from drawing down on carryover funds that it was awarded in FY25 for use in the current school year (FY26). *Id.* While the Department now claims that it discontinued NYCPS' MSAP grants based on a

determination that the grants were no longer in the best interests of the Federal Government that somehow did *not* rest on a finding that NYCPS had violated Title IX (Dep't Br. at 16), that argument strains credulity.

The Discontinuation Letter makes clear that the Department's after-the-fact explanation was an attempt to provide cover for its true purpose—to enforce the Administration's new interpretation of Title IX, while itself violating Title IX's exacting statutory and regulatory requirements. The Letter contains three express "*findings*" that NYCPS' Guidelines violate Title IX, and also expressly acknowledges that OCR is basing its refusal to continue the NYCPS MSAP grants on those "findings":

> *As a result of these findings*, I will not certify NYC DOE's grant under 20 U.S.C. §7231d(c). Likewise, NYC DOE's MSAP grant will be non-continued under 34 C.F.R. §75.253(a)(5) because it is no longer in the best interests of the Federal Government.

Aviles-Ramos Decl. ¶ 6 and Ex. 1, p. 3 (emphasis added).

Those findings, which amounted to naked assertions devoid of investigation or claims of actual harm, and were in no way linked to performance measures or financial data of the magnet schools receiving the MSAP grants, represent a blatant attempt to unlawfully impose upon the grantees the changed policies and priorities that this federal administration set forth in a series of Presidential Executive Orders that were adopted by the Department in a Dear Colleague Letter, and enforced through the Discontinuation. This is confirmed by the Discontinuation Letter, which, while purporting to engage in a "best interests" analysis, sets out a list of justifications for the Department's decision that does not track any of the grant terms or MSAP annual performance requirements, but are rather clearly based on a "finding" of a Title IX violation. *Id*., pp. 1-3.

Title IX includes robust protections for recipients of education funding that the Department did not follow here. Those protections apply across the board—they are not dependent on the terms of any grant or even whether funding arises from a grant or another source. Rather, Congress set out detailed procedural requirements that the Department must follow before it revokes—or refuses to continue—a recipient's federal funding of any stripe due to noncompliance with non-discrimination requirements on the basis of sex. Specifically, 20 U.S.C § 1682 provides that compliance with Title IX may be enforced "by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been *an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement*." 20 U.S.C. § 1682 (emphasis added). Before the Department can terminate or refuse to continue a grant because of a finding that the recipient discriminated on the basis of sex, it must also "file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. *No such action shall become effective until thirty days have elapsed after the filing of such report*." *Id*. (emphasis added). None of this happened here.

*Second*, there is no merit to the Department's suggestion that NYCPS asks this court to issue an impermissible "restoration of funding" order and "continuation of a contractual agreement" in the nature of a breach-of-contract remedy (Dep't Br. at 14 & n.5). At this preliminary stage, NYCPS seeks to set aside an unlawful Title IX enforcement action to the extent it prevents NYCPS from drawing down on funds that it was already granted in the previous year, for the remainder of this (FY26) fiscal year, while the parties litigate the merits of NYCPS' APA claims.

District courts have jurisdiction to vacate unlawful agency actions and may require the government to follow statutory procedures—such as those found in Titles VI and IX for enforcing antidiscrimination laws—before terminating or refusing funding. For example, to find jurisdiction sufficient to support a preliminary injunction here, this Court need only follow the cogent reasoning in *President & Fellows of Harvard. College. v. United States HHS*, Civil Action No. 25-cv-11048-ADB, 2025 US Dist LEXIS 171326, at *45-46 (D. Mass. Sep. 3, 2025). There, a Massachusetts district court rejected the government's Tucker Act argument, where the university's "Title VI claims … will merely determine whether statutory procedural requirements were satisfied" and "[r]egardless of how these claims are resolved, the government will not necessarily be obligated to disburse any additional funds nor will any contract terms need to be considered as part of the analysis." Title VI is materially similar to Title IX for these purposes. *Id.*

Likewise in *Maine v. U.S. Department of Agriculture*, 778 F. Supp. 3d 200, 225 (D. Me. 2025), a district court in Maine rejected the government's Tucker Act argument and held that "the Court's primary function is to determine if the [agency] followed the proper procedure to effectuate the termination of a portion of [Maine's] Title IX funds." The court issued injunctive relief barring the USDA from interfering with the State of Maine's future federal funding for alleged violations of Title IX without first complying with legally required procedures. *Id.*

