UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, LINDA MCMAHON, in her capacity as Secretary of the United States Department of Education, KIMBERLY M. RICHEY, in her capacity as Assistant Secretary for Civil Rights, and LINDSEY M. BURKE, in her capacity as Deputy Chief of Staff for Policy and Programs, <br><br> Defendants. | No. 25 Civ. 08547 (AS) <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2695
*Attorney for Defendants*

STANLEY E. WOODWARD, JR.
Associate Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

JEFFREY OESTERICHER
Assistant United States Attorney
    - Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

    I.    The Federal Magnet School Assistance Program ............................................................. 3

    II.   ED Non-Continues NYCPS' MSAP Grants and Funding As No Longer in the Best
        Interest of the Federal Government ................................................................................... 4

    III.  The Current Action ........................................................................................................... 6

LEGAL STANDARD .................................................................................................................... 7

    I.    Legal Standard Governing Dismissal for Lack of Subject Matter Jurisdiction ................. 7

    II.   Legal Standard Governing APA Summary Judgment........................................................ 8

ARGUMENT ................................................................................................................................. 9

    I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims ............................. 9

        A.   The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's
             Claims .......................................................................................................................... 9
        B.   This Court Does Not Have Jurisdiction Under 20 U.S.C. § 1683 ................................ 14
        C.   Plaintiff's APA Claims Are Unreviewable Because the Decision to Non-Continue
             Funding Is Committed to the Agency's Discretion ...................................................... 17

    II.   In The Alternative, The Government Is Entitled To Summary Judgment ........................ 20

        A.   Defendants Observed All Procedures Required by Law When Non-Continuing the
             MSAP Grants (Counts I and II) .................................................................................. 20
        B.   The Agency's Actions Were Not Arbitrary and Capricious (Count III)........................ 24
        C.   No Further Notice and Comment Rulemaking Was Required (Count IV) .................... 27
        D.   The Agency's Actions Were Not Contrary to Law (Count V) ..................................... 28

    III.  Plaintiff Has Failed to Establish the Factors Necessary to Obtain a Permanent Injunction
         .................................................................................................................................... 29

CONCLUSION............................................................................................................................ 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
   357 F.3d 62 (D.C. Cir. 2004) ........................................................................... 9

*American Association of University Professors v. U.S. Dep't of Justice*,
   No. 25 Civ. 2429 (MKV), 2025 WL 1684817 (S.D.N.Y. Jun. 16, 2025) ..................... 16, 25, 31

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
   785 F.3d 710 (D.C. Cir. 2015) ......................................................................... 28

*Atterbury v. U.S. Marshals Serv.*,
   805 F.3d 398 (2d Cir. 2015) ............................................................................ 9

*Authors Guild v. National Endowment for the Humanities*,
   No. 25-cv-3923, 25-cv-3657 (CM), 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025) ................ 15

*B.K. Instrument, Inc. v. United States*,
   715 F.2d 713 (2d Cir.1983) .............................................................................11

*Bd. of Educ. for Silver Consolidated Schs. v. McMahon*,
   791 F. Supp. 3d 1272 (D.N.M. 2025) ............................................................... 18

*Borg-Warner Protective Services Corp. v. E.E.O.C.*,
   245 F.3d 831 (D.C. Cir. 2001) ........................................................................ 16

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962) ................................................................................. 15, 16

*California v. Department of Education*,
   132 F.4th 92 (1st Cir. 2025) .......................................................................... 13

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .................................................................................... 8

*Ctr. for Auto Safety v. Dole*,
   846 F.2d 1532 (D.C. Cir. 1988) ...................................................................... 17

*Daniels v. Moores*,
   No. 24-30-PR, 2025 WL 883035 (2d Cir. Mar. 21, 2025) ........................................ 30

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025) ............................................................................. 9, 13, 14

*NYLAG v. DeVos,*
   527 F. Supp. 3d 593 (S.D.N.Y. 2021) ................................................................. 24, 26

*Fairfax Cnty. School Bd. v. McMahon,*
   No. 25 Civ. 1432 (RDA/LRV), 2025 WL 2598622 (E.D.V.A. Sep. 5, 2025) .......................... 15

*Falls Riverway Realty, Inc. v. City of Niagara Falls,*
   754 F.2d 49 (2d Cir. 1985) .................................................................................11

*FDA v. Wages & White Lion Invs. L.L.C.,*
   604 U.S. 542 (2025) ................................................................................ 26, 27

*Friends of Animals v. Romero,*
   948 F.3d 579 (2d Cir. 2020) ................................................................................. 8

*Friends of Ompompanoosuc v. FERC,*
   968 F.2d 1549 (2d Cir. 1992) ............................................................................... 8

*Georator Corp v. EEOC,*
   592 F.2d 765 (4th Cir. 1979) .............................................................................. 16

*Giammatteo v. Newton,*
   452 F. App'x 24 (2d Cir. 2011) ............................................................................. 8

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ...................................................................................... 17

*Ingersoll-Rand Co. v. United States,*
   780 F.2d 74 (D.C. Cir. 1985) ............................................................................. 10

*Kamen v. American Tel. & Tel. Co.,*
   791 F.2d 1006 (2d Cir. 1986) ............................................................................... 7

*Karpova v. Snow,*
   497 F.3d 262 (2d Cir. 2007) ................................................................................. 8

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) .................................................................................. 17, 18

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ....................................................................................... 8

*Lunney v. United States,*
   319 F.3d 550 (2d Cir. 2003) .......................................................................... 18, 20

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ............................................................................ 7

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) .......................................................................... 9

*Mendez v. Banks*,
   65 F.4th 56 (2d Cir. 2023) ............................................................................... 30

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ........................................................................................... 8

*National Institutes of Health ("NIH") v. American Public Health* Association,
   145 S. Ct. 2658 (2025) ......................................................................... 13, 15, 16

*Nat'l Audubon Soc. v. Hoffman*,
   132 F.3d 7 (2d Cir. 1997) ............................................................................ 8, 21

*New Jersey v. Bessent*,
   149 F.4th 127 (2d Cir. 2025) .......................................................................... 24

*New York v. National Science Foundation*,
   793 F. Supp. 3d 562 (S.D.N.Y. 2025) ....................................................... 10, 12

*New York v. Trump*,
   778 F. Supp. 3d 578 (S.D.N.Y. 2025) .............................................................. 26

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................ 30

*Perez v. Mortgage Bankers Ass'n*,
   575 U.S. 92 (2015) .......................................................................................... 28

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) .......................................................................... 9

*President & Fellows of Harv. Coll. v. United States HHS*,
   Nos. 25-cv-11048-ADB, 25-cv-10910-ADB, 2025 WL 2528380 (D. Mass. Sep. 3, 2025) ..... 16

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*,
   175 F.3d 132 (2d Cir. 1999) ................................................................... 9, 11, 30

*Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*,
   31 F. Supp. 3d 571 (S.D.N.Y. 2014) ................................................................. 8

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ................................................................................... 15

*Texas v. Cardona*,
    743 F. Supp. 3d 824 (N.D. Tex. 2024) .............................................. 27, 28

*Tzumi Innovations LLC v. Regan*,
    557 F. Supp. 3d 499 (S.D.N.Y. 2021) ....................................................... 28

*Up State Fed. Credit Union v. Walker*,
    198 F.3d 372 (2d Cir. 1999) ................................................................... 9, 11

*UPMC Mercy v. Sebelius*,
    793 F. Supp. 2d 62 (D.D.C. 2011) .............................................................. 8

*Washington v. HHS*,
    No. 25 Civ. 1748 (AA), 2025 WL 3002366 (D. Or. Oct. 27, 2025) ....... 25

