UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK

                                Plaintiff,

                        v.                                         25-cv-08547 (AS)(OTW)

UNITED STATES DEPARTMENT OF EDUCATION,
 LINDA MCMAHON, in her official capacity as
Secretary of the United States Department of Education,
KIMBERLY M. RICHEY, in her capacity as Assistant
Secretary for Civil Rights, and LINDSEY M. BURKE, in
her capacity as Deputy Chief of Staff for Policy and
Programs,

                                Defendants.

------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' CROSS MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Dated: New York, New York
      February 6, 2026

MURIEL GOODE-TRUFANT
Corporation Counsel of
 the City of New York
100 Church Street
New York, New York 10007
(212) 356-1000

*Attorney for Plaintiff*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.      THE DEPARTMENT'S DISCONTINUATION OF NYCPS' MSAP GRANTS
CONSTITUTED AN UNLAWFUL TITLE IX ENFORCEMENT ACTION ....... 3

     A.    NYCPS DRAWS THE COURT'S ATTENTION TO THE FOLLOWING
SIGNIFICANT FACTS ................................................................................ 3

     B.    THE CROSS MOTION'S ATTEMPT TO RECHARACTERIZE THE
DISCONTINUATION CANNOT CAMOUFLAGE AN OBVIOUS TITLE IX
ENFORCEMENT ACTION ......................................................................... 6

II.     NYCPS IS ENTITLED TO SUMMARY JUDGMENT ....................................... 8

     A.    THE DEPARTMENT'S MOTION TO DISMISS SHOULD BE DENIED
BECAUSE THIS COURT HAS JURISDICTION OVER NYCPS' CLAIMS
AND THE RELIEF SOUGHT ...................................................................... 8

          1)   NYCPS Asserts Claims Based on Violations of
Statutes and Regulations, not on the Terms of the
MSAP Grants ............................................................................. 9

          2)   Plaintiff Seeks Vacatur and Future
Determinations that Comply with Applicable
Procedural Requirements .......................................................... 13

     B.    THE EVIDENCE ESTABLISHES NYCPS' ENTITLEMENT TO
JUDGMENT ON EACH OF ITS FIVE CAUSES OF ACTION ......................... 16

          1)   The Discontinuation is an Unlawful Title IX
Enforcement Action Taken Without Observance of
Procedure Required by Law in Violation of the
APA ............................................................................................ 17

          2)   NYCPS is entitled to Judgment for the
Department's Violation of the APA on Counts II
through V ................................................................................... 19

          a)   NYCPS is Entitled to Judgment Under the APA
for Agency Action Taken Without Observance of
MSAP Procedure as Required by Law ...................................... 19

b)   NYCPS is Entitled to Judgment Under the
APA for the Department's Arbitrary and Capricious
Actions ................................................................................ 21

c)   NYCPS is Entitled to Judgment for the
Department's Violation of APA Through Agency
Action Without Notice and Comment Rulemaking. ............................... 25

d)   NYCPS States a Claim for Violation of APA
through agency action that is contrary to law ........................... 27

C.    NYCPS IS ENTITLED TO VACATUR, DECLARATORY RELIEF,
AND A PERMANENT INJUNCTION ............................................................. 28

CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. v. Metro Sch. Dist. of Martinsville,*
    75 F.4th 760 (7th Cir. 2023) .......................................................................27

*Am. Ass'n of Univ. Professors v. Trump,*
    No. 25-cv-07864-RFL, 2025 U.S. Dist. LEXIS 224922 (N.D. Cal. Nov. 14,
    2025) ...............................................................................................15, 16, 23

*Carson Products Co. v. Califano,*
    594 F.2d 453 (5th Cir. 1979) ..................................................................20, 21

*Dep't of Educ. v. California,*
    604 U.S. 650 (2025)....................................................................................16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020)........................................................................................25

*Doe v. Bayertown Area Sch. Dist.,*
    897 F.3d 518 (3d Cir. 2018)........................................................................27

*Fairfax Cty Sch. Bd, et al., v. McMahon, et al.,*
    Nos. 25-2087 (L), 25-2107 ..........................................................................11

*FDA v. Wages & White Lion Invs. LLC,*
    604 U.S. 542 (2025)....................................................................................24

*Grimm v. Gloucester Cnty Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc
    denied,* 976 F.3d 399 (4th Cir. 2020), *cert denied,* 141 S. Ct. 2878 (June 28,
    2021) ..........................................................................................................27

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ......................................................................12

*Maine v. U.S. Dep't of Agric.,*
    778 F. Supp. 3d 200 (D. Me. 2025) ........................................................11, 16

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) .......................................................................8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
  145 S. Ct. 2658 (2025) .......................................................................................... 16

*New York v Nat'l Sci. Found.*,
  793 F. Supp. 3d 562 (S.D.N.Y. 2025) .................................................................. 12

*New York v. Trump*,
  778 F. Supp. 3d 578 (S.D.N.Y. 2025) .................................................................. 24

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) .............................................................................. 27

*President & Fellows of Harv. Coll. v. U.S. Dep't of Health & Hum. Servs.*,
  798 F. Supp.3d 77 (D. Mass. 2025) ............................................................... *passim*

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ................................................................................. 12, 13, 17

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008) .................................................................................... 5

*Texas v. Cardona*,
  743 F. Supp. 3d 824 (N.D. Tex. 2024) .................................................................. 26

*Washington v. U.S. Dep't of Educ.*,
  No. C25-1228-KKE, 2025 U.S. Dist. LEXIS 207342 (W.D. Wash. Oct. 21,
  2025) ...................................................................................................................... 14

*Washington v. U.S. Dep't of Educ.*,
  No. C25-1228-KKE, 2025 U.S. Dist. LEXIS 263059 (W.D. Wash. Dec. 19,
  2025) ................................................................................................ 15, 22, 23, 29

*Washington v. U.S. Dep't of Health & Hum. Servs.*,
  No. 6:25-cv-01748-AA, 2025 U.S. Dist. LEXIS 211013 (D. Or. Oct. 27,
  2025) ............................................................................................................. 10, 28

**Statutes**

20 U.S.C. § 1681 *et seq* ............................................................................................. 6

20 U.S.C. § 1682 .............................................................................................. *passim*

20 U.S.C. § 1683 ........................................................................................... 11, 19

20 U.S.C. §7231d(c) ............................................................................................. 4, 7

**Other Authorities**

2 C.F.R. § 200 ........................................................................................................19

2 C.F.R. § 200.342 ............................................................................................19, 20

34 C.F.R. §75.253 ...................................................................................... *passim*

86 Fed. Reg. 32637 (June 22, 2021) ..................................................................25

Fed. R. Civ. P. 25(d) ..............................................................................................1

Fed. R. Civ. P. 201(b)(2) ........................................................................................5

## PRELIMINARY STATEMENT

Plaintiff the Board of Education of the City School District of the City of New York, operating as New York City Public Schools ("NYCPS"), submits this Memorandum of Law in Opposition to the Cross Motion to Dismiss, or alternatively, for Summary Judgment (Dkt. No. 57) ("Cross Motion") of Defendants the United States Department of Education, Linda McMahon, Kimberly M. Richey,[1] and Lindsey M. Burke (collectively, the "Department"), and in further support of its Motion for Summary Judgment (Dkt. No. 50).

