UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK,

                          Plaintiff,

                v.

UNITED STATES DEPARTMENT OF EDUCATION, et
al.,

                        Defendants.

------------------------------------------------------------------------x

No. 25-cv-08547 (AS)


# PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO ENFORCE SUMMARY JUDGMENT ORDER


Dated: New York, New York
       May 14, 2026

STEVEN BANKS
Corporation Counsel of
  the City of New York
100 Church Street
New York, New York 10007
(212) 356-1000

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT................................................................................................................ 10

    A.    THE COURT HAS INHERENT AUTHORITY TO ENFORCE ITS
    APRIL 8TH ORDER ...................................................................................... 11

    B.    USDE HAS FAILED TO COMPLY WITH THE LETTER OR SPIRIT
    OF THE COURT'S ORDER ............................................................................ 12

        1.   USDE Has Failed to Issue a Proper
        "Continuation Determination" .................................................................. 12

        2.   USDE Has Not Complied with a Court Order
        Plainly Intended to Bring Finality to the Dispute
        Between the Parties *Within 10 Days* ........................................................ 13

    C.    USDE DID NOT MOVE TO EXTEND ITS TIME TO COMPLY; NOR
    DID IT OBJECT TO, NOR SEEK TO MODIFY, THE COURT'S ORDER SO
    AS TO COMPEL PRODUCTION BY NYCPS OF ADDITIONAL
    INFORMATION.............................................................................................. 14

    D.    USDE'S FAILURE TO COMPLY WITH THE COURT'S ORDER
    CONTINUES TO DO IRREPARABLE HARM TO THE MAGNET SCHOOLS,
    JUSTIFYING AN ORDER TO ENFORCE ...................................................... 17

    E.    THIS COURT SHOULD ISSUE AN ORDER ENFORCING ITS
    AWARD OF SUMMARY JUDGMENT .......................................................... 18

CONCLUSION............................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Pompeo*,
　No. 16-CV-3691-SJB, 2020 WL 6435834 (E.D.N.Y. Nov. 2, 2020)......................................11

*City of Chicago v. United States Dep't of Homeland Sec.*,
　No. 25 C 5463, 2026 WL 353581 (N.D. Ill. Feb. 9, 2026).......................................................12

*Degen v. United States*,
　517 U.S. 820 (1996)..................................................................................................................12

*Int'l Ladies' Garment Workers' Union v. Donovan*,
　733 F.2d 920 (D.C. Cir. 1984)..................................................................................................11

*Int'l Tech. Mktg v. Verint Sys.*,
　991 F.3d 361 (2d Cir. 2021)......................................................................................................11

*State of Washington v. United States Department of Education*,
　167 F.4th 1241 (9th Cir. Feb. 24, 2026) ..................................................................................15

*State of Washington v. United States Department of Education*,
　813 F. Supp. 3d 1222 (W.D. WA 2025) ...................................................................................19

*State of Washington v. United States Department of Education*,
　No. 2:25-CV-01228. Dkt. 356 (W.D. Wash. Jan. 22, 2026) (annexed hereto as
　Ex. A)..........................................................................................................................................19

*Tangtiwatanapaibul v. Tom & Toon Inc.*,
　No. 1:17-CV-0816 (KHP), 2025 WL 384545 (S.D.N.Y. Feb. 4, 2025)..................................11

*United States v. Spallone*,
　399 F.3d 415 (2d Cir. 2005).....................................................................................................11

**Other Authorities**

34 CFR 75.253(e)(2)(i) ......................................................................................................................3

34 CFR § 75.253 ..............................................................................................................................12

34 CFR § 118(a)...............................................................................................................................15

https://www.ed.gov/media/document/grantmaking-ed-108713.pdf ("Discretionary
　Grantmaking") at 32 .................................................................................................................16

## PRELIMINARY STATEMENT

On April 8, 2026, this Court vacated Defendants' non-continuation determinations with respect to five New York City Public Schools ("NYCPS") Magnet School Assistance Program ("MSAP") grants and ordered Defendants to make a continuation determination with respect to each of these grants *within ten days* of issuance of the Order. Over a month later, the nineteen affected magnet schools are still waiting for the chaos wrought by the unlawful non-continuation determinations to end. Despite announcing on April 17th that it would continue the grants, Defendant United States Department of Education ("USDE") has still not made the continuation awards that are the foundation of a proper continuation determination. As a result, Defendants have failed to comply with this Court's Order.

Instead, USDE has purported to make "continuation determinations" without continuation awards and has demanded information regarding the MSAP grants' performance and finances for the current 2025-2026 school year before it makes awards that should have been made in September 2025. But this ignores that where a grant is being continued, a continuation determination is made by and through the making of a continuation award—USDE's own summary judgment papers concede as much. USDE has therefore failed to comply with the Court's injunction ordering it to make new continuation determinations—not merely parts of such determinations—within ten days.

This Court has inherent authority to enforce its orders and to protect its proceedings, and should do so here. USDE has neither sought an extension of the ten-day deadline, nor any other modification of this Court's Order, to defer its issuance of continuation awards while it demands and reviews annual performance reports ("APRs") from the five MSAP grant projects. It is standard practice for USDE to make and issue continuation awards based on the mid-year, Spring APRs from the prior year—which here, it has had since May 2025. Moreover, in an effort to

1

resolve the stalemate and expedite issuance of continuation awards, on May 1, 2026, NYCPS provided in good faith final APRs reflecting the performance and budget metrics of the five MSAP grants for the complete 2024-2025 grant year, information that is beyond the scope of what USDE would typically review. Still USDE continues to withhold the required continuation awards, demanding information about the unfunded current grant year, FY2026, before making continuation awards.

USDE's failure to comply with the Order has resulted in imminent and ongoing harm to NYCPS and the affected magnet schools, compounding the harms recognized by the Court in granting summary judgment. Indeed, the affected schools have been forced to curtail instructional programs and activities since the outset of this lawsuit, and are unable to properly plan and budget for next year in the absence of their 2025-2026 continuation awards—which are inextricable parts of USDE's continuation determinations. That NYCPS is still waiting to learn details of continuation awards intended to support the magnet schools' operations *during a school year that will end in less than 45 days* highlights the untenable circumstances under which USDE's unlawful actions have forced the schools to operate. Only this Court's prompt action can provide relief by compelling USDE to right its continuing wrong and ensure compliance with the Court's Order.

## **BACKGROUND**

The relevant facts are set forth in the accompanying Declarations of Melanie Ash ("Ash Decl.") and Todd Levitt, MSAP Team Lead for NYCPS ("Levitt Decl."), and exhibits thereto.

## **This Court's April 8th Order**

On April 8, 2026, this Court granted the motion for summary judgment filed by Plaintiff Board of Education of the City School District of the City of New York, operating as NYCPS, vacated Defendants' non-continuation determinations for FY2026 with respect to the five  MSAP

2

grants that are the subject of this action, and ordered Defendants "to make a continuation determination with respect to each of NYCPS' MSAP grants within 10 days of this order." Dkt 83 at 10. In so doing, the Court rejected Defendants' cross-motions to dismiss, or alternatively, for summary judgment.

Defendants, in opposing NYCPS' motion for summary judgment and cross-moving, objected that no permanent injunction at all should be entered, but did not object to, or otherwise address, the specifics of NYCPS' request that the Defendants be ordered to make continuation determinations within 10 days of the Court's Order. In fact, Defendants opted to make no submissions in the alternative at all concerning the scope of injunctive relief that may be awarded against it by the Court. Accordingly, this Court expressly noted that because Defendants did not raise any challenge to the scope of the injunction sought by NYCPS—requiring Defendants to make a continuation decision with respect to each of the grants within 10 days of the Court's Order—any such challenge is deemed "forfeited." Dkt 83 at 9-10.

**<u>USDE's Purported Continuation Determinations</u>**

On April 13th, counsel to the Defendants reached out to counsel to NYCPS seeking a two-week extension of the deadline to make the continuation determinations, until May 1, 2026. Defendants' counsel explained that USDE would imminently request that NYCPS provide a written statement of how funds made available will be used,[1] and that a two-week extension would allow NYCPS a week to prepare the requested statement, and USDE a week after the statement was received to make the continuation determinations ordered by the Court. Ash Decl. ¶ 3. On April 14th, counsel to NYCPS rejected the proposal on the basis that "continuation

---

[1] Defendants cited to 34 CFR 75.253(e)(2)(i), but in fact, that provision actually addresses the carrying over of funds from one budget period to the next.

determinations are supposed to be made based on the annual performance reports submitted by the grantees. NYCPS provided USDOE with written statements in the form of the annual performance reports for each of the grants in May 2025, and as such USDOE already has in its possession all the information necessary to make the continuation determinations for the affected grants." Ash Decl. ¶ 4; Ex. A.

Subsequently, on April 17, 2026, USDE purported to issue a "Notice of Continuation Determination" as to each of NYCPS' MSAP grants, stating that USDE "is issuing a new continuation determination for your grant award" and that "your grant award is being continued from October 1, 2025 through September 30, 2026."[2] However, no actual continuation awards were issued. Instead, the Notices indicated that USDE "will request updated grant performance and financial information before making available further funding," and that each grant's carryover funds budget "remains in effect until the Department solicits, receives, and reviews updated grant performance and financial information." Levitt Decl., Ex. A.

Notably, no timeline was provided by USDE for its solicitation, receipt and review of information, or for a continuation determination as to funding. Instead, USDE merely promised to "follow up promptly." *Id.* The effect was to defer USDE's continuation determinations indefinitely, nullifying the Court's clear 10-day deadline. This, despite the fact that in May 2025, NYCPS duly submitted APRs to USDE for each of the grants, and that USDE's consistent practice is to make MSAP grant continuation determinations for the following year based solely on those Spring APRs, which provide performance and financial information for the first half of the federal grant year (October 1 through March 31).

---

[2] Notably, USDE stated that these determinations were "being issued in protest and solely to comply with" the Court's April 8th Order.

**USDE's April 22 Information Demand**

On April 22, 2026—two weeks after the Court's April 8 Order was issued, and 5 days after USDE gave notice of its purported "Continuation Determinations"—USDE wrote to NYCPS to "provide guidance" on the updated performance and budget information being requested for each MSAP grant. The letter requested the "*final* performance and financial data for last performance year [of the grant] (October 1, 2024-September 30, 2025), as well as an update on implementation progress during this … performance year from October 1, 2025-March 31, 2026." Ash Decl. ¶ 6; Levitt Decl., Ex. C (emphasis in original). The letter also imposed a deadline of May 15, 2026 for NYCPS to submit the requested information.

On May 1, 2026, counsel to NYCPS wrote to Assistant United States Attorney ("AUSA") Oestericher to object to USDE's failure to comply with the Court's April 8 Order, and in particular, to its reliance on the levying of information requests in the April 22 letter as a basis to continue to defer decision on continuation awards well beyond the 10-day deadline, in violation of the Court's Order. Ash Decl. ¶ 7; Ex. B. Notwithstanding those objections, in an effort to expedite resolution, NYCPS submitted full-year 2025 APRs, including performance and budget information for the second part of the year, for each of the grants on May 1, 2026. *Id.* With full grant-year information from 2024-2025 in hand, USDE had all of the information it could possibly consider—and more than in typically has—in making continuation determinations.[3]

In response to the May 1, 2025 letter, AUSA Oestericher argued that USDE was in compliance because the Order "required only that the Department of Education 'make a continuation determination'" and "did not prohibit the Department of Education from requesting

---

[3] As NYCPS' counsel advised AUSA Oestericher in the May 1 letter, NYCPS will submit the current year's mid-year performance information by May 15th, as required in the ordinary course for consideration in connection with grant continuation determinations for the 2026-2027 year. *See* Ash Decl. ¶ 7; Ex. B.

updated financial or performance information … to assist in informing appropriate funding." Ash Decl. ¶ 7; Ex. B.

On May 5, 2026, counsel to the parties met and conferred to attempt to resolve the dispute over whether USDE's actions, in purporting to continue NYCPS' MSAP grants but deferring any decision on the amount of funding provided by the continuations until after additional information had been provided by NYCPS, complied with the Court's Order. In that call, counsel to USDE proposed that USDE would issue continuation awards prior to June 30, 2026, the end of the current school year, and the date until which carryover funds were to be made available to the magnet schools pursuant to the November 20, 2025 Consent Order between the parties to resolve NYCPS' motion for a preliminary injunction.[4]

USDE rejected NYCPS' May 1 demand that USDE issue continuation awards by Wednesday, May 6, 2026, insisting that it would not issue the long overdue continuation awards before receiving access to the current year grant performance information. Ash Decl. ¶ 8; Ex. B. It did so despite the clear record that, but for USDE's unlawful non-continuation of the grants in September 2025, the mid-year APRs that NYCPS submitted for each grant in the ordinary course in May 2025 (covering performance under the grants from October 1, 2024 through March 31, 2025) would have served as the basis for making grant continuation awards in September 2025 for the current (2025-2026) budget year.

Putting aside for the moment the question of whether USDE could properly base its continuation awards *for the current year* on information about performance of the grants *in that same year*, the suggestion that any such determination could be delayed until June 30, 2026—

---

[4] This Court will recall that the parties entered into a consent order that gave NYCPS access to approximately $12 million in carryover funds from the prior year for the period ending June 30, 2026. Consent Order dated November 19, 2025, Dkt. 42 (filed November 20, 2025).

*almost three months* after this Court ordered that continuation determinations be made within 10 days (and *45 days* after USDE will have received the disputed information)—demonstrates that USDE continues to flout this Court's Order.

**The Consequences for NYCPS of Defendants' Failure to Comply**

USDE's failure to issue continuation awards for the five MSAP grants within ten days of the April 8 Order has affected the MSAP schools across the board. Instead of operating with new grant funding, the schools continue to be limited to the carryover funding from the prior grant year. While that deficit has affected the schools' programs all year, the uncertainty about the current year grant funding will be particularly injurious as the school year ends and over the summer, impacting upcoming end-of-year activities, summer programming, and the many areas of planning that are done during the summer.

Students will be affected in multiple ways. Most immediately, schools typically offer programs and events at the end of the year that highlight and celebrate students' accomplishments. For example, Bronx High School of the Visual Arts typically has a showcase for its Career and Technical Education Program. That event will either be cancelled or curtailed this year because as of now there is insufficient funding to pay staff for overtime services to organize and host the event. This is one example of many programs that schools will have to cancel or curtail, because the programs require "per session" payment to staff (i.e., extra pay for activities that take place outside of the normal school day), and the necessary funding is absent or uncertain. Levitt Decl. ¶ 16.

Several magnet schools have held summer art and academic enrichment activities in prior years, designed to encourage rising 8th graders to apply to a magnet school for high school. These programs served to introduce middle school students to high school curricula and to the thematic

7

studies provided at magnet schools. Because the funding for these programs is uncertain, they have been put on hold this year. *Id*. ¶ 20.

In some cases, MSAP projects have used virtually all of their carryover funding and it is unclear how school staff will be paid for the remainder of the school year. The District 28 MSAP Project is one example, but it is not alone; several other projects are facing similar circumstances. Due to uncertainty about funding, these schools may have to excess staff, causing an immediate disruption of end-of-year learning activities. *Id.* ¶ 17.

As part of their programming, magnet schools schedule activities to occur over the summer, including planning and curriculum development for the upcoming school year; professional development sessions for staff (including workshops for newly hired teachers to share the school's magnet vision and expectations); and summer enrichment activities for students as described above. Without knowing now what grant funding will be forthcoming, it is virtually certain that this summer programming cannot be sustained.

Each of these activities requires the hiring of staff, including teachers, site coordinators and resource specialists on a per-session basis. For this summer, some magnet schools have been unable to post these positions due to uncertainty of available funding. Pursuant to the union contract, these postings must be issued no later than 20 school days before the end of the school year, which is the last week in May. Even posting positions by this late date is problematic because many summer per-session job postings have already been issued, and staff who have applied for other posted positions are likely to no longer be available if/when these magnet positions are posted. Without knowing the grant award the programs have received for the 2025-2026 year and when it will be made available, professional development that is typically provided by NYCPS' Central Magnet Team is uncertain for this summer. *Id*. ¶ 19.

8

As a result, the schools have been forced to curtail curriculum development and program planning for the upcoming school year. Without knowing about grant funding for 2025-2026, enabling the hiring of staff for this summer planning work, the schools will not be able to appropriately plan curricula or include magnet staff in their budgets for the next school year. This will have a significant impact on the overall hiring and programming for the school and will prevent schools from hiring specialized magnet staff who teach thematic courses , such as the Magnet Resource Specialist and Site Coordinator. Thematic courses that made the schools attractive to students may therefore be discontinued. In addition, schools with specialized programs, such as those in the process of obtaining International Baccalaureate (IB) certifications, may be unable to fulfill them if they cannot retain specialized staff and provide required professional development. *Id.* ¶ 21.

There are further consequences that follow from the uncertainty about funding. First, several curricular partners have already refused to enter into agreements for the upcoming year due to the funding uncertainty and its effect on planning and programming. One example is Borough of Manhattan Community College, which has refused to partner with several magnet schools to create early college programs. In addition, the funding uncertainty means that special trips, such as one to Washington D.C., cannot be scheduled. Similarly, activities to recruit students, that would normally take place in the fall, are being hampered. Some schools have partnered with a vendor in the past, to broaden the school's recruitment efforts to beyond the local community; without assurances about funding in hand, the partnership was cancelled for the current school year. *Id*. ¶¶ 22-23. The uncertainty about funding also impacts procurement that would ordinarily be done over the summer. Under NYCPS procurement policy, new purchase orders cannot now be created until July 1. However, several steps in the process can be initiated

9

in advance to speed procurement over the summer, once GANs are issued: the funding must be registered in the grant tracking system and is then transferred to each school location and allocated into different spending categories. This year, these steps cannot be initiated, slowing procurement during the upcoming summer months. *Id.* ¶ 24.

In sum, each day that awards are not made increases the level of chaos and curtailment confronting the magnet schools.

## **ARGUMENT**

By issuing notices purporting to continue NYCPS' MSAP grants for the 2025-2026 year without also issuing the requisite continuation awards that are at the heart of any such continuation determination, USDE failed to comply with this Court's Order that continuation determinations be made within 10 days. Instead, it has deferred decision on continuation awards indefinitely, leaving the nineteen impacted magnet schools in a state of extended uncertainty, a purgatory completely outside of their control, awaiting the most critical element in the continuation determination. Without proper continuation determinations—which, absent a non-continuation decision, must necessarily *include continuation awards*—the magnet schools remain unable to engage in the necessary programming, planning, and procurement that typically occupies the last months of the school year and the critical summer months leading up to the following school year. Every day that passes without clarity on the 2025-2026 funding awards magnifies the harms the schools have suffered since September 2025 when the non-continuation decisions—since ruled unlawful by this Court—were first issued. This ongoing, unauthorized delay flies in the face of this Court's Order, which contemplated that certainty be provided to the affected schools within 10 days, and necessitates this Court's immediate action, pursuant to its inherent authority.

10

### A. **The Court Has Inherent Authority to Enforce its April 8th Order**

"'Courts are vested, by their very creation, with power to impose silence, respect, and decorum[] in their presence, and submission to their lawful mandates.'" *Int'l Tech. Mktg v. Verint Sys.*, 991 F.3d 361, 367 (2d Cir. 2021) (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (cleaned up). Thus, "every court with the power to enter a judgment has the power to enforce it, even if the docket is closed." *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 1:17-CV-0816 (KHP), 2025 WL 384545, at *1  (S.D.N.Y. Feb. 4, 2025) (citing *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 554 (7th Cir. 2021)). This power "enables courts 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Int'l Tech.,* 991 F.3d at 367 (quoting *Goodyear Tire & Rubber*, 137 S. Ct. 1178, 1186 (2017)). It also furthers "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). An order to enforce "is particularly appropriate… where an administrative agency plainly neglects the terms of a mandate" issued by the court. *Id.*

A motion brought to enforce the court's previous judgment should be granted "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Ali v. Pompeo*, No. 16-CV-3691-SJB, 2020 WL 6435834, at *4 (E.D.N.Y. Nov. 2, 2020) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004), *aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24 (D.C. Cir. 2005)). On a motion to enforce, the Court is also empowered to construe and interpret the language of its prior judgment. *See United States v. Spallone*, 399 F.3d 415, 422 (2d Cir. 2005) ("[T]he power to construe a court decree is essential to its enforcement.").

This Court has inherent authority to ensure compliance by USDE with the terms of its

11

Order. *See, e.g., City of Chicago v. United States Dep't of Homeland Sec.*, No. 25 C 5463, 2026 WL 353581, at *6 (N.D. Ill. Feb. 9, 2026) ("The Court thus exercises its equitable authority to enforce its orders and requires that DHS finally comply with its regulatory and Court-ordered obligations within fourteen days." *See Degen v. United States*, 517 U.S. 820, 827 (1996) (explaining that "[a] federal court has at its disposal an array of means to enforce its orders," including "by inherent authority")).

For the reasons described herein, this Court should exercise that authority to require that USDE forthwith issue *and effectuate* proper continuation determinations containing the necessary continuation awards by a date certain.

**B.  USDE Has Failed to Comply With the Letter or Spirit of the Court's Order**

**1.  USDE Has Failed to Issue a Proper "Continuation Determination"**

In its April 8 Opinion and Order, this Court ordered Defendants to make the relevant continuation determinations within ten days. Dkt. 83, at 10. Purporting to comply with the Order, on April 17, 2026, defendants notified NYCPS that it had determined to continue each of the five grants. However, giving notice that the MSAP grants were being continued for this year, without making an award of funding, did not constitute making "a continuation determination." Certainly, calling something a "continuation determination," as USDE did on April 17th, does not make it so.

The relevant regulation governing grant continuations, 34 CFR § 75.253 ("Continuation of a multiyear project after the first budget period") recognizes that "continuation" means a continuation award: for multiyear projects such as NYCPS' MSAP grants, the only alternatives contemplated by the regulation are making a continuation award—*see* § 75.253(a) through (e) for the standards and process of making a continuation award—or not making a continuation award—*see* § 75.253(f) through (h) for regulations governing non-continuations. Where, as here,

12

a grant is being continued, that continuation *is only effectuated* by way of a continuation award. Defendants' previous submissions in this case demonstrate that they share this understanding. *See* Def. Mem. (Dkt. 57, filed Jan. 14, 2026), at 3 ("In the case of a multi-year grant, funding is usually provided for the initial period of not more than 12 months, and in each subsequent year, ED must determine *whether to continue the grant by issuing a new award of grant funding,*" citing 34 CFR § 75.251 (emphasis added)). While the injunction sought by NYCPS—and later granted by the Court—did not order the payment of funds, Defendants expressly recognized that it necessarily "compel[s]" USDE "to make discretionary *funding decisions.*" Def. Mem. (ECF Dkt. 57, filed Jan. 14, 2026), at 30 (emphasis added). *See also* Opinion & Order at 9 (referring to the decision compelled by the injunction as a "funding determination").

### 2. USDE Has Not Complied with a Court Order Plainly Intended to Bring Finality to the Dispute Between the Parties *Within 10 Days*

In its Order, this Court made clear that although Defendants could have contested *the scope of NYCPS' proposed injunction*—requiring a continuation decision with respect to each grant within 10 days—they forfeited any right or opportunity to do so by failing to raise any such challenge before the Court:

> The Court notes that there might be reasons to challenge the scope of NYCPS's proposed injunction, which would require defendants to make a continuation decision with respect to each of NYCPS's MSAP grants within 10 days of this order, and prevents them from non-continuing MSAP grants based on Title IX findings or "civil rights violations" related to Title IX without following Title IX's procedures. Dkt. 52 at 31-33. But since defendants do not raise any challenge to the scope of the injunction, the Court deems any such challenge forfeited.

Dkt. 83 at 9-10. The Court thus granted the relief as proposed by NYCPS, which was plainly intended to compel issuance of *lawful continuation determinations* to bring prompt relief and certainty to the nineteen impacted magnet schools. *See* Dkt 50 at 2.

In reality, no certainty or finality has been delivered by USDE's purported "continuation

determinations." Quite the opposite: the combined effect of USDE's April 17 "notices" and its April 22 "guidance" demanding the production of information is to indefinitely defer USDE's continuation determinations, with no certainty about when USDE will provide an actual continuation award.  Indeed, what this Court intended to be a 10-day deadline now stretches out without end, completely undermining the letter and the spirit of this Court's order.

### C. USDE Did Not Move to Extend its Time to Comply; Nor Did it Object to, Nor Seek to Modify, the Court's Order so as to Compel Production by NYCPS of Additional Information

As this Court noted in its April 8 Order, at no time did Defendants' Cross-Motion to Dismiss, or in the alternative, for Summary Judgment challenge the scope of the injunctive relief—including the 10-day period for making the new continuation determinations—or put forward an alternative to NYCPS' request for relief within 10 days; they sought no extension of that timeline, nor proposed any modification of the that would permit them to delay issuing the continuation determinations pending a request for information, or to bifurcate the continuation determination into a two-step process. In the absence of any such requests, as this Court expressly held, "any such challenge [is] forfeited."

Moreover, notwithstanding what USDE now claims, it clearly understood that in making continuation determinations within 10 days, if it determined that the MSAP grants were to be continued, each such determination must necessarily contain a continuation award. Its April 13th outreach to NYCPS seeking consent to a two-week extension to May 1, 2026 confirms as much. There would have been no need to seek an extension unless, in the ordinary course, a determination to continue a grant necessarily comprises a continuation award. And yet Defendants sought out NYCPS and proposed the extension. Despite that, when NYCPS refused to agree to USDE's proposed extension of the 10-day deadline, Defendants took no steps to ask

14

this Court to modify or extend the 10-day deadline imposed by the April 8 Order.[5]

Instead, USDE engaged in self-help, unilaterally purporting to bifurcate continuation decisions into part 1—the "continuation determination"—and part 2—the continuation award—and reinterpreting this Court's Order to require only the former be made within 10 days. However, as described above, USDE's submissions to this Court reflected no such distinction, and this Court authorized no such bifurcation.

USDE now argues, to justify its non-compliance, that it is entitled to obtain grant performance and financial information *before* making continuation awards. In particular, USDE points to 34 CFR § 118(a): "A recipient that wants to receive a continuation award shall submit a performance report that provides the most current performance and financial expenditure information, as directed by the Secretary .…" USDE's argument fails for several reasons.

First, the Court ordered USDE to make new continuation determinations within 10 days, without contemplating any further submissions by NYCPS. USDE had an opportunity to oppose the scope of the injunctive relief sought by NYCPS on the ground that it needed additional information before making a continuation award determination—and it did not do so—thereby forfeiting the argument. The regulation cited by USDE is thus beside the point.

Second, even if the point were not forfeited, USDE's reliance on this regulation now, more than seven months into the current grant year, would still be misplaced. The unlawful non-

---

[5] USDE's conduct here must be contrasted with that in *State of Washington v. United States Department of Education,* 813 F. Supp. 3d 1222, 1249 (W.D. Wash. 2025), another case in which the court ordered USDE to make prompt grant continuation determinations. In that case, when it became apparent it could not meet the court-ordered deadline to make continuation determinations relating to all of the 138 separate grants at issue in that case, USDE sought, and obtained modifications of the Court's Order to permit more time to make the continuation determinations. *Washington v. USDE*, No. 2:25-CV-01228. Dkt. 356 (W.D. Wash. Jan. 22, 2026) (annexed hereto as Ex. A) (ordering that continuation determinations be made by Feb. 6, 2026; and continuation awards be issued by Feb. 11, 2026); 167 F.4th 1241, 1247 (9th Cir. Feb. 24, 2026) (denying USDE's request for a stay pending appeal and remanding for the limited purpose of setting new deadlines).

continuation determinations have been vacated, putting the parties back in the position they occupied when NYCPS submitted the then-most-current information about its grants' performance *in May 2025* in connection with what was supposed to be a September 2025 lawful continuation determination.

With the Spring 2025 APRs for each of the grants already in hand, USDE continues to have the necessary prior year performance and financial information to make those determinations. In addition, on May 1, 2026, NYCPS submitted to USDE final APRs for the 2024-2025 grant year.[6] USDE thus has had full information for the 2024-2025 grant year for almost two weeks.

Third, USDE's reliance on the passage of time since NYCPS submitted the APRs in May 2025 as justification for a request for *current year* (2025-2026) performance information is also misplaced. The passage of time was entirely the fault of USDE's unlawful non-continuation of the grants in September 2025, in violation of Title IX. Moreover, those unlawful determinations, now vacated by this Court, cannot entitle USDE to now demand updated performance information for the *current year*. *Current year* grant performance is irrelevant to the *current year* award that should have been made in September 2025, before this year even began.[7] Where USDE has been ordered to make grant determinations for the grant budget period beginning October 1, 2025, a request for performance information starting on that same date defies logic. Even more so where, as here, the magnet schools have been forced by USDE's own violations of

---

[6] *See, e.g.*, U.S. Department of Education, Discretionary Grantmaking at ED (Oct. 2024), publicly available at https://www.ed.gov/media/document/grantmaking-ed-108713.pdf ("Discretionary Grantmaking") at 32 ("The program staff uses the information in the performance report in combination with the project's fiscal and management performance data to determine subsequent funding decisions.").

[7] *See* FN 6.

Title IX to operate without access to any funding at all from October to December 2025, and on a carryover-only austerity budget since then. Under these circumstances, it also goes without saying that the current year's performance and financial information could not possibly reflect the magnet schools' true capabilities and the performance it could have achieved, with full funding, making any reliance on that information highly prejudicial.

**D. <u>USDE's Failure to Comply With the Court's Order Continues to do Irreparable Harm to the Magnet Schools, Justifying an Order to Enforce</u>**

As a result of USDE's unlawful non-continuation of the MSAP grants, the nineteen affected magnet schools have yet to receive any new funding for the 2025-2026 budget year. Instead, they have been operating on carryover funding alone, funding which was only made available in December 2025 through a consent order. The late-arriving, reduced funding has forced the schools to operate on an austerity budget to stretch existing funds while awaiting a decision on expedited summary judgment. A decision to continue the MSAP grants for 2025-2026 which does not include the requisite continuation award that is the foundation of a continuation determination leaves no option but for the schools to operate in survival mode.

The uncertainty created by the missing continuation awards has forced cancellation or curtailment of typical end-of-year learning activities, such as showcases to highlight and celebrate student accomplishments. Moreover, at a time when the MSAP grant projects should be engaged in critical budgeting, scheduling, and planning for summer student enrichment activities, procurement of necessary supplies, curriculum development, staff professional development sessions, and school staffing for the 2026-2027 school year, the absence of information about current year continuation awards means that those planning efforts must be curtailed or cancelled. Planning for each of those activities also requires the hiring of staff, including teachers, site coordinators, and resource specialists, and union rules mandate that postings for such positions

17

must be issued no later than 20 days before the end of the school year, a fast-approaching deadline at the end of May. Without the information about current year funding that in any other year would have automatically been announced as the foundation of the grants' continuation determinations, none of these, and other planning, scheduling and procurement activities can get underway.

Equally harmful to the MSAP programs is the fact that, having been forced to exist on and deplete their carryover funding to survive until long overdue continuation determinations were made, they can no longer engage in anticipatory planning for 2026-2027 with the knowledge that carryover funding from prior budget years remains available to cover expenses being incurred until continuation determinations for 2026-2027 are issued in September 2026. *See* Aviles-Ramos Decl., Dkt. 6, ¶ 11; Scott Decl., Dkt. 32, ¶¶ 12, 18-19. In a typical year, the preparation of the spring APRs would include an accounting of remaining carryover, allowing the schools to budget for the upcoming year with the assurance of available carryover funding. That usual cycle has been completely disrupted by USDE's unlawful non-continuation determinations, leaving the schools to engage in advance budgeting and planning for 2026-2027 without carryover to rely on.

By USDE's continued failure to make continuation awards, in violation of this Court's April 8 Order that it do so within 10 days, the irreparable harm that this Court has already found justified permanent injunctive relief continues to reverberate, making it critical that this Court act expeditiously to issue an order enforcing its award of summary judgment.

### E.  This Court Should Issue an Order Enforcing its Award of Summary Judgment

For the reasons described herein, it is apparent that USDE failed to comply with this Court's April 8 Order: it has made continuation determinations with respect to the MSAP grants in name only; it has admittedly failed to make the necessary continuation awards that form the

essence of a continuation determination; and it has taken no steps to effectuate continuation by issuance of GANs reflecting the continuation awards.[8] This Court should order that USDE make the continuation awards required by a continuation determination, and effectuate them by issuance of GANs, forthwith, ***by a date certain***. *See, e.g., Washington v. USDE*, No. 2:25-CV-01228. Dkt. 356 (W.D. Wash. Jan. 22, 2026) (annexed hereto as Ex. A); Transcript of Oral Argument at 48, Dkt. 360 (annexed hereto as Ex. B) (granting plaintiffs' motion to enforce summary judgment order vacating non-continuations and mandating new continuation determinations by requiring USDE to make continuation determinations by February 6, 2026 and then promptly effectuate the determinations by issuing the awards—backdated by 5 days to take effect the date of the continuation determination—by February 11, 2026).

## **CONCLUSION**

For all the reasons set forth above, this Court should exercise its inherent power to enforce its orders, grant this motion to enforce and order USDE to forthwith, ***within 5 days***, complete and effectuate its April 17, 2026 "continuation determinations" by issuing GANs reflecting the promised continuation awards for each of the five NYCPS MSAP grants

---

[8] See Exhibit B to Levitt Decl., which are zero dollar GANS issued by USDE on April 20, 2026, which misleadingly purport to effectuate the "continuation determinations" noticed on April 17, 2026.

Dated: May 14, 2026

Respectfully submitted,

**STEVEN BANKS**
Corporation Counsel of the City of
 New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov

By: Melanie C.T. Ash
June Buch
Gavin Mackie
Emeline Kong

20

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE

As required by Local Civil Rule 7.1(c), I certify that the document contains 6,020 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

Melanie C.T. Ash