UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Plaintiff,

No. 25-cv-08547 (AS)

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

Defendants.

-----------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF SECOND MOTION TO ENFORCE SUMMARY JUDGMENT ORDER**

Dated: New York, New York
July 10, 2026

STEVEN BANKS
Corporation Counsel of
the City of New York
100 Church Street
New York, New York 10007
(212) 356-2276

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iII

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

The Court's April 8 and June 4 Orders .......... 2

Defendants' Actions Since the Court's June 4 Order .......... 4

Defendants' Actions Since June 4 Are Based on Title IX or 'Civil Rights Violations' Related to Title IX .......... 8

The Consequences for NYCPS of Defendants' Failure to Comply .......... 11

ARGUMENT .......... 12

A. The Court Has Inherent Authority to Enforce its April 8th and July 4 Orders .......... 13

B. USDE Has Violated the April 8 and June 4 Orders by Reducing the FY2026 Grant Awards and Non-Continuing the MSAP Grants on the Basis of Title IX Violations or Civil Rights Violations Relating to Title IX .......... 14

C. This Court Should Issue a Further Order Enforcing its April 8 and June 4 Orders .......... 16

CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE .......... 18

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Ali v. Pompeo*,
No. 16-CV-3691-SJB, 2020 WL 6435834
(E.D.N.Y. Nov. 2, 2020) ........................................ 13

*Boim v. Am. Muslims for Palestine*,
9 F.4th 545 (7th Cir. 2021) ........................................ 13

*City of Chicago v. United States Dep't of Homeland Sec.*,
No. 25 C 5463, 2026 WL 353581
(N.D. Ill. Feb. 9, 2026) ........................................ 13

*Degen v. United States*,
517 U.S. 820 (1996) ........................................ 14

*Heartland Hosp. v. Thompson*,
328 F. Supp. 2d 8 (D.D.C. 2004),
*aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005) ........................................ 13

*Int'l Ladies' Garment Workers' Union v. Donovan*,
733 F.2d 920 (D.C. Cir. 1984) ........................................ 13

*Tangtiwatanapaibul v. Tom & Toon Inc.*,
No. 1:17-CV-0816 (KHP), 2025 WL 384545
(S.D.N.Y. Feb. 4, 2025) ........................................ 13

*United States v. Spallone*,
399 F.3d 415 (2d Cir. 2005) ........................................ 13

**Statutes**

34 C.F.R. § 75.251(b)(2) ........................................ 16

34 C.F.R. § 75.253 ........................................ 7, 15

20 U.S.C. § 7231d(b)(2)(C) ........................................ 9

20 U.S.C. § 7231d(c) ........................................ 8, 9

# PRELIMINARY STATEMENT

Defendants continue to violate this Court's Orders. On April 8, 2026, this Court vacated Defendants' September 16, 2025 determinations, declared that Defendants had failed to follow Title IX's procedures, and ordered Defendants to make new grant continuation determinations as to the five New York City Public Schools ("NYCPS") Magnet School Assistance Program ("MSAP") grants at issue within ten days. The Order permanently enjoined Defendants from non-continuing MSAP grants to NYCPS based on "Title IX findings or 'civil rights violations' related to Title IX" without following Title IX procedures.

Since then, Defendants have repeatedly failed to comply with the April 8 Order, running out the school year clock and, as a practical matter, implementing the same non-continuation decisions that the Court found unlawful. First, on April 17, 2026, without any regulatory authority, Defendants purported to make grant continuation determinations, but failed to include the essential element of such determinations: actual grant continuation awards. That action prompted NYCPS' first motion to enforce. On June 4, 2026, the Court granted that motion, ordering Defendants to issue the missing grant awards by June 9. Second, Defendants' actions since June 4, 2026 have continued to flout this Court's permanent injunction: Defendants have severely reduced the grant funding for this year, and, in grant award notifications ("GANs") implementing that reduced funding, indicated that the grants will end this year. Thus, Defendants have engineered the same result they pursued last September: ending the grants and destroying the MSAP projects altogether. As the GANs make clear, Defendants have provided no basis for doing so other than their prior unlawful assertion of a Title IX violation.

This Court has inherent authority to enforce its orders and to protect its proceedings, and should do so here by vacating the GANs issued on July 9 and ordering Defendant United States Department of Education ("USDE") to make appropriate continuation awards, and forthwith

issue GANs that are consistent with USDE's prior practice (*i.e.* from the acknowledged starting point of the requested and recommended average award amount for each grant); without consideration of or reliance on the budget provided by NYCPS to facilitate interim relief under the November 20, 2025 Consent Order, or otherwise perpetuating the harmful effects of USDE's unlawful—and since vacated—September 16, 2025 non-continuation determination; and without relying explicitly or implicitly, on Title IX findings or "civil rights violations" related to Title IX without following Title IX procedures.

## BACKGROUND

The relevant facts are set forth in the declarations and exhibits previously submitted in this action, together with the accompanying Declaration of Melanie Ash dated July 10, 2026 ("Ash July 10 Decl.") and Declaration of Todd Levitt in Support of Plaintiff's Second Motion to Enforce This Court's Orders, dated July 10, 2026 ("Levitt July 10 Decl."), and exhibits thereto.

### The Court's April 8 and June 4 Orders

By Order issued on June 4, 2026 ("June 4 Order"), ECF Dkt. 104, this Court found that Defendants had failed to comply with its Opinion and Order of April 8, 2026 ("April 8 Order"). In the April 8 Order, this Court granted summary judgment to Plaintiff NYCPS, vacated Defendants' non-continuation determinations with respect to five NYCPS MSAP grants for the current year, 2025-2026, and ordered Defendants to make a continuation determination with respect to each of the grants within ten days of issuance of the Order. ECF Dkt. 83, at 10. Defendants were also permanently enjoined from "non-continuing MSAP grants to NYCPS based on Title IX findings or 'civil rights violations' related to Title IX without following the required Title IX procedures." *Id.*

Defendants purported to comply with the April 8 Order by issuing Notices on April 17, 2026, that the five MSAP grants were continued for federal fiscal year ("FY") 2026, but without

making grant awards for the continued grants. On April 20, 2026 they issued GANs with zero-dollar grant awards. ECF Dkt. 87, Declaration of Todd Levitt dated May 14, 2026 ("Levitt May 14 Decl."), ¶¶ 5-8; ECF Dkt. 87-1 (April 17, 2026 Notices); ECF Dkt. 87-2 (April 20, 2026 GANs). Notwithstanding the fact that when the April 17 Notices were issued, USDE already had all of the information required to make the necessary grant award decisions, had they acted lawfully in September 2025, Defendants asserted in the April 17 Notices, and in emails sent on April 22, 2026, that they needed additional performance and financial information covering the additional time periods of the second half of the previous grant year (April through September 2025) and the first half of the current grant year (October 2025 through March 2026) in order to make the awards. Levitt May 14 Decl., ECF Dkt 87, ¶¶ 7, 9; ECF Dkt. 87-3 (April 22 emails). Defendants set a deadline of May 15, 2026 to receive that information. Despite the irregularity of these requests, in an attempt to resolve the matter NYCPS submitted the first category of information on May 1, 2026. Levitt May 14 Decl., ECF Dkt 87, ¶¶ 11-13. Having received no grant awards by May 14, NYCPS moved to enforce the April 8 Order. On May 15, 2026, NYCPS submitted the second category of information. *Id.* ¶ 14.

On June 4, 2026, the Court heard argument on NYCPS' motion. On the record, the Court reiterated its conclusion that Defendants had forfeited any argument going to the scope of the injunction, Tr. of Arg, at 33-34, and held that Defendants failed to show any basis in the MSAP regulations for their position that they could comply with the April 8 Order by merely issuing a determination that the grants' budget periods would continue without making an accompanying grant award. *Id.* at 34-35. The June 4 Order granted NYCPS' motion to enforce "for the reasons stated on the record at the June 4, 2026, hearing," and directed Defendants by June 9, 2026, "to determine the appropriate continued award amount for the grants at issue," including "any

determination that serves as the predicate for the funding of the grants," and to "issue GANs reflecting these award determinations." ECF Dkt. 104.

**<u>Defendants' Actions Since the Court's June 4 Order</u>**

**The June 5, 2026 Requests for Additional Information**. Late in the day on Friday, June 5, 2026, NYCPS' MSAP program directors each received an email from an attorney with USDE's Office for Civil Rights requesting additional information about one performance metric in the budget and performance reports NYCPS had submitted and demanding a response by noon on Monday, June 8, 2026. Levitt July 10 Decl., ¶ 6.

NYCPS' counsel promptly contacted counsel for Defendants objecting to the requests, noting that they were improper in light of the June 4 Order, as the Court had clearly stated the previous day that USDE's ability to seek additional information was forfeited, and asking that USDE retract them. Ash July 10 Decl., ¶ 3 and Exhibit A; Levitt July 10 Decl., ¶ 7. While Defendants' counsel requested that the objections be put in writing and agreed to pass them on to Defendants, USDE did not otherwise respond: it neither retracted its requests for information, nor took any steps to follow up on the requests. Ash July 10 Decl., ¶ 3; Levitt July Decl., ¶ 8.[1]

**The June 9, 2026 GANs**. On June 9, 2026, Defendants issued five new GANs to NYCPS. Levitt July 10 Decl., ¶ 9 and Exhibit A. The contents of those GANs make clear that Defendants have again failed to comply with this Court's Orders. On their face, they not only make diminished awards for FY2026 for each of the MSAP grants, but they also go further: Defendants have apparently effectuated a complete cut-off of the grants beginning October 1, 2026, without ever issuing a notice of non-continuation, effectively denying NYCPS the opportunity to appeal

---

[1] On June 23, 2026, USDE again requested the additional information it had sought on June 5. NYCPS timely provided it on July 8, 2026. Levitt July10 Decl., ¶ 8.

or seek reconsideration.

**The Minimal Awards**. *First,* USDE applied an unprecedented method of calculating the grant awards that sharply reduced the amounts. In USDE's initial GANs for these grants, issued at their inception, the expected amount of funding is set out for the current year and each of the following four years, and is uniformly $2,999,999 each year. USDE stated in those initial GANs that although the grant amounts were not binding, USDE expected that they would be uniform over the full course of the grant performance period: "The Secretary anticipates future funding for this award according to the schedule identified in Block 6." Declaration of Seritta Scott dated October 15, 2025 ("Scott Decl."), ECF Dkt 32, ¶ 9; Exhibit 1, ECF Dkt. 32-1, (GANs**,** Block 6 and Block 10, Item 1 (pp. 2-3, 8-9, 14-15, 20-21, 26-27)). Subsequent continuation GANs show the same five-year expected duration of the grants, with the same consistent award amounts. *See*, Declaration of Jennifer Todd, dated October 29, 2025, Exhibit 4, ECF Dkt 25-4, Block 6.

In the June 9 GANs, however, USDE abandoned this practice and adopted a new funding methodology that resulted in major reductions in the FY2026 grants. It imposed an offset against the grant amounts based on NYCPS' access to and use of FY2025 carryover funds this year. Levitt July 10 Decl., ¶¶ 9-10, Exhibit A, Block 10. As this Court will recall, NYCPS moved for a preliminary injunction in October 2025 at the outset of this action to obtain interim relief pending the litigation, because USDE had non-continued its grant funding for FY2026 and denied NYCPS access to essential carryover funds from the previous grant year, FY2025. Without access to this carryover funding, the MSAP projects would have had no available federal funding for FY2026, effective immediately. This Court ordered on November 12, 2025 that USDE's counsel consult with his client to determine whether USDE would allow NYCPS to access the carryover funding during the pendency of the litigation. ECF Dkt 33. The parties entered into a Consent

Order on November 20, 2025 to resolve the motion. In connection with the Consent Order, on December 1, 2025, NYCPS submitted budget for each grant recipient's planned use of the carryover funds through the end of the 2025-2026 school year, June 30, 2026. *See* ECF Dkt 42. That budget was not submitted in connection with new grant funding for FY2026. Rather, it remained an interim budget to facilitate NYCPS' use of the carryover funds "during the pendency" of the resolution of a planned motion for summary judgment seeking an order that USDE's non-continuation of the FY2026 grants was unlawful. *Id.* Indeed, the Consent Order expressly noted that NYCPS was withdrawing its motion for preliminary injunction "without prejudice"—language that was repeated in the Court's memo-endorsement—and stipulated to expedited scheduling of the parties' cross-motions for summary judgment. *Id.*

In the June 9 GANs, however, USDE obfuscated and misrepresented the nature of the "budget" that was submitted pursuant to the Consent Order, treating the carryover funds as equivalent to a continuation grant award: "The grantee submitted and received approval of its budget through June 30, 2026." Levitt July 10 Decl., ¶¶ 9-10, Exhibit A, Block 10, Item 6. Relying on that slight-of-hand, USDE then reduced the award for each grant from the expected $2,999,999 to a stub amount, in two steps:

(1) It decided that the grant award for the current grant year, FY2026, should be limited to the last quarter, July through September.

(2) As to that period, it stated that it had "limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made." It therefore divided the "annual requested and recommended average award amount for [each] grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000,

or $750,000 for the three-month continuation period." *Id.*

*(3)* Using $750,000 as the starting point, USDE then further reduced the grants by deducting from each grant the amount of carryover funds that were still available for expenditure through September 30, 2026, based on the information set forth in the Supplemental Declaration of Todd Levitt dated May 27, 2026 ("Levitt May 27 Decl."), ECF Dkt 96.

(4) The resulting grant awards ranged from $497,869 to $750,000.

These changes in methodology are unprecedented and unexplained. USDE had never before adjusted the MSAP grant awards from the expected amounts as set out in the initial GANs, or reduced the awards based on carryover funds being available during the grant period. Levitt July 10 Decl., ¶¶ 9-10.

Carryover funds are an integral and fully expected part of the MSAP grant cycle throughout the grants' performance period, given that the timing of grantees' access to new grant funds does not align with the school calendar, but instead is based on the federal fiscal year, For that reason, the first year's grant, which is received well into the school year, can effectively only be used for planning activities, resulting in unused funds that are carried over to the following year. In each subsequent grant year, the grant award again arrives after the school year is already underway, and grant funding remains to be carried over at the conclusion of the year. *See*, Declaration of Melissa Aviles-Ramos dated October 15, 2025 ("Aviles-Ramos Decl."), ECF Dkt 6, ¶ 11; Scott Decl., ECF Dkt 32, ¶ 12. As a result of this mis-alignment, the MSAP regulations provide grant recipients a 12-month period at the end of the grant, under a no-cost extension, to enable the use of remaining carryover funds to continue into a sixth year, allowing for an orderly wind-down of the grants. 34 C.F.R. § 75.253(h).

**The Grant Cut-offs**. *Second*, in addition to the massive reduction in the FY2026 grants, Defendants indicated in the June 9 GANs that the 2026 budget period would be the final budget period for each of the grants, putting all five grants into a wind-down posture after September 30, 2026, meaning that the grants would not be continued or would be terminated effective after that date. To effectuate this unprecedented cut-off, each GAN shortened the grant's performance period to end on September 30, 2026, instead of September 30 of either 2027 or 2028, depending on the grant. Levitt July 10 Decl., ¶¶ 11-12. In addition to truncating the term of these grants, the GANs also imposed an onerous and unusual pre-reimbursement approval process for the three-month continuation period, requiring that the grantees pay for all expenditures using their own funds, and submit documentation that substantiates that their expenditures are allowable under the grant **before** being allowed to draw down for reimbursement. Levitt July 10 Decl., ¶ 13, Exhibit A, GANs, Block 10, Item 6.

**<u>Defendants' Actions Since June 4 Are Based on Title IX or 'Civil Rights Violations' Related to Title IX</u>**

Defendants provided no explanation for adopting this novel practice for calculating grant award amounts for these MSAP grants, for ending the grants in FY2026, or for imposing pre-reimbursement requirements. However, the GANs emphasize USDE's objections to the Court's April 8 Opinion and Order and the merits of their original non-continuation of the grants:

> Consistent with the Department's original April 17, 2026, Notice of Continuation Determination, as noted earlier, **this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue**.

Levitt July 10 Decl., Exhibit A, GANs, Block 10, Item 6 (emphasis added).[2]

---

[2] Defendants state that the certification is required for grant continuation determinations, *see* GANs at Block 10, Item 6. As NYCPS explained in its memorandum of law in support of its motion for

USDE has from the beginning of this case relied on 20 U.S.C. § 7231d(c) as the basis for non-continuing the MSAP grants. That section provides that the Assistant Secretary for Civil Rights must determine that certain assurances given by the grant applicant will be met. Those assurances, set out in 20 U.S.C. § 7231d(b)(2)(C), are that the applicant "will not engage in discrimination based on race, religion, color, national origin, sex, or disability in

> (i) The hiring, promotion, or assignment of employees of the applicant or other personnel for whom the applicant has any administrative responsibility;
>
> (ii) The assignment of students to schools, or to courses of instruction within the schools, of such applicant, except to carry out the approved plan; and
>
> (iii) Designing or operating extracurricular activities for students

This is the statutory provision that USDE's Assistant Secretary Trainor relied on in his September 16, 2025 letter to NYCPS that conveyed USDE's "findings" that NYCPS' Guidelines violate Title IX. ("As a result of these findings, I will not certify NYC DOE's grant under 20 U.S.C. § 7231d(c).") Aviles-Ramos Decl., ECF Dkt 6, ¶ 6 and Exhibit 1.

Further, USDE's current internal policy guidance to program staff and leadership of its grantmaking offices demonstrates that its actions here are similarly based on Title IX findings, in violation of the Court's Order. On June 5, 2025, USDE's Office of Planning, Evaluation and Policy Development ("OPEPD") issued a memorandum "to provide guidance to program offices regarding the review criteria . . . to be used in considering non-competing continuation (NCC) awards in discretionary grant portfolios and no cost extensions." ("USDE Policy Memo"). A copy of the USDE Policy Memo is annexed as Exhibit B to the Declaration of Melanie Ash submitted

---

summary judgment, however, the certification requirement applies only to applications for new grants. *See*, Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, dated December 16, 2025, ECF Dkt 52, pp. 4-5.

herewith. As set forth more fully below, that guidance memo directs that continuation grant award decisions *shall* include consideration of Title IX and "civil rights violations."

The guidance, which was operative at the time of the unlawful non-continuation determination in September 2025, remains in effect. On June 1, 2026, USDE Assistant Secretary for OPEPD Murray Bessette submitted the USDE Policy Memo as an exhibit to his declaration in *State of California, et al. v. U.S. Department of Education, et al*., 25-cv-10548 (D. Mass.), ECF Dkt 155, 155-1. In his declaration, Assistant Secretary Bessette stated that the USDE Policy Memo has been the operative guidance to program offices since its issuance June 5, 2025.[3] Bessette Decl., Exhibit B to Ash July 10 Decl., at ¶¶ 2, 5-6.

The USDE Policy Memo clearly states USDE's position regarding Title IX:

> … grantees must not use federal funds in any manner that violates . . . Title IX. . . . To the extent that a grantee uses or has used grant funds in a manner that violates these laws, program offices *must* make appropriate recommendations, including denial of continuation funding . . . ." Policy Memo, Exhibit B to Ash July 10 Decl., at p. 1.
>
> Program offices, in reviewing each discretionary grant award for an NCC award, *shall review each grant to ensure that grant funds are not supporting any discriminatory activities*, such as . . .
>
> - allowing males into female-only sports
> - allowing males into female intimate spaces (e.g. bathrooms, locker rooms)." *Id.*, p. 2. (emphasis added).

This guidance was in effect for the September 2025 non-continuation decision, which the Court vacated in its April 8 Order as unlawful. As Assistant Secretary Bessette's June 1, 2026, declaration demonstrates, this memorandum—and the mandate to be governed by USDE's

[3] Notably, this document was nevertheless not included by USDE in the Administrative Record produced in this case.

interpretation of Title IX—remained in effect for USDE's decision issuing the June 9 GANs, in violation of the Court's April 8 Order.

USDE's June 2025 Policy Memo, together with Defendants' strenuous objection to providing the certification of the grantee's compliance with civil rights in connection with both the April l7, 2026 Notice of Grant Continuations and the June 9 GANs, and the absence of any legitimate attempt to otherwise explain USDE's minimal grant award amount and intent to end the MSAP grants altogether, demonstrate that Defendants are plainly still taking actions against NYCPS' MSAP grants on the same basis stated by Assistant Secretary Trainor—the purported finding that NYCPS' Guidelines violate Title IX.

As a result of USDE's actions, the NYCPS MSAP grants are now confronting the same abrupt end as they faced last September. Because NYCPS has expended the FY2025 carryover funds for school operations this year, it has only small amounts—and in some cases, negative balances—remaining, and USDE has expressed its intention to non-continue the grants as of the end of this grant year, September 30, 2026.

As before, in so doing, USDE has failed to follow Title IX's procedures. In addition to violating the June 4 Order, Defendants are therefore also in violation of the permanent injunction issued as part of this Court's April 8 Order.

**<u>The Consequences for NYCPS of Defendants' Failure to Comply</u>**

USDE's ongoing failure to issue grant awards for the 2026 federal fiscal year in compliance with this Court's Orders has caused and is continuing to cause serious harms to the 19 magnet schools. Levitt May 14 Decl., ECF Dkt 87, ¶¶ 15-25; Levitt May 27 Decl., ECF Dkt 96, ¶¶ 11-13; Levitt July 10 Decl., ¶ 15. The programs were forced to forego summer programming this year, including planning and curriculum development for the upcoming school year, professional development sessions for staff (including workshops for newly hired teachers),

and summer enrichment activities for students. Levitt May 14 Decl., ECF Dkt 87, ¶¶ 17-21; Levitt July 10 Decl., ¶ 15. The uncertainty and continued delay in grant awards makes it impossible for the schools to plan for the upcoming year, including for programming, recruitment, and hiring of staff. Levitt May 14 Decl., ECF Dkt 87, ¶¶ 15-25; Levitt July 10 Decl., ¶ 15. With the carryover funding essentially exhausted, the loss of funding from the June 9 GANs is detrimental to these schools and their programs. Levitt May 27 Decl., ECF Dkt 96, ¶ 17; Levitt July 10 Decl., ¶¶ 14-15.

## ARGUMENT

In the April 8 Order, this Court permanently enjoined Defendants from "non-continuing MSAP grants to NYCPS based on Title IX findings or 'civil rights violations' related to Title IX without following the required Title IX procedures." ECF Dkt 83, at 10. The Court further directed Defendants to make new grant continuation determinations within ten days. Defendants themselves determined to continue the grants for the current year. After first flouting the April 8 Order by making continuation determinations without any commensurate funding, and then being ordered in the June 4 Order to make the funding determinations, Defendants have now continued their non-compliance by making new awards that can only be reasonably understood as based on the same Title IX violation defendants relied on in September 2025 to non-continue this year's grants.

As the April 17, 2026 Notices of Grant Continuation and the June 9 GANs themselves make clear, Defendants made these grant awards solely because they were compelled to by the April 8 and June 4 Orders. They continue to oppose making these awards and specifically oppose certifying the assurances that the grants do not violate anti-discrimination laws, including discrimination on the basis of sex. Levitt May 14 Decl., Exhibit A, ECF Dkt. 87-1; Levitt July 10

Decl., Exhibit A, Block 10.[4]

**A. <u>The Court Has Inherent Authority to Enforce its April 8th and July 4 Orders</u>**

"[E]very court with the power to enter a judgment has the power to enforce it, even if the docket is closed." *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 1:17-CV-0816 (KHP), 2025 WL 384545, at *1 (S.D.N.Y. Feb. 4, 2025) (citing *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 554 (7th Cir. 2021)). This power furthers "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). An order to enforce "is particularly appropriate… where an administrative agency plainly neglects the terms of a mandate" issued by the court. *Id.*

A motion brought to enforce the court's previous judgment should be granted "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Ali v. Pompeo*, No. 16-CV-3691-SJB, 2020 WL 6435834, at *4 (E.D.N.Y. Nov. 2, 2020) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004), *aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24 (D.C. Cir. 2005)). On a motion to enforce, the Court is also empowered to construe and interpret the language of its prior judgment. *See United States v. Spallone*, 399 F.3d 415, 422 (2d Cir. 2005) ("[T]he power to construe a court decree is essential to its enforcement.").

This Court thus has inherent authority to ensure compliance by USDE with the terms of its April 8 and June 4 Orders. *See, e.g., City of Chicago v. United States Dep't of Homeland Sec.*, No. 25 C 5463, 2026 WL 353581, at *6 (N.D. Ill. Feb. 9, 2026) ("The Court thus exercises its

[4] Nevertheless, despite Defendants' repeated protests, and their filing on June 8, 2026 of a Notice of Appeal from the April 8 Order, Defendants withdrew the appeal on June 18, 2026.

equitable authority to enforce its orders and requires that DHS finally comply with its regulatory and Court-ordered obligations within fourteen days." *See Degen v. United States*, 517 U.S. 820, 827 (1996) (explaining that "[a] federal court has at its disposal an array of means to enforce its orders," including "by inherent authority")).

For the reasons described below, this Court should exercise its authority to vacate the June 9 GANs and require that USDE make new grant awards for FY2026 that comport with prior and expected practice and are not based on Title IX findings or civil rights violations related to Title IX without following Title IX procedures, with new GANs effectuating such awards.

### B. USDE Has Violated the April 8 and June 4 Orders by Reducing the FY2026 Grant Awards and Non-Continuing the MSAP Grants on the Basis of Title IX Violations or Civil Rights Violations Relating to Title IX

As described above, since the June 4 Order was issued USDE has engaged in a series of actions regarding the MSAP grant awards that have no reasonable explanation other than that USDE has issued truncated grant awards based on purported Title IX violations. USDE has expressed its strong objection to continuing the grants, making the grant awards, and certifying NYCPS' assurances of compliance with civil rights laws. USDE's own Policy Memo mandates consideration of Title IX violations and civil rights violations based on Title IX in review and issuance of continuation grant awards. These statements are entirely consistent with its September 16, 2025 notice that it was discontinuing the MSAP grants for the current year, based solely on asserted Title IX violations.

That USDE has continued to flout this Court's Orders is apparent in its vehement statements of objection to the Orders, and reaffirmed by its actions with respect to the grant awards. First, it failed to meet the April 8 Order's 10-day deadline for new grant continuation determinations, necessitating a motion and a new order to elicit the required grant awards. Second, the day after the June 4 Order, where this Court made clear on the record that USDE had

forfeited the ability to seek additional information in connection with the grant award amounts, USDE ignored that direction and issued a new demand for information with a deadline of noon of the next business day. The day after that deadline passed, USDE issued the June 9 GANs to meet this Court's deadline, but veered sharply from its prior practice. For the first time in NYCPS' experience, instead of awarding the amount of funding consistent with its practice each prior year—a funding amount that USDE itself had said in the initial GANs was expected—USDE treated carryover funds as a substitute for the current grant award as to the first three quarters of the grant year, and reduced the award to cover only the remaining fraction of the year. It further added another reduction to even that fractional award to offset the carryover amount that still remained.

Without any legitimate stated basis, USDE severely reduced the expected award amounts even though the original GANs, issued at the outset of each grant indicated that the grant amounts for each year of these five-year grants would be uniform, $2,999,999.[5] Scott Decl., Exhibit 1, ECF Dkt 32-1, Block 6. USDE acknowledged as much in the June 9 GANs when it expressly began its award determination from a starting point of "the annual requested and recommended average award amount for [each] grant ($3,000,000)," Levitt July 10 Decl., Exhibit A, Block 10, Item 6. USDE also stated in the June 9 GANs that the FY2026 grant will be the last, without issuing a notice of non-continuation as required under the MSAP regulations, or otherwise providing any explanation for that action, or procedure to contest it. *Id.*, Block 10, Item 1.

---

[5] Although 34 C.F.R. § 75.253(e) provides that the Secretary may consider whether carryover funds are needed, this allowance is not a relevant consideration here, where NYCPS moves for an order enforcing this Court's prior order prohibiting the USDE from making non-continuation decisions on an unlawful basis. Moreover, where USDE's choice to reduce the continuation award here stems from its prior Title IX violation or its findings associated with that violation, that action violates both Title IX and the Court's April 8 Order, regardless of what discretion USDE may generally possess.

Likewise, in the Terms & Conditions set out in the June 9 GANs, USDE has, for the first time ever, placed the grants on "reimbursement pay status," without any stated justification. Levitt July 10 Decl., ¶ 13 and Exhibit A, Block 10, Item 6. All of these actions can only be understood as perpetuating the harmful effects of the original, unlawful, non-continuation determination that has since been vacated by this Court.

In multiple ways, USDE previously gave assurances that funding would be continued as initially expected and communicated to NYCPS. That expectation was included in the original GANs issued at the inception of each of the grants. It was confirmed by USDE's consistent practice, in which the amount of funding remained consistent in every prior year of the grant before September 2025. Such assurances are also included in the MSAP regulations, which recognize the "intention to make continuation awards to fund the remainder of the project period." 34 C.F.R. § 75.251(b)(2). USDE has offered no reason for completely and abruptly changing course. The only reasonable conclusion is that their actions continue to be rooted in their Title IX objection and they have merely refrained from expressly saying so.

### C. This Court Should Issue a Further Order Enforcing its April 8 and June 4 Orders

For the reasons described herein, it is apparent that USDE failed to comply with this Court's April 8 and June 4 Orders in a continuing effort to deny funding to NYCPS' magnet schools based on the same asserted Title IX violation that infected USDE's original non-continuation determination.

## CONCLUSION

For all the reasons set forth above, this Court should exercise its inherent power to enforce its orders by granting this motion to enforce; vacating the June 9 GANs; and ordering Defendant USDE to make appropriate continuation awards, and forthwith issue GANs that are consistent with USDE's prior practice (*i.e.* from the acknowledged starting point of the requested and

recommended average award amount for each grant), without consideration of or reliance on the budget provided by NYCPS to facilitate interim relief under the November 20, 2025 Consent Order, or otherwise perpetuating the harmful effects of USDE's unlawful—and since vacated—September 16, 2025 non-continuation determination, and without imposing punitive or otherwise onerous terms and conditions based explicitly or implicitly, on Title IX findings or "civil rights violations" related to Title IX without following Title IX procedures; and/or grant such other and further relief as the Court deems proper.

Dated: July 10, 2026

Respectfully submitted,

**STEVEN BANKS**
Corporation Counsel of the City of
New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov



By: Melanie C.T. Ash
June Buch
Hope Lu
Gavin Mackie
Emeline Kong

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE**

As required by Local Civil Rule 7.1(c), I certify that the document contains 5351 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

Melanie C.T. Ash