As a panel of the Ninth Circuit recently confirmed, district courts are not divested of jurisdiction where plaintiffs do not "invoke any contractual terms as the basis for their action" or "seek a contractual remedy," but rather "seek declaratory and injunctive relief requiring compliance with the statutory obligations set out by Congress and the regulatory obligations set forth by the Defendants themselves." *Cmty Legal Servs. in E. Palo Alto v. United States HHS*,

2025 U.S. App. LEXIS 26437, *9 (9th Cir. Oct. 10, 2025) (denying *en banc* review of a denial of the Government's stay application, where government abruptly halted funding for program to ensure legal representation for unaccompanied children). That is precisely what NYCPS' preliminary injunction motion seeks.

    Here, too, NYCPS' claims sound in violations of the procedural requirements of Title IX. In *Harvard College*, the district court distinguished two recent Supreme Court stay decisions because those cases involved challenges based on the terms of the grants themselves, but Harvard's challenge sounded in the Constitution, statutes and regulations. 2025 US Dist LEXIS 171326, at *44-48 (distinguishing *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, ___U.S.___ , ___, 145 S. Ct. 2658, 2660 (2025) ("*NIH*"); *Department of Education v. California*, 604 U.S. 650, 145 S. Ct. 966 (2025) ("*California*")). At the threshold, because the Department admits that "[g]rant non-continuation," which is what it purported to do here, "is distinct from termination," (Dep't Br. at 4 n.2; *see also id.* at 20), the Supreme Court's recent termination cases have no application. In any event, even after the recent grant-termination decisions, district courts remain the right forum to litigate the lawfulness of policies underlying grant determinations, and injunctions remain appropriate and normal remedies under the APA. *Ass'n of Am. Univs. v. Dep't of Defense*, Civil Action No. 25-11740-BEM, 2025 US Dist LEXIS 201095, at *5-6 (D. Mass. Oct. 10, 2025).[2]

---

[2] In *NIH*, in denying the Government's application for a stay of the vacatur of its guidance, the Supreme Court left undisturbed the First Circuit's assessment that "the district court clearly had jurisdiction to grant 'prospective relief' that [would] govern 'the rather complex ongoing relationships' between the Department and grant recipients." *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 50 (1st Cir. 2025) (*quoting Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988)).

Many courts have recently engaged in this source-of-rights analysis, recognizing that just because a plaintiff has a contractual relationship with the government does not "automatically convert a claim asserting rights based on federal regulations into one which is, at its essence, a contract claim." *Rhode Is. Coalition Against Dom. Violence v. Kennedy*, No. 25-cv-342-MRD-PAS, 2025 US Dist LEXIS 208816, at *13 (D.R.I. Oct. 23, 2025) (citation modified). The question for the court is whether the action turns on "an analysis of the respective Grant Agreements," in which case it may belong in the Court of Federal Claims, or instead, as here, "an in-depth analysis of the [] statutes and regulations to determine whether the Department acted reasonably and in compliance with Plaintiffs' statutory and constitutional rights," in which case the district court has jurisdiction. *Martin Luther King, Jr. County v. Turner*, 785 F. Supp. 3d 863, 878 (W.D. Wash 2025); *Rhode Is. Coalition Against Dom. Violence v. Kennedy*, *supra*, at *10-13 (emphasizing that the plaintiffs' claims do not turn on the terms of the grants but on federal statutes and regulations); *Rhode Is. Coalition Against Dom. Violence v. Bondi*, No. 25-279 WES, 2025 US Dist. LEXIS 153152, at *12-13 (D.R.I. Aug. 8, 2025) (same). Here, NYCPS' claims will not require an analysis of the respective grant agreements. Rather, the source of NYCPS' rights resides in Title IX.

The Department emphasizes that NYCPS' lawsuit could result in MSAP grant funding changing hands (Dep't Br. at 13-14). The fact that the relief sought by NYCPS in this action could result in funds being made available to draw down is not determinative on jurisdiction. As the recent Supreme Court decision in *California* reaffirmed, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." 145 S. Ct. at 968 (*quoting Bowen*, 487 U.S. at 910). And, indeed, NYCPS

seeks prospective relief other than money damages—relief which could not be had from the Court of Federal Claims, which lacks "general equitable powers" to grant prospective injunctive relief. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020).[3]

        The Department cannot avoid this case law, and this Court's jurisdiction, by recasting the Discontinuation as based on MSAP considerations while ignoring the evident connection to its infirm Title IX "finding." It is clear from the Discontinuation Letter that the Department did not discontinue the grants at the end of the budget period and shorten the performance period for the grants (preventing NYCPS from drawing down on awarded carry-over funds) based on grant-specific considerations independent of Title IX—no such considerations appear in the Discontinuation Letter. Rather, it did so based on the administration's new and untested interpretation of Title IX. Nor does it make sense that an agency could skirt Title IX's robust procedural protections for education funding by backtracking from finding a Title IX violation and reframing its objections in terms of vague "concerns" about discrimination. NYCPS's request for a preliminary injunction appropriately targets the Department's failure to comply with Title IX, and the court has jurisdiction over the underlying claims as necessary to grant it.

---

[3] Justice Barrett recognized as much in *NIH*, explaining that suits against the government must proceed on two tracks because challenges to grant terminations sound in contract and belong in the Court of Federal Claims, while APA challenges to agency guidance that impacts those grants belong in district courts, which "may vacate the guidance, preventing the agency from using it going forward." *NIH*, 145 S.Ct. at 2662 & n.1.

    ii.  **The Court of Federal Claims is the wrong forum for NYCPS' suit and would nullify Congressional intent in Title IX. The Department does not have unbridled discretion to ignore Title IX's procedures, as it claims.**

        The Department also incorrectly argues that NYCPS' claims must be dismissed as unreviewable by *any court* because the Discontinuation was made "in circumstances where 'agency action is committed to agency discretion by law,'" and thus is not subject to APA review. Dep't Br. at 14-17 (quoting 5 U.S.C. § 701(a)(2)). The Department mistakenly relies on a series of justiciability cases limiting the ability of courts to interfere with discretionary decisions such as the allocation of limited funds among competing recipients that have no application here.

        The narrow agency-discretion exception to judicial review of APA claims applies only in two unusual circumstances, neither of which are present here: (1) "in those rare circumstances" where "a court would have no meaningful standard against which to judge the agency's exercise of discretion," or (2) in "certain categories of administrative decisions that courts have traditionally regarded as committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (citation modified).

        The Department does not have unbridled discretion—or any discretion—to ignore Congress' mandatory Title IX procedures. Meaningful standards apply to Title IX de-funding decisions and as a result, the actions are not committed to unreviewable agency discretion. Indeed, NYCPS is expressly entitled by statute to "judicial review" of any action "terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with [Title IX]," and an agency's Title IX enforcement action such as this "shall not be deemed committed to unreviewable agency discretion." 20 U.S.C. § 1683. Construing this section of Title IX, coupled with the presumption in favor of judicial review of agency actions, a Maine district court recently

rejected the same argument and found that there was subject matter jurisdiction to preliminarily enjoin, among other things, the USDA's decision to terminate funding based on the USDA's procedurally infirm finding of a Title IX violation. *Maine*, 778 F. Supp. 3d at 227.

### b. NYCPS is Entitled to a Preliminary Injunction

NYCPS has met all four prongs required to obtain a preliminary injunction: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm in the absence of preliminary injunctive relief; (3) a balance of the equities in the movant's favor; and (4) a public interest served by issuance of a preliminary injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *New York v. U.S. Dep't of Homeland Sec.*, 969 F. 3d 42, 58-59 (2d Cir. 2020). The final two factors—the balance of equities and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Indeed, the Department does not seriously challenge NYCPS' showing on any of these prongs in its opposition brief.

### i. NYCPS is Likely to Succeed on the Merits.

The APA allows district courts to set aside agency action found to be "without observance of procedure required by law." 5 U.S.C. § 706. As demonstrated in its opening memorandum of law, NYCPS is likely to succeed in its claim that the Department's decision to discontinue NYCPS' MSAP grants was a Title IX enforcement action made without any of the required process, as explained above.

In response, the government offers *nothing*. Rather than making any legal arguments, the Department makes a *post hoc* attempt to recast its decision as a discretionary decision prompted by vague concerns about compliance with civil rights making the grants "no longer in the best interests of the Federal Government." But the Department cannot avoid the plain

text of the Discontinuation Letter which, amidst no less than ten references to Title IX, tethered

the Discontinuation to its "findings" of a Title IX violation. Aviles-Ramos Decl. ¶ 6, Ex. 1. Further

evidence that the Discontinuation amounted to a Title IX enforcement action is found in the list of

remedial actions NYCPS was directed to take to come into compliance with the Department's

enforcement of a new interpretation of Title IX. Moreover, the Discontinuation Letter is silent as

to any grant-specific concerns or remedies other than those rooted in Title IX. *Id*.

        The Department unlawfully did an end-run around Title IX's robust procedures that

mandate *ex ante* review before cutting any federal funding based on a recipient's alleged sex-based

discrimination. Limiting judicial review of Title IX enforcement actions to *post-hoc* proceedings

in the Court of Federal Claims—as the Department would have the court do—nullifies Congress's

intent, which is "not to cut off funds, but to end … discrimination." *Board of Public Instruction v.

Finch*, 414 F.2d 1068, 1075 (5th Cir. 1969).

        And the Department does not defend its wholesale bypassing of Title IX's

procedural requirements, nor does it attempt to defend its novel interpretation of Title IX on the

merits. Not only was this change in policy bereft of explanation, it also conflicted with prior federal

policy, as NYCPS' Guidelines have been in place in some form for over a decade—during which

time grant awards have repeatedly been continued—without the Department raising any concerns.

In such circumstances, a "reasoned explanation is needed before disregarding facts and

circumstances that underlay or were engendered by the prior policy. Unexplained inconsistency

between agency actions is a reason for holding an interpretation to be an arbitrary and capricious

change." *State of Washington, et al. v. U.S. Dep't of Health and Human Servs., et al.*, No. 6:25-

cv-01748-AA, Dkt. 81, at *43 (D. Or. Oct. 27, 2025) (*quoting* both *Encino Motorcars, LLC v.*

*Navarro*, 579 U.S. 211, 222 (2016) and *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)). This is more than enough to show that NYCPS is likely to succeed on the merits of its claim to set aside the determination. NYCPS is also likely to succeed on its remaining theories, as explained in more detail below in opposition to the Department's motion to dismiss.

  ii. **NYCPS has Demonstrated Irreparable Harm and the Remaining Factors**

    Defendants do not contest—and thus should be treated as having conceded—the compelling evidence of irreparable harm NYCPS articulated in its motion. This concession is unavoidable, as the timing of the Department's precipitous Title IX enforcement action cutting off the MSAP funding for all 19 magnet schools, months after the school budgets were set and weeks after the start of the 2025-2026 school year, has created a chaotic situation that threatens the imminent end of the MSAP-funded programming at these schools. This action has devastating, immediate and irreparable negative consequences for the approximately 7,700 students attending those schools, as well as the staff and parents at the schools. Aviles-Ramos Decl. ¶¶ 12-17, 52-58.

    The schools have abruptly lost a source of anticipated funding to support their activities this school year, without any way to salvage the expected programming. NYCPS had no opportunity to plan alternative options for students already enrolled and attending. *Id*. ¶¶ 12-17, 58. Students who miss out on special magnet school programming in one grade cannot recapture that year when they move on to the next grade. *Id*. That loss is irreparable, as the Department does not appear to contest. The Department's Title IX enforcement action, left uncorrected, devastates the stability and sustainability of the schools. The longer the school year advances without relief

for the nineteen magnet schools and the schools' communities, the more severely the irreparable harm will be compounded.

      While they do not contest that NYCPS has shown irreparable harm, the Department seeks to minimize the urgency on the ground that NYCPS has access to unspent funds through January 26, 2026. Dep't Br. at 7-8, 25. That is misleading. In fact, NYCPS may only obtain reimbursement for funds obligated through September 30, 2025, given the Department's truncation of the grants' performance period. The ability to obtain reimbursement for those past expenditures has no effect on NYCPS' immediate irreparable harm in being denied funding for the schools' activities and other costs incurred as of, and at all times subsequent to October 1, 2025.

      This harm dovetails with the reasons Congress crafted an *ex ante* review process under Title IX. Congress' purpose in "limiting the termination power [in Title IX] … was not for the protection of the political entity whose funds might be cut off, but for the protection of the innocent beneficiaries of programs *not* tainted by discriminatory practices." *Finch*, 414 F.2d at 1075. (emphasis in original). It is these very innocent beneficiaries—in this case, the approximately 7700 students who attend the 19 MSAP magnet schools at issue here—that NYCPS seeks to protect through its motion for a preliminary injunction.

      The Department's arguments about the balance of equities and public interest are also unpersuasive. It cites only fiscal consequences to them, which are decidedly modest in the context of the federal government. And, it overlooks entirely how the Department's actions affect the magnet schools—and their students—day after day. It fails to acknowledge that the so-called remedial actions it sought to force NYCPS to undertake would violate New York state and local law. Nor does it grapple with the chaos that the rushed timing of the Discontinuation has unleashed.

The Department wrongly suggests that NYCPS had no basis to rely on the continued availability of MSAP funding, given the grants' annual continuation process. Dep't Br. at 22, 26. Only last year, the Department acknowledged that "few" grantees received discontinuation decisions and said that, "if that does happen, grantees are often aware of the likelihood of the decision well in advance." Education Department General Administrative Regulations and Related Regulatory Provisions, 89 Fed. Reg. 1982, 2002 (Jan. 11, 2024). These published statements confirm the reasonableness of NYCPS's reliance, particularly where the Department gave no advance word that the grants may be discontinued. Moreover, NYCPS was well within its rights to rely on the fact that any discontinuation decision would need to comply with the law, which this one did not.

## II.    DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

### a.  Legal Standard on Motion to Dismiss

In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (*citing Kamen v. American Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 1986)). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id., citing Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 663 (*citing Bell Atl. v. Twombly*, 550 U.S. at 556).

      **b. This Court has Jurisdiction to Decide this Lawsuit.**

As explained above, this Court—and not the Court of Federal Claims—has jurisdiction to decide NYCPS' claims under the APA because they properly allege injury by agency action and do not seek "money damages," 5 U.S.C. §§ 702, 706, and the relief sought is not expressly or impliedly forbidden. *Id.,* 704.

In addition to the APA claims for violations of Title IX discussed above, the complaint filed by NYCPS asserts four claims which also challenge the Discontinuation—and the imposition of changed policy priorities that it seeks to effectuate—as having been undertaken without observance of other procedures required by law, including the MSAP statute, and the rulemaking provisions of the APA; as being arbitrary and capricious; and as contrary to law based on the Department's novel interpretation of Title IX. Cmpl. ¶¶ 100-141 (Counts I through V). Through those claims, NYCPS seeks declaratory and equitable injunctive relief. *Id.* at 47-48 (Prayer for Relief). This Court has jurisdiction over all of the claims.

The reasoning set out above establishing jurisdiction for the purpose of the preliminary injunction analysis similarly establishes this Court's jurisdiction to decide the claims under Title IX. The court also has jurisdiction over NYCPS' remaining claims. In those claims, NYCPS seeks declaratory and prospective injunctive relief to vacate and set aside the unlawful Discontinuation Letter and other agency actions that comprise the Discontinuation. As explained above district courts have jurisdiction to decide claims sounding in the Constitution or in statute

and regulations. *See State of Washington v. U.S. Dept of Commerce*, 25-cv-1507, Doc. 33 at 8-9 (W.D. WA Oct 22, 2025); *Ass'n of Am. Univs*, 2025 US Dist. LEXIS 201095 at *14-18.

To be sure, in some cases, even an action seeking injunctive relief may "at essence" be a contract action within the exclusive jurisdiction of the Court of Federal Claims, if—unlike here—the source of the rights on which plaintiff bases its claims are the terms of a grant agreement and the remedies that a plaintiff seeks sound in contract. *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982). As Justice Barrett recently emphasized in her (controlling) concurrence upholding district court jurisdiction over an APA challenge in the grant context, "that the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded upon' contract that only the CFC can hear." *NIH,* 145 S. Ct. at 2660 (Barrett, J, concurring).[4] While district courts cannot enforce obligations to pay money pursuant to grants by cancelling a grant termination, they can, as NYCPS requests here, vacate unlawful agency policies underlying those terminations.

Of particular relevance here is *State of Washington v. U.S. Department of Education*, 2025 U.S. Dist. LEXIS 207342, 25-cv-1228, Dkt 190 at 13-18 (W.D. WA, Oct 21, 2025), a recent decision denying the government's motion to dismiss in a similar case to this one. There, the court concluded it had jurisdiction over a challenge to the federal Department of Education's determination to discontinue funding for school-based mental health programs. As in this case, the Department argued that the plaintiffs' claims, under the APA and the Constitution, were contract claims in disguise. The court concluded otherwise: plaintiffs' claims alleged

---

[4] When a decision of the Supreme Court is fractured, the opinion resting on the narrowest grounds controls. *Marks v. United States*, 430 U.S. 188, 193 (1977).

"violations of the APA, the Department's regulations, and the Constitution, without any reference to the terms of the Grants." *Id.* at 15. Moreover, Plaintiffs did not allege "a violation of any grant term, either as the source of their claims or in their request for relief." *Id.* at 16. The relief sought was to set aside the discontinuation decisions, to prevent the agency from re-competing the grant funds, and to require it to make lawful new continuation decisions, in accordance with regulations (34 C.F.R. § 75.253(b)—the same regulation that NYCPS alleges the Department failed to follow in this case). The court also noted that the Tucker Act does not bar jurisdiction where plaintiff seeks the procedural remedy of setting aside discontinuation decisions and requiring that lawful decisions be made under the applicable procedures, and the remedy is not one for contract damages. *Id.* at 17. Under this same rationale, this Court has jurisdiction of the entirety of NYCPS' suit.

c.  **NYCPS Has Stated a Claim with Respect to Each of its Five Causes of Action**

i.  **NYCPS States a Claim for Violation of APA through Agency Action without Observance of Title IX Procedure Required by Law**

As explained above, NYCPS plausibly states a claim for relief under the APA for failure to comply with the procedural requirements under Title IX. *See* Cmpl. ECF 1, ¶¶ 50-63; 82-92; 103-108. The Complaint alleges that "[t]he Discontinuation Letter announced a finding by OCR that the District-wide NYCPS Guidelines discriminate on the basis of sex in violation of Title IX." *Id.* ¶ 52. It further alleges that the Department refused to certify NYCPS' compliance with federal civil rights laws for the FY26 continuation period based on that purported Title IX finding, *id.* ¶ 53, and conditioned any reconsideration on NYCPS adopting as remedial measures the Department's Title IX policies. *Id.* ¶ 56. The Discontinuation Letter did not purport to make any findings or identify any concerns about NYCPS' performance reports, performance measures, or

financial data, or provide a performance-related explanation as to why the MSAP grants "were no longer in the best interest" of the federal government. *Id.* ¶¶ 54-55. OCR's September 20, 2025 email reiterated that failure to implement the Title IX remedial measures would result in denial of reconsideration, refusal of certification, and non-continuation of the grants. *Id.* ¶ 59. The Burke Letter again required that NYCPS "take the remedial steps described in the letters" and did not reference any findings or concerns about NYCPS' performance reports, performance measures, or financial data. *Id.* ¶¶ 62-63. The Discontinuation was premised solely on NYCPS' alleged violations of Title IX, which the Department purported to "find" without following the exacting statutory and regulatory procedures required by Title IX. *Id.* ¶¶ 88, 106.

### ii. NYCPS States a Claim for Violation of APA Through Agency Action Taken Without Observance of MSAP Procedure as Required by Law

NYCPS plausibly states a claim for relief under the APA for the Department's failure to follow the procedures required by MSAP and GEPA (MSAP, GEPA, 2 C.F.R. § 200); Cmpl. ¶¶ 50-65; 82-92; 112-115. Prior to taking steps to effectuate the Discontinuation, 34 C.F.R. 75.253(g) required the Department to provide notice of the grounds for its decision not to continue the grants, and consistent with 2 C.F.R. 200.342, to provide NYCPS with the opportunity to challenge the decision and request reconsideration. *Id.* ¶ 113. Upon receipt of the Discontinuation Letter, NYCPS specifically requested that the Department "provide [it] with a copy of the OCR's written procedures for processing objections, hearings, and appeals, as required by 34 [sic] C.F.R. 200.342"; however no written procedures were provided. Cmpl. ¶ 57-59; Aviles-Ramos Decl. ¶¶ 7-8 and Ex. 2, 3. Moreover, the Department's website refers recipients to their non-continuation

letter for "the list of information that should be included in [a] reconsideration request."[5] However, the Discontinuation Letter provided no such list. Instead, it demanded that NYCPS take the listed remedial measures, including agreeing to fully adopt the Department's interpretation of Title IX, "in order for this decision to be reconsidered…." Cmpl. ¶ 56; Aviles-Ramos Decl. ¶ 6 and Ex. 1.

By conditioning NYCPS' ability to seek reconsideration on capitulation to the Department's demands that it repudiate the NYCPS Guidelines and take remedial measures, and by failing to provide NYCPS with access to the written procedures and a list of any information that should accompany a request for reconsideration, the Department denied NYCPS a meaningful opportunity to seek reconsideration, as required by the MSAP statute and implementing regulations. Cmpl. ¶¶ 56, 59, 60-63, 114.[6] *State of Washington v. U.S. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 211521 at * 25, n.6 (W.D. WA, Oct. 27, 2025) (lack of necessary information "precludes a meaningful opportunity to seek reconsideration."). Rather than a meaningful opportunity for reconsideration, NYCPS was provided with a short notice ultimatum in which the promised "reconsideration" was actually coerced capitulation: adopt the policies in the Discontinuation Letter within a few days or lose all MSAP funding.

---

[5] *See* "Frequently Asked Question for Non-Continued Grants" no. 11 at https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes.

[6] 34 C.F.R. 75.253(g) clearly contemplates that NYCPS be provided with a three-tiered process of "objections, hearings, and appeals" to contest any discontinuation. *In re: University of St. Thomas*, *Grantee/Petitioner*, 2025 EOHA LEXIS 115 at *28-29 (U.S. Dep't of Ed. Office of Hearings and Appeals, July 10, 2025). No such process was disclosed or provided to NYCPS.

### iii.  NYCPS States a Claim for Violation of APA Through Arbitrary and Capricious Agency Action

NYCPS plausibly states a claim for relief under the APA for arbitrary and capricious agency action. The Department failed to consider the factors specifically enumerated in the MSAP regulations when determining whether to make a continuation award, including on the basis of the best interest of the federal government: the performance reports, performance measures, and financial data for the prior year. Cmpl. ¶¶ 20, 27-29, 49, 50-64, 120. The Department's determination that continuation of the grants would not be in the best interests of the federal government did not reference express Congressional findings about the importance of the magnet program and the reasons continued funding of magnet schools through MSAP is in the best interests of the United States. *Id.* ¶¶ 20, 121. The Discontinuation failed to provide a reasoned explanation for the Department's change in position as to its interpretation of Title IX or to even acknowledge that it had changed its position. *Id*. ¶¶ 38-41, 51-55, 92, 123.

The Department's stated rationale, that the grants were discontinued because they were "no longer in the best interests of the Federal Government" was neither reasonable nor reasonably explained, the hallmark of arbitrary and capricious action, and as such, is reviewable by the Court. *Dep't of Commerce v. New York,* 588 U.S. 752, 758 (2019) ("The purpose of this requirement is to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public"). The Department failed to provide any evidence that they made factual findings or considered the statutory objectives and express requirements of the MSAP program, including the performance of the nineteen NYCPS magnet schools, the relevant data, applicable anti-discrimination statutes including Title IX, or NYCPS' reliance interests, as reflected in NYCPS' investment in staffing, curricula development,

contracted programming, partnerships with community-based organizations, and materials and infrastructure, all anticipating the schools would be given their Congressionally-approved five-year seed funding.

The Department also failed to account for the critical reliance interests of NYCPS MSAP program participants and beneficiaries: approximately 7,700 students who are enrolled in the nineteen schools, with the school year underway will face immediate, devastating impact of these cuts. Cmpl. ¶¶ 25-32, 33-49, 124-126. "When an agency changes course, … it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account … It would be arbitrary and capricious to ignore such matters." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020); *Washington v. HHS, Id*. at *43-44. This is further compounded by Defendants' failure to consider that adopting the mandated remedial steps in the Discontinuation Letter would force NYCPS to violate state and local anti-discrimination laws.

### iv. NYCPS States a Claim for Violation of APA Through Agency Action Without Notice and Comment Rulemaking.

NYCPS plausibly states a claim for relief under the APA for the Department's adoption of a new interpretation of Title IX without engaging in notice and comment rulemaking. The Department's 2021 Interpretive Guidance, pursuant to which the Department vowed to "fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department," was published in the Federal Register. 86 Fed. Reg. 32637 (June 22, 2021). The Department was required to follow the APA's notice and comment rulemaking procedures when changing the rule

guiding its enforcement of Title IX, but it has neither revoked the 2021 Interpretive Guidance nor replaced it by publishing a revised interpretation in the Federal Register. Cmpl. ¶¶ 72-77, 131-133.

Instead, in January 2025, President Trump issued three Executive Orders ("EOs") rejecting the 2021 Interpretive Guidance, and announcing a new interpretation of Title IX purporting to eliminate "gender identity-based access to single-sex spaces" including "use of intimate facilities and accommodations such as bathrooms or locker rooms specifically designed for persons of the opposite sex; and participation in school athletic competitions or other extracurricular activities designed for persons of the opposite sex." *Id.* ¶¶ 73-74 and EO 14168 § 3(f); EO 14190 § 2(e). And in a February 4, 2025 Dear Colleague Letter ("DCL"), the Department announced a related pivot in federal enforcement of Title IX, announcing that "ED and OCR must enforce Title IX consistent with President Trump's Order." Cmpl. ¶ 76. These EOs and the DCL purported to establish a rule with legal effect, promulgated "with the intent to exercise delegated legislative power by speaking with the force of law." *Lin Liu v. Smith*, 515 F. Supp.3d 193 (SDNY 2021) (*quoting NRDC v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020).

However, a new legislative rule cannot be imposed through EOs or a DCL. Rather, "[t]he APA generally requires that before a federal agency adopts a rule it must first publish the proposed rule in the Federal Register and provide interested parties with an opportunity to submit comments and information concerning the proposal." *State of New York et al v. U.S. Dep't of Justice*, No. 1:25-cv-00345-MSM-PAS, Dkt 64 at *15 (D.R.I. Sept. 10, 2025) (*quoting New Hampshire Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018)).

### v. NYCPS States a Claim for Violation of APA Through Agency Action Contrary to Law

NYCPS plausibly states a claim for relief under the APA for agency action contrary to law. The Discontinuation was based upon the Department's interpretation of Title IX, which was novel, unsupported by any law, and in contravention of several federal circuit court decisions. *Id.* ¶¶ 72-77, 139-141.

The Department's interpretation is novel, entirely unsupported by any law, and contravenes the findings of several federal circuit courts that Title IX at the very least allows schools to permit transgender students to use facilities consistent with their gender, and in some cases actually requires it. *See, e.g.*, *Grimm v. Gloucester Cnty Sch. Bd*., 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *cert denied*, 141 S. Ct. 2878 (June 28, 2021) (affirming a grant of summary judgment that a school district policy that prohibited a transgender boy from using the boy's bathroom violated Title IX); *A.C. v. Metro Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023) (affirming a preliminary injunction preventing the application of a policy denying a transgender student access to the bathroom consistent with their gender identity) *cert. denied*, 2024 US LEXIS 440 (Jan. 16, 2024); *Doe v. Bayertown Area Sch. Dist*., 897 F.3d 518 (3d Cir. 2018) (affirming denial of preliminary injunction to plaintiff students who challenged policy permitting transgender students' access to gender-conforming bathrooms, in decision issued from the bench); *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) (affirming dismissal of similar claims).

## CONCLUSION

For the foregoing reasons, NYCPS respectfully requests that the Court grant its motion for a preliminary injunction and deny the Defendants' motion to dismiss.

Dated: November 5, 2025                Respectfully submitted,
      New York, NY

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of
   New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov


By: Melanie C. T. Ash (*Lead Trial Attorney*)
June Buch
Bianca Isaias
Gavin Mackie*
Emeline Kong

*SDNY Admission Pending

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE</u>

As required by Local Civil Rule 7.1(c), I certify that the document contains 8414 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

_____

Melanie C.T. Ash