**Statutes**

5 U.S.C. § 701 .................................................................................................... 8
5 U.S.C. § 701(a)(2) ......................................................................................... 17
5 U.S.C. § 702 ..................................................................................... 9, 14, 17
20 U.S.C. § 1682 .............................................................................................. 29
20 U.S.C. § 1683 ..................................................................................... 1, 14, 15
20 U.S.C. § 7231a .............................................................................................. 3
20 U.S.C. § 7231b .............................................................................................. 3
20 U.S.C. § 7231d ............................................................................................ 15
20 U.S.C. § 7231d(b)(2)(C) ................................................................... 22, 24, 29
20 U.S.C. § 7231d(c) .................................................................................. passim
20 U.S.C. § 7231h(a) ......................................................................................... 3

**Regulations**

2 C.F.R. § 200.342 .................................................................................. 4, 22, 23
34 C.F.R. Part 75 ........................................................................................... 3, 5
34 C.F.R. § 75.236 .............................................................................................. 3
34 C.F.R. § 75.251 .............................................................................................. 3
34 C.F.R. § 75.253 ..................................................................................... 19, 28
34 C.F.R. § 75.253(a) .................................................................................. 15, 18
34 C.F.R. § 75.253(a)(3) ............................................................................. 4, 21, 25
34 C.F.R. § 75.253(a)(5) ............................................................................. passim
34 C.F.R. § 75.253(b) ................................................................... 18, 19, 21, 24
34 C.F.R. § 75.253(f) ................................................................................. 21, 23
34 C.F.R. § 75.253(g) ................................................................................. passim

## PRELIMINARY STATEMENT

In September 2025, the United States Department of Education ("ED") exercised its discretion to discontinue federal Magnet School Assistance Program (MSAP) grants to multiple school districts, including New York City Public Schools ("NYCPS"). The grants were discontinued pursuant to 34 C.F.R. § 75.253(a)(5) (a term and condition of the grants) as no longer in the best interest of the Federal Government due to Title IX concerns stemming from NYCPS' Guidelines to Support Transgender and Gender Expansive Students (the "Guidelines"). NYCPS challenges ED's discretionary decision in this action and asks this Court to substitute its judgment for that of the agency and order the continuation of its MSAP grants and funding for the next fiscal year—grant continuations and funding that ED *never* authorized. Plaintiff similarly sought a preliminary injunction to access grant funds and now seeks injunctive relief that would interfere with the contractual relationship between it and ED. As a matter of law, Plaintiff is not entitled to such relief.

First, this case should be dismissed for lack of subject matter jurisdiction. District courts lack subject matter jurisdiction over contractual disputes with the federal government under the Tucker Act; such claims must be brought in the Court of Federal Claims. Furthermore, 20 U.S.C. § 1683 does not provide an end run around this limitation as the MSAP grants were not discontinued pursuant to Title IX and Plaintiff's claim is subject to review in another court—the Court of Federal Claims. Finally, this Court lacks subject matter jurisdiction over Plaintiff's Administrative Procedure Act ("APA") claims because the decision to non-continue funding is committed to ED's discretion by law.

Second, the Government is also entitled to summary judgment on Plaintiff's claims under the APA. A significant portion of Plaintiff's claims rest on the notion that Title IX procedures were

1

not followed and that the Guidelines, in their view, complied with Title IX. But as stated in the administrative record, the grants were non-continued under 34 C.F.R. § 75.253(a)(5) as no longer in the best interest of the Federal Government—not under Title IX. Accordingly, Plaintiff's claims that ED failed to follow Title IX procedures (Count I), and the non-continuation decision was contrary to law (Count V) fail as a matter of law. Plaintiff's claim that the Government's interpretation of Title IX did not go through notice-and-comment rulemaking (Count IV) also lacks merit. The substantive Title IX regulations are unchanged, and the separate regulatory requirement that an MSAP grant can only be continued if the agency determines that it is in the best interest of the Federal Government did go through notice-and-comment.

Further, Plaintiff was provided with a meaningful opportunity to object and seek reconsideration (Count II). The non-continuation notices provide significant detail regarding ED's concerns, how NYCPS could address them, and the circumstances under which ED's discretionary decision would be reconsidered and reversed. Nor was the decision arbitrary or capricious (Count III) as the agency reasonably explained its decision to non-continue the grants in detail and considered all relevant criteria.

Finally, Plaintiff has not established its entitlement to a permanent injunction because an injunction requiring ED to issue a continuation determination is essentially a request for specific performance of the contract and is barred by the Tucker Act. Moreover, Plaintiff's alleged irreparable harms stem from a lack of funding and can be remedied through monetary relief in the Court of Federal Claims. And both the equities and public interest weigh against issuing a permanent injunction because there is no public interest in compelling agencies to make discretionary funding decisions. Accordingly, the Complaint should be dismissed for lack of

subject matter jurisdiction under Rule 12(b)(1), or summary judgment should be granted in favor of the Government.

## BACKGROUND

### I.     The Federal Magnet School Assistance Program

A magnet school is a public elementary or secondary school that offers "'a special curriculum capable of attracting substantial numbers of students of different racial backgrounds.'" 20 U.S.C. § 7231a. ED, through MSAP, awards grants providing federal funds to eligible local educational agencies ("LEA") or consortia to establish and operate magnet schools. 20 U.S.C. § 7231b. To receive the grant award, the LEA must meet certain eligibility requirements, including that the Assistant Secretary of Education for Civil Rights determines that the applicant will not engage in discrimination on the basis of race, religion, color, national origin, sex, or disability. 20 U.S.C. § 7231d(c). The grants can be awarded for a period of up to five fiscal years. 20 U.S.C. § 7231h(a). Regardless of whether the grant is for a single year or multiple years, the grant award notification ("GAN") includes terms and conditions agreed to by the recipient in exchange for receiving the funds. Declaration of Jennifer Todd, ECF No. 25 ("Todd Decl.") ¶ 4; 34 C.F.R. § 75.236.

In the case of a multi-year grant, funding is usually only provided for the initial budget period of not more than 12 months, and, in each subsequent year, ED must determine whether to continue the grant by issuing a new award of grant funding. 34 C.F.R. § 75.251. The GANs incorporate 34 C.F.R. Part 75 as a term and condition of the grant. Todd Decl. ¶ 4; *e.g.*, USDOE002613 – USDOE003099. That term permits ED to non-continue[1] grant funding after the

---

[1] Grant non-continuation is distinct from grant termination. Todd Decl. ¶ 5; *see Department Grant Discontinuation and Termination Process*, ED, https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes (last visited January 14, 2026). Termination ends the grants on the date specified in the termination letter—typically the

first budget period if the recipient fails to meet enumerated requirements, including that the Secretary determine "that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. §§ 75.253(a)(5), (f). 34 C.F.R. § 75.253(a)(3) also requires that the grantee "[c]ontinue to meet all applicable eligibility requirements of the grant program," including the non-discrimination determination by the Assistant Secretary pursuant to 20 U.S.C. § 7231d(c). The GANs specifically state that the award is only for the initial budget period, and that continuation of funding is dependent on future funding decisions by ED, which will consider, among other things, whether doing so would be in the best interest of the federal government. Todd Decl. ¶ 6.

If a multi-year grant is non-continued, the Secretary must "notify the grantee of the decision, the grounds on which it is based, and consistent with 2 C.F.R. § 200.342, provide the grantee with an opportunity to request reconsideration of the decision." 34 C.F.R. § 75.253(g). The grantee must seek reconsideration by the date stated in the notice of non-continuation and "[s]et forth the . . . basis for disagreeing with the Secretary's decision not to make a continuation award and include relevant supporting documentation." 34 C.F.R. §§ 75.253(g)(1)(i)-(ii).

## II.    ED Non-Continues NYCPS' MSAP Grants and Funding As No Longer in the Best Interest of the Federal Government

On February 2, 2022, and March 14, 2023, ED issued notices inviting applications for fiscal year ("FY") 2022 and FY 2023 MSAP grants. USEDOE003100-USDOE003119. For FY 2022, ED awarded MSAP grants to three NYCPS projects: (1) Brooklyn Inter-District (Community School Districts 32 and 16); (2) Brooklyn and Queens Inter-District (Community School Districts 19 and 27); and (3) Queens Inter-District (Community School Districts 28 and 29). USDOE002742-USDOE002792;    USDOE002619-USDOE002669;    and    USDOE002989-

---

same day as the letter. *Id*. Non-continuation declines to continue the grant beyond the end of the current approved budget period. *Id*.

USDOE003039. For FY 2023, ED awarded MSAP grants to two NYCPS projects: (1) Bronx Inter-District (Community School Districts 7, 10, and 11); and (2) Manhattan Inter-District (Community School District 4, 2, and 6). USDOE002917-USDOE002966 and USDOE002855-USDOE002904. All five MSAP grants provided funding for an initial period, included 34 C.F.R. Part 75 as a term and condition of the grant award, and noted that continued funding for subsequent periods was subject to approval by the Secretary, who would consider, among other things, whether it was in the best interest of the Federal Government. USDOE002622-USDOE002623; USDOE002745-USDOE002746; USDOE002992-USDOE002993; USDOE002858-USDOE002859; and USDOE002920- USDOE002921.

On September 16, 2025, Acting Assistant Secretary for Civil Rights Craig W. Trainor notified NYCPS that its MSAP grants were being non-continued as "no longer in the best interest of the Federal Government" USDOE000001-USDOE000004 (the "September 16 Letter"), at USDOE000003. In the letter, ED stated that it was "deeply concerned about NYC DOE's *Guidelines to Support Transgender and Gender Expansive Students . . .* ," September 16 Letter at USDOE000001; detailed how, in the agency's view, the Guidelines conflicted with Title IX, *id.*; declined to certify NYCPS as compliant with 20 U.S.C. § 7231d(c), the MSAP anti-discrimination provision, *id.* at USDOE000003; identified 34 C.F.R. § 75.253(a)(5) as the basis for non-continuation of the MSAP grants, *id.*; provided specific steps that Plaintiff could take to address ED's concerns, *id.* at USDOE000003-4; and informed Plaintiff that the decision would be reconsidered under 34 C.F.R. § 75.253(g) if Plaintiff agreed to take the steps outlined in the letter by September 19, 2025, *id.* at USDOE000004.

On September 19, 2025, Plaintiff responded by letter, acknowledging that ED non-continued the MSAP grants "under 34 C.F.R. 75.253(a)(5) because it is no longer in the best

interest of the Federal Government to fund these programs," and requesting additional information and a 30-day extension of the reconsideration deadline. USDOE000019-21. ED granted an extension to September 23, 2025, and cautioned that failure to respond by the deadline "will result in denial of reconsideration, and my decision not to certify NYC DOE's grants under 20 U.S.C. § 7231d(c) and non-continue its MSAP grant under 34 CFR § 75.253(a)(5) will stand." USDOE000007-8. ED further advised Plaintiff that it "is in full agreement" with then-Mayor Eric Adams' announcement that NYCPS students are "not safe" because of the Guidelines. *Id.* Plaintiff did not further respond.

On September 26, 2025, ED determined that Plaintiff's September 19 Letter along with its failure to submit additional information by the September 23 deadline was an insufficient basis for reconsideration. USDOE000009-10 ("September 26 Letter"). In the September 26 Letter, ED explained that "the determination under 34 C.F.R. § 75.253(a)(5) was whether NYC DOE's MSAP grant continues to be in the best interest of the federal government. Given the ongoing civil rights concerns impacting MSAP students recognized by the Acting Assistant Secretary through his refusal to certify NYC DOE's compliance with applicable civil rights laws, I cannot make such a determination. Therefore, I deny your request for reconsideration pursuant to my authority under 34 C.F.R. § 75.253(g)." *Id.*

## III.    The Current Action

Plaintiff filed its Complaint in this matter on October 15, 2025. *See* ECF No. 1. The Complaint asserts five claims, all under the APA, and all stemming from the Government's non-continuation of NYCPS' MSAP grants and funding. *Id.* Counts I and II assert that the Government violated the APA by non-continuing the MSAP grants and funding without observing procedures required by law under Title IX (Count I), *id.* ¶¶ 100-108, and the MSAP statutes and implementing

regulations (Count II), *id*. ¶¶ 109-115. Count III alleges that the non-continuation of the MSAP grants and funding was arbitrary and capricious. *Id*. ¶¶ 116-127. Count IV alleges that ED violated the notice and comment rulemaking requirements of the APA when it made its non-continuation decision based upon a "new interpretation" of Title IX. *Id*. ¶¶ 128-134. Count V alleges that the discontinuation of the MSAP grants was contrary to law because it was based on an allegedly erroneous interpretation of Title IX. *Id*. ¶¶ 135-141. In the Complaint, Plaintiff seeks an order: (1) "enjoining the Department's Discontinuation of NYCPS's MSAP grants," Compl. ¶¶ 108, 115, 127, 134; (2) "[p]reliminarily and permanently enjoin[ing] the Department from implementing, maintaining or reinstating the Discontinuation, or otherwise taking any other action to suspend, terminate, or refuse to continue the NYCPS' MSAP grants for the FY25 and FY26 periods," *id*. at Prayer for Relief (b); (3) ordering the continuation of the NYCPS MSAP grants, *id*. at Prayer for Relief (c); and (4) enjoining "the Department from freezing, terminating or otherwise interfering with any NYCPS' MSAP grant funding . . . ," *id*. at Prayer for Relief (d). Plaintiff has not amended its Complaint.

For the reasons discussed below, the Court should deny Plaintiff's motion for summary judgment, and grant Defendants' cross-motion to dismiss or, in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56.

## LEGAL STANDARD

### I.    Legal Standard Governing Dismissal for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). The plaintiff "has the burden of proving by a preponderance of the

evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011).

## II.    Legal Standard Governing APA Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, a party seeks judicial review of agency action, summary judgment is appropriate, since 'whether an agency action is supported by the administrative record and consistent with the APA standard of review' is decided 'as a matter of law.'" *Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (quoting *UPMC Mercy v. Sebelius*, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)). "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).

The APA, 5 U.S.C. § 701 et seq., provides for judicial review of challenges to final agency actions. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990). "Under the APA, courts review agency action to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Friends of Animals v. Romero*, 948 F.3d 579, 585 (2d Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)). This "narrow" standard does not allow a court "'to substitute its judgment for that of the agency.'" *Friends of Ompompanoosuc v. FERC*, 968 F.2d 1549, 1554 (2d Cir. 1992) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Rather, a court may overturn an agency's action only if it finds that the agency has relied on factors which Congress "'has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

**ARGUMENT**

I.   **This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims**

   A.  **The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims**

This Court lacks subject matter jurisdiction over Plaintiff's claims as they are in essence contract claims that can only be brought in the Court of Federal Claims. While the APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages," 5 U.S.C. § 702, that waiver of sovereign immunity does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting 5 U.S.C. § 702). "Where a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims." *See Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*, 175 F.3d 132, 143 (2d Cir. 1999).

Accordingly, regardless of how a claim is styled, a district court lacks jurisdiction if the claim "is in 'its essence' contractual." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)); *see also Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004). "Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases his claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) and *Megapulse*, 672 F.2d at 968). Here, both prongs establish that Plaintiff's claims are in essence contractual.

As to the first prong, while Plaintiff now claims to challenge ED's "policies and guidance on Title IX," Pl.'s Br. at 17, it fails to identify any such policies or guidance in the administrative record. Further, the mere allegation that the grant was discontinued in violation of Title IX does not provide the Court with jurisdiction. *See New York v. National Science Foundation*, 793 F. Supp. 3d 562, 583 (S.D.N.Y. 2025) (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985) ("[t]hat the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only violation of the regulations change the essential character of the action.")).

Here, the nature of this action is contractual—it challenges whether ED was permitted to discontinue the grant agreements with NYCPS. *Ingersoll-Rand Co.*, 780 F.2d at 78 (holding that the court lacked subject matter jurisdiction under the Tucker Act where "it is possible to conceive of [the] dispute as entirely contained within the terms of the contract."). Plaintiff does not dispute, and the record establishes, that it is in a contractual relationship with the Government and that NYCPS is challenging the discontinuance of its MSAP grants and funding. In its Complaint, NYCPS repeatedly asserts that it is bringing this action to challenge the discontinuation of the grants and the resultant loss of expected funding. *See, e.g.*, Compl. ¶¶ 8 ("NYCPS brings this action to . . . order that the Department's discontinuation of NYCPS' MSAP grants be vacated and set aside . . . ."), 96 ("As a direct result of the Department's unlawful decision to discontinue NYCPS' MSAP grant funds, the educational programs at each of these Schools . . . will suffer."), 108 ("NYCPS is entitled to a declaratory order and an order and judgment enjoining the Department's Discontinuation of NYCPS's MSAP grants . . . ."), 115 (same), 127 (same), 134 (same), and Prayer For Relief (same and requesting that the Court "[d]eclare and enjoin the Department from freezing, terminating or otherwise interfering with any NYCPS' MSAP grant

funding . . . ."). The source of the right Plaintiff is asserting therefore is the grant agreements themselves, and not an "independent, non-contractual source." *Up State Fed. Credit Union*, 198 F.3d at 376. Regardless of Plaintiff's citation to Title IX, Pl.'s Br. at 17-18, in the absence of the grants, "'no cause of action would exist at all.'" *Up State Fed. Credit Union*, 198 F.3d at 377 (quoting *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55 (2d Cir. 1985)).

As to the second prong, where, as here, "'the prime objective of the plaintiff is to obtain money from the Government,'" this Court lacks jurisdiction. *See Presidential Gardens Assocs.*, 175 F.3d at 143 (quoting *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983)). In its Complaint, Plaintiff requests that the Court order the continuation of a contractual agreement with ED and the continued payment of funding to it. Specifically, Plaintiff seeks an order: (1) "enjoining the Department's Discontinuation of NYCPS's MSAP grants," Compl. ¶¶ 108, 115, 127, 134; (2) "[p]reliminarily and permanently enjoin[ing] the Department from implementing, maintaining or reinstating the Discontinuation, or otherwise taking any other action to suspend, terminate, or refuse to continue the NYCPS' MSAP grants for the FY25 and FY26 periods," *id*. at Prayer for Relief (b); (3) ordering the continuation of the NYCPS MSAP grants, *id*. at Prayer for Relief (c); and (4) enjoining "the Department from freezing, terminating or otherwise interfering with any NYCPS' MSAP grant funding . . . ," *id*. at Prayer for Relief (d). Chancellor Aviles-Ramos' declaration further highlights NYCPS' focus on restoring funding—not on the impact of an alleged new Title IX policy. *See* Decl. of Chancellor Aviles-Ramos (ECF No. 6) ¶¶ 3-17 (entitled "The Loss of MSAP Funding Puts the Survival of 19 Magnet Schools at Serious Risk"); 52 ("[p]ulling down these five Grant Projects deprives these schools of necessary funding to develop and maintain their magnet schools"); and 53 (describing the "devastating impact our magnet schools will experience due to this loss of funding"). And NYCPS CFO Seritta Scott's declaration, ECF

No. 51, similarly emphasizes NYCPS' focus on funding. Scott Decl. ¶ 9 (noting when the MSAP projects are expected to run out of funding).[2]

Further, both Plaintiff's preliminary and permanent injunction requests make clear that the relief sought by Plaintiff is contractual. *See National Science Foundation*, 793 F. Supp. 3d at 583 (finding that plaintiffs "primarily asserted a right to payment of the funds promised in the grant awards" based, in part, on plaintiffs' preliminary injunction brief that "reveals their focus on the termination of the grant awards"). Plaintiff's preliminary injunction motion was solely focused on the restoration of funding, ECF No. 4, and Plaintiff, now, asks the Court to "grant declaratory relief to clarify and guide the relationship between NYCPS and the Department with regard to continuation determinations for the lifetime of the MSAP grants." Pl.'s Br. at 19. In other words, NYCPS concedes that it is seeking intervention into its contractual relationship with the Government. Specifically, Plaintiff seeks an order vacating ED's discontinuation of the MSAP grants and requiring ED to issue a new continuation determination within 10 days of the order. Pl.'s Br. at 19-20. These remedies are contractual in nature as Plaintiff's entitlement to a continuation determination stems only from its contractual relationship with ED. *See, e.g.*, USDOE002673 (incorporating 34 C.F.R. 75.253 as a term and condition of the grant and setting forth the terms for continuation determinations). There is no independent source entitling NYCPS to a continuation determination.

---

[2] Plaintiff's press release regarding this lawsuit further makes plain that the suit was filed to "protect grant funding that New York City Public Schools is owed," and is entitled "City of New York Files Lawsuit Against U.S. Department of Education Seeking to Protect $47 Million in Federal Education Grants for New York City Public Schools." *See* https://www.nyc.gov/mayors-office/news/2025/10/city-of-new-york-files-lawsuit-against-u-s--department-of-educat     (last visited January 14, 2026)

Both *Department of Education v. California*, 604 U.S. 650 (2025) and *National Institutes of Health ("NIH") v. American Public Health Association*, 145 S. Ct. 2658 (2025) (per curiam) are instructive here. In *California*, plaintiffs, challenged ED's termination of grants because they were no longer consistent with ED's priorities. *California v. Department of Education*, 132 F.4th 92, 95-96 (1st Cir. 2025). Like Plaintiff, the *California* plaintiffs challenged the termination under the APA as "insufficiently explained, insufficiently reasoned, and otherwise contrary to law," and asserted "that the Department acted in violation of federal law – not its contracts." *Id.* at 97. Nonetheless, the Supreme Court concluded that the Government was likely to succeed in showing that the district court lacked jurisdiction under the Tucker Act. *See California*, 604 U.S. at 651. The same outcome is true here.

In *NIH*, the Court reaffirmed its holding in *California* that "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *NIH*, 145 S. Ct. at 2658 (citing *California*, 604 U.S. at 651). *NIH* is particularly instructive regarding the present action as Plaintiff's requested relief—vacatur of ED's discontinuation determination—is directly contrary to the Court's ruling. In *NIH*, plaintiffs challenged two separate actions: (1) the issuance of internal guidance documents by NIH describing new agency priorities and (2) the termination of individual grants. *Id.* at 2660-61 (Barrett, J. concurrence). The Court permitted the APA challenge to the separate guidance documents but found the district court lacked jurisdiction over the challenge to the grant terminations. *Id.* at 2661-62 (Barrett, *J.*, concurring). In so holding, Justice Barrett made clear that "[b]oth logic and law [ ] support channeling challenges to the grant terminations and guidance to different forums" and that the Court of Federal Claims has *exclusive* jurisdiction over grant

terminations, which "the plaintiffs cannot end-run . . . simply by packaging . . . with a challenge to agency guidance." *Id.* (Barrett, *J.*, concurring) (citing *California*, 604 U.S., at 650-51).

Here, NYCPS attempts to bring the same challenge that the Court rejected in *NIH*—a challenge to an agency's grant determination. Further, unlike in *NIH*, there are no internal policy or guidance documents in the administrative record and Plaintiff—despite numerous opportunities to describe its requested relief—does not seek to vacate any policy or guidance documents at all. *See* Notice of Summary Judgment Motion, ECF No. 50 (seeking to set aside the MSAP grant discontinuations—not any Title IX policy or guidance); Compl. ¶¶ 108, 115, 127, 134, and Prayer for Relief (same); Order to Show Cause for a Preliminary Injunction, ECF No. 4 (only seeking access to grant funds). As such, pursuant to *NIH*, this Court lacks jurisdiction and the Complaint should be dismissed.

### B.    This Court Does Not Have Jurisdiction Under 20 U.S.C. § 1683

Plaintiff attempts to create jurisdiction where none exists by picking out references to Title IX in the September 16 Letter and claiming that this Court therefore has jurisdiction under 20 U.S.C. § 1683. Plaintiff is wrong. Section 1683 only confers jurisdiction when two conditions are met: (1) the action is "not otherwise subject to judicial review," and (2) the complained of action was taken pursuant to Section 1682—Title IX. 20 U.S.C. § 1683. Both conditions are required for this Court to have jurisdiction, *id.*, and neither are met here.

As discussed above, while the APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages," 5 U.S.C. § 702, that waiver of sovereign immunity does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *California*, 604 U.S. at 651 (quoting 5 U.S.C. § 702).
As relevant here, the Supreme Court in *NIH* held that the Court of Federal Claims has "exclusive" jurisdiction over grant termination disputes, and that this jurisdiction cannot be evaded by trying

14

to package the claim with a challenge to agency guidance. *NIH*, 145 S. Ct. at 2661-62 (Barrett, *J.*, concurring). Accordingly, Section 1683 does not apply because this action is subject to review in the Court of Federal Claims. *See Fairfax Cnty. School Bd. v. McMahon*, No. 25 Civ. 1432 (RDA/LRV), 2025 WL 2598622, at *5 (E.D.V.A. Sep. 5, 2025) (*appeals docketed,* No. 25-2087 (4th Cir. Sept. 11, 2025), 25-2107 (4th Cir. Sept. 16, 2025) (finding plaintiffs' reliance on 20 U.S.C. § 1683 to be "unavailing" as the Tucker Act provided for judicial review in the Court of Federal Claims).

The Court need not go further in its analysis; however, Section 1683 also fails to confer jurisdiction for the separate reason that the grant discontinuations were effectuated under 34 C.F.R. § 75.253(a)—a term and condition of the GANs—not § 1682. Plaintiff incorrectly asserts that *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) requires the Court to analyze the discontinuance as a Title IX enforcement action. Pl.'s Br. at 10-11. But *Chenery* and its progeny only apply if the Court has APA jurisdiction—they "articulate the minimum requirements necessary for judicial review under the APA"—not a standard to determine jurisdiction. *See The Authors Guild v. National Endowment for the Humanities*, No. 25-cv-3923, 25-cv-3657 (CM), 2025 WL 3678097 at *4-5 (S.D.N.Y. Dec. 18, 2025) (internal citations omitted). In addition, even assuming *arguendo* that *Chenery* applies, both the September 16 and 26 Letters invoked 34 C.F.R. § 75.253(a) to discontinue the grants and stated that grantees were no longer in compliance with 20 U.S.C. § 7231d—*see* September 16 Letter at USDOE000003; and September 26 Letter at USDOE000009- USDOE000010—and the Court must judge the discontinuance based upon the grounds invoked by the agency in the record. *Id*. at *4 (quoting *Chenery*, 318 U.S. at 87).

Plaintiff claims that ED's reliance on 34 C.F.R. § 75.253(a)(5) is "no different from the *post hoc* rationalization that was before the court" in *Burlington Truck Lines, Inc. v. United States*,

15

371 U.S. 156, (1962), "or the 11th hour pivot by the federal government in" *President & Fellows of Harv. Coll. v. United States HHS*, Nos. 25-cv-11048-ADB, 25-cv-10910-ADB, 2025 WL 2528380 (D. Mass. Sep. 3, 2025). Pl.'s Br. at 11. Again, Plaintiff is incorrect. In *Burlington*, the Court refused to rely upon "appellate counsel's *post hoc* rationalizations for agency action," *Burlington*, 371 U.S. at 168-69, and the *Harvard* court rejected reliance on a C.F.R. provision that was not cited in the challenged funding freeze order, *Harvard*, 2025 WL 2528380, at *126-27. Neither *Burlington* nor *Harvard* support rejecting an agency's contemporaneous invocation of a contractual provision.

The Title IX enforcement framework is simply not applicable to non-continuation under 34 C.F.R. § 75.253(a)(5) even if the best interest determination was based upon civil rights concerns, including Title IX compliance issues impacting MSAP students. *Cf. American Association of University Professors v. U.S. Dep't of Justice*, No. 25 Civ. 2429 (MKV), 2025 WL 1684817, at *15 (S.D.N.Y. Jun. 16, 2025) (citing contract term and provision as basis for terminating funding as no longer consistent with agency priorities and noting that Title VI—which is procedurally identical to Title IX—is not the "sole and exclusive legal tool" available to an agency to terminate funding based on alleged religious discrimination).[3]

---

[3] Nor can the non-continuation letter that was sent to Plaintiff be parsed to separate the non-continuation of the multiyear grants from the rest of the document because without the non-continuation decision, there is no final agency action. *See NIH*, 145 S.Ct. at 2662 (Barrett, J. concurring). This is especially true given courts do not consider agency determinations on civil rights statutes standing alone, a form of final agency action under the APA. "The court relied upon *Georator Corp v. EEOC*, 592 F.2d 765, 767 (4th Cir. 1979), which held that an EEOC determination of reasonable cause is not 'final agency action' because 'standing alone, it is lifeless and can fix no obligation nor impose any liability on the plaintiff . . . it is perfectly clear that the EEOC's determination is not final agency action." *Borg-Warner Protective Services Corp. v. E.E.O.C.*, 245 F.3d 831, 836 (D.C. Cir. 2001). Similarly, any attempt to parse ED's findings as it relates to Plaintiff without the non-continuation decision is "lifeless" and imposes no liability or obligation on the Plaintiff. As such, pursuant to *NIH*, this Court lacks jurisdiction and the Complaint should be dismissed.

C.    **Plaintiff's APA Claims Are Unreviewable Because the Decision to Non-Continue Funding Is Committed to the Agency's Discretion**

This Court lacks subject matter jurisdiction over this case for the additional reason that the non-continuation of the NYCPS' MSAP grants is quintessential agency action "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). While the APA provides a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either final agency action or an agency's failure to act, 5 U.S.C. §§ 702, 706(1)-(2), the waiver of sovereign immunity is limited. It does not apply in circumstances where "agency action is committed to agency discretion by law," *id.* § 701(a)(2). Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988).

The Supreme Court has long recognized that an agency's determination of how to allocate appropriated funds among competing priorities and recipients—precisely what Plaintiff challenges here—is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that there is no waiver of sovereign immunity where agency action requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id.* (citations and internal quotation marks omitted). An "agency is far better equipped than

17

the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (citations and internal quotation marks omitted). So long as the agency abides by the relevant statutes (and whatever obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id*.

Here, the decision to non-continue funding was peculiarly within ED's expertise and discretion. The September 16 letter made clear that "NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government." September 16 Letter at USDOE000003. That regulation is broadly drawn and provides the Court with no meaningful standards by which to evaluate the agency's decision. *See Lunney v. United States*, 319 F.3d 550, 557-58 (2d Cir. 2003).

Instead, the regulation merely states that "[a] grantee, in order to receive a continuation award from the Secretary . . . must . . . [r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a), (a)(5). In determining whether a grantee is eligible for a continuation of their award, "the Secretary may consider *any* relevant information regarding grantee performance." 34 C.F.R. § 75.253(b) (emphasis added). Because these provisions are so broadly stated, a determination that a grant is not in the best interest of the Government is "committed to agency discretion by law." *Bd. of Educ. for Silver Consolidated Schs. v. McMahon*, 791 F. Supp. 3d 1272, 1289 (D.N.M. 2025) (non-continuation of a grant under 34 C.F.R. § 75.253(a)(5) "which concerned how to allocate a grant award that is, purportedly, not in the best interest of the Government—seems like a quintessential decision committed to agency discretion by law").

The only argument that Plaintiff makes to cabin the "best interests" determination relies on historical 1980 and 1994 ED regulations. *See* Pl.'s Br. at 14.  But these regulations, if anything,

bolster the Government's arguments here. Plaintiff argues that a 1994 ED regulation requires that MSAP grant continuation decisions be based *solely* on performance reports submitted by the grantee. *Id.* But the regulation says no such thing. Instead, it makes clear that "continuation funding will be based," as it had prior to 1994, "on evidence that the grantee has met the standards for continuation contained in 34 C.F.R. § 75.253. These standards include requirements . . . that continuation of the project is in the best interests of the Federal Government." *Direct Grant Programs*, 59 Fed. Reg. 30258, at 30259 (Jun. 10, 1994). The regulations emphasize the submission of performance reports because that was the change that was being effectuated in that particular regulation. ED was no longer requiring recipients to submit a separate continuation award application that it described as "duplicative" alongside performance reports, and accordingly the submission of performance reports would "take on increased importance under the amended regulations because the continuation award decision . . . will be based entirely on the submission of reports as specified by the Secretary, rather than on the submission of a continuation award application." *Id.* But in the same breath, the regulations made clear that the performance reports would be "key" to the continuation decision but made no suggestion that the agency was *barred* from considering other information or that performance reports would be conclusive of a best interests determination. *Id.* It stands to reason that evidence that a grant would no longer be in the best interest of the federal government (which could happen for a number of unforeseen reasons) would come from various sources and may not be reflected in performance reports.

Plaintiff's reliance on the 1980 regulations is even more unfounded and taken out of context. While Plaintiff argues that the 1980 regulations do not confer authority "to determine compliance with civil rights requirements," Pl.'s Br. at 14, the relevant portion of the regulation states that: "Enforcement of applicable civil rights statutes and regulations is presently the

responsibility of the Office for Civil Rights, HEW [Department of Health, Education, and Welfare]. The Education Department General Administrative Regulations ("EDGAR") provisions do not give Education Division program personnel any responsibility or authority to determine compliance with civil rights requirements; these determinations will continue to be made by the Office for Civil Rights or its successor agency. (The functions of the HEW Office for Civil Rights that are concerned with education will be transferred to the new Department of Education.)" *Analysis of Public Comments and Changes in the Final Regulations*, 45 Fed. Reg. 22547, at 22548 (Apr. 3, 1980). That is precisely what happened here; it was ED's Office for Civil Rights that raised civil rights concerns regarding the Guidelines. *See* September 16 Letter. Because Plaintiff does not specify "some statute or regulation that would limit [ED's] discretion in this matter," Plaintiff's claims are committed to agency discretion and the Court lacks subject matter jurisdiction over them. *Lunney*, 319 F.3d at 558.

## II.    In The Alternative, The Government Is Entitled To Summary Judgment

While this Court lacks jurisdiction and should not rule on the merits for the reasons discussed *supra*, the Government is also entitled to summary judgment based on the administrative record.

### A. Defendants Observed All Procedures Required by Law When Non-Continuing the MSAP Grants (Counts I and II)

The Court should grant summary judgment in favor of the Government on Counts I and II, which allege that the Government violated the APA by non-continuing the MSAP grants without observing the procedures required by Title IX (Count I) and the MSAP statutes and implementing regulations (Count II). As to Count I, Plaintiff asserts that Defendants failed to observe the procedures required by Title IX, even though the grants were non-continued under 34 C.F.R. § 75.253(a)(5)—not Title IX. September 16 Letter at USDOE000003 ("NYC DOE's MSAP grant

20

will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government"). Plaintiff contends that it is entitled to summary judgment because the September 16 Letter invoked Title IX as the "sole basis" for non-continuing and Defendants did not comply with Title IX's procedures. Pl.'s Br. at 20-21. As discussed *supra* and below, however, Title IX's procedural requirements are inapplicable here. As such, they cannot form the basis for an APA claim.

While Title IX concerns were cited in the September 16 Letter, September 16 Letter at USDOE000004, ED specifically relied upon 34 C.F.R. § 75.253(a)(5), incorporated as a term and condition of the grants, to non-continue the grants as no longer in the best interest of the Federal Government, *id.* at 3. This determination was within the Secretary's discretion. 34 C.F.R. § 75.253(f) ("The Secretary may decide not to make a continuation award if . . . [a] grantee fails to meet any of the requirements in paragraph (a) of this section . . . ."). ED has broad discretion to assess what is in the best interest of the Government, including based on "any relevant information regarding grantee performance." 34 C.F.R. § 75.253(b); *see supra* p. 18-20. This includes, as occurred here, consideration of "ongoing civil rights concerns impacting MSAP students recognized by the Acting Assistant Secretary through his refusal to certify NYC DOE's compliance with applicable civil rights laws." September 26 Letter at USDOE000009-USDOE000010.

This certification of compliance with applicable civil rights laws is required not just in connection with the initial award of MSAP grants but also in connection with continuation awards. "A grantee, in order to receive a continuation award from the Secretary for a budget period after the first budget period of an approved multiyear project must . . . [c]ontinue to meet all applicable requirements of the grant program." 34 C.F.R. § 75.253(a)(3). This includes the statutory

requirement that "[n]o grant shall be awarded under this part [ ] unless the Assistant Secretary of Education for Civil Rights determines that the assurances described in [20 U.S.C. § 7231d(b)(2)(C)] will be met." 20 U.S.C. § 7231d(c). As such, if the Assistant Secretary for Civil Rights determines that they are unable to certify that the grantee can meet those assurances, including that the applicant for a continuation award will not "engage in discrimination based on . . . sex," 20 U.S.C. § 7231d(b)(2)(C), the Assistant Secretary cannot certify the grant. That is precisely what occurred here:

> The consequences of the NYC DOE's policy are predictable: students are subject to hostile educational environments or denied equal access to benefits of education programs or activities *or will be in the future*. As a result of these findings, I will not certify NYC DOE's grant under 20 U.S.C. § 7231d(c). Likewise, NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government.

September 16 Letter at USDOE000003 (emphasis added). Therefore, Title IX procedures are not applicable and Count I should be dismissed.

As to Count II, Plaintiff alleges that Defendants violated the APA by not providing it with a "notice of the grounds for its decision not to continue the grants, and consistent with 2 C.F.R. 200.342, to provide NYCPS with the opportunity to challenge the decision and request reconsideration." Pl.'s Br. at 22. Not so. Under 34 C.F.R. § 75.253(g), if ED decides not to make a continuation award, it must "notify the grantee of that decision, the grounds on which it is based, and, consistent with 2 C.F.R. § 200.342, provide the grantee with an opportunity to request reconsideration of the decision." *Id*. Consistent with this provision, the September 16 Letter specifically notified Plaintiff that Defendants were "deeply concerned" about the Guidelines, September 16 Letter at USDOE000001; detailed the specific basis for their concerns, *id*. at USDOE000002-3; identified 34 C.F.R. § 75.253(a)(5) as the basis for non-continuation of the

MSAP grants, *id*. at USDOE000003; provided specific steps that Plaintiff could take to address Defendants' concerns, *id*. at USDOE000003-4; and informed Plaintiff that the decision would be reconsidered if it agreed to take the steps outlined in the letter, *id*. at USDOE000004. Plaintiff responded on September 19, USDOE000019-USDOE000021, and received an extension to September 23, 2025, to seek reconsideration. USDOE000007-USDOE000008. Yet, Plaintiff admittedly never sought reconsideration. Pl.'s Br. at 7.[4]

Plaintiff also argues that Defendants violated the APA by placing conditions on NYCPS' ability to seek reconsideration. However, it does not cite any supporting authority, Pl.'s Br. at 22-23, and ignores that neither 34 C.F.R. § 75.253(g) nor 2 C.F.R. § 200.342 limits ED's ability to put conditions on reconsideration.

Finally, as to Defendants' alleged failure to provide NYCPS with access to written procedures for reconsideration and a list of information that should accompany the request, Pl.'s Br. at 22-23, there is no such requirement contained in either 34 C.F.R. § 75.253(g) or 2 C.F.R. § 200.342. 34 C.F.R. § 75.253(g) merely requires ED to "notify the grantee of that decision, the grounds on which it is based, and, consistent with 2 C.F.R. § 200.342, provide the grantee with an opportunity to request reconsideration of the decision." 2 C.F.R. § 200.342 requires the grantee have "an opportunity to object and provide information challenging the action." *Id*. Plaintiff was provided with this opportunity. *See* September 16 Letter at USDOE000003- USDOE000004. Further, ED's reconsideration process was publicly available to NYCPS. *See Department Grant Discontinuation and Termination Process,* ED, https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes (last

---

[4] On September 26, 2025, ED interpreted Plaintiff's September 19 Letter along with its failure to submit additional information by the September 23 deadline as an insufficient request for reconsideration. September 26 Letter at USDOE000009-USDOE000010.

visited January 14, 2026). Armed with this information, Plaintiff failed to seek reconsideration, Pl.'s Br. at 7, or failed to address the issues raised by ED, *see* September 26 Letter, at USDOE000013-14. As such, Count II should be dismissed.

### B. The Agency's Actions Were Not Arbitrary and Capricious (Count III)

A court's "review of agency action under the arbitrary and capricious standard of review is narrow and particularly deferential." *New Jersey v. Bessent*, 149 F.4th 127, 152 (2d Cir. 2025) (internal quotation marks and citation omitted). An agency action is arbitrary and capricious only "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *NYLAG v. DeVos*, 527 F. Supp. 3d 593, 604 (S.D.N.Y. 2021).

Plaintiff argues first that the agency did not consider the criteria listed in the relevant regulation—namely, "information regarding grantee performance." Pl.'s Br. at 24. But that argument ignores how broadly the particular regulation is drafted. 34 C.F.R. § 75.253(b) makes clear that "the Secretary may consider *any* relevant information regarding grantee performance." (emphasis added). While that information can include information like performance reports and financial data as Plaintiff suggests, *see* Pl.'s Br. at 24, there is no express limitation with respect to the performance-related information that ED can consider.  That the agency had concerns regarding NYCPS' compliance with Title IX is relevant information regarding NYCPS's performance under the grant; grantees are prohibited by statute from "engag[ing] in discrimination based on . . . sex . . . in . . . designing or operating extracurricular activities for students." 20 U.S.C. § 7231d(b)(2)(C); *see also* September 16 Letter at USDOE000002 (citing Title IX concerns in the operation of extracurricular activities). Given this statutory mandate, the agency can address civil rights

concerns as a consideration in determining whether it is in the best interest of the federal government for a particular MSAP grant to be continued. Plaintiff's assertion that ED's determination is only applicable to the initial grant award, and not to continuation decisions, is simply inaccurate. *See* Pl's. Br. at 25. 34 C.F.R. § 75.253(a)(3) also requires that the grantee "[c]ontinue to meet all applicable eligibility requirements of the grant program," including the non-discrimination determination by the Assistant Secretary pursuant to 20 U.S.C. § 7231d(c). Accordingly, while Plaintiff may substantively disagree with the decision, ED did not fail to consider statutory criteria in deciding to non-continue the subject grants.

Second, contrary to Plaintiff's argument that ED did not provide any reasoning for its decision, ED made plain in its letters to NYCPS that the agency had "specific concerns with [NYCPS] compliance with applicable federal civil rights laws." September 26 Letter at USDOE000009. Far from "summarily conclud[ing]" that there were Title IX concerns with the Guidelines, those concerns were set forth in detail in a four-page letter to NYCPS citing specific aspects of the Guidelines with supportive case law and other authorities. *See* September 16 Letter at USDOE000003-4. For that reason, Plaintiff's citation to *Washington v. HHS*, an out of circuit unpublished opinion, is unavailing.

In that case, the court found that the only explanation HHS provided in the administrative record for its decision was that certain activities by the grantees fell "outside the scope of the statutory authority." *Washington v. HHS*, No. 25 Civ. 1748 (AA), 2025 WL 3002366, at *4 (D. Or. Oct. 27, 2025). Accordingly, the Court held that HHS "provid[ed] no factual findings or a reasoned basis for its decision," because HHS had simply "[b]aldly asser[ted]" that funding was being terminated to comply with the agency's statutory mandate. *Id.* at *17. Here, by contrast, ED fully

explained the basis for its decision. That Plaintiff has a "difference in view," *NYLAG*, 527 F. Supp. 3d at 604, does not render the decision arbitrary and capricious.

Third, Plaintiff's argument that the agency's decision is arbitrary and capricious because the decision to non-continue the grant "deviated from its prior determinations" that the grant was in the best interest of the United States under 34 C.F.R. § 75.253(a)(5), is mistaken. *See* Pl.'s Br. at 26. For this "change in position" doctrine to apply, an agency must have "changed existing policy." *New York v. Trump*, 778 F. Supp. 3d 578, 596 (S.D.N.Y. 2025). And "for an agency position to constitute a 'policy' within the meaning of the change-in-position doctrine, it must typically have been set forth in some 'formal' manner, such as a regulation, a guidance memorandum, or an agency enforcement action." *Id.* But Plaintiffs do not assert—as they must—that the agency "had a pre-existing policy expressed in a guidance document or in some other formal fashion that was altered by" the non-continuation decision. *See id.* Nor did the agency go "back on any commitments made in guidance it provided" before making the non-continuation decision. *FDA v. Wages & White Lion Invs. L.L.C.*, 604 U.S. 542, 571 (2025). Instead, as detailed above, the relevant regulations "left the agency broad discretion to decide" whether any particular grant would be continued. *Id.* This makes good sense; what is in the best interests of the United States may change over time. In other words, because no particular commitments had been made with respect to how the agency would view the Guidelines, there was no change in position under the APA.

Fourth, Plaintiff argues that the agency failed to consider NYCPS' reliance interests. Pl.'s Br. at 27. But the agency was explicit in each of its grant award notifications that the "award supports only the budget period" described in the notification and that "the Secretary *considers* . . . continued funding if . . . the Department determines that continuing the project would be in the best interest of the Government." USDOE002622-USDOE002623; USDOE002745-

USDOE002746;    USDOE002992-USDOE002993;    USDOE002887-USDOE002859;    and

USDOE002920- USDOE002921 (emphasis added). In other words, from the very beginning of

the contractual relationship, Plaintiff was on notice that it should not develop reliance interests

because future years' funding was not guaranteed. And to the extent that NYCPS believed it would

receive a grant continuation, "a belief about how an agency is likely to exercise its . . . discretion

is not a serious reliance interest." *Wages & White Lion Invs. L.L.C.*, 604 U.S. at 585 (citation and

internal quotation marks omitted). Plaintiff points to a 2024 regulation indicating that ED "do[es]

not deny a large number of non-competing continuation awards." *Education Department General

Administrative Regulations and Related Regulatory Provisions*, 89 Fed. Reg. 70,300, 70,316 (Aug.

29, 2024).[5] But that does not change the fact that the contract put Plaintiff on notice that it was not

entitled to future years' funding and ED always retained discretion to non-continue the award.

### C.    No Further Notice and Comment Rulemaking Was Required (Count IV)

Plaintiff's next argument, that the agency erred by making the non-continuation decision

"without engaging in notice-and-comment rulemaking to revoke and/or replace the existing Title

IX Interpretive Guidance." Pl.'s Br. at 28; *see also* Pl.'s Br. at 12 (pointing to 2021 Title IX

Interpretive Guidance), also lacks merit. As an initial matter, ED's decision to non-continue

NYCPS' MSAP funding was made under 34 C.F.R. § 75.253(a)(5)—a grant term and condition—

which itself was the product of notice-and-comment rulemaking. But even if ED's actions

somehow contravened the 2021 Title IX Interpretive Guidance, that guidance has already been

vacated by a court, and was not in force at the time of the non-continuation decision. *Texas v.*

---

[5] Plaintiff also points to a 1994 regulation indicating that denial of a continuation award is
"extremely rare in practice." *Direct Grant Programs*, 59 Fed. Reg. at 30259. But ED's practice in
1994 is even less relevant to the question of whether NYCPS should have developed reliance
interests over thirty years later.

*Cardona*, 743 F. Supp. 3d 824, 893-94 (N.D. Tex. 2024) (vacating 2021 Interpretative Guidance nationwide as contrary to law).

Furthermore, even assuming *arguendo* that ED's actions altered the vacated 2021 Interpretive Guidance—which it did not—it is black-letter law that "[i]nterpretive rules do not carry the force and effect of law, and they need not be promulgated pursuant to notice and comment procedures under the APA." *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015) (citing *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 95-97 (2015)).[6] And "[b]ecause an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule." *Perez*, 575 U.S. at 101. As such, Plaintiff failed to allege "any changes to rules for which notice-and-comment rulemaking is required," *Tzumi Innovations LLC v. Regan*, 557 F. Supp. 3d 499, 509 (S.D.N.Y. 2021), and its claim should be dismissed.

### D.    The Agency's Actions Were Not Contrary to Law (Count V)

Finally, Plaintiff cannot show that the agency's non-continuation decision was contrary to law. Plaintiff's entire argument hinges on whether a court would agree that the Guidelines violate Title IX. *See* Pl's. Br. at 29-31. But even if this Court disagrees with the agency's interpretation of the statute and finds that the Guidelines do not violate Title IX, the agency's decision is not contrary to law. That is because 34 C.F.R. § 75.253 provides, as a separate and independent requirement for a continuation award, that the grantee "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). Stated otherwise, even if the grantee is making substantial progress, submitting all required reports, and continuing to meet the eligibility requirements of the program (including the

---

[6] Indeed, the 2021 Interpretive Guidance itself did not go through notice and comment rulemaking. *Cardona*, 743 F. Supp. 3d at 855-56.

requirement that the grantee remain in compliance with federal civil rights law, *see* 20 U.S.C. § 7231d(b)(2)(C)), the applicable regulations impose a clear and separate requirement that each project receive a current determination that continuation is in the best interest of the federal government.

ED, in its discretion, made the determination that the NYCPS MSAP grants were not. *See* September 16 Letter at USDOE000003 ("NYC DOE's MSAP grant will be non-continued under 34 C.F.R. § 75.253(a)(5) because it is no longer in the best interest of the Federal Government."); September 26 Letter at USDOE000009-10 ("[T]he determination under 34 C.F.R. § 75.253(a)(5) was whether NYC DOE's MSAP grant continues to be in the best interest of the federal government. Given the ongoing civil rights concerns impacting MSAP students . . . , I cannot make such a determination."). Because the agency's determination that the MSAP grants are not in the best interest of the federal government does not depend on whether the Guidelines violate Title IX as a matter of law, the agency's discretionary decision should not be vacated under the APA.

III.    **Plaintiff Has Failed to Establish the Factors Necessary to Obtain a Permanent Injunction**

Plaintiff seeks injunctive relief "to ensure that the Department issues a lawful continuation determination for FY2026 as to each MSAP grant, to be issued within ten (10) days of entry of this Court's order" and to "enjoin Defendants from discontinuing the MSAP grants based on Title IX findings or 'civil rights violations' relating to Title IX, unless and until complying with the procedures required by 20 U.S.C. § 1682." Pl.'s Br. at 33. In order to obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Daniels v. Moores*, No. 24-30-PR, 2025 WL 883035, at *1 (2d Cir. Mar. 21, 2025) (citations and internal quotations omitted). The third and fourth factors "'merge when the Government is the opposing party.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Plaintiff has failed to establish the factors necessary to obtain a permanent injunction. As discussed above, Plaintiff is not entitled to summary judgment and is therefore not entitled to any relief—let alone injunctive relief. Further, an injunction requiring ED to issue a continuation determination is in essence a request for specific performance barred by the Tucker Act because Plaintiff's entitlement to a continuation determination itself only stems from its contractual relationship with ED. *See Presidential Gardens Assocs.*, 175 F.3d at 143 (barring permanent injunction because plaintiff "in essence" requested specific performance of a contract). In addition, Plaintiff's alleged irreparable harm stems from a loss of funding, *see, e.g.*, Aviles-Ramos Decl. ¶¶ 52-58, and therefore can be remedied through monetary relief in the appropriate forum—the Court of Federal Claims. While Plaintiff claims that a damages remedy cannot address a "prospective risk of harm" regarding continuation decisions in FY27 and FY28, Pl.'s Br. at 32-33, that request is not ripe for adjudication as it presumes the MSAP grants will be continued at least to those fiscal years. *See Mendez v. Banks*, 65 F.4th 56, 61 (2d Cir. 2023) (finding that plaintiffs in a suit against NYCPS was not entitled to an injunction because it "depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal citation and quotation marks omitted).

Finally, the equities and public interest weigh against issuing a permanent injunction. Plaintiff is seeking to hamstring the Government from lawfully effectuating discretionary decisions with respect to funding, agency priorities, and combatting discrimination. There is no public interest in compelling federal agencies to make discretionary funding decisions. *See*

*American Association of University Professors*, 2025 WL 1684817, at *14-15 (rejecting plaintiffs' arguments regarding the public interest and equities because the court should not "direct the policies of the [Government] first and ask questions later"). As such, injunctive relief is not appropriate.

## CONCLUSION

This case does not belong in federal district court and even if it did, ED's actions were lawful. The Court should grant Defendants' cross-motion to dismiss or, in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56, and deny Plaintiff's motion for summary judgment.

Dated: New York, New York
      January 14, 2026

                                    Respectfully submitted,

                                    JAY CLAYTON
                                    United States Attorney for the
                                    Southern District of New York
                                    *Attorney for Defendants*

By:    */s/ Jeffrey Oestericher*
           JEFFREY S. OESTERICHER
           Assistant United States Attorneys
           86 Chambers Street, 3rd Floor
           New York, New York 10007
           Tel: (212) 637-2695

           STANLEY E. WOODWARD, JR.
           Associate Attorney General
           ABHISHEK KAMBLI
           Deputy Associate Attorney General
           U.S. Department of Justice
           950 Pennsylvania Avenue, NW
           Washington, D.C. 20530
           Stanley.Woodward@usdoj.gov
           Abhishek.Kambli@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules as amended by this Court's order, ECF No. 49, dated December 16, 2025. As measured by the word processing system used to prepare it, this memorandum contains 9,961 words.

*/s/ Jeffrey Oestericher*
Assistant United States Attorney