In its opening Memorandum of Law (Dkt. No. 52) ("NYCPS MOL"), NYCPS demonstrated that the Department's discontinuation of five NYCPS multi-year Magnet School Assistance Program ("MSAP") grants was an enforcement action pursuant to Title IX; that the Department took that action based *solely* on asserted findings that NYCPS' Guidelines to Protect Transgender and Gender Expansive Students ("NYCPS Guidelines") violate Title IX; and that the enforcement action was unlawful because the Department concededly did not follow any of the procedures required under Title IX *before* federal funds may be curtailed, including investigation, notice, and an opportunity for a hearing (Count 1).

NYCPS further demonstrated that the Department has misleadingly tried to characterize the Title IX enforcement as something else—a discretionary determination under the MSAP regulations that continuing the grants would not be "in the best interest" of the Federal Government that is somehow independent of Title IX. Its attempt to recast its actions fails because the Department identified only a single basis for that determination—the purported violation of

---

[1] Per Fed. R. Civ. P. 25(d), Assistant Secretary Richey has automatically been substituted as a defendant in this action.

Title IX—and sought only one remedy—that NYCPS rescind the Guidelines. The Department's switch in rationale should be seen for what it is—a cynical attempt to circumvent review of its actions—and rejected as unsupported by the evidence.

NYCPS also demonstrated that the Department's actions were procedurally invalid and contrary to law in multiple other ways:

- The Department discontinued the MSAP grants without affording NYCPS the opportunity to seek reconsideration, as required under the MSAP regulations (Count II);

- The discontinuation of the grants was arbitrary and capricious, on multiple grounds (Count III);

- The discontinuation was also unlawful because the Department failed to first promulgate a rule pursuant to the APA to effectuate its new interpretation of Title IX (Count IV); and

- The discontinuation was unlawful because it was based on the Department's new interpretation of Title IX, which is contrary to prevailing law (Count V).

NYCPS further demonstrated that this Court has jurisdiction over all of NYCPS' claims and the relief it seeks: vacatur of the discontinuation, and declaratory and injunctive relief to prevent future action by the Department to refuse to continue NYCPS' MSAP funding on the basis of Title IX, without complying with the requisite procedures before doing so.

The Department's arguments opposing summary judgment and seeking dismissal or summary judgment in its favor all fail. Its challenge to this Court's jurisdiction depends on smoke and mirrors: mischaracterizing the nature of NYCPS' claims and the relief it seeks, in an effort to move this case to the Court of Federal Claims as "in essence" concerning a breach of contract; and mischaracterizing its action as being taken under the Department's MSAP

regulations, which the Department incorrectly asserts give it unbounded discretion to discontinue grants "in the best interest of the Federal Government."

The Department's response on the merits is likewise unpersuasive. Its arguments as to why its non-continuation decision was in accordance with required procedures and not arbitrary and capricious, why no rulemaking was required in connection with its new interpretation of Title IX, and why its interpretation of Title IX was not contrary to law, all rely on the fiction that Title IX does not apply.

NYCPS relies on the statements of facts in the Complaint (Dkt. No. 1), NYCPS MOL, and the accompanying declarations and exhibits (Dkt. Nos. 6 - 6-5; 32 – 32-2; 51 - 51-2) filed in support of the Motion, all of which are incorporated by reference here, and the Administrative Record ("AR"), all of which demonstrate that as discussed below, NYCPS is entitled to summary judgment on its claims, and the Department's cross-motion to dismiss or for summary judgment should be denied in all respects.

## ARGUMENT

I.    **THE DEPARTMENT'S DISCONTINUATION OF NYCPS' MSAP GRANTS CONSTITUTED AN UNLAWFUL TITLE IX ENFORCEMENT ACTION**

### A.  NYCPS Draws the Court's Attention to the Following Significant Facts

*First,* the Department refused to continue NYCPS' MSAP grants based *solely* on its "finding" of a Title IX violation (the "Discontinuation"). In a letter dated September 16, 2025 (the "Discontinuation Letter"), then-Acting Assistant Secretary Craig Trainor of the Department's Office for Civil Rights ("OCR"), informed NYCPS that the MSAP grants were being "non-continued" ***based entirely on OCR's "findings"*** that the NYCPS Guidelines violate Title IX, by allowing transgender students to use bathrooms, changing room and locker room facilities,

participate in athletic activities, and be provided with overnight accommodations on school trips, consistent with their gender identity. Declaration of Melissa Aviles-Ramos, former Chancellor of the Board of Education ("Aviles-Ramos Decl.") ¶ 6 and Ex. 1 (Dkt. Nos. 6, 6-1); AR USDOE000001-000004.

The Discontinuation Letter made **10 references** to Title IX, did not mention any other justification, and expressly stated that the Department based its decision not to certify, and to refuse to continue the NYCPS MSAP grants on its "findings" that NYCPS' Guidelines violate Title IX:

> *As a result of these findings*, I will not certify NYC DOE's grant under 20 U.S.C. §7231d(c). Likewise, NYC DOE's MSAP grant will be non-continued under 34 C.F.R. §75.253(a)(5) because it is no longer in the best interests of the Federal Government.

*Id.*, p. 3 (emphasis added).

The Letter then identified six remedial actions to correct the asserted Title IX violation, which NYCPS was required to take as a precondition to any reconsideration of the Discontinuation. *Id.*, pp. 3-4.

Taken together, the Department's issuance of Title IX findings, imposition of mandatory remedial measures, and refusal to continue the MSAP grants were plainly taken to fulfill the Trump Administration's directive—issued in Presidential Executive Orders later adopted by the Department in a Dear Colleague Letter—to cut off schools' grant funding because their adherence to "gender ideology" constituted a violation of Title IX.[2]

---

[2] *See* Executive Order ("EO") 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025); EO 14190, 90 Fed. Reg. 8853 (Jan. 29, 2025); EO 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025); and Craig Trainor (Feb 4, 2024), Dear Colleague Letter, Washington, D.C.; U.S. Department of Education, Office for Civil Rights, publicly available at https://www.ed.gov/media/document/title-ix-enforcement-directive-dcl-109477.pdf.

*Second*, in response to NYCPS' September 19, 2025 letter pointing out that the Department's issuance of findings and refusal to continue MSAP funding based on alleged non-compliance [with Title IX]" had "deprived [NYCPS] of the procedures and due process required by federal statutes and regulations before discontinuing funding," Aviles-Ramos Decl. ¶ 7 and Ex. 2, p. 1 (Dkt. Nos. 6, 6-2); AR USDOE 000019-21, the Department quickly attempted to distance itself from its Title IX findings.

Thus, on September 26, 2025, a letter from Deputy Chief of Staff for Policy and Programs Lindsey M. Burke to NYCPS (the "Burke Letter"), was scrubbed of any reference to Title IX, (Dkt 6, 6-4); AR USDOE000009-10, and cagily recast the decision as having been based only on "specific concerns with [NYCPS'] compliance with applicable federal civil rights laws," which purportedly led the Office for Civil Rights to be "unable to certify that the civil rights assurances [NYCPS] made as part of its MSAP grant would be met." The Burke Letter sidesteps the fact that the Department had specifically required NYCPS to renounce the Guidelines and adopt the agency's interpretation of Title IX in order to seek reconsideration of the Discontinuation. *Id.*

*Third*, in a January 14, 2026 press release, the Department announced Title IX "investigations" of NYCPS—and seventeen other school districts—purportedly based on "complaints" that NYCPS "maintain[s] policies or practices that discriminate on the basis of sex by permitting students to participate in sports based on their 'gender identity,' not biological sex."[3]

---

[3] Pursuant to Fed. R. Civ. P. 201(b)(2), NYCPS requests that this Court take judicial notice of the press release. https://www.ed.gov/about/news/press-release/us-department-of-educations-office-civil-rights-initiates-18-title-ix-investigations. *See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (judicial notice can be taken of public documents, including "press coverage, prior lawsuits, or regulatory filings.").

That announcement came on the very day the Department filed its Cross-Motion with this Court, which disingenuously asserted that "the MSAP grants were not discontinued pursuant to Title IX." Cross Motion at 1.

### B. The Cross Motion's Attempt to Recharacterize the Discontinuation Cannot Camouflage An Obvious Title IX Enforcement Action

At the heart of the Department's Cross Motion is its attempt, at every opportunity, to recharacterize and recast the Discontinuation Letter, and thereby, to camouflage the agency action that the Letter represents, in order to convince this Court that the Department's decision not to continue NYCPS' MSAP grants, and its attempt to impose remedial steps on NYCPS, did not constitute an unlawful Title IX enforcement action, and was instead an exercise of discretion under 34 C.F.R. § 75.253(a)(5) that stood apart from its "findings" of Title IX violations.

To that end, the Cross Motion repeatedly selectively excerpts from, and misleadingly quotes, the Discontinuation Letter. Cross Motion at 5. First, the Cross Motion quotes the Letter describing the Department as "deeply concerned about NYC DOE's *Guidelines to Support Transgender and Gender Expansive Students*," but conveniently omits the rest of the sentence, which reads "the text of which authorizes discrimination on the basis of sex *in violation of Title IX* of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq*.," *See* Dkt. No. 6-1, p. 1; USDOE000001 (emphasis added).

Second, the Department admits that the Letter "detailed how, in the agency's view, the Guidelines *conflicted with Title IX*," (emphasis added), but leaves out the Letter's three separate findings of Title IX violations: (1) that "the Guidelines violate Title IX," *Id.*, p. 2; AR USDOE000002;  (2) that "when recipients of federal funding require schools to treat 'trans-identifying' males as if they were 'females,' including in intimate traditionally sex-separate

facilities, *they defeat the very purpose of Title IX*," *Id.*, p. 3; AR USDOE000003 (emphasis added); and (3) that "allowing males in girls' sports, intimate facilities, or private spaces, such as with overnight sleeping accommodations, *violates Title IX* by creating a hostile environment or by denying females equal access to benefits of education programs or activities." *Id.* (emphasis added).

Third, the Cross Motion highlights the fact that the Department "declined to certify NYCPS as compliant with 20 U.S.C. § 7231d(c)," and "identified 34 C.F.R. § 75.253(a)(5) as the basis for non-continuation of the MSAP grants," while disingenuously failing to include that the basis for both of those actions was expressly stated to be its Title IX findings. *Id.* Relatedly, the Cross Motion asserts, at 5-6, that NYCPS "acknowledg[ed] that ED non-continued the grants 'under 34 C.F.R. 75.253(a)(5) because it is no longer in the best interest of the Federal Government to fund these programs,'" but once again, selectively and disingenuously edited out the very next part of NYCPS' letter that reminded the Department, "Your letter states that this decision is based on "findings" that NYCDOE's Guidelines to Support Transgender and Gender Expansive Students ("Guidelines") violate Title IX." Decl., ¶ 6 and Ex. 2 (Dkt. No. 6-2) at 1; AR USDOE000019.

Finally, the Cross Motion describes the Letter as having "provided specific steps that Plaintiff could take to address [the Department's] concerns," while omitting that those "specific steps" included "rescind[ing] any guidance that violates Title IX," and "remov[ing] or revis[ing] any internal and public-facing statements or documents that are inconsistent with Title IX." *Id.*, p. 4; AR USDOE000004..

Despite the smoke and mirrors, the Department's arguments do not—and cannot—change the true nature of the Department's September 16, 2025 agency action: upon a review of

the evidence, it is irrefutable that the Department engaged in a Title IX enforcement action without first following the exacting procedures mandated by Congress, including an investigation, notice, and opportunity for a hearing. 20 U.S.C. § 1682.

## II.    NYCPS IS ENTITLED TO SUMMARY JUDGMENT

### A.    The Department's Motion to Dismiss Should be Denied Because This Court Has Jurisdiction Over NYCPS' Claims and the Relief Sought

As NYCPS demonstrated in its opening Memorandum of Law, this Court has jurisdiction to decide all of the claims NYCPS asserts and to grant the relief sought. NYCPS MOL at 16-19. The Administrative Procedure Act, 5 U.S.C. §§ 701 *et. seq.* ("APA"), waives federal sovereign immunity for suits alleging injury by agency action, *id.* § 706, which is the essence of NYCPS' claims. The exceptions to jurisdiction under the APA do not apply here: where the suit seeks "money damages," *id.* § 702, or if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *id.* § 704.

The Department nonetheless argues that the Tucker Act, which requires claims sounding in contract to be heard by the Court of Federal Claims, applies here. Cross Motion at 9-14. The Department's arguments mischaracterize both NYCPS' claims and the relief sought, and should be rejected.

As the Department recognizes, *id.* at 9, the Court of Federal Claims has jurisdiction over a claim only if it is in "essence" contractual, and this characterization depends on two determinations: (1) the source of the rights asserted in the claim, and (2) the type of relief sought. Under this familiar test, *see, e.g., Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982),

jurisdiction lies in this Court. NYCPS' claims are not contractual, and NYCPS does not seek a judgment awarding monetary relief.

### 1) NYCPS Asserts Claims Based on Violations of Statutes and Regulations, not on the Terms of the MSAP Grants

The Department argues that the source of the rights NYCPS asserts is the grant agreements themselves, positing that the mere existence of the grants means the claims are necessarily based on their terms: "Plaintiff does not dispute, and the record establishes, that it is in a contractual relationship with the Government and that NYCPS is challenging the discontinuance of its MSAP grants and funding." The Department reasons that because the Complaint challenges the discontinuation of the grants, "[t]he source of the right Plaintiff is asserting therefore is the grant agreements themselves, and not an "independent, non-contractual source. …" Cross Motion at 10-11, and jurisdiction belongs in the Court of Federal Claims.

The Department's attempt to recast NYCPS' claims as contractual reflects a troubling disregard for the essence of Title IX, which has as its goal the preservation of the continuity of education-related funding, regardless of whether it is contractual in nature. The Department's contractual argument fails because it ignores the nature of NYCPS' claims. NYCPS' first claim challenges the Department's failure to comply with procedures required under Title IX before discontinuing funding (Count I)—procedures that apply to all federal education funding. This claim is not contractual; rather, it seeks to further the purpose of Title IX and safeguard the continuity of funding by adjudicating "whether statutory procedural requirements were met." *President & Fellows of Harv. Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp.3d 77, 108 (D. Mass. 2025) ("*Harvard*") (rejecting argument that Tucker Act applied to a claim for violation of Title VI). NYCPS' second claim for failure to comply with procedures required under the MSAP

statute and regulations (Count II) is likewise not a contract claim, nor are NYCPS' challenges to the Discontinuation as arbitrary and capricious (Count III), as imposing a new interpretation of Title IX without following rulemaking requirements (Count IV), and as contrary to prevailing court interpretations (Count V).

That these claims arise under circumstances where grant agreements *exist* does not transform them into claims *based on* the terms of those grant agreements. *See Washington v. U.S. Dep't of Health & Hum. Servs.*, No. 6:25-cv-01748-AA, 2025 U.S. Dist. LEXIS 211013 at \*22 (D. Or. Oct. 27, 2025) ("'The fact that there are underlying contractual relationships between the Plaintiff States and HHS does not automatically convert a claim asserting rights based on federal regulations into one which is, at its essence, a contract claim'") *(quoting Colorado v. . U.S. Dep't of Health & Hum. Servs.*, 788 F. Supp. 3d 277, 296 (D.R.I. 2025)) (cleaned up). It is clear that "[s]eeking to ensure compliance with statutory and regulatory commands is a matter beyond the scope of the Tucker Act's exclusive jurisdiction." *Id.* at \*23. As the court concluded in *Harvard*, "[r]egardless of how these claims are resolved, the government will not necessarily be obligated to disburse any additional funds nor will any contract terms need to be considered as part of the analysis." *Harvard*, 798 F. Supp.3d at 108.

The Department's other jurisdictional arguments are equally unavailing. It first asserts, without any support, that NYCPS' challenge to the Department's Title IX interpretation cannot be likened to a challenge to policies or guidance because the Title IX policy is not part of the AR. Cross Motion at 10, 14. However, the new policy, first set out in Presidential Executive Orders, was adopted in the Department's February 4, 2025 "Dear Colleague Letter," ("DCL") in which the Department vowed to "enforce Title IX consistent with President Trump's Order." *See*

Cmpl. ¶¶ 73-76 and nn. 44, 45, 47.[4] The Department applied that policy to NYCPS in its Discontinuation Letter, which is part of the AR. That NYCPS does not here challenge the EOs or the DCL themselves is irrelevant, since the Department's enforcement of those policies violates the requirements of Title IX and is subject to challenge in this Court:

> In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon finding a failure to comply with any requirement imposed pursuant to section 1682 of this title, any aggrieved person … may obtain judicial review of such action in accordance with chapter 7 of Title 5, and such action shall not be deemed committed to unreviewable agency discretion within the meaning of that title.

20 U.S.C. § 1683.[5]

In fact, courts elsewhere have found that claims seeking to enforce the requirements of Title IX *do* confer jurisdiction on district courts. For example, in *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 225 (D. Me. 2025) ("*Maine*"), the district court had jurisdiction to issue injunctive relief barring USDA interference with the State of Maine's future federal funding based on alleged violations of Title IX without first complying with legally required procedures, where "the Court's primary function is to determine if the [agency] followed the proper procedure to effectuate the termination of a portion of [Maine's] Title IX funds." *Id.*

---

[4] This Court can take judicial notice of the EOs (published in the Federal Record) and the DCL (published on the Department's website), all of which are public pronouncements by the Government.

[5] The Department itself recently acknowledged that enforcement proceedings under 20 U.S.C. § 1682 are the Department's "exclusive procedures to enforce Title IX," by suspension, termination, or refusal to grant or continue federal financial assistance. Brief of Defendants-Appellees, *Fairfax Cty Sch. Bd, et al., v. McMahon, et al.*, Nos. 25-2087 (L), 25-2107, Nov. 19, 2025, at 5, n1 and associated text. This flatly contradicts its reliance at p. 16 of the Cross Motion,  on the fact that "Title VI—which is procedurally identical to Title IX—is not the 'sole and exclusive legal tool' available to an agency to terminate funding…." (*citing AAUP v. U.S. Dep't of Justice*, No. 25 Civ. 2429 (MKV), 2025 WL 1684817, at *15 (S.D.N.Y. Jun. 16, 2025)).

Second, the Department cites *New York v Nat'l Sci. Found.*, 793 F. Supp. 3d 562, 583 (S.D.N.Y. 2025) (quoting *Ingersoll-Rand Co. v. United States,* 780 F.2d 74, 78 (D.C. Cir. 1985)), for the proposition that "the mere allegation that the grant was discontinued in violation of Title IX does not provide the Court with jurisdiction." Cross Motion at 10. Notably, though, in *Ingersoll-Rand*, the "essential character of the action" was ruled to be based on contract, 780 F.2d at 78, so much so that the *Ingersoll-Rand* court expressly noted, "[t]hat the [contract] termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations." *Id. Ingersoll-Rand* also stressed that adjudicating the claims there about the government's reasons for resoliciting bids "calls for knowledge of the government contracting process." *Id.* Here the opposite is true: the presence of grant agreements does not transform the essential character of this action into a contract case.

Third, the Department is similarly incorrect that *Chenery* and its progeny do not apply to the question of jurisdiction. Cross Motion at 15. Where the Court's jurisdictional inquiry is inherently intertwined with its assessment of the Government's claimed basis for its actions— i.e. whether they are in fact contractual in nature—*Chenery* and its progeny are the appropriate guideposts to inform the Court's analysis. *See Harvard,* 798 F. Supp.3d at 126 ("the *post hoc* rationalizations of the agency ... cannot serve as a predicate for agency action.") (quoting *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539 (1981)). Thus, the citation in the Discontinuation Letter to 34 C.F.R. § 75.253(a)(5)—which the Department now refers to as "a contractual provision," Cross Motion at 16—fails because the Letter was replete with findings that NYCPS violated Title IX, those findings were the sole basis given for the grant non-continuation, and the Department demanded that NYCPS remedy the violation.

Finally, the *Chenery* doctrine should also lead this Court to reject Department's argument that by invoking the MSAP regulations—which it asserts are wholly committed to agency discretion—this Court has no jurisdiction to review the Discontinuation. Cross Motion at 17. Under *Chenery*, the Department's pretextual reference to 34 C.F.R. § 75.253(a) cannot transform its enforcement action into something else after the fact. Just as a *post hoc* rationalization cannot save an unlawful action, neither can it be invoked to exempt an unlawful action from judicial review. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).[6]

### 2) Plaintiff Seeks Vacatur and Future Determinations that Comply with Applicable Procedural Requirements

The Department's focus on whether NYCPS may eventually obtain money in connection with its claims misses the point. The relevant question is not whether "the prime objective of the plaintiff is to obtain money from the Government." Cross Motion at 11. What matters is what relief NYCPS seeks. NYCPS' motion for summary judgment seeks an order that vacates the Department's unlawful actions, enjoins the Department from repeating them in the future, and requires that a lawful continuation determination be promptly made. Notice of Motion, Dkt. No. 50.

The Complaint also seeks similar relief vacating the Discontinuation and enjoining its implementation, and enjoining the Department from freezing, terminating, or otherwise interfering with MSAP grant funding *based on findings of alleged Title IX violations, without complying with required procedures under Title IX and Department regulations*. Compl., Prayer

---

[6] See, *infra*, n.5 and related text. See also, NYCPS MOL at 11 (discussing the *Chenery* doctrine in detail).

for Relief § IV(d). The Department's description of the relief requested in the Prayer for Relief, Cross Motion at 11, misleadingly omits this clarifying language.

The relief NYCPS seeks is plainly within this Court's jurisdiction because it seeks "a process correction, not a payment direction." *Washington v. U.S. Dep't of Educ.*, No. C25-1228-KKE, 2025 U.S. Dist. LEXIS 207342 at *32 (W.D. Wash. Oct. 21, 2025). *See also Harvard,* 798 F. Supp.3d at 108 (adjudicating claims that government violated Title VI by not following required procedures "will merely determine whether statutory procedural requirements were satisfied" and will not necessarily obligate the government "to disburse any additional funds").

Instead of responding to the relief NYCPS actually seeks through the instant motion, the Department points to relief sought in NYCPS' now withdrawn motion for a preliminary injunction and cites to statements in the supporting declarations describing the irreparable harm that would result from the abrupt, mid-year loss of MSAP funding. *See* Cross Motion at 12. The PI motion sought access to previously awarded funding to preserve the status quo, and to temporarily relieve the irreparable harm caused by the Department's irresponsibly timed Discontinuation of the current-year MSAP grants and its denial of access to carryover funding that would otherwise have been available for current-year expenses. As the Department well knows, pursuant to an agreement in which the Department agreed and consented to allow NYCPS' continued access to the carryover funds, and thereupon, NYCPS withdrew the PI motion without prejudice, NYCPS no longer seeks that relief. Consent Order, Dkt 42.

As to the current motion, the Department again misleadingly attempts to convert the relief sought by NYCPS into contract-based remedies. It acknowledges that NYCPS seeks only declaratory, non-monetary relief "to clarify and guide the relationship between NYCPS and the

Department with regard to continuation determinations for the lifetime of the MSAP grants," Cross Motion at 12 (quoting NYCPS MOL at 19), but nevertheless argues, without any support, that this Court has no jurisdiction to grant such relief because NYCPS is thereby "seeking intervention into its contractual relationship with the Government." *Id.* In so arguing, it misleadingly reimagines relief that would simply require the Department comply with the terms of Title IX before taking enforcement action impacting grant continuation to be "contractual in nature." Not so. As noted above, relief that compels observance of statutory requirements under Title IX is not converted into a contractual remedy simply because the enforcement action being restrained would preserve funding pursuant to a grant agreement. See *Harvard, supra* at *48.

The Department also attempts to cast as "contractual in nature" NYCPS' requests for vacatur of the grant discontinuations and an order that the Department provide new, lawful continuation determinations. *Id*. The Department argues that there is no "independent source" outside of the grant agreements "entitling NYCPS to a continuation determination." Title IX and the Department's statutory and regulatory procedures  constitute such sources, where the Department discontinues funding without following them. *See, e.g., Am. Ass'n of Univ. Professors v. Trump*, No. 25-cv-07864-RFL, 2025 U.S. Dist. LEXIS 224922 at *111 (N.D. Cal. Nov. 14, 2025) ("*AAUP*") ("Title VI and IX expressly authorize 'judicial review … in accordance with the APA of any action 'terminating or refusing to grant or to continue financial assistance' based on a purported Title VI or IX violation.") (cleaned up, internal quotations omitted); *Washington v U.S. Dep't of Educ*., No. C25-1228-KKE 2025, US Dist. LEXIS 263059 at *57-58 (W.D. Wash. Dec. 19, 2025) (holding that Department "must make a lawful continuation determination as to each Grant").

The Department's reliance on the Supreme Court's emergency docket decisions in *Dep't of Educ. v. California*, 604 U.S. 650 (2025) ("*California*") and *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ("*NIH*") to support its jurisdictional argument is misplaced, as neither case addressed claims based on statutory violations. *But see, Harvard, supra*, *45-46 (upholding District Court jurisdiction of claim that defendants violated Title VI by terminating federal funding without following statutory procedures); *AAUP*, 2025 U.S. Dist. LEXIS 224922 at *111-112 (same, as to claims that suspension of funding violated Title VI and Title IX requirements); *Maine*, 778 F. Supp. 3d at 224-25 (same, as to Title IX procedures).

Finally, the Department also relies on *California* and *NIH* for its contention that APA review of its Title IX enforcement action is not available. This argument rests on the Department's mistaken position that this is a contract case that belongs in the Court of Federal Claims. For the reasons stated above, that is not the case.[7]

In sum, this Court has subject matter jurisdiction over NYCPS' claims and can grant the vacatur, declaratory and injunctive relief sought.

## B. The Evidence Establishes NYCPS' Entitlement to Judgment on Each of its Five Causes of Action

Having failed entirely to establish that the Discontinuation constituted anything other than a Title IX enforcement action, the Cross Motion's other arguments must similarly fall,

---

[7] The Department also baselessly argues that "without the non-continuation decision, there is no final agency action." Cross Motion at 16 n.3 (citing *Borg-Warner Protective Services Corp. v. E.E.O.C.*, 245 F.3d 831, 836 (D.C. Cir. 2001); *Georator Corp. v. E.E.O.C.*, 592 F.2d 765, 767 (4th Cir. 1979)). Those cases, however, dealt with EEOC determinations of reasonable cause that "can fix no obligation nor impose any liability on the plaintiff." *Borg-Warner*, 245 F.3d at 836 (quoting *Georator Corp.*, 592 F.2d at 767). This is plainly not the case here, where the Department's decision to non-continue the grants was in reality a final Title IX enforcement action.

entitling NYCPS to judgment on each of its five causes of action under the APA as a matter of law: the Department acted "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), in multiple respects (Counts I, II, and IV); the actions of the Department in discontinuing NYCPS' MSAP funding were "arbitrary [and] capricious," *id*. § 706(2)(A) (Count III); and the Department's actions were "otherwise not in accordance with law," *id*. (Count V). On each of these grounds, the Discontinuation of NYCPS' MSAP grants is void, illegal, and of no force or effect, and should be vacated and set aside, and declaratory and injunctive relief should issue to govern prospective continuation decisions.

### 1) The Discontinuation is an Unlawful Title IX Enforcement Action Taken Without Observance of Procedure Required by Law in Violation of the APA

NYCPS is entitled to summary judgment under the APA for the Department's failure to comply with the procedural requirements under Title IX. *See* Cmpl. ¶¶ 50-63; 82-92; 103-108; NYCPS MOL at 15-16, 22-23. The overwhelming evidence before this Court is that the Discontinuation was premised solely on NYCPS' alleged violations of Title IX. While the Department asserts that the Discontinuation was not based on Title IX, but rather on the "best interest of the Federal Government," Cross Motion at 2, that claim is belied by its clear finding of Title IX violations in the Discontinuation Letter, its demand for immediate action to remedy such violations, and the impending non-continuation of MSAP grants if NYCPS failed to take those steps.[8]

---

[8] Under *Chenery*, this Court should find that the Discontinuation constituted a Title IX enforcement action, and that the citations to 34 C.F.R. § 75.253(a) in the Discontinuation Letter were entirely pretextual. *See* NYCPS MOL at 11 (discussing the *Chenery* doctrine in detail).

Consistent with its purpose of protecting the civil rights and educational opportunities for students, Title IX contains robust procedural requirements that the Department must follow before taking any action to limit, remove, or "refuse to continue" funding based on purported violations. Compliance with Title IX may be enforced "by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been *an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement*." 20 U.S.C. § 1682 (emphasis added). Additionally, before such a refusal may be made, the Department must "file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. *No such action shall become effective until thirty days have elapsed after the filing of such report.*" *Id*. (emphasis added).

Here, the Department purported to find a violation of Title IX without following these exacting procedures. Cmpl. ¶¶ 88, 106. Allowing the Department to circumvent them by stripping school districts of funding before a proper investigation and a hearing would undermine Title IX's statutory scheme and could have dire consequences for school districts throughout the country.

The Department's only proffered defense to this claim is entirely unpersuasive: "Title IX's procedural requirements are inapplicable here." Cross Motion at 21. In assessing this assertion, we ask this Court (1) to keep in mind the Department's mid-course pivot to remove all but the barest reference to Title IX from its letter denying "reconsideration" and from the text of the Cross Motion; and simultaneously (2) to take judicial notice of the fact that on January 14, 2026, the Department initiated a Title IX investigation of NYCPS based on the very same policy

upon which it bases the Discontinuation. Given those facts, NYCPS submits that the Department conduct effectively amounts to a concession that the Discontinuation was unlawful.

Accordingly, if this Court finds that the Discontinuation constituted a Title IX enforcement action—a finding amply supported by the facts—it should likewise find that the Department has effectively conceded that it failed to satisfy the procedural pre-conditions to a Title IX enforcement action discontinuing the MSAP grants, and summary judgment on Count I should follow, along with an order mandating that the Department comply with all of the requirements of § 1683, both in connection with the issuance of new continuation decisions in regards to NYCPS' five MSAP grants, and in connection with its now pending Title IX investigation.

### 2) NYCPS is entitled to Judgment for the Department's Violation of the APA on Counts II through V

While this Court need go no further than deciding NYCPS' Count I claim to resolve this litigation, NYCPS is equally entitled to judgment on Counts II to V.

#### a) NYCPS is Entitled to Judgment Under the APA for Agency Action Taken Without Observance of MSAP Procedure as Required by Law

NYCPS is entitled to judgment under the APA based on the Department's failure to follow the procedures required by MSAP and its implementing regulations (MSAP, General Education Provisions Act ("GEPA"),  2 C.F.R. § 200); Cmpl. ¶¶ 50-65; 82-92; 112-115, NYCPS MOL at 22-23, and in particular, its failure to provide NYCPS with a meaningful opportunity to seek reconsideration of the Discontinuation. Prior to taking steps to effectuate the Discontinuation, 34 C.F.R. § 75.253(g) required the Department to provide NYCPS with notice of the grounds for its decision not to continue the grants and, consistent with 2 C.F.R. § 200.342, to provide NYCPS with the opportunity to challenge the decision and request reconsideration. *Id.* ¶ 113.

The Department argues that the Discontinuation Letter, which contained a list of "specific steps that Plaintiff could take to address Defendants' concerns," adequately provided notice of the grounds for its Discontinuation decision, and an opportunity to challenge the decision and request reconsideration, as required by 34 C.F.R. § 75.253(g). Cross Motion at 22-23. As an initial matter, the Department failed to provide written procedures for processing objections, hearings, and appeals, 2 C.F.R. § 200.342. or to include in the Discontinuation Letter the required "list of information that should be included in [a] reconsideration request."[9] The Department fails to explain these omissions.

More significantly, it completely glosses over the most egregious aspect of its non-continuation notification: the demand that NYCPS take the six listed remedial measures, which include *agreeing to fully adopt the Department's interpretation of Title IX,* in order to even be entitled to pursue reconsideration. Cmpl. ¶ 56; Aviles-Ramos Decl. ¶ 6 and Ex. 1 (Dkt. No. 6, 6-1); AR USDOE000001-4. But that demand plainly unlawfully undercuts the availability of reconsideration. "It is a fundamental proposition of administrative law that interested parties must have an effective chance to respond to crucial facts," which means having "an opportunity for response" that comes "'at a meaningful time and in a meaningful manner.'" *Carson Products Co. v. Califano*, 594 F.2d 453, 459 (5th Cir. 1979) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Reconsideration is not meaningful or genuine where an agency simply maintains "conclusory adherence to a prior determination." *Id.*

---

[9] *Frequently Asked Questions for Non-Continued Grants*, U.S. Dep't of Educ., no. 11, https://www.ed.gov/grants-and-programs/manage-your-grant/department-grant-discontinuation-and-termination-processes.

The Discontinuation Letter stated cleary that, absent NYCPS' capitulation to the Department's demands that it repudiate and revoke the Guidelines and take related remedial measures, NYCPS would be denied the ability to seek reconsideration. *See* Aviles-Ramos Decl., Ex. 1 at 4 (Dkt. No. 6-1); AR USDOE000004. ("Pursuant to 34 C.F.R. § 75.253(g) you may request reconsideration of this decision. *In order for this decision to be reconsidered*, please notify OCR as to whether NYC DOE will agree to take the remedial steps described above to ensure it is in compliance with Title IX….") (emphasis added).

The Department doubled down on that position in a September 20, 2025 email, demanding not only that NYCPS agree to take the six remedial steps it identified, but that it actually *implement them* by 5:00 pm on September 23, 2025—a mere two business days later— and threatening that "[f]ailure to do so will result in a denial of reconsideration." *Id.*, Ex. 3 (Dkt. No. 6-3); AR USDOE000007-8. The Department's ultimatum, which sought to coerce NYCPS' capitulation as a precondition to reconsideration, fails under any definition of *meaningful reconsideration*,[10] and summary judgment should accordingly be granted on Count II.

### b) NYCPS is Entitled to Judgment Under the APA for the Department's Arbitrary and Capricious Actions

NYCPS is likewise entitled to judgment based on the Department's arbitrary and capricious Discontinuation of NYCPS' MSAP grants. The Department's threadbare arguments to the contrary not only fail to rebut that its decision to discontinue the grants was arbitrary and capricious, they further support NYCPS' claim.

---

[10] To add insult to injury, the Department characterized issuing this short notice ultimatum as having granted "an extension to September 23, 2025, to seek reconsideration." Cross Motion at 23.

At the outset, the Department argues that in determining whether grant continuation was in the best interests of the federal government under 34 C.F.R. § 75.253(a)(5), it was not bound to consider performance reports and financial data, but rather was free to consider whatever it wanted, including, as here, compliance with Title IX. Cross Motion at 24-25. Further, without so much as a citation to caselaw or applicable legislative history, the Department asks this Court to endorse a reading of Title IX and the regulations governing MSAP that would completely undermine Congress' clear intent—that Title IX enforcement actions impacting the funding of schools *may only* be undertaken under the exacting requirements of 20 U.S.C § 1682, and that grant continuation determinations *must* be tethered to grant performance. This Court should reject this argument out of hand, on two grounds.

First, in *Washington v. U.S. Dep't of Educ.*, a recent grant of summary judgment in a grant continuation case, the court clarified that the "best interests" assessment in 34 C.F.R. § 75.253 does not give the Department free reign to "use the continuation process to establish new grant priorities and apply them retroactively without the procedural protections Congress expressly applied to Department grant programs." *Washington v. U.S. Dep't of Educ.*, No. C25-1228-KKE, 2025 U.S. Dist. LEXIS 263059, at *44. "[N]othing in the existing regulatory scheme comports with the Department's view that multi-year grants may be discontinued whenever the political will to do so arises. Thus, … the Court disagrees that the regulatory scheme contemplates that it would be based, as here, on unpublished policy preferences unrelated to the progress of grant projects." *Id.* at *39-40. Instead, the Court found that "'any other relevant information'" referenced must be limited to "'items akin to those specifically enumerated'—namely the required performance, fiscal, and management reports." *Id.* at *42.

The Department does not dispute that the Administrative Record does not include or address any of the performance reports or financial data that NYCPS submitted annually as required by the MSAP grant, and which the Department is mandated to rely on in making a continuation decision. 34 C.F.R. § 75.253(b) (limiting "[i]nformation considered in making a continuation award" to "information regarding grantee performance"); NYCPS MOL at 5.[11]

Second, as NYCPS made clear in its opening papers, the existence of the "best interests" standard does not "give Defendants a blank check to ignore" the Title IX process established by Congress. *AAUP*, 2025 U.S. Dist. LEXIS 224922, at *98. Where, as here, a Title IX finding is invoked as the basis to "refuse to continue" education grant funding, the exacting requirements of 20 U.S.C. § 1682 must govern. *See, e.g. Harvard*, 798 F. Supp. 3d at 125-27.

Instead, the Department attempts to have it both ways: it insists the Discontinuation was not based on Title IX—in an attempt to excuse a failure to comply with the exacting procedures required by § 1682—while at the same time seeking to rely on what it characterizes as an extensive analysis of Title IX "concerns" as a demonstration that its decision was well-reasoned.[12]

---

[11] Notably, though the Department asserts the right to broadly certify compliance with civil rights assurances every year, Cross Motion at 24-25, it has no answer for the fact that its own training materials contradict its assertion by limiting the OCR review process during grant continuation to reviewing annual performance reports "for language that may raise civil rights concerns." *See* NYCPS MOL at 5.

[12] The Department's supposed "well-reasoned" decision, Cross Motion at 25-26, based solely on its Title IX analysis, clearly constitutes reliance on factors Congress did not intend it to consider when making a continuation decision. Moreover, under circumstances where the required Title IX process was completely ignored—there was no investigation, no hearing, no fact finding on the record, and no opportunity for NYCPS to participate in the process—the Department's attempt to rely on this process to constitute a "well-reasoned" decision is doubly offensive.

The Department next argues that the change in policy doctrine does not apply because it requires that the agency's action have contravened a formal policy or guidance document. Cross Motion at 26 (citing *New York v. Trump*, 778 F. Supp. 3d 578, 596 (S.D.N.Y. 2025)). However, unlike in *New York v. Trump*, the Department's discontinuation decision was a complete reversal of its decisions in 2023 and 2024 to continue these same grants where the same NYCPS Guidelines were in effect. This sudden reversal in 2025 based only on a change of Department policy falls squarely within the change in position doctrine.

Finally, the Department argues that because the grant agreement provides that the agency will make an annual determination as to whether continued funding is in "the best interests of the Federal Government," 34 C.F.R. 75.253(a)(5), NYCPS "should not develop reliance interests," (Cross Motion at 26-27), full stop, despite the fact that applying the governing regulations as they should, the Department had many times over found NYCPS' MSAP grants to meet the "best interests" requirement. The case relied on by the Department is inapposite; plaintiff's asserted reliance there rested on a belief that a federal agency would act in a manner consistent with their reading of its nonbinding guidance when applying the guidance to a novel enforcement issue. In this case, NYCPS appropriately relied on the Department continuing to act consistently with years of prior MSAP grant continuations determinations, more akin to the "decades of industry reliance" which *does* properly engender serious reliance interests. *FDA v. Wages & White Lion Invs. LLC*, 604 U.S. 542, 585 (2025) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016)). Having received similar continuation grants with similar funding for multiple years, while the same Guidelines were in place, NYCPS designed, opened, and operated these particular magnet schools based on a Department-approved five-year plan, as

it had done countless times before. It subsequently enrolled thousands of public school students and their families. The MSAP program thus generates serious and justified reliance interests across thousands of people and dozens of communities. Nowhere does the Department address its complete failure to take NYCPS and its thousands of impacted students' and families' reliance interests into account, and must be taken to have conceded its failure to consider their reliance interests, and to have acted arbitrarily and capriciously. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30-31 (2020).

The Department's Discontinuation determination was arbitrary and capricious; it (1) considering matters that were not supposed to be considered and failing to consider those matters it was required to consider; (2) constituted a complete reversal of existing policy, without proper notice or reasoning; and (3) failing to consider serious reliance interests. NYCPS to judgment on Count III, vacatur, and declaratory and injunctive relief.

### c)    NYCPS is Entitled to Judgment for the Department's Violation of APA Through Agency Action Without Notice and Comment Rulemaking.

In its opening memorandum of law, NYCPS demonstrated its entitlement to judgment as a matter of law on its claim that the Department acted without observance of procedures required by law by abandoning the Department's 2021 Interpretive Guidance of Title IX—which was published in the Federal Register at 86 Fed. Reg. 32637 (June 22, 2021)—and instead enforcing the Trump Administration's preferred new interpretation of Title IX without engaging in notice and comment rulemaking. The Department argues—without citing any authority—that its reliance on the MSAP regulation governing grant continuations, 34 C.F.R. § 75.253(a)(5), to justify the Discontinuation is also sufficient support for its radically-changed

interpretation of Title IX, and that it was not required to revoke or replace the 2021 Interpretive

Guidance. Cross Motion at 27. That argument strains credulity here, where the sole substantive

basis relied upon by the Department for the Discontinuation is the purported conflict between

NYCPS' Guidelines and the Department's new interpretation of Title IX.

        The Department's second argument, that the 2021 Interpretive Guidance has no

relevance because it "has already been vacated by a court, and was not in force at the time of the

non-continuation decision," Cross Motion at 27-28, is disingenuous, with regard to NYCPS. As

the case cited by the Department makes clear, the 2021 Interpretive Guidance was never enjoined

nationwide—and certainly not in New York or the Second Circuit. *See Texas v. Cardona*, 743 F.

Supp. 3d 824 (N.D. Tex. 2024).[13] Moreover, if the Interpretive Guidance was no longer in effect

in states where it was not expressly enjoined, President Trump would have had no need to direct

his agencies to take steps to revoke that very interpretive guidance. Executive Order 14168, 90

Fed. Reg. 8615 (Jan. 20, 2025) (ordering each agency head to "promptly rescind all guidance

documents inconsistent with the requirements of this order[,] [including:] 'Enforcement of Title

IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual

Orientation and Gender Identity in Light of *Bostock v. Clayton County*' (June 22, 2021)."

        The Department has neither revoked the 2021 Interpretive Guidance nor replaced

it by publishing a superseding interpretation in the Federal Register, and accordingly, its actions

---

[13] In fact, even the amicus brief filed by the Defense of Freedom Institute ("DFI") *in support of the Department* painstakingly documents that the 2021 Interpretive Guidance has been vacated and/or enjoined in a list of states, which does not include New York. DFI Brief at 12-13 (noting that two Federal Courts have vacated and/or enjoined the Interpretive Guidance from being enforced against various states, none of which is New York).

in purporting to adopt and enforce a new interpretation of Title IX are taken without observance of procedures required by law, in violation of the APA.

### d) NYCPS States a Claim for Violation of APA through agency action that is contrary to law

Finally, although this Court need not reach the issue, NYCPS is entitled to judgment as a matter of law on Count V, its claim under the APA that the Discontinuation is based on the Department's interpretation of Title IX, which is contrary to law, for the reasons stated in NYCPS' opening memorandum of law, including, that Title IX at the very least allows schools to permit transgender students to use facilities consistent with their gender identity, and in the analysis of some courts, actually requires it. NYCPS MOL at 29-31.[14] Remarkably, the Department makes no attempt at all to defend its interpretation of Title IX, and instead leans into the argument that the Discontinuation was not a Title IX enforcement action.[15] On that basis, it again seeks to cocoon its actions within the parameters of 34 C.F.R. § 75.253, under which it purports to have unlimited discretion to refuse to continue NYCPS' magnet school funding, on whatever basis it chooses— here, on its view that the NYCPS Guidelines violate Title IX—regardless of the fact that there is no governing law to that effect, and regardless of NYCPS' unquestioned performance under the

---

[14] *See, e.g.*, *Grimm v. Gloucester Cnty Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *cert denied*, 141 S. Ct. 2878 (June 28, 2021); *A.C. v. Metro Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023); *Doe v. Bayertown Area Sch. Dist*., 897 F.3d 518 (3d Cir. 2018); *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) (affirming dismissal of similar claims).

[15] Arguably, this was the only option available to the Department to preserve its indefensible interpretation of Title IX. Certainly, even amici purporting to defend the Department's reading of Title IX are forced to concede that—as pointed out by NYCPS—in the Second Circuit, the Department's position that Title IX precludes policies that permit student access to facilities and athletics consistent with their gender identity is not the law. Amicus Brief of Oklahoma and 17 Other States, Dkt 67-1 at 10 (acknowledging that "the Second Circuit expressly declined to resolve the Title IX question," and "[t]he legal question … is in this Circuit, expressly unresolved.") This actually supports NYCPS' position that the law in this Circuit in no way precludes the NYCPS' Guidelines, despite the Department's assertions to the contrary in the Discontinuation Letter.

MSAP grants. Cross Motion at 28. For the reasons articulated in Section II(B)(2)(b), *supra*, this Court should reject that argument out of hand.

### C. NYCPS is Entitled to Vacatur, Declaratory Relief, and a Permanent Injunction

The Department argues unconvincingly that NYCPS has failed to establish the factors necessary to obtain a permanent injunction, in particular because asking the court to require that a continuation decision be made by a time certain "is in essence a request for specific performance" that pursuant to the Tucker Act, is unavailable in the district court, and because the irreparable harm asserted, stemming as it does from a loss of funding, similarly belongs in the Court of Federal Claims. Cross Motion at 30. The Department misconstrues the irreparable harm demonstrated by NYCPS, which derives not simply from the loss of funding, but more significantly, from the Department's failure to comply with the exacting requirements of Title IX before taking steps to discontinue the five-year MSAP grants, threatening complete, debilitating, mid-school year and mid-grant disruption of the operation of the magnet schools, and causing devastating, immediate and irreparable negative consequences for the approximately 7,700 students attending those schools, as well as the staff and parents at the schools. Aviles-Ramos Decl. ¶¶ 12-17, 52-58 (Dkt. No. 6).

Moreover, contrary to the Department's assertion, it is within the jurisdiction of this Court to require the Department to make continuation decisions that comport with legal requirements. Notably, in *Washington,* the court granted the exact permanent injunctive relief sought here, compelling the Department to make lawful continuation decisions by a time certain, and its reasoning in support of that relief is equally applicable here. 2025 U.S. Dist. LEXIS 263059 at *49.

Finally, in light of the now-pending Title IX investigation of NYPCS' Guidelines that was initiated by the Department on January 14, 2026, it is more appropriate than ever for this Court to issue a permanent injunction putting the Department on notice that *before* it takes any action to refuse to continue the MSAP grants based on Title IX findings, or "civil rights violations" relating to Title IX, *or to impose any other enforcement action* arising out of the related open Title IX investigation, it must complete all of the exacting requirements mandated by Congress under 20 U.S.C. § 1682, namely, notice and an opportunity to be heard, findings on the record after a hearing, and the submission of reports about the findings to Congress 30 days before any refusal to continue funding.

## CONCLUSION

For the foregoing reasons, NYCPS respectfully requests that the Court grant its motion for summary judgment and deny the Department's cross-motions to dismiss and for summary judgment.

Dated: February 6, 2026
      New York, NY

Respectfully submitted,

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of
   New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov

_____
By: Melanie C. T. Ash
June Buch
Bianca Isaias
Gavin Mackie

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE</u>

As required by Local Civil Rule 7.1(c), I certify that the document contains 8734 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

_____

Melanie C.T. Ash