**NYC MSAP CSD 4/2/6**
**PR AWARD# S165A230011**
**FY25 CARRYOVER BUDGET $1,874,286**
**10/1/25 - 6/30/26**

All projected expenditures for the FY25 Carryover Funds, totaling **$1,874,286**, are fully allowable and align with the scope and objectives of the CSD 4/2/6 MSAP project. These funds will directly support the magnet program's goals and are planned to be scheduled across the following categories:

| BUDGET CATEGORIES | FY25 CARRYOVER AMOUNT DISTRIBUTION |
|---|---|
| 1.  PERSONNEL | $1,089,642 |
| 2.  FRINGE | $518,984 |
| 3.  TRAVEL | $8,000 |
| 4.  EQUIPMENT | $54,926 |
| 5.  SUPPLIES | $22,892 |
| 6.  CONTRACTUAL | $117,926 |
| 7.  CONSTRUCTION | N/A |
| 8.  OTHER | $7,325 |
| DIRECT COSTS | $1,819,695 |
| INDIRECT COST (3%) | $54,591 |
| TOTAL COSTS | $1,874,286 |

**Personnel** – Personnel allocations will cover the full salaries of all district and school project staff, as well as per-session and per-diem costs. School-based magnet personnel are essential to effective program implementation. Per-session funds will support staff participation in magnet planning, curriculum development, and professional learning aimed at strengthening instructional practices across both the district and school levels. These funds will also provide for extended-day learning opportunities for students. In addition, per-diem allocations will allow schools to hire substitute teachers so that magnet staff can be released for magnet training.

*Salaries* - MSAP D4/2/6 has a total of 10 magnet teacher staff positions, as well as District personnel. The Year 3 Total Salaries (including anticipated contractual salary and step increases) is **$982,142.**

*Per Session* – Each of the three schools and the district will receive approximately 409 per session hours at a

1

contractual rate of $61 per hour, totaling **$100,000** to use in Year 3 for the aforementioned support/activities.
*Per Diem* – Each of the three schools will receive 11 days of per diem funds to cover educators for magnet related training. The per diem rate is $ 224.83, totaling in the amount of **$7,500** to support magnet based trainings.

| | |
|---|---|
| Personnel (Salaries) | $982,142 |
| Per Session | $100,000 |
| Per Diem | $7,500 |
| **Total Personnel** | **$1,089,642** |

**Fringe Benefits –** Fringe benefit allocations for the FY25 carryover were calculated at NYCDOE FY26 rates on above personnel costs (45.83% on salaries, 20.76% on per session, 8.15% on per diem.  Salaries $1,089,642*45.83%= $499,380; Per Session $100,000 *20.76%= $18,990; Per Diem $7,500*8.15%=$611
**Total Fringe:**                                                                                                    **$518,984**

**Travel –** The travel allocation of FY25 carryover funds will support participation of staff in professional development activities by funding both local and out of town conferences and training opportunities (2026 Magnet Schools of America National Conference)                                                     **$8,000**

**Equipment** – This allocation of FY25 carryover funds will be used to purchase equipment that will support the development of Podcasting Studios, Multimedia and broadcasting labs, early college access as well as technology initiatives in several of our schools.                                                     **$54,926**

**Supplies** - Projected supplies allocations will be used to purchase a variety of instructional, technology, podcasting, and arts supplies to support the programs in each of the schools.                     **$22,892**

**Contractual Services -** The contractual services portion of the FY25 carryover will fund district-level service needs, as well as professional development, curriculum development, and theme-based enrichment provided by external partners at magnet schools. These services are essential to effective magnet theme implementation and to supporting long-term program sustainability.                                                     **$117,926**

| Location | Contractual Service Providers | Estimated Cost |
|---|---|---|
| District | Metis Associates, Grandview Stack, CKing Ed, Liberty Science Center, Left of Center | $37,000 |
| Esperanza | Center for Technology and School Change (CTSC) at Columbia, City University of New York Borough of Manhattan Community College (BMCC) | $25,000 |
| JKO | For A Bright Future, Roundabout Theatre, BMCC | $31,000 |
| CCMSA | IN THE LIVING ROOM PODCAST LLC, Brett Snyder DFCM Productions | $24,926 |
| **TOTAL CONTRACTUAL SERVICES AMOUNT** | | **$117,926** |

**Other – FY25** Carryover for 'other' will cover miscellaneous costs of both the school and district level. (recruitment materials, advertisements, memberships, parent engagement, student admissions)          **$7,325**

2

**Indirect Costs –** A total of $54,591 is projected to be spent on indirect for Year 3.  This will cover the possible shortfall in this category due to an anticipated difference between the indirect cost rate in the application and this project year's indirect cost rate.                                            **Indirect Cost**:  **$54,591**

**Total FY25 Carryover Amount**                                                                          **$1,874,286**

USDOE-Contiuation_000769

**NYC MSAP CSD 7/10/11**
**PR AWARD# S165A230012**
**FY25 CARRYOVER BUDGET**
**10/1/25 - 6/30/26**

All projected expenditures for the FY25 carryover funds, totaling **$2,741,671**, are fully allowable and align with the scope and objectives of the CSD 7/10/11 MSAP project. These funds will directly support the magnet program's goals and are planned to be scheduled across the following categories:

| BUDGET CATEGORIES | FY25 CARRYOVER AMOUNT DISTRIBUTION |
|---|---|
| 1. PERSONNEL | $1,411,403 |
| 2. FRINGE | $612,377 |
| 3. TRAVEL | $9,000 |
| 4. EQUIPMENT | $61,000 |
| 5. SUPPLIES | $201,470 |
| 6. CONTRACTUAL | $325,231 |
| 7. CONSTRUCTION | N/A |
| 8. OTHER | $41,336 |
| DIRECT COSTS | $2,661,817 |
| INDIRECT COST (3%) | $79,854 |
| TOTAL COSTS | $2,741,671 |

**Personnel** – Personnel allocations will cover the full salaries of all district and school project staff, as well as per-session and per-diem costs. School-based magnet personnel are essential to effective program implementation. Per-session funds will support staff participation in magnet planning, curriculum development, and professional learning aimed at strengthening instructional practices across both the district and school levels. These funds will also provide for extended-day learning opportunities for students. In

1

USDOE-Contiunation_000770

addition, per-diem allocations will allow schools to hire substitute teachers so that magnet staff can be released for magnet training.

*Salaries* - MSAP D7/10/11 has a total of 9.5 magnet teacher staff positions, as well as District personnel. The Year 3 Total Salaries (including anticipated contractual salary and step increases) is **$1,285,403.**
*Per Session* – Each of the three schools and the district will receive 492 per session hours at a contractual rate of approximately $61 per hour, totaling **$120,000** to use in Year 3 for the aforementioned support/activities.
*Per Diem* – Each of the three schools will receive 9 days of per diem funds to cover educators for magnet related training. The per diem rate is $ 224.83, totaling in the amount of **$6,000** to support magnet-based trainings.

| | |
|---|---|
| Personnel (Salaries) | $1,285,403 |
| Per Session | $120,000 |
| Per Diem | $6,000 |
| **Total Personnel** | **$1,411,403** |

**Fringe Benefits –** Fringe benefit allocations for the FY25 carryover were calculated at NYCDOE FY26 rates on above personnel costs (45.83% on salaries, 20.76% on per session, 8.15% on per diem.  Salaries $1,285,403*45.83%= $589,100; Per Session $120,000 *20.76%= $$22,788; Per Diem $6,000*8.15%=$489
**Total Fringe:**                                                                                                      **$612,377**

**Travel –** The travel allocation of FY25 carryover funds will support participation of staff in professional development activities by funding both local and out of town conferences and training opportunities (2026 Magnet Schools of America National Conference)                                              **$9,000**

**Equipment** – This allocation of FY25 carryover funds will be used to purchase equipment that will support the development of Podcasting Studios, Multimedia and broadcasting labs, early college access as well as technology initiatives in several of our schools.                                              **$61,000**

**Supplies** - Projected supplies allocations will be used to purchase a variety of instructional, technology, podcasting, and arts supplies to support the programs in each of the schools.                    **$201,470**

**Contractual Services -** The contractual services portion of the FY25 carryover will fund district-level service needs, as well as professional development, curriculum development, and theme-based enrichment provided

USDOE-Contiunation_000771

by external partners at magnet schools. These services are essential to effective magnet theme implementation and to supporting long-term program sustainability.                    **$325,231**

| Location | Contractual Service Providers | Estimated Cost |
|---|---|---|
| District | Metis Associates, Grandview Stack, CKing Ed, Liberty Science Center, Paideia, | $85,000 |
| Finance & Technology | Hostos Community College, Playing With Purpose, Sarah Benis Scheier-Dolberg, Crossways Driving School, YMCA of NY, Arete Education | $51,305 |
| HS for Teaching and the Professions | Generation Ready, AVID, Ramapo, PBL Works | $103,000 |
| Bronx HS for the Visual Arts | For a Bright Future, Vivid Voice- Art based mentor, Radiant Pathways, BrainPower Wellness, Fusion Education, CTSC-Teachers College, Access2Achieve Facilitating Focus, City University of NY Borough of Manhattan Community College (BMCC) | $85,926 |
| **TOTAL CONTRACTUAL SERVICES AMOUNT** | | **$325,231** |

**Other – FY25** Carryover for 'other' will cover miscellaneous costs of both the school and district level. (recruitment materials, advertisements, memberships, parent engagement, student admissions) **$41,336**

**Indirect Costs –** A total of **$79,854** is projected to be spent on indirect for Year 3.  This will cover the possible shortfall in this category due to an anticipated difference between the indirect cost rate in the application and this project year's indirect cost rate.                    **Indirect Cost**:  **$79,854**

**Total FY25 Carryover Amount**                    **$2,741,671**

3

USDOE-Contiunation_000772

**NYC MSAP CSD 19/27**
**PR AWARD# S165A220034**
**FY25 CARRYOVER BUDGET $3,184,923**
**10/1/25 - 6/30/26**

All projected expenditures for FY25 carryover funds are for allowable costs that fall within the scope and objectives of the CSD 19/27 MSAP project. These funds will directly support the magnet program's goals and are planned to be scheduled across the following categories:

| Budget Categories | FY25 Carryover to Current Budget Period |
|---|---|
| 1. Personnel | $1,276,382 |
| 2. Fringe Benefits | $509,817 |
| 3. Travel | $74,000 |
| 4. Equipment | $81,800 |
| 5. Supplies | $365,059 |
| 6. Contractual | $645,000 |
| 7. Construction | $0 |
| 8. Other | $140,100 |
| Direct Costs | $3,092,158 |
| IC 3% | $92,765 |
| Total Costs | $3,184,923 |

The projected FY25 carryover of magnet funds will be used for personnel salaries, fringe benefits, travel, supplies, contractual services, and other costs (see detailed carryover budget allocation below). The FY25 carry-over funds will support a comprehensive effort to continue to address magnet program goals. It is estimated that this carryover will be allocated in the following budget categories:

**Personnel** – Personnel allocations will fund full salaries of each of the District and school's magnet staff positions in addition to per session and per diem. School-based magnet staff are instrumental in supporting program implementation. Per session funds will support additional participation in magnet planning and curriculum writing, professional development for staff, and supporting extended day learning for students, and per diem will allow the hiring of substitute teachers so classroom teachers can be freed up for magnet training. A total of $1,276,382 FY25 Carry-over is projected to be spent on Personnel.
This includes:
*Salaries*- Allocations will pay for full salaries of each of the District and school project positions.

**Salaries- $987,939**

*Per Session*- Each of the four schools will receive approximately 890 per session hours and the district will receive 800 hours of per session to use in year 4 for the aforementioned support/activities. Per session rate is

$61 per hour, providing a total of $54,290 per site and $48,800 for the District, resulting in a combined total of $265,960.

**Per Session - $265,960**

*Per Diem-* Each of the four schools will receive 25 days of per diem funds to cover educators for magnet-related training. The per diem rate is $224.83.

**Per Diem- $22,483**

**Fringe** - A total of $509,817 FY25 carry-over is projected to be spent on Fringe Benefits. Fringe benefit allocations for the carryover were calculated at NYCDOE FY25 rates on above personnel costs (45.83% on salaries, 20.76% on per session, 8.15% on per diem)
*Salaries-* $452,772 Fringe
*Per Session-* $55,213 Fringe
*Per Diem-* $1,832 Fringe

**Travel** - A total of $74,000 FY25 carry-over is projected to be spent on Travel. The project hopes to expand learning opportunities for additional staff members at each school, which will include: USDE meetings, MSA National conference, National School Public Relations Association conference, and International Society of Technology in Education conference.

**Equipment**: A total of $81,800 FY25 carry-over is projected to be spent on equipment. Equipment is any single item with a price greater than $5,000. This includes specialized spaces in each school that will require additional equipment, including cameras, computers, 3D printers, laser printers, and interactive white boards. PS 202 will have a new journalism and broadcasting room, which will require the purchase of media equipment.

**Supplies** - A total of $365,059 FY25 carry-over is projected to be spent on Supplies. Supplies are any single item with a price less than $5,000. Supplies will be school and theme specific and will support programming in each school. Examples are included below.

| School/District | Supplies |
|---|---|
| District | PD texts and supplies |
| PS 64 | Art Supplies, makerspace supplies, 3D printers, iPads, computers, office supplies, PD materials |
| IS 171 | Computers, interactive white boards, 3D printers, iPads, office supplies, art supplies |
| PS 202 | Cameras, iPads, computers, microphones, recorders |
| VCMS (654) | Robotics supplies, iPads, laptops, instructional supplies |

**Contractual Services** - A total of $645,000 FY25 carry-over is projected to be spent on Contracts/Consultants. Anticipated contractual services to be paid with carryover funds are as follows.

USDOE-Contiunation_000774

| School/District | Contractual Service Provider | Estimated Cost |
|---|---|---|
| District | Columbia University Center for Technology and School Change, edLio, League of Young Inventors, Plug Ugly Films, The National Paideia Institute, Thinking Maps, and Buck Institute for Education, Left of Center | $150,000 |
| PS 64 | CTSC, Studio in a School, League of Young Inventors | $125,000 |
| IS 171 | 826NYC, Seeds to Flowers, We Got Games, Practice Makes Perfect, Gassaway | $120,000 |
| PS 202 | BRIC Media Arts, Quadrant One STEM Center, Rosebud Art Studio, Plug Ugly Films | $125,000 |
| VCMS (654) | Candy Store Productions, Urban Wall StreetBRIC Media Arts, BEAM Center, Plug Ugly Films | $125,000 |

**Other**- FY25 Carryover for 'other' will cover miscellaneous costs at both the school and district level. (recruitment materials, advertisements, memberships, parent engagement, student admissions) A total of $140,100 is projected to be spent in this category. Examples are outlined below.

| School/District | Purchases |
|---|---|
| District | Advertisements on social media and in local publications, recruitment materials, promotional items |
| PS 64 | External signage, promotional items, student admissions, family workshop materials, professional memberships |
| IS 171 | Website maintenance, social Media blasts, student admissions, professional memberships, student leadership trips |
| PS 202 | Promotional items, school messenger, educational subscriptions, professional memberships |
| VCMS (654) | Internal signage, promotional items, advertisements, creative subscriptions, professional memberships |

**Total FY25  Carryover Amount**                                              **$3,184,923**

**NYC MSAP CSD 28/29**
**PR Award#S165A220032**
**FY25 Carryover Budget $1,467,172**
**10.1.25 – 6.30.26**

All projected expenditures for the FY25 carryover funds, totaling **$1,467,172**, are fully allowable and align with the scope and objectives of the CSD 28/29 MSAP project. In turn, activities supported by grant funds project year to account for a shortfall in These funds will directly support the magnet program's goals and are planned to be scheduled across the following categories:

| BUDGET CATEGORIES | FY25 CARRYOVER AMOUNT DISTRIBUTION |
|---|---|
| 1.  PERSONNEL | $821,633 |
| 2.  FRINGE | $355,486 |
| 3.  TRAVEL | $8,000 |
| 4.  EQUIPMENT | $0 |
| 5.  SUPPLIES | $81,320 |
| 6.  CONTRACTUAL | $150,000 |
| 7.  CONSTRUCTION | N/A |
| 8.  OTHER | $8,000 |
| DIRECT COSTS | $1,424,439 |
| INDIRECT COST (3%) | $42,733 |
| TOTAL COSTS | $1,467,172 |

**Personnel** – Personnel allocations are projected to cover the full salaries of all district and school project staff, as well as per-session and per-diem costs. School-based magnet personnel are essential to effective program implementation. Per-session funds will support staff participation in magnet planning, curriculum development, and professional learning aimed at strengthening instructional practices across both the district and school levels. These funds will also provide for extended-day learning opportunities for students. In addition, per-diem allocations will allow schools to hire substitute teachers so that magnet staff can be released for magnet training.

**Salaries** - MSAP D28/29 has a total of 8 magnet teacher staff positions, as well as District personnel. The FY25 Carryover Total Salaries (including anticipated contractual salary and step increases) are estimated to be **$738,158.**

**Per Session** – Each of the five schools and the district will receive approximately 225 per session hours at a contractual rate of $61 per hour, estimated to total **$82,350** to use FY25 Carryover for the aforementioned support/activities.

*Per Diem* – Each of the five schools will receive 1 day of per diem funds to cover educators for magnet related training. The per diem rate is $ 224.83, totaling **$1,125** to support magnet based trainings.

Personnel (Salaries): **$738,158**
Per Session: **$82,350**
Per Diem: **$1,125**
**Total Personnel:**
**$821,633**

**Fringe Benefits** – Fringe benefit allocations for the FY25 carryover were calculated at NYCDOE FY26 rates on above personnel costs (45.83% on salaries, 20.76% on per session, 8.15% on per diem. Salaries $738,158*45.83%= $338,298; Per Session $82,350*20.76%= $17,096; Per Diem $1,125 *8.15%=  $92
**Total Fringe:**                                                                                                              **$355,486**

**Travel** – The projected travel allocation of FY25 carryover funds will support participation of staff in professional development activities by funding both local and out of town conferences and training opportunities (2026 Magnet Schools of America National Conference)

                                                                                                                                  **$8,000**

**Equipment** – This allocation of FY25 carryover funds will be used to purchase equipment that will support the development of MakerSpaces, Multimedia and broadcasting labs, as well as technology initiatives in several of our schools.                                                                                                          **$0**

**Supplies** - Projected supplies allocations will be used to purchase a variety of instructional, technology, podcasting, and arts supplies to support the programs in each of the schools.

                                                                                                                                  **$81,320**

**Contractual Services** – Projected contractual services portion of the FY25 carryover will fund district-level service needs, as well as professional development, curriculum development, and theme-based enrichment provided by external partners at magnet schools. These services are essential to effective magnet theme implementation and to supporting long-term program sustainability. Potential service provider examples are included in the chart below.

                                                                                                                                  **$150,000**

| District/School | Contractual Service Provider | Estimated Cost |
|---|---|---|
| **District** | Metis Associates<br>Left of Center Production | $50,000 |
| **MS72** | NY Alliance Drumline<br>Anja Bollywood Dance Residency<br>MAATH Visual Arts Program<br>Magic Box Productions | $20,000 |
| **PS182** | Run4Fun<br>G&R Inclusive<br>National Paideia Center<br>ReimaginED | $20,000 |
| **PS312** | Education Through Music<br>OmniLearn<br>Magic Box Productions | $20,000 |

|  | Brooklyn Foundry |  |
|---|---|---|
| **MS332** | How Can I<br>Masterpiece Exemplified<br>The Dinner Table Doc - Beyond the Book Club | $20,000 |
| **PS135** | Magic Box Productions<br>Smartworks<br>Inside Broadway<br>Marquis Studios<br>Lego Education | $20,000 |
| **Total Amount for Contractual Services** |  | $150,000 |

**Other** – Projected FY25 carryover for 'other' will cover miscellaneous costs of both the school and district level.   (recruitment materials, advertisements, memberships, parent engagement, student admissions)

**$8,000**

**Indirect Costs** – A total of $42,733 is projected to be spent on indirect for FY25 Carryover, at the FY26 IC Rate of 0.3%.

**$42,733**

**Total FY25 Carryover Amount**
**$1,467,172**

USDOE-Contiunation_000778

**NYC MSAP CSD 32/16**
**PR AWARD# 165A220037**
**FY25 CARRYOVER BUDGET $ 2,445,182**
**10/1/25 - 6/30/26**

All projected expenditures for the FY25 Carryover Funds, totaling **$2,445,182**, are fully allowable and align with the scope and objectives of the CSD 32/16 MSAP project. These funds will directly support the magnet program's goals and are planned to be scheduled across the following categories:

| BUDGET CATEGORIES | FY25 CARRYOVER AMOUNT DISTRIBUTION |
|---|---|
| 1.  PERSONNEL | $ 1,348,942 |
| 2.  FRINGE | $   560,050 |
| 3.  TRAVEL | $     25,000 |
| 4.  EQUIPMENT | $     45,000 |
| 5.  SUPPLIES | $   115,000 |
| 6.  CONTRACTUAL | $   269,971 |
| 7.  CONSTRUCTION | N/A |
| 8.  OTHER | $     10,000 |
| DIRECT COSTS | $ 2,373,963 |
| INDIRECT COST (3%) | $     71,219 |
| TOTAL COSTS | $ 2,445,182 |

**Personnel** – Personnel allocations are projected to cover the full salaries of all district and school project staff, as well as per-session and per-diem costs. School-based magnet personnel are essential to effective program implementation. Per-session funds will support staff participation in magnet planning, curriculum development, and professional learning aimed at strengthening instructional practices across both the district and school levels. These funds will also provide for extended-day learning opportunities for students. In addition, per-diem allocations will allow schools to hire substitute teachers so that magnet staff can be released for magnet training.

*Salaries* - MSAP D32/16 has a total of 8 magnet teacher staff positions, as well as District personnel. The estimated FY25 Carryover Funds Total Salaries (including anticipated contractual salary and step increases) is **$1,125,956.**

*Per Session* – Each of the four schools and the district will receive approximately 672 per session hours at a contractual rate of approximately $61 per hour, totaling **$205,000** to use in FY25 Carryover Funds for the aforementioned support/activities.

1

USDOE-Contiunation_000779

*Per Diem* – Each of the four schools anticipate using 20 days of per diem funds to cover educators for magnet related training. The per diem rate is $ 224.83, totaling in the amount of **$17,986** to support magnet based trainings.

| | |
|---|---|
| Personnel (Salaries): | $ 1,125,956 |
| Per Session: | $ 205,000 |
| Per Diem: | $ 17,986 |
| **Total Personnel:** | **$ 1,348,942** |

**Fringe Benefits –** Fringe benefit allocations for the FY25 Carryover Funds were calculated at NYCDOE FY26 rates on above personnel costs (45.83% on salaries, 20.76% on per session, 8.15% on per diem.        Salaries $1,125,956 *45.83%= $516,026; Per Session $205,000*20.76%= $42,558; Per Diem $17,986*8.15%=  $1,466

**Total Fringe:**                                                                                 **$ 560,050**

**Travel –** Projected travel allocation of FY25 Carryover Funds will support participation of staff in professional development activities by funding both local and out of town conferences and training opportunities     (2026 Magnet Schools of America National Conference)
**$  25,000**

**Equipment** – Projected allocation of FY25 Carryover Funds in this category will be used to purchase equipment that will support the development of MakerSpaces, Multimedia and broadcasting labs, as well as technology initiatives in several of our schools.                                                  **$ 45,000**

**Supplies** - Projected supplies allocations will be used to purchase a variety of instructional, technology, podcasting, and arts supplies to support the programs in each of the schools.
**$ 115,000**

**Contractual Services -** Projected contractual services portion of the FY25 Carryover Funds will fund district-level service needs, as well as professional development, curriculum development, and theme-based enrichment provided by external partners at magnet schools. These services are essential to effective magnet theme implementation and to supporting long-term program sustainability.
**$ 269,971**

| Location | Contractual Service Providers | Estimated Cost |
|---|---|---|
| District | Metis Associates, League of Young Inventors, CKing Ed., Left of Center | $80,000 |
| PS 86 | Ballet Hispanico, Studio in a School, Take Two Film Academy, Center for Architecture, BEAM Center, Ajna Dance Co, Magic Box | $58,000 |
| PS 116 | Studio in a School, Take Two Film Academy, Marquis Studios, Musical IQ, CityWorks | $47,250 |
| PS 145 | NY Sunworks, Koko NYC, BEAM Center, Podcast Ed, CityWorks | $47,221 |
| MS 35 | IB MYP, Take Two Film Academy, Vivid, Podcast Ed, Edlio, Toddle | $37,500 |
| **TOTAL CONTRACTUAL SERVICES AMOUNT** | | **$269,971** |

2

**Other** – Projected FY25 Carryover for 'other' will cover miscellaneous costs of both the school and district level.   (recruitment materials, advertisements, memberships, parent engagement, student admissions)

**$ 10,000**

**Indirect Costs** – A total of $ 71,219 is projected to be spent on indirect for FY25 Carryover Funds. This will cover the possible shortfall in this category due to an anticipated difference between the indirect cost rate in the application and this project year's indirect cost rate.

**Indirect Cost**:   **$ 71,219**

**Total FY25 Carryover Fund Amount**
**$ 2,445,182**

3

USDOE-Contiunation_000781

S165A220032 - 25

Todd Levitt
NYC Department of Education - Community School District 28
School Leadership
5619 Flatlands Avenue

Brooklyn, NY 11234

USDOE-Contiunation_000782

S165A220032 - 25

Tammy Pate
NYC Department of Education - Community School District 28
School Leadership
90-27 Sutphin Blvd
Queens, NY 11435

USDOE-Contiunation_000783



S165A220032 - 25

# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| **1** RECIPIENT NAME<br><br>NYC Department of Education - Community School District 28<br>School Leadership<br>90-27 Sutphin Blvd<br>Queens, NY 11435 | **2** AWARD INFORMATION<br><br>PR/AWARD NUMBER    S165A220032 - 25<br>ACTION NUMBER    15<br>ACTION TYPE    Continuation<br>AWARD TYPE    Discretionary |
|---|---|
| **3** PROJECT STAFF<br><br>RECIPIENT PROJECT DIRECTOR<br>  Todd Levitt<br>  tlevitt@schools.nyc.gov<br>EDUCATION PROGRAM CONTACT<br>  Hans L Neseth    (202) 453-6515<br>  hans.neseth@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>  G5 PAYEE HELPDESK    888-336-8930<br>  obssed@servicenowservices.com | **4** PROJECT TITLE<br><br>84.165A<br>Community School Districts 28-29 Consortium Magnet Schools Assistance Program |

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Reina Sin | Project Director | 100 % |
| Todd Levitt | MSAP Coordinator | 20 % |

**6** AWARD PERIODS

        BUDGET PERIOD    10/01/2025 - 09/30/2026
    PERFORMANCE PERIOD    10/01/2022 - 09/30/2026

FUTURE BUDGET PERIODS

N/A

**7** AUTHORIZED FUNDING

        THIS ACTION    $750,000.00
        BUDGET PERIOD    $750,000.00
    PERFORMANCE PERIOD    $9,749,997.00

**8** ADMINISTRATIVE INFORMATION

        UEI    DHJ6MWMNEH38
    REGULATIONS    CFR PART 280
        EDGAR AS APPLICABLE
        2 CFR AS APPLICABLE
    ATTACHMENTS    1 , 2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , B OESE , GE1 , GE2 , GE3 , GE4

**9** LEGISLATIVE AND FISCAL DATA

  AUTHORITY:    PL P.L. 114-95 V-A ELEMENTARY AND SECONDARY EDUCATION ACT OF 1965, AS AMENDED BY THE EVERY STUDENT SUCCEEDS ACT
  PROGRAM TITLE:    MAGNET SCHOOLS ASSISTANCE
  CFDA/SUBPROGRAM NO:    84.165A



S165A220032 - 25

### US Department of Education
### Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 0204A | 2026 | 2026 | ES000000 | B | U60 | 000 | 165 | 4101C | $750,000.00 |

PR/AWARD NUMBER:         S165A220032 - 25

RECIPIENT NAME:           NYC Department of Education - Community School District 28 School Leadership

GRANTEE NAME:             CITY OF NEW YORK BOARD OF EDUCATION

65 COURT ST STE 823,

BROOKLYN, NY 11201 - 4916

PROGRAM INDIRECT COST TYPE:    Unrestricted

PROJECT INDIRECT COST RATE:    3%

TERMS AND CONDITIONS

(1)   THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:
1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180, NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIFIC CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.
IN ACCORDANCE WITH 2 CFR 200.308(f)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.
THIS AWARD SUPPORTS THE FINAL BUDGET PERIOD FOR THIS PROJECT. THE RECIPIENT IS REQUIRED TO SUBMIT ALL NECESSARY REPORTS TO THE DEPARTMENT OF EDUCATION WITHIN 120 DAYS AFTER THE END OF FEDERAL SUPPORT IN ACCORDANCE WITH 2 CFR 200.328 AND 200.329 (BLOCK 6).

(2)   By the drawdown of funds under this GAN, the grantee accepts that this award is subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards; Title 2 CFR Part 200 as revised at 89 FR 30136-30208 (April 22, 2024).

(3)   The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made to a subrecipient under this grant.
The term subaward means:
1) An award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor [See 2 CFR 200.331(a)(5)], beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

In accordance with 2 CFR 200.331 (a), a subaward is made to a subrecipient for the purpose of carrying out a portion of the Federal award and creates a Federal financial assistance relationship with a subrecipient. Characteristics that support the classification of the entity as a subrecipient include, but are not limited to, when the entity:

1) Determines who is eligible to receive what Federal assistance;
2) Has its performance measured in relation to whether the objectives of a Federal program were met;
3) Has responsibility for programmatic decision-making;
4) Is responsible for adherence to applicable Federal program requirements specified in the Federal award and



US Department of Education
Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

5) Implements a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

(4)  Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(5)  Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions (34 CFR 75.564(a) and 34 CFR 76.562(a)). The negotiated indirect cost rate agreement authorizes a recipient to draw down indirect costs from the grant awards (34 CFR 75.564(b) and 34 CFR 76.562(b)). The following conditions apply to the below entities.

A. All entities (other than Institutions of Higher Education (IHE)

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under statutes, departmental regulations (Education Department General Administrative Regulations (EDGAR)), or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of Higher Education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant project period, the indirect cost rate set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6)  Per the Department s April 17, 2026, Notice of Continuation Determination, the June 4, 2026, Order in The Board of Education of the City School District of the City of New York v. U.S. Department of Education, et al., Case No. 25-cv-8547-AS (S.D.N.Y.) ( NYCPS v. ED ), and the Department s regulations at 34 C.F.R. 75.253(e), the Department has determined that the appropriate continuation award amount for this grants is $750,000.

The grantee submitted and received approval of its budget through June 30, 2026. The Department has limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made. Thus, the award amount was determined by dividing the annual requested and recommended average award amount for this grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000, or $750,000 for the three-month continuation period.

This grant will operate under a reimbursement pay status, as permitted by the Department s discretionary authority under 20 U.S.C. 1226a-1. Grantees will still have access to their grant funds; however, such funds may only be drawn down after submitting documentation that substantiates allowable expenditures under the grant.

USDOE-Contiunation_000786



S165A220032 - 25

**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

Consistent with the Department s original April 17, 2026, Notice of Continuation Determination, as noted earlier, this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue.

(7)    Grantees must not use federal funds under this project in any manner that violates the United States Constitution, Title VI or Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq. or 42 U.S.C. 2000e et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 504 of the Rehabilitation Act (29 U.S.C. 794), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131 et seq.), the Boy Scouts of America Equal Access Act of 2001 (20 U.S.C. 7905), section 117 of the Higher Education Act of 1965, as amended (20 U.S.C. 1011f), or other applicable federal law.

Please note the provisions of Executive Orders 14151, 14168, 14173, and 14190 as well as the U.S. Department of Justice s July 29, 2025, non-regulatory Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination, which clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ( DEI ) programs.

Such activities may risk violating federal civil rights laws and may jeopardize federal funding. This includes any discriminatory equity ideology in violation of a Federal anti-discrimination law. A definition of discriminatory equity ideology is contained in Section 2(b) of Executive Order 14190.

Additionally, grantees must comply with all Financial Assistance General Certifications and Representations annual registration requirements made in SAM.gov, including any provisions in the annual registration that address civil rights, DEI programs or activities, and support of illegal aliens.

To the extent that a grantee uses grant funds for such unallowable activities, ED may take appropriate enforcement action including the potential recovery of funds, or may pursue termination or non-continuation. The Grant Award Notification document accompanying your award may contain further terms and conditions, as necessary, to ensure grantee compliance with applicable laws, regulations, and administrative priorities.

LAVANNA WEEMS    Digitally signed by LAVANNA WEEMS
Date: 2026.06.09 17:06:54 -04'00'

_____    _____

**AUTHORIZING OFFICIAL**    **DATE**

Ver. 1

USDOE-Contiunation_000787

## EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**      (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -**   Unique items of information that identify this notification.

   **PR/AWARD NUMBER -**  A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

   **ACTION NUMBER -**  A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

   **ACTION TYPE -**  The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

   **AWARD TYPE -**  The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -**  This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

   **\*RECIPIENT PROJECT DIRECTOR -**  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

   **EDUCATION PROGRAM CONTACT -**  The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

   **EDUCATION PAYMENT CONTACT -**  The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -**  Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -**   Project activities and funding are approved with respect to three different time periods, described below:

   **BUDGET PERIOD -**  A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

   **PERFORMANCE PERIOD -**  The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

   **\*FUTURE BUDGET PERIODS -**  The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -**  The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

   **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

   **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

   **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

   **RECIPIENT COST SHARE -**  The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

   **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -**  This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

   **UEI -**          The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

**\*REGULATIONS -** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS -** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA -** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS -**
The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award. **AMOUNT -** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS -** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER -** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME -** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE -** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE -** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL -** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF -** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT -** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE -** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

USDOE-Contiunation_000789

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
## & CHIEF INFORMATION OFFICER

Todd Levitt
NYC Department of Education - Community School District 28
School Leadership
90-27 Sutphin Blvd

Queens, NY 11435

SUBJECT: Payee Verification for Grant Award S165A220032 - 25

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: DHJ6MWMNEH38
Grantee Name: CITY OF NEW YORK BOARD OF EDUCATION

Payee UEI: DHJ6MWMNEH38
Payee Name: CITY OF NEW YORK BOARD OF EDUCATION

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

U.S. Department of Education
550 12th Street, SW
Room 6087
Washington, DC 20202

Attn: Stephanie Barnes
Phone: 202-245-8006

USDOE-Contiunation_000790

**GAN ATTACHMENT 1**
**Revised 10/2024**

**SPECIFIC GRANT CONDITIONS FOR PAYMENTS**

<u>THE G5 PAYMENTS MODULE</u>

Payments under this award will be made through the Payments module of the U.S. Department of Education's (Department's) electronic grants system, G5. G5 is administered by the Office of Finance and Operations, Office of Business Support Services.

The internet address for G5 is https://g6.ed.gov/.  To draw funds from grant awards in the G5 Payments module, grantee representatives must have individual G5 accounts under their personal name and unique work email address, with the Payee role assigned and associated to a Unique Entity Identifier (UEI) associated with their grantee organization. The Grantee UEI number on the award is identified in **Block 8** of the **Grant Award Notification (GAN)**.

To establish a G5 Payee account, follow these steps:

CREATE A NEW ACCOUNT IN G5 UNDER YOUR OWN NAME AND WORK EMAIL ADDRESS:

- Navigate to G6.ed.gov.
- Click the "Sign in" button on the top right of the page.
- Scroll down the page and select the "G5 Sign in" button.
- Review and agree to the "Government System Warning."
- Below the "Login to G5" button on the top left of the page, click on the "Sign Up" link next to the words "Not registered?"
- Enter information requested.
- Answer "No" when asked if you are not an employee or contractor of the U.S. Department of Education.
- Click "Continue."
- Enter the required information. Do not use an email address from a shared email account, such as grants@school.edu. Use an email address that reflects your name and that only you can access.

A G5 account cannot be reassigned once an account is established. It is fixed to an individual.
-  Upon entering your initial information into the system, the website tells you to look for an "Account Request" email from G5.
- When the email arrives, open it and click on the words inside that say "Activate My Account."
-  Complete the portion of the registration concluding with "Activate Account."
- You will receive an email titled "User Account Activation," which will prompt you to log in to G5 and select the Payee role.

SELECT THE PAYEE ROLE AND COMPLETE AND EMAIL A FORM:
- Once you log in to G5, you will be on the EDIT PROFILE page. Scroll down to the "Available Types" field and select "Payee." (Full Access allows drawdowns of funds and viewing of payment history reports, View Only does not allow the drawdowns of funds, but permits viewing of payment history reports.)
- Click "Continue."
- On the next page, you are then prompted to fill out the following fields:
- Payee UEI (required) A Grant Award Notification shows a Grantee UEI. Some institutions use a different UEI

USDOE-Contiunation_000791

for payee information. Confirm that you are entering the PAYEE UEI that your institution uses to connect their grant awards to banking in G5.
- Grantee UEI (not required). Skip this field.
- Access Level. Select "View Only" to simply view drawdowns or "Full Access" to make and view drawdowns.
- After entering the above information, click "Continue."
- On the next page that appears, you will see instructions in red requesting that you click a link to print out a form that appears on the screen, which is populated with your name, date of birth, and role requested. Click on the link to get the form to appear and print it out but black out the date of birth. This is no longer required.
- Click the back button on your browser to get back to the G5 page where the instructions appeared and click "Submit" at the bottom of the page.
- Please make sure all fields are completed and the form is signed.
- If you want access to more than one UEI, write the additional UEIs next to the one that pre-populates on the form.
- Scan the completed form or fill it out electronically and email it to obssed@servicenowservices.com. Completed forms must bear the required signatures and be notarized (or, in lieu of notarization, contain a seal or stamp from the grantee organization, or be accompanied by a letter on letterhead from the Senior Officer who signs the authorization section).

Multiple Payee users can be associated to a particular grantee institution in the G5 system, allowing for back-up Payee users to draw funds when a primary Payee user is away. However, each user must register for their own account under their own name and email address. Sharing of G5 accounts is prohibited.

In addition to establishing individual Payee account(s) in G5, new grantees are required to provide depositor account information via a completed SF1199A form, if this has not already been submitted for previous Department of Education grant awards at your organization. The form and instructions for completing the form can be found on the G5 Frequently Asked Questions page.

Payee users may begin requesting funds for the grantee once the award authorization is entered into G5, the award start date is reached, and a completed SF1199A is received and processed by the Department (if one does not already exist for a previous award). To log into G5 with an established Payee account, you may use one of two log in methods: Login.gov or G5. These choices appear after clicking "Sign In" on the G5 Home Page. When using Login.gov to access G5, be sure you are using the same email address you used to create the Payee account in G5. If you are not using the same email address, G5 and login.gov will not identify you are the same person, and you will not be able to access G5.

Guides to working in G5 can be found in the Help section of G5:
https://g5.gov/G5HELP/exthelp1/index.html  For additional assistance, grantees may contact the G5 Hotline at (888) 336-8930. The Hotline is available Monday through Friday, from 8 a.m. to 6 p.m. Eastern time, except on Federal holidays.

USDOE-Contiunation_000792

REQUESTING FUNDS USING THE G5 PAYMENTS MODULE

To access the G5 Payments module, payees need a web browser (such as Microsoft Internet Explorer) and Internet connectivity.  Payees will request funds by award using **the PR/Award Number** found in **Block 5** of the **GAN**.  Instructions for navigating through the G5 Payments screens to make a payment request are provided in the G5 On Demand training located under the "Help" link.

G5 users with the Payee role who are unable to access G5 may request funds by calling the G5 Hotline at (888)336-8930.

AWARD INFORMATION

G5 users with the Payee role can view the following information in G5 on grant awards associated to the UEI on their account:

- Net authorization and authorization history;
- Net draws;
- Available balance;
- History of pending and completed payments;
- Award status; and
- Award history - including detailed transactions on drawdowns, returns, refunds, and adjustments.

3

USDOE-Contiunation_000793

**GAN ATTACHMENT 2**
**Revised 10 2024**

## SPECIFIC GRANT TERMS AND CONDITIONS FOR
## FINANCIAL AND PERFORMANCE REPORTS

**PERFORMANCE REPORTS:**

**(1) FINAL REPORTS - ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS - ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, 200.332, and 34 CFR §§ 75.590; 75.718; 75.720; 75.623; and 75.732.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1. That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2. That an interim performance report is required because of the nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(1)).

3. That other reports are required, e.g., program specific reports required in a program's statute or regulation or specific conditions are applied (2 CFR § 200.208).

**(3) FINANCIAL REPORTS – SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1. A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (OMB) does not collect cost sharing information;
2. Program income was earned;

1

USDOE-Contiunation_000794

3. Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by OMB does not collect indirect cost information;
4. Program regulations or statute require the submission of the FFR; or
5. Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part 200.208 and part 3474.10 and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at Standard Form (SF) 425 Federal Financial Report (FFR)):

1. Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2. Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3. Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4. Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR § 200.328).

When completing an FFR for submission, the following must be noted:

1. *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in item 2 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple grant and FFR attachment reference found in item 2 of the Line Item Instructions for the FFR is not applicable to Department grants.

2. *Program Income*: Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 2 CFR Part 200.307. A grantee is permitted, in accordance with 2 CFR Part 200.307, to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3. *Indirect Costs:* A grantee will complete item 11(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

2

USDOE-Contiunation_000795

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 15% of modified total direct cost (MTDC) must list its indirect cost rate in 11(a) as a Department Temporary Rate or De Minimis Rate.  The de minimis rate of 15% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)").

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with 34 CFR § 75.562 (c), must list its rate in 11(a) as a Department Training Grant Rate.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States[1] as defined in 2 CFR § 200.1.

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in 11(a).  A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.  If a restricted program grantee elects to utilize the temporary rate, it must list its rate as a Department Temporary Rate in 11(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in 11(a).  Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.
[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

USDOE-Contiunation_000796

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

Upon request of the Secretary, a grantee must, at the time of submission to the Secretary, post any performance and financial reports on a public-facing website maintained by the grantee, after redacting any privacy or confidential business information (34 CFR § 75.720).

USDOE-Contiunation_000797

## AN OVERVIEW OF AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification (GAN).

**Summary of Audit Requirements for States, Local Governments, and Nonprofit Organizations:**

1. Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)[1], or nonprofit organization) that expends $1,000,000 or more in Federal awards during the non-Federal entity's fiscal year must have a single audit conducted annually in accordance with 2 CFR § 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2. Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program-specific audit conducted.  A program–specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3. Exemption when Federal awards expended are less than $1,000,000.  A non-Federal entity that expends less than $1,000,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR § 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4. Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity (2 CFR § 501(e)).

5. Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (OMB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR § 200.512, as well as relevant

---

[1] As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

1

USDOE-Contiunation_000798

SF-SAC workbook(s) electronically to the Federal Audit Clearinghouse at:
https://www.fac.gov/.

6. The audit, the workbook(s), and reporting package must be submitted within of 30 calendar days after receipt of the auditor's report(s) or nine months after the end of the audit period (whichever is earlier).  If the due date falls on a Saturday, Sunday, or Federal holiday, the reporting package is due the next business day.  The auditee must make copies available for public inspection unless restricted by Federal statutes or regulation.  Auditees and auditors must ensure that their respective parts of the reporting package do not include protected personally identifiable information (2 CFR § 200.512).

Additional grantee requirements can be found in Uniform Guidance §200.510, including:

- Preparing financial statements that reflect the grantee's financial position, results of operations or changes in net assets, and where appropriate, cash flows for the fiscal year audited;
- Preparing a schedule of expenditures of Federal awards (SEFA) for the period covered by the grantee's financial statements;
  - o List Federal programs by Federal agency
  - o For Federal awards received as a subrecipient, the name of the pass-through entity and assigned identifying number
  - o Provide the total Federal awards expended for each Federal program and the Assistance Listing Number (ALN).  For a cluster of programs, also provide the total for the cluster
  - o Include the total amount provided to subrecipients from each Federal program

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their cognizant agency for single audit technical assistance. This supplement will be instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides the predominant amount of direct funding to the recipient." The Compliance Supplement will be instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-federalaudit@ed.gov.  Additional resources for single audits are also available on the Non-Federal Audit Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html.  For programmatic questions, grantees should contact the education program contact shown on the Department's GAN.

Grantees can obtain information on audits from:

The OMB website at www.omb.gov.  Look under Office of Management and Budget (in right column) then click Office of Federal Financial Management (to obtain the Current OMB Compliance Supplement

USDOE-Contiunation_000799

in the right column).  The SF-SAC Workbooks and Instructions can be found at the Federal Audit Clearinghouse at:
https://facides.census.gov/Files/2019-2021%20Checklist%20Instructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative OMB Single Audit report examples that might be of interest to accountants, auditors, or financial staff that can be downloaded by searching for "single audit report illustrations" at www.aicpa-cima.com.

USDOE-Contiunation_000800

**GAN ATTACHMENT 6**
**Revised 10/2024**

## REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307, which addresses the use and expenditure of program income as well as the methods for use of program income

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

\_\_\_\_\_ Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

\_\_\_\_\_ Not Allowed  Using program income to finance the non-Federal share of the project or program; and

\_\_\_\_\_ Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

1

USDOE-Contiunation_000801

**GAN ATTACHMENT 8**
**Revised 10/2024**

## TRAFFICKING IN PERSONS

The Department of Education adopts the requirements of the Trafficking Victims Protection Act (TVPA) of 2000, as codified at 22 U.S.C. 7101 to 7115, in 22 U.S.C. 7104(g); 22 U.S.C. 7104a; 22 U.S.C. 7104b; and 22 U.S.C. 7104c into this grant through this condition as per the Code of Federal Regulations at 2 CFR Part 175 .

(a) Condition:

The Department, as authorized by 22 U.S.C. 7104b(c), may without penalty, terminate a grant or take any remedial actions if a recipient or subrecipient engages in:

(1) Severe forms of trafficking in persons;

(2) The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

(3) The use of forced labor in the performance of the grant or cooperative agreement; or

(4) Acts that directly support or advance trafficking in persons, including the following acts:

(i) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

(ii) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

(A) exempted from the requirement to provide or pay for such return transportation by the Department; or

(B) the employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

(iii) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

(iv) Charging recruited employees a placement or recruitment fee; or

1

USDOE-Contiunation_000802

(v) Providing or arranging housing that fails to meet the host country's housing and safety standards.

(b) Compliance plan and certification requirement:

(1) Prior to receiving a grant, if the estimated value of services required to be performed under the grant or cooperative agreement outside the United States exceeds $500,000, you must certify that:

(i) You have implemented a plan to prevent the activities described in paragraph (a) of this section, and are in compliance with this plan;

(ii) You have implemented procedures to prevent any activities described in paragraph (a) of this section and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in any activities described in paragraph (a) of this section; and

(iii) To the best of your knowledge, neither you, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in paragraph (a) of this section.

(2) Annual certification. You must submit an annual certification consistent with paragraph (b)(1) of this section for each year the award is in effect.

(3) Compliance plan. Any plan or procedures implemented pursuant to paragraph (b) must be appropriate to the size and complexity of the grant or cooperative agreement and to the nature and scope of its activities, including the number of non-United States citizens expected to be employed.

(4) Copies of the compliance plan. The recipient must provide a copy of the plan to the grant officer upon request, and as appropriate, must post the useful and relevant contents of the plan or related materials on its website and at the workplace.

(5) Minimum requirements of the compliance plan. The compliance plan must include, at a minimum, the following:

(i) An awareness program to inform recipient employees about the Government's policy prohibiting trafficking-related activities described in paragraph (a) of this section, the activities prohibited, and the actions that will be taken against the employee for violations. Additional information about Trafficking in Persons and examples of awareness programs can be found at the website for the Department of State's Office to Monitor and Combat Trafficking in Persons at http://www.state.gov/j/tip/.

2

USDOE-Contiunation_000803

(ii) A process for employees to report, without fear of retaliation, activity inconsistent with the policy prohibiting trafficking in persons.

(iii) A recruitment and wage plan that only permits the use of recruitment companies with trained employees, prohibits charging recruitment fees to the employees or potential employees and ensures that wages meet applicable host-country legal requirements or explains any variance.

(iv) A housing plan, if the recipient, subrecipient, contractor, or subcontractor intends to provide or arrange housing, that ensures that the housing meets host-country housing and safety standards.

(v) Procedures to prevent agents, subrecipients, contractors, or subcontractors at any tier and at any dollar value from engaging in trafficking in persons, including activities in paragraph (a) of this section, and to monitor, detect, and terminate any agents, subgrants, or subrecipient, contractor, or subcontractor employees that have engaged in such activities.


(c) Notification to Inspectors General and cooperation with government. In addition, you must:

(1) Immediately inform the Department and Inspector General of the Department of any information you receive from any source that alleges credible information that you, any subrecipient, contractor, or subcontractor, or any agent of your organization or subrecipient, contractor, or subcontractor, has engaged in conduct described in paragraph (a) of this section; and

(2) Fully cooperate with any Federal agencies responsible for audits, investigations, or corrective actions relating to trafficking in persons.

USDOE-Contiunation_000804

FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT
REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information.  To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000;
3. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
4. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 of the Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives*, and other key terms, are defined within item 5, Definitions, of this grant award term.

This grant award term is issued in accordance with 2 CFR Part 170—Reporting Subaward And Executive Compensation Information.

1. *Reporting of First-tier Subawards -*

a. *Applicability and what to report.*

Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

b. *Where and when to report.*

The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS.

Report subaward information no later than the end of the month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2025, the obligation must be reported by no later than December 31, 2025.

USDOE-Contiunation_000805

2. *Reporting Total Compensation of the Department's Grant Recipients' Executives -*

a. *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

i   The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii   In the preceding fiscal year, you received—

   A.   80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**
   B.   $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,
   C.   The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b. *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

i.   As part of your registration profile at https://www.sam.gov.

ii.   No later than the month following the month in which this award is made and annually after that. (For example, if the obligation was made on November 7, 2025, the executive compensation must be reported by no later than December 31, 2025, and annually thereafter.)

3. *Reporting of Total Compensation of Subrecipient Executives –*

a. *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

2

> i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

> ii    In the preceding fiscal year, you received—

>> A.    80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**
>> B.    $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,
>> C.    The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b.    *Where and when to report.*

   You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

>  i.    In FSRS.  You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov.  Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

>  ii.    No later than the end of the month following the month during which you make the subaward.  For example, if the subaward obligation was made on November 7, 2025 the subrecipient's executive compensation must be reported by no later than December 31, 2025.

**4.    *Exemptions –***

a.    If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

>  i.    Subawards, and

>  ii.    The total compensation of the five most highly compensated executives of any **subrecipient**.

**5.    *Definitions -***

a.    For purposes of this award term:

USDOE-Contiunation_000807

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;

(vii) Any other legal business entity;

(viii) Another grantee or contractor that is not excluded by subparagraph (2); and

(ix) Any State or locality;

(2) Does not include:

(i) An individual recipient of Federal financial assistance; or

(ii) A Federal employee.

Executive means an officer, managing partner, or any other employee holding a management position.

Subaward has the meaning given in 2 CFR § 200.1.

Subrecipient has the meaning given in 2 CFR § 200.1.

Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR § 229.402(c)(2).

4

USDOE-Contiunation_000808

**GAN ATTACHMENT 11**
**Revised 10/2024**

## SPECIFIC CONDITIONS FOR DISCLOSING
## FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1) the percentage of the total costs of the program or project which will be financed with Federal money;

2) the dollar amount of Federal funds for the project or program; and

3) the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

1

USDOE-Contiunation_000809

## PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING
## DURING OFFICIAL FEDERAL GRANT BUSINESS

Federal grant recipients, subrecipients, and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

1

USDOE-Contiunation_000810

**GAN ATTACHMENT 13**
**Revised 10/2024**

## REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM.gov)

The U.S. Department of Education's (Department) Grants Management System (G5) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, to do business with the Department you must have a registered Unique Entity Identifier (UEI) and TIN number in SAM.gov, the U.S. Federal Government's primary registrant database.

What is a UEI?  SAM.gov assigns a UEI to entities when they pass validation in SAM.gov. The UEI is a 12-character alphanumeric identifier used in SAM.gov and other federal government systems to identify a unique entity.

If the payee UEI number is different than your grantee UEI number, both numbers must be registered in SAM.gov. Failure to register both will delay the receipt of payments from the Department.

What is a TIN?  A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with SAM.gov, you can easily register by going to www.sam.gov.  Allow at least ten business days after you submit your registration for it to become active in SAM.gov.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the Federal Service Desk (FSD).  Live chat information and other information about the FSD is available at: GSAFSD Service Portal Landing - GSA Federal Service Desk Service Portal.

If you are currently registered with SAM.gov, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the G5 Hotline at 888-336-8930.

USDOE-Contiunation_000811

**GAN ATTACHMENT 14**
**Revised 10/2024**

## SYSTEM FOR AWARD MANAGEMENT REQUIREMENTS FOR RECIPIENTS AND THEIR SUBRECIPIENTS

**1.   Requirement for System for Award Management (SAM.gov)**

Unless you are exempted from this requirement under 2 CFR § 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM.gov registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency.  To remain registered in SAM.gov after your initial registration, you are required to review and update your information in SAM.gov on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

2.   **Recipient Requirements of Subrecipients**

In accordance with 2 CFR § 25.300 you are required to ensure that your subrecipients have a Unique Entity Identifier (UEI).  Note that subrecipients are not required to complete full registration in SAM.gov to obtain a UEI, which is required for an entity to **directly** do business with the Federal government. Instead, subrecipients may obtain a UEI by signing up in SAM.gov to get an account and establish a profile.

You may not make a subaward to a subrecipient that has not obtained a UEI and provided it to you, and you are required to notify any potential subrecipients that you cannot make a subaward unless the subrecipient obtains a UEI and provides it to you.

**3.   Definitions**

For purposes of this award term:

1.   System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient. See 2 CFR 25.400.

2.   Unique Entity Identifier (UEI) Means the universal identifier assigned by SAM.gov to uniquely identify business entities. See 2 CFR 25.400.

3.   Recipient means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award. See 2 CFR 200.1.

4.   Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with § 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

USDOE-Contiunation_000812

5.  Subrecipient means an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency. See 2 CFR 200.1.

2

USDOE-Contiunation_000813

**ATTACHMENT B**
**SPECIAL GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**ALL RECIPIENTS** are required to submit a final performance report within 90 days after the expiration or termination of grant support.

**ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR PERFORMANCE REPORT SUBMISSIONS, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

Refer to the item(s) checked below for other reporting requirements that may apply to this grant:

_____1. A performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

_____The continuation report is due on _____.

_____The Department will provide recipients with additional information about this report, including due date, at a later time.

_____2. An interim performance report is required because of the nature of this award or because of statutory or regulatory provisions governing the program under which this award is made. The report is due more frequently than annually as indicated:

        _____Quarterly  Submit within 30 days after the end of each quarter.

        _____Semiannually  Submit within 30 days after the end of each 6-month period.

_____3. Other Required Reports:

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. IF A FINANCIAL REPORT IS REQUIRED, YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR FINANCIAL REPORT SUBMISSION, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

**FINANCIAL REPORTS:**

Unless an item down below is checked, a Standard Form 425 Federal Financial Report (FFR) is not required for this grant. The Department will rely on the drawdown of funds by grant award and record such drawdowns as expenditures by grantees. (34 CFR 75.720)

\_\_\_\_\_Quarterly FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 45 days after each reporting period.

_____Semi-annual FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 45 days after each reporting period.

_____An annual FFR is required for reporting period ending 09/30, and is due within 45 days after the reporting period.

_____A final FFR is due within 90 days after the project or grant period end date.

A quarterly, semi-annual, annual, and/or final FFR as noted hereinabove is due for this grant because:

_____(34 CFR 74.14 or 80.12) Special Award Conditions or Special grant or subgrant conditions for "high-risk" grantees:

_____Statutory Requirement or Other Special Condition


**When completing an FFR for submission in accordance with the above referenced selection, the following must be noted:**

1.  While the FFR is a government wide form that is designed for single grant and multiple grant award reporting, the U.S. Department of Education's (EDs) policy is that multiple grant award reporting is not permitted for ED grants. Thus, an ED grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants.  The FFR attachment (Standard Form 425A), which is available for reporting multiple grants, is not to be used for ED grants.  As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to ED grantees.  With regards to item 1 of the note found in the Federal Financial Report Instructions, it is EDs policy that a grantee must complete items 10(a) through 10(o) for each of its grants.  The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the Federal Financial Report are not applicable to ED grants.


2.  Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h).  A grantee is permitted, in accordance with 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h), to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  A grantee will complete item 11(a) by listing the rate type identified in its indirect cost rate agreement, as approved by its cognizant agency.  An ED grantee that does not have an indirect cost rate agreement approved by its cognizant agency, and that is using the ED approved temporary rate of 10% of budgeted direct salaries and wages, must list its rate in 11(a) as an ED Temporary Rate.  A training program grantee whose recovery of indirect cost is limited to 8% of a modified total direct cost base in accordance with EDGAR § 75.562 (c), must list its rate as an ED Training Grant Rate.  A restricted rate program grantee (such as one with a supplement-not-supplant  grant provision) that has not negotiated an indirect cost agreement with its cognizant agency and that has limited the recovery of indirect costs in accordance with 34 CFR 75.563 and 76.564 (c), must list its rate as an ED Restricted Rate.

4.  Quarterly, semi-annual, and annual interim reports shall be due within 45 days after the end of the reporting period. Although the Office of Management and Budget (OMB) published in its December 7, 2007 Federal Register Notice (72 FR 69236) that interim reports are due within 45 days of the interim reporting end dates instead of within 30 days as originally identified, OMB has not revised the FFR instructions to reflect this change.  Grantees are, nevertheless, permitted to exercise the 45 day period as published by OMB

within the Federal Register.   Final reports shall be due no later than 90 days after the project or grant period end date.  Extensions of reporting due dates may be approved by the program office upon request by the grantee.

5.  If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages.  These additional pages must indicate the following information at the top of each page: Federal Grant or other identifying number, recipient organization, Data Universal Number System (DUNS) number, Employer Identification Number (EIN), and period covered by the report.

**One original and one copy of all reports should be mailed to:**

U.S. Department of Education
Executive Director
Office of Elementary and Secondary Education
400 Maryland Avenue, SW, FB6, Room 3W342
Washington, DC 20202-6100

12/2012

USDOE-Contiunation_000816

GAN ENCLOSURE 1
Revised 10/2024

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment to maintain proper stewardship of taxpayer dollars.  This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds.  In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 of the Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities.  The Education Department General Administrative Regulations (EDGAR) in 34 CFR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department.  The most recent version of these regulations may be accessed at the following URLs:

2 CFR 34 Subtitle A (see EDGAR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, & 99)

2 CFR Part 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards

The information on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200.  In addition, a few of the topics explain requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants).  The specific sections of 2 CFR Part 200 and of EDGAR that address the topics are shown in parentheses.  The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office.  Grantees should become familiar with those requirements as well because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget.  Doing so will help to ensure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding the topics on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

1

USDOE-Contiunation_000817

GAN ENCLOSURE 1
**Revised 10/2024**

**SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS**

I.    **Financial Management Systems (2 CFR § 200.302)**

The grantee's and subrecipient's financial management system must provide for the following (see §§ 200.334, 200.335, 200.336, and 200.337):

- Identification of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the Assistance Listings title and number, Federal award identification number, year the Federal award was issued, and name of the Federal agency or pass-through entity.
- Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements in §§ 200.328 and 200.329.
- Maintaining records that sufficiently identify the amount, source, and expenditure of Federal funds for Federal awards. These records must contain information necessary to identify Federal awards, authorizations, financial obligations, unobligated balances, as well as assets, expenditures, income, and interest. All records must be supported by source documentation.
- Effective control over, and accountability for, all funds, property, and assets. The grantee or subrecipient must safeguard all assets and ensure they are used solely for authorized purposes. See § 200.303.
- Comparison of expenditures with budget amounts for each Federal award.
- Written procedures to implement the requirements of § 200.305.
- Written procedures for determining the allowability of costs in accordance with subpart E of 2 CFR Part 200 and the terms and conditions of the Federal award.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

II.    **Internal controls (2 CFR § 200.303)**

The grantee and subrecipient must:

- Establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the grantee or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should align with the guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States or the "Internal Control Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
- Comply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award.
- Evaluate and monitor the grantee's or subrecipient's compliance with statutes, regulations, and the terms and conditions of Federal awards.

USDOE-Contiunation_000818

- Take prompt action when instances of noncompliance are identified.
- Take reasonable cybersecurity and other measures to safeguard information including protected personally identifiable information (PII) and other types of information consistent with applicable Federal, State, local, and tribal laws regarding privacy and responsibility over confidentiality.

**III.    Federal Payment (2 CFR § 200.305)**

Under this part --

- the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
- where the time between the transfer of funds to the grantee and the disbursement of funds cannot be minimized, the preferred method of payment is reimbursement of expenditures incurred by the non-Federal entity;
- grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts that are insured; grantees or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the grantee or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment.  All interest in excess of $500 per year must be returned to PMS regardless of whether the grantee or subrecipient was paid through PMS. Instructions for returning interest can be found at: Returning Funds/Interest | HHS PSC FMP Payment Management Services.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant.  Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury.  In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.  The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department G5 Payment System at the time those funds are needed for payments to vendors and employees.

**IV.    Personnel (EDGAR 34 CFR §§ 75.511-75.519 and 2 CFR Part 200 Subparts D and E)**

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR § 200.308 (f)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the post Federal award requirements and cost principles in 2 CFR Part 200

3

Subparts D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

**V.       Cost Principles (2 CFR Part 200 Subpart E)**

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide a list of selected items of allowable and unallowable costs and must be used in determining the allowability of costs funded under the grant.

**VI.      Procurement Standards (2 CFR §§ 200.317-327)**

Under 2 CFR §§ 200.317 – 200.327, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees (i.e., grantees that are not States) may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

**VII.     Indirect Costs (EDGAR §§§75.560-564, 76.560-569, and 2 CFR § 200.414)**

In addition to the information presented below, see GAN ATTACHMENT 2 and 4 for additional information including restrictions related to temporary, de minimis, training, restricted and program prescribed indirect cost rates.

A.   Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate the grant must not have restricted (supplement-not-supplant), training, or program specific indirect cost rate restrictions.

To obtain an unrestricted indirect cost rate the grantee may:
- negotiate an indirect cost agreement with its cognizant agency for indirect costs (2 CFR §200.1 "Cognizant agency for indirect costs"), by submitting an indirect cost proposal within 90 days after the award of this grant; or
- elect to utilize the de minimis rate under 2 CFR §200.414(f); or
- a temporary indirect cost rate subject to the limitations in 34 CFR §75.560(d)

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

4

B.  Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR §§ 75.560(c) and 76.560(d)); or it may choose not to charge indirect costs to the grant.  The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

If the grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.  De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million (appendix VII to this part, paragraph D.1.b) in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including a provisional[2]) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis  indirect cost rate of 15% of modified total direct costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.  Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost (34 CFR §§ 75.563 and 76.563). The de minimis rate may be used indefinitely.  However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant Federal agency.  Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

D.  Restricted Indirect Cost Rate (Programs with a Supplement-not-supplant requirement

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant Federal agency for indirect costs

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[2] Provisional rate means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a final rate for the period.

5

USDOE-Contiunation_000821

or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR §§ 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[3] that is a restricted program grantee may not elect to utilize the 8% MTDC rate. Additionally, restricted program grantees may not utilize the de minimis rate but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.    Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[4], the grantee must negotiate a rate under 34 CFR § 75.562.  This provision limits indirect cost recovery to 8% of modified total direct costs or the grantee's negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

   i.    The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
   ii.   The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
   iii.  Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
   iv.   A grantee using the training rate of 8% is required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.    Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VIII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $1,000,000 in Federal funds in one fiscal year.  2 CFR Part 200 Subpart F contains the requirements imposed on grantees for audits conducted in connection with the Single Audit Act of 1984—Public Law No. 98-502 and its Amendments of 1996—Public Law No. 104-.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

---

[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

[4] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally recognized Tribe is not considered a Tribe for these purposes.

USDOE-Contiunation_000822

**GAN ENCLOSURE 1**
**Revised 10/2024**

## IX.      Other Considerations

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR § 200.307), cost sharing or matching (2 CFR § 200.306), property management requirements for equipment (2 CFR § 200.313), and equipment and other capital expenditures (2 CFR § 200.439).

USDOE-Contiunation_000823

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education (*the* Department) grant account, you must:

- draw down only as much cash as is necessary to meet the immediate needs of the grant project;
- keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
- return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

- take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
- monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
- plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
- pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities.  If you need assistance with returning funds and interest, please contact the Department's G5 Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

- subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.10], which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

1

USDOE-Contiunation_000824

**GAN  ENCLOSURE 2**
**Revised 10/2024**

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(d)(3)(ii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

2

USDOE-Contiunation_000825

**Frequently Asked Questions (FAQs) to Assist U.S. Department of Education (ED) Grantees to Appropriately Use Federal Funds for Food, Conferences, and Meetings[1]**
August 2024

## Using Federal ED Grant (Discretionary and Formula) Funds for Food

1. **May a grantee use its U.S. Department of Education (ED) grant funds for food, beverages, or snacks at an event related to its grant?**

All grant expenditures, including those for food, beverages, or snacks, must be reasonable, necessary, allocable to the grant, and allowable. (Office of Management and Budget's (*OMB) Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance)* at 2 CFR §§ 200.403 through 200.405).[2]

Generally, a grantee needs to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant. When a grantee is hosting an event related to its ED grant, the grantee should first consider structuring the agenda for the meeting so that there is time for participants to bring or purchase their own food, beverages, and snacks. In addition, when planning a meeting, grantees may want to consider a location in which participants have easy access to food and beverages.

There may be limited circumstances under which providing food or beverages is reasonable and necessary to achieve the purpose of a particular grant. Because food and beverage costs are not of a type generally recognized as ordinary and necessary for the operation of the grantee or the proper and efficient performance of the Federal award (see 2 CFR § 200.404(a)), grantees must document their evidence and analysis that justify that the use of food or beverage is reasonable and necessary in each instance.

In determining reasonableness of a given cost, including those for food and drink, consideration must be given to:

- Whether the cost is generally recognized as ordinary and necessary for the grantee's operation or the proper and efficient performance of the Federal award;

- The restraints or requirements imposed by such factors as: sound business practices; arm's-length bargaining; Federal, State, local, Tribal, and other laws and regulations; and terms and conditions of the Federal award;

- Market prices for comparable costs for the geographic area;

- Whether the individuals concerned acted with prudence in the circumstances considering their responsibilities to the recipient or grantee, its employees, its students or membership (if applicable), the public at large, and the Federal Government; and

---

[1] Other than statutory and regulatory requirements included in the document, the contents of this FAQ document do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

[2] Revisions to 2 CFR part 200, referred to as the "OMB Uniform Guidance," were published on April 22, 2024, and are generally effective on October 1, 2024. In general, the April 2024 revisions do not substantively affect the content in this FAQ document. While the OMB Uniform Guidance in 2 CFR § 200.1 defines recipient, this FAQ uses the term grantee to align with the definitions that apply to ED regulations in the Education Department General Administrative Regulations (EDGAR) in 34 CFR § 77.1.

1

- Whether the cost represents a deviation from the recipient or grantee's established written policies and procedures for incurring (2 CFR § 200.404).

Please note that, in addition to determining whether the costs are necessary and reasonable, State grantees also must determine whether the same costs are allowable under State law for the use of State funds. Under 2 CFR § 200.302(a), States are required to expend and account for Federal funds in accordance with State laws and procedures for expending and accounting for their own State funds. In other words, if State laws or procedures would not permit the use of State funds for conferences or meals, then State grantees may not use their Federal grant funds to pay those costs either.

2. **Are there examples of when food costs might be considered reasonable and necessary to the performance of a particular grant?**

The question of whether a food cost is reasonable and necessary to the performance of a grant will depend on the ED grant, including any program-specific rules or requirements that may apply to that grant, as well as the unique circumstances of the food cost. The following are some examples of situations when a food cost might be considered reasonable and necessary:

- Food costs at a family engagement event: For some ED programs, family engagement is a critical part of the purpose of the program or of the success of a project. In such a program, if a family meeting would occur during a typical mealtime, or if the grantee has evidence that attendance at the event would be affected by the absence of food or snacks, the grantee may be able to justify that is reasonable and necessary to provide light refreshments or meals to participants.

- Food costs for a working lunch at a day-long meeting: A grantee may find that one critical component of its grant activities is hosting an onsite day-long training for professionals working in a field that is a central focus of the grant. If the grantee is able to demonstrate that the lunchtime session is necessary to achieve the goals of the project, attendance at the lunchtime session is necessary to achieve full participation by attendees, and the business carried out at the lunchtime session could not be carried out at another reasonable time, the grantee may be able to justify that it is reasonable and necessary to provide meals or a snack to attendees.

- Light refreshments at a series of regular after-hours meetings: A grantee may find that an important part of its grant activities is hosting meetings after the traditional working day so that professionals from within the field but across different employers have an opportunity to collaborate on focused topics. If the grantee can demonstrate that the sessions have planned agendas that are central to the grant, that engaging this group of people is necessary to achieve the purposes of the grant, and that there is evidence that attendance at the meetings would be affected by the absence of food, the grantee may be able to justify that it is reasonable and necessary to provide light refreshments to participants.

- Costs of light snacks at a day-long meeting: To achieve the purposes of its grant, a grantee may find that is necessary to host day-long meetings or training sessions so that involved individuals can collaborate. If the grantee has evidence that providing light snacks (e.g., granola bars and water) at the meeting will result in improved participation, such as more

2

time spent on grant activities and less time needed for breaks during the sessions, the grantee may be able to justify that is reasonable and necessary to provide light snacks to participants.

If an ED grantee has questions about a specific food cost, they should contact their ED program officer.

**3. What are examples of situations when costs for food would not be considered reasonable and necessary?**

There are some situations when food costs would not be considered reasonable and necessary to a grant or would otherwise be unallowable under the *Uniform Guidance* found at 2 CFR part 200.

- Food costs at networking sessions: In nearly all cases, using grant funds to pay for food and beverages for networking sessions with a purely social focus is not justified because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs at regular staff meetings: Food costs for recurring business meetings, staff meetings, or other day-to-day activities are generally not reasonable because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs for remote meetings: Food costs for meetings conducted remotely, such as sending food to individual meeting participants' locations, are generally not justified since participants' participation is less impacted by them attending the meeting remotely.

- Entertainment: Federal grant funds may not be used to pay for entertainment, which includes costs for amusement, diversion, and social activities, unless they have a specific and direct programmatic purpose and are included in the Federal award. 2 CFR § 200.438. Celebrations, receptions, banquets, and other social events generally are not events where purchasing food with ED grant funds is appropriate.

- Alcohol: In all cases, use of Federal funds for alcoholic beverages is unallowable. 2 CFR § 200.423.

## Using ED Federal Grant (Discretionary and Formula) Funds to Host a Meeting or Conference

**4. May a grantee receiving funds from ED use its Federal grant funds to host a meeting or conference?**

Yes. Federal grant funds may be used to host a meeting or conference if doing so is:

- Consistent with its approved application or plan;

- For purposes that are directly relevant to the program and the operation of the grant, such as for conveying technical information related to the objectives of the grant; and

- Reasonable and necessary to achieve the goals and objectives of the approved grant.

The *Uniform Guidance* in 2 CFR § 200.432 describes costs associated with conferences that may be allowable.

**5. What are examples of "technical information" that may be conveyed at a meeting or conference?**

3

Examples of technical information include, but are not limited to, the following, each of which must be related to implementing the program or project funded by the grant:

- Specific programmatic, administrative, or fiscal accountability requirements;

- Best practices in a particular field;

- Theoretical, empirical, or methodological advances in a particular field;

- Effective methods of training or professional development; and

- Effective grant management and accountability.

**6. What factors should a grantee consider when deciding whether to host a meeting or conference?**

Grantees should consider whether a face-to-face meeting or conference is the most effective or efficient way to achieve the desired result and whether there are alternatives, such as webinars or video conferences, that would be equally or similarly effective and more efficient in terms of time and costs than a face-to-face meeting. In addition, grantees should consider how the meeting or conference will be perceived by the public; for example, will the meeting or conference be perceived as a good use of taxpayer dollars?

**7. Are there conflict-of-interest rules that grantees should follow when selecting vendors, such as logistics contractors, to help with a meeting or conference?**

As specified in 2 CFR § 200.317, States and Indian Tribes[3] must comply with their own procurement policies and procedures, including any policies or procedures for ensuring that there are no conflicts of interest in the procurement process. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the following procurement standards: 2 CFR §§ 200.321, 200.322, 200.323, and 200.327. If a State or Indian Tribe does not have its own procurement policies and procedures, it must follow the procurement standards in 2 CFR §§ 200.318 through 200.327.

Other grantees must follow procurement procedures that are consistent with their State, local, or Tribal laws and regulations, as appropriate, and that are also consistent with 2 CFR §§ 200.318 through 200.327, including the minimum requirements in 2 CFR § 200.318 related to conflict of interest rules.

**8. When a meeting or conference is hosted by a grantee and charged to a Federal grant, may the meeting or conference be promoted as a U.S. Department of Education event?**

No. Meetings and conferences hosted by grantees are directed by the grantee, not the U.S. Department of Education. Therefore, the meeting or conference may <u>not</u> be promoted as a U.S. Department of Education meeting or conference, and the seal of the U.S. Department of Education must <u>not</u> be used on conference materials or signage, without ED's written approval. In addition, all meeting or conference materials paid for with Federal grant funds must include appropriate disclaimers, such as the disclaimer provided in 34 CFR§ 75.620. That language reads:

---

[3] Please note that "States" were the only entities listed under 2 CFR § 200.317 prior to the revisions announced in OMB's April 22, 2024, *Federal Register* notice.

4

The contents of this [insert type of publication; such as book, report, film, website, and web page] were developed under a grant from the U.S. Department of Education (Department). The Department does not mandate or prescribe practices, models, or other activities described or discussed in this document. The contents of this [insert type of publication] may contain examples of, adaptations of, and links to resources created and maintained by another public or private organization. The Department does not control or guarantee the accuracy, relevance, timeliness, or completeness of this outside information. The content of this [insert type of publication] does not necessarily represent the policy of the Department. This publication is not intended to represent the views or policy of, or be an endorsement of any views expressed or materials provided by, any Federal agency.

**Please note that if a grantee charges a fee for attendance at a particular meeting or conference paid for with Federal grant funds, any income generated must be treated as program income under 2 CFR § 200.307 or specific program regulations addressing program income.**

**9. When a grantee is hosting a meeting or conference, may the grantee use Federal grant funds to pay for food, beverages, or snacks?**

As detailed in questions #1-3 above, in general there is a need to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant, but there may be circumstances when providing food or beverages at a conference is reasonable and necessary to achieve the purpose of the grant. Please see those questions for information about requirements and considerations related to food costs.

**10. May a grantee contract with a hotel under which Federal grant funds will be used to provide meals, snacks, and beverages as part of the cost for meeting rooms and other allowable conference-related costs?**

Federal grant funds may only be used for expenses that are reasonable and necessary. In planning a conference or meeting and negotiating with vendors for meeting space and other relevant goods and services, grantees may only pay for allowable costs. The fact that food and beverages are embedded in a contract for meeting space does not mean that the food and beverages are being provided at no cost to the grantee. Therefore, if the food and beverage cost is not an allowable cost, and a hotel vendor embeds food and beverage costs into a hotel contract for meeting space, the grantee should work with the hotel to have the food and beverage costs identified and removed from the contract, and have the price for the meeting space appropriately adjusted.

**11. What if a hotel or other venue provides "complimentary" beverages (e.g., coffee, tea) and there is no charge to the grantee hosting the meeting?**

The grantee has an obligation, under these circumstances, to confirm that the beverages are truly complimentary and will not be reflected as a charge to the grant in another area. For example, many hotels provide complimentary beverages to all guests who attend a meeting at their facility without reflecting the costs of those beverages in other items that their guests or, in this case, the grantee purchases. As noted above, it would not be acceptable for a vendor to embed the cost of beverages in other costs, such as meeting space, without those costs being separately allowable.

**12. May indirect cost funds be used to pay for food and beverages?**

No. The cost of food and beverages, which are related to meetings that are easily associated with a specific cost and grant objectives, are more appropriately treated as direct costs rather than indirect

USDOE-Contiunation_000830

costs. As noted above, Federal grant funds cannot be used to pay for food and beverages unless doing so is reasonable and necessary.

6

**13. May a grantee use <u>non-Federal</u> resources (e.g., State or local resources) to pay for food or beverages at a meeting or conference that is being held to meet the goals and objectives of its grant?**

Grantees should follow their own policies and procedures and State and local law for using <u>non-Federal</u> resources to pay for food or beverages, including its policies and procedures for accepting gifts or in-kind contributions from third parties. Grantees should be sure that any food and beverages provided with non-Federal funds are appropriate for the grantee event, and do not detract from the event's purpose. Please note that, in general, any funds that a grantee contributes to a project as part of the program's matching or cost-sharing requirement would be subject to the same rules that govern the Federal funds; therefore, the non-Federal funds used to pay for food and beverages for a meeting or conference could only be eligible for use in meeting cost-share or match obligations if Federal funds would also be allowable to pay for the food and beverages.

**14. May grantees provide meeting participants with the option of paying for food and beverages (e.g., could a grantee have boxed lunches provided at cost for participants)?**

Yes. Grantees may offer meeting participants the option of paying for food (such as lunch, breakfast, or snacks) and beverages, and arrange for these items to be available at the meeting.

<u>**Using Federal Grant Funds to Pay for Costs of Attending a Meeting or Conference Sponsored by ED or a Third Party**</u>

**15. May grantees use Federal grant funds to pay for the cost of attending a meeting or conference?**

If attending a meeting or conference is necessary to achieve the goals and objectives of the grant, and if the expenses are reasonable (based on the grantee's own policies and procedures, and State and local laws), Federal grant funds may be used to pay for travel expenses of grantee employees, consultants, or experts to attend a meeting or conference. To determine whether a meeting or conference is "necessary," grantees should consider whether the goals and objectives of the grant can be achieved without the meeting or conference and whether there is an equally effective and more efficient way (in terms of time and money) to achieve the goals and objectives of the grant (see question #6). To determine whether the expenses are "reasonable," grantees should consider how the costs (e.g., lodging, travel, registration fees) compare with other similar events and whether the public would view the expenses as a worthwhile use of Federal funds.

**16. What should a grantee consider when planning to use Federal grant funds for attending a meeting or conference?**

Among other considerations, grantees should consider how many people should attend a meeting or conference on its behalf. The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant. The grantee should also determine whether it is necessary to attend the entire meeting or conference, or whether attending only a portion of the meeting or conference is reasonable and necessary.

**17. What travel expenses may be paid for with Federal grant funds?**

7

Grantees may use Federal grant funds for travel expenses only to the extent such costs are reasonable and necessary and do not exceed charges normally allowed by the grantee in its regular operations consistent with its written travel policies. See 2 CFR § 200.475. Federal grant funds may be used to pay expenses for transportation, per diem, and lodging if the costs are reasonable and necessary. Federal grant funds may not be spent on alcohol. See 2 CFR § 200.423. Grantees should follow their own travel and per diem rules and costs when charging travel expenses to their Federal grant. In the absence of an acceptable written policy regarding travel costs, grantees must satisfy the requirements of 2 CFR § 200.475(d).

**18. What should grantees consider when including Federal employees at a grantee-sponsored meeting or conference?**

In some situations, a grantee may invite a Federal employee to participate in or present at a grantee-organized meeting or conference. Federal employees are subject to Federal ethics laws and regulations. This includes laws and regulations governing conflicts of interest and gifts (e.g., waiver of a registration fee, travel expenses, and meals). Grantees may be subject to their own ethics laws and regulations, and grantee employees should ensure that they comply with them.

**Questions Regarding the Allowable Use of Federal Grant Funds**

**19. What resources are available to help grantees determine whether costs associated with meetings and conferences are reasonable and necessary?**

Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable, necessary, and allowable, especially the regulations found at 2 CFR part 200.

**20. Is it allowable for a person whose travel costs are being paid with Federal grant funds to attend a conference in Washington, D.C., and lobby members of Congress while in town?**

Appropriated funds may not, except under very limited circumstances, be used for expenses related to any activity designed to influence the enactment of legislation, appropriations, regulations, administrative actions, or Executive Orders proposed or pending before the Congress or the Administration. See 2 CFR § 200.450. To the extent that a portion of time at a conference is spent on lobbying activities, costs associated with the lobbying, including transportation to and from Washington, D.C., lodging, and per diem, may not be charged to the Federal grant. For example, if a meeting or conference lasts for two days and a visit to lobby a member of Congress requires an additional day of travel, it could be determined that one-third (1/3) of all costs involved in attending the meeting or conference, including travel to and from Washington, D.C., may not be charged to the grant.

On the other hand, educating members of Congress about facts relevant to a particular grant program would not, absent other facts, constitute lobbying. For example, it would not be considered a prohibited lobbying activity for a grantee to inform a member of Congress about its program, the services it provides, and the individuals it serves. It also would not be considered a prohibited lobbying activity to attend a presentation by members of Congress related to issues relevant to a grantee's program or the population it serves in general. However, such education-oriented

8

USDOE-Contiunation_000833

discussions could easily cross—or appear to cross—the thin line to prohibited lobbying activities. For example, a discussion about the challenges a grantee faces with respect to requirements governing matching funds could easily expand to a discussion about the need for more appropriated funds or legislative changes, which would constitute prohibited lobbying activities. Given that Congress frequently considers the reauthorization of ED programs, a grantee's interactions with members of Congress on such topics could meet the definition of lobbying, which is prohibited. In that case, the costs associated with those interactions could not be supported with Federal funds.

**21. What are the consequences of using Federal grant funds on unallowable expenses?**

ED may seek to recover any Federal grant funds identified, in an audit or through program monitoring, as having been used for unallowable costs, including unallowable conference expenses.

**22. Whom should grantees call if they have specific questions about the allowable use of Federal grant funds?**

ED grantees are encouraged to contact their ED program officer to discuss the allowable use of Federal grant funds, including the allowable use of Federal grant funds for meetings and conferences.

9

USDOE-Contiunation_000834

**GAN Enclosure 4**
**Revised 10/2024**

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (the Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information.

A grantee's failure to comply with cash management requirements may result in an improper payment determination by the Department in accordance with the Payment Integrity Information Act (PIIA) of 2019.

**Excessive Drawdowns**

In the context of grants, excessive drawdown refers to the situation where a grantee withdraws more funds than necessary from the grantor, which can lead to financial and compliance issues. In accordance with cash management requirements, grant funds are drawn down incrementally to cover immediate expenses related to the grant activities. If a grantee draws down excessive funds, they may be required to return the surplus along with interest. This situation can arise from poor financial management, lack of proper accounting practices, or misalignment with the grant's stipulated budget and objectives.

To avoid excessive drawdown, it is crucial for grantees to implement and maintain robust accounting systems, track expenses accurately, and adhere to the grant's budget and reporting requirements. Proper planning and monitoring of fund allocation, maintaining accurate records, and ensuring timely drawdowns aligned with actual expenses are essential practices. Additionally, grantees should be aware of the specific drawdown procedures and requirements set by the grantor, which can vary depending on whether the grant is federally funded or comes from other sources.

**Cash Management Requirements**

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department.  The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1.    Payments to a State under programs that are covered by a State's Treasury State Agreement (TSA);

2.    Payments to States under programs that are not covered by a TSA; and

3.    Payments to other non-Federal entities, including nonprofit organizations and local governments.

---

[1] The Department adopts the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

USDOE-Contiunation_000835

**GAN Enclosure 4**
**Revised 10/2024**

**CMIA Requirements Applicable to Programs included in a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A.  Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15.  If a State makes a payment under a Federal assistance program before funds for that payment have been transferred to the State, Federal Government interest liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

**CMIA Requirements Applicable to Programs Not Included in a TSA**

Payments to States under programs not covered by a State's TSA are subject to subpart B of Treasury's regulations in 31 CFR § 205.  These regulations provide that a State must minimize the time between the drawdown of funds from the federal government and their disbursement for approved program activities.  The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.  31 CFR § 205.33(a).  States should exercise sound cash management in funds transfers to subgrantees.

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b).  However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA.  31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b).  These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "For recipients and subrecipients other than States, payment methods must minimize the time elapsing between the transfer of funds from the Federal agency or the pass-through entity and the disbursement of funds by the recipient or subrecipient regardless of whether the payment is made by electronic funds transfer or by other means."  2 CFR § 200.305(b).

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the recipient or subrecipient, and financial management systems that meet the standards for fund control and accountability." 2 CFR § 200.305(b)(1).  If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement.  See 2 CFR § 200.305(b)(1) and (3) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

2

**Returning Earned Interest**

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist.  See 2 CFR § 200.305(b)(11) for those conditions.  The requirements regarding interest accrual and remittance follow:

Recipients or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the recipient or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. All interest in excess of $500 per year must be returned to PMS regardless of whether the recipient or subrecipient was paid through PMS. Instructions for returning interest can be found at Returning Funds/Interest | HHS PSC FMP Payment Management Services. 2 CFR § 200.305(b)(12). Additionally, these instructions are provided below.

1.  **Returning Interest to PMS**

    PMS is the central collection point for interest earned on all federal grants, whether they are paid through the Payment Management System or not.

    a.  **Domestic** Automated Clearing House (ACH) Returns (Direct Deposit)

    Returning funds via Automated Clearing House (ACH) means you will most likely be returning funds in the manner in which they were received at your organization.

    ACH account information to be included:

    - PSC ACH Routing Number is: 051036706
    - PSC DFI Accounting Number: 303000
    - Bank Name: Credit Gateway - ACH Receiver
    - Location: St. Paul, MN

    Additionally, include the following:

    - An explanation stating that the refund is for interest
    - The name of the awarding agency
    - The grant number(s) for which the interest was earned
    - The return should be made payable to: Department of Health and Human Services.

    b.  **International** Automated Clearing House (ACH) Returns (Direct Deposit)

    ACH Account Information to be Included For Payments Sent in **U.S. Dollars (USD)**:

    - Beneficiary Account: Federal Reserve Bank of New York/ITS (Can abbreviate: FRBNY/ITS)
    - Bank: Citibank N.A. (New York)
    - SWIFT Code: CITIUS33
    - Account Number: 36838868
    - Routing Number: 021000089
    - Bank Address: 388 Greenwich Street, New York, NY 10013

3

USDOE-Contiuation_000837

**GAN Enclosure 4**
**Revised 10/2024**

- Payment Details (Line 70): Agency Name (abbreviated when possible) and Agency Locator Code (ALC)
- Agency POC: James Kruper, (301) 492-4998

For a USD payment, the payment sender must include:

- **Agency Locator Code (ALC):** 75010501
- **Name:** US Department of Health and Human Services, PMS Account Number and Grant Subaccount Number in the Payment Details (Line 70) section of the SWIFT message.

This information must be in this section of the payment instructions, or the International Treasury Service (ITS) will not be able to identify the federal agency the payment is for. Without this identifying information, ITS will be required to return the payment as unidentified or unable to post. The receiving account is in the name of "Federal Reserve Bank of New York/ITS" and the payment originator should list that as the name on the beneficiary account.

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

   c.   FedWire Returns

Service charges may be incurred from a grantee's financial institution when a Fedwire to return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

   d.   Check Returns (USPS Only)

Interest may be returned by check using only the U.S. Postal Service; however, returning interest via check may take 4-6 weeks for processing before a check payment may be applied to the appropriate PMS account.

4

USDOE-Contiunation_000838

- Interests returned by check are to be mailed (USPS only) to:

    HHS Program Support Center
    PO Box 979132
    St. Louis, MO 63197

    A brief statement explaining the nature of the return must be included.

    To return interest on a grant not paid through the PMS, make the check payable to the Department of Health and Human Services, and include the following with the check:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

**Cash Management Monitoring Responsibilities of Pass-Through Entities**

Grantees, including grantees that act as pass-through entities and subgrantees have other responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must have procedures for determining the allowability of costs for their awards.  We highlight the following practices related to the oversight of subgrantee compliance with the financial management requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must –

1. Verify that the subrecipient is not excluded or disqualified in accordance with §180.300. Verification methods are provided in § 180.300, which include confirming in SAM.gov that a potential subrecipient is not suspended, debarred, or otherwise excluded from receiving Federal funds.

2. Ensure that every subaward is clearly identified to the subrecipient as a subaward and includes the information identified in § 200.332(b).

3. Evaluate each subrecipient's fraud risk and risk of noncompliance with a subaward to determine the appropriate subrecipient monitoring.  See § 200.332(b) & (f).

4. Monitor the activities of a subrecipient as necessary to ensure that the subrecipient complies with Federal statutes, regulations, and the terms and conditions of the subaward.  The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. See § 200.332(e).

5. Consider taking enforcement action against noncompliant subrecipients as described in § 200.339 and in program regulations.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations.  These program-specific requirements may supplement or override general cash management or payment requirements.  If you

5

**GAN Enclosure 4**
**Revised 10/2024**

have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

6

USDOE-Contiunation_000840

S165A220034 - 25

Jenna Krueger-Utter

NYC Department of Education - Community School District 19

School Leadership

5619 Flatslands Avenue

Brooklyn, NY 11234

S165A220034 - 25

Todd Levitt
NYC Department of Education - Community School District 19
School Leadership
590 Sheffield Avenue Room 413

Brooklyn, NY 11207

USDOE-Contiunation_000842



S165A220034 - 25

# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

**1** | RECIPIENT NAME

NYC Department of Education - Community School District 19
School Leadership
590 Sheffield Avenue Room 413
Brooklyn, NY 11207

**2** | AWARD INFORMATION

| | |
|---|---|
| PR/AWARD NUMBER | S165A220034 - 25 |
| ACTION NUMBER | 13 |
| ACTION TYPE | Continuation |
| AWARD TYPE | Discretionary |

**3** | PROJECT STAFF

RECIPIENT PROJECT DIRECTOR
Jenna Krueger-Utter
jkrueger2@schools.nyc.gov
EDUCATION PROGRAM CONTACT
Hans L Neseth          (202) 453-6515
hans.neseth@ed.gov
EDUCATION PAYMENT HOTLINE
G5 PAYEE HELPDESK      888-336-8930
obssed@servicenowservices.com

**4** | PROJECT TITLE

84.165A
Community School Districts 19-27 Consortium Magnet Schools Assistance Program

**5** | KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Jenna Krueger Utter | Project Director | 100 % |
| Todd Levitt | MSAP Coordinator | 20 % |

**6** | AWARD PERIODS

| | |
|---|---|
| BUDGET PERIOD | 10/01/2025 - 09/30/2026 |
| PERFORMANCE PERIOD | 10/01/2022 - 09/30/2026 |

FUTURE BUDGET PERIODS

N/A

**7** | AUTHORIZED FUNDING

| | |
|---|---|
| THIS ACTION | $497,869.00 |
| BUDGET PERIOD | $497,869.00 |
| PERFORMANCE PERIOD | $9,497,866.00 |

**8** | ADMINISTRATIVE INFORMATION

| | |
|---|---|
| UEI | DHJ6MWMNEH38 |
| REGULATIONS | CFR PART 280 |
| | EDGAR AS APPLICABLE |
| | 2 CFR AS APPLICABLE |
| ATTACHMENTS | 1 , 2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , B OESE , GE1 , GE2 , GE3 , GE4 |

**9** | LEGISLATIVE AND FISCAL DATA

| | |
|---|---|
| AUTHORITY: | PL P.L. 114-95 V-A ELEMENTARY AND SECONDARY EDUCATION ACT OF 1965, AS AMENDED BY THE EVERY STUDENT SUCCEEDS ACT |
| PROGRAM TITLE: | MAGNET SCHOOLS ASSISTANCE |
| CFDA/SUBPROGRAM NO: | 84.165A |

USDOE-Contiunation_000843



S165A220034 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 0204A | 2026 | 2026 | ES000000 | B | U60 | 000 | 165 | 4101C | $497,869.00 |

PR/AWARD NUMBER:        S165A220034 - 25

RECIPIENT NAME:        NYC Department of Education - Community School District 19 School Leadership

GRANTEE NAME:        CITY OF NEW YORK BOARD OF EDUCATION

65 COURT ST STE 823,

BROOKLYN, NY 11201 - 4916

PROGRAM INDIRECT COST TYPE:    Unrestricted

PROJECT INDIRECT COST RATE:    3%

TERMS AND CONDITIONS

(1)    THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:
1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180, NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIFIC CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.
IN ACCORDANCE WITH 2 CFR 200.308(f)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.
THIS AWARD SUPPORTS THE FINAL BUDGET PERIOD FOR THIS PROJECT. THE RECIPIENT IS REQUIRED TO SUBMIT ALL NECESSARY REPORTS TO THE DEPARTMENT OF EDUCATION WITHIN 120 DAYS AFTER THE END OF FEDERAL SUPPORT IN ACCORDANCE WITH 2 CFR 200.328 AND 200.329 (BLOCK 6).

(2)    By the drawdown of funds under this GAN, the grantee accepts that this award is subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards; Title 2 CFR Part 200 as revised at 89 FR 30136-30208 (April 22, 2024).

(3)    The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made to a subrecipient under this grant.
The term subaward means:
1) An award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor [See 2 CFR 200.331(a)(5)], beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

In accordance with 2 CFR 200.331 (a), a subaward is made to a subrecipient for the purpose of carrying out a portion of the Federal award and creates a Federal financial assistance relationship with a subrecipient. Characteristics that support the classification of the entity as a subrecipient include, but are not limited to, when the entity:

1) Determines who is eligible to receive what Federal assistance;
2) Has its performance measured in relation to whether the objectives of a Federal program were met;
3) Has responsibility for programmatic decision-making;
4) Is responsible for adherence to applicable Federal program requirements specified in the Federal award;



S165A220034 - 25

# US Department of Education
# Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

5) Implements a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

(4) Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(5) Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions (34 CFR 75.564(a) and 34 CFR 76.562(a)). The negotiated indirect cost rate agreement authorizes a recipient to draw down indirect costs from the grant awards (34 CFR 75.564(b) and 34 CFR 76.562(b)). The following conditions apply to the below entities.

A. All entities (other than Institutions of Higher Education (IHE)

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under statutes, departmental regulations (Education Department General Administrative Regulations (EDGAR)), or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of Higher Education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant project period, the indirect cost rate set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6) Per the Department s April 17, 2026, Notice of Continuation Determination, the June 4, 2026, Order in The Board of Education of the City School District of the City of New York v. U.S. Department of Education, et al., Case No. 25-cv-8547-AS (S.D.N.Y.) ( NYCPS v. ED ), and the Department s regulations at 34 C.F.R. 75.253(e), the Department has determined that the appropriate continuation award amount for this grants is $497,869.

The grantee submitted and received approval of its budget through June 30, 2026. The Department has limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made. Thus, the award amount was determined by dividing the annual requested and recommended average award amount for this grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000, or $750,000 for the three-month continuation period.

In the May 27, 2026 Declaration of Todd Levitt, filed in NYCPS v. ED, NYCPS represented that the remaining amount available under this grant, less amounts claimed as committed funds or open encumbrances for the duration of this school year was $252,131. Accordingly, the Department subtracted $252,131 from $750,000 to determine a continuation award amount of $497,869.

USDOE-Contiunation_000845



S165A220034 - 25

## US Department of Education
## Washington, D.C. 20202
# GRANT AWARD NOTIFICATION

This grant will operate under a reimbursement pay status, as permitted by the Department s discretionary authority under 20 U.S.C. 1226a-1. Grantees will still have access to their grant funds; however, such funds may only be drawn down after submitting documentation that substantiates allowable expenditures under the grant.

Consistent with the Department s original April 17, 2026, Notice of Continuation Determination, as noted earlier, this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue.

(7)    Grantees must not use federal funds under this project in any manner that violates the United States Constitution, Title VI or Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq. or 42 U.S.C. 2000e et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 504 of the Rehabilitation Act (29 U.S.C. 794), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131 et seq.), the Boy Scouts of America Equal Access Act of 2001 (20 U.S.C. 7905), section 117 of the Higher Education Act of 1965, as amended (20 U.S.C. 1011f), or other applicable federal law.

Please note the provisions of Executive Orders 14151, 14168, 14173, and 14190 as well as the U.S. Department of Justice s July 29, 2025, non-regulatory Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination, which clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ( DEI ) programs.

Such activities may risk violating federal civil rights laws and may jeopardize federal funding. This includes any discriminatory equity ideology in violation of a Federal anti-discrimination law. A definition of discriminatory equity ideology is contained in Section 2(b) of Executive Order 14190.

Additionally, grantees must comply with all Financial Assistance General Certifications and Representations annual registration requirements made in SAM.gov, including any provisions in the annual registration that address civil rights, DEI programs or activities, and support of illegal aliens.

To the extent that a grantee uses grant funds for such unallowable activities, ED may take appropriate enforcement action including the potential recovery of funds, or may pursue termination or non-continuation. The Grant Award Notification document accompanying your award may contain further terms and conditions, as necessary, to ensure grantee compliance with applicable laws, regulations, and administrative priorities.

LAVANNA WEEMS  Digitally signed by LAVANNA WEEMS
Date: 2026.06.09 17:12:57 -04'00'

_____    _____

**AUTHORIZING OFFICIAL**                                    **DATE**

Ver. 1

USDOE-Contiunation_000846

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**    (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -** Unique items of information that identify this notification.

   **PR/AWARD NUMBER -** A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

   **ACTION NUMBER -** A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

   **ACTION TYPE -** The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

   **AWARD TYPE -** The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -** This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

   ***RECIPIENT PROJECT DIRECTOR -** The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

   **EDUCATION PROGRAM CONTACT -** The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

   **EDUCATION PAYMENT CONTACT -** The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -** Project activities and funding are approved with respect to three different time periods, described below:

   **BUDGET PERIOD -** A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

   **PERFORMANCE PERIOD -** The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

   ***FUTURE BUDGET PERIODS -** The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -** The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

   ***THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

   ***BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

   ***PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

   **RECIPIENT COST SHARE -** The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

   **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -** This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

   **UEI -** The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

USDOE-Contiunation_000847

**\*REGULATIONS -** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS -** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA -** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS -** The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award. **AMOUNT -** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS -** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER -** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME -** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE -** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE -** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL -** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF -** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT -** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE -** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

---

\* This item differs or does not appear on formula and block grants.

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
## & CHIEF INFORMATION OFFICER

Jenna Krueger-Utter
NYC Department of Education - Community School District 19
School Leadership
590 Sheffield Avenue Room 413

Brooklyn, NY 11207

SUBJECT: Payee Verification for Grant Award S165A220034 - 25

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: DHJ6MWMNEH38
Grantee Name: CITY OF NEW YORK BOARD OF EDUCATION

Payee UEI: DHJ6MWMNEH38
Payee Name: CITY OF NEW YORK BOARD OF EDUCATION

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

U.S. Department of Education
550 12th Street, SW
Room 6087
Washington, DC 20202

Attn: Stephanie Barnes
Phone: 202-245-8006

USDOE-Contiunation_000849

**GAN ATTACHMENT 1**
**Revised 10/2024**

## SPECIFIC GRANT CONDITIONS FOR PAYMENTS

THE G5 PAYMENTS MODULE

Payments under this award will be made through the Payments module of the U.S. Department of Education's (Department's) electronic grants system, G5. G5 is administered by the Office of Finance and Operations, Office of Business Support Services.

The internet address for G5 is https://g6.ed.gov/.  To draw funds from grant awards in the G5 Payments module, grantee representatives must have individual G5 accounts under their personal name and unique work email address, with the Payee role assigned and associated to a Unique Entity Identifier (UEI) associated with their grantee organization. The Grantee UEI number on the award is identified in **Block 8** of the **Grant Award Notification (GAN)**.

To establish a G5 Payee account, follow these steps:

CREATE A NEW ACCOUNT IN G5 UNDER YOUR OWN NAME AND WORK EMAIL ADDRESS:

- Navigate to G6.ed.gov.
- Click the "Sign in" button on the top right of the page.
- Scroll down the page and select the "G5 Sign in" button.
- Review and agree to the "Government System Warning."
- Below the "Login to G5" button on the top left of the page, click on the "Sign Up" link next to the words "Not registered?"
- Enter information requested.
- Answer "No" when asked if you are not an employee or contractor of the U.S. Department of Education.
- Click "Continue."
- Enter the required information. Do not use an email address from a shared email account, such as grants@school.edu. Use an email address that reflects your name and that only you can access.

A G5 account cannot be reassigned once an account is established. It is fixed to an individual.
-  Upon entering your initial information into the system, the website tells you to look for an "Account Request" email from G5.
- When the email arrives, open it and click on the words inside that say "Activate My Account."
-  Complete the portion of the registration concluding with "Activate Account."
- You will receive an email titled "User Account Activation," which will prompt you to log in to G5 and select the Payee role.

SELECT THE PAYEE ROLE AND COMPLETE AND EMAIL A FORM:
- Once you log in to G5, you will be on the EDIT PROFILE page. Scroll down to the "Available Types" field and select "Payee." (Full Access allows drawdowns of funds and viewing of payment history reports, View Only does not allow the drawdowns of funds, but permits viewing of payment history reports.)
- Click "Continue."
- On the next page, you are then prompted to fill out the following fields:
- Payee UEI (required) A Grant Award Notification shows a Grantee UEI. Some institutions use a different UEI

1

USDOE-Contiunation_000850

for payee information. Confirm that you are entering the PAYEE UEI that your institution uses to connect their grant awards to banking in G5.
- Grantee UEI (not required). Skip this field.
- Access Level. Select "View Only" to simply view drawdowns or "Full Access" to make and view drawdowns.
- After entering the above information, click "Continue."
- On the next page that appears, you will see instructions in red requesting that you click a link to print out a form that appears on the screen, which is populated with your name, date of birth, and role requested. Click on the link to get the form to appear and print it out but black out the date of birth. This is no longer required.
- Click the back button on your browser to get back to the G5 page where the instructions appeared and click "Submit" at the bottom of the page.
- Please make sure all fields are completed and the form is signed.
- If you want access to more than one UEI, write the additional UEIs next to the one that pre-populates on the form.
- Scan the completed form or fill it out electronically and email it to obssed@servicenowservices.com. Completed forms must bear the required signatures and be notarized (or, in lieu of notarization, contain a seal or stamp from the grantee organization, or be accompanied by a letter on letterhead from the Senior Officer who signs the authorization section).

Multiple Payee users can be associated to a particular grantee institution in the G5 system, allowing for back-up Payee users to draw funds when a primary Payee user is away. However, each user must register for their own account under their own name and email address. Sharing of G5 accounts is prohibited.

In addition to establishing individual Payee account(s) in G5, new grantees are required to provide depositor account information via a completed SF1199A form, if this has not already been submitted for previous Department of Education grant awards at your organization. The form and instructions for completing the form can be found on the G5 Frequently Asked Questions page.

Payee users may begin requesting funds for the grantee once the award authorization is entered into G5, the award start date is reached, and a completed SF1199A is received and processed by the Department (if one does not already exist for a previous award). To log into G5 with an established Payee account, you may use one of two log in methods: Login.gov or G5. These choices appear after clicking "Sign In" on the G5 Home Page. When using Login.gov to access G5, be sure you are using the same email address you used to create the Payee account in G5. If you are not using the same email address, G5 and login.gov will not identify you are the same person, and you will not be able to access G5.

Guides to working in G5 can be found in the Help section of G5:
https://g5.gov/G5HELP/exthelp1/index.html  For additional assistance, grantees may contact the G5 Hotline at (888) 336-8930. The Hotline is available Monday through Friday, from 8 a.m. to 6 p.m. Eastern time, except on Federal holidays.

USDOE-Contiunation_000851

**GAN ATTACHMENT 1**
**Revised 10/2024**

REQUESTING FUNDS USING THE G5 PAYMENTS MODULE

To access the G5 Payments module, payees need a web browser (such as Microsoft Internet Explorer) and Internet connectivity.  Payees will request funds by award using **the PR/Award Number** found in **Block 5** of the **GAN**.  Instructions for navigating through the G5 Payments screens to make a payment request are provided in the G5 On Demand training located under the "Help" link.

G5 users with the Payee role who are unable to access G5 may request funds by calling the G5 Hotline at (888)336-8930.

AWARD INFORMATION

G5 users with the Payee role can view the following information in G5 on grant awards associated to the UEI on their account:

- Net authorization and authorization history;
- Net draws;
- Available balance;
- History of pending and completed payments;
- Award status; and
- Award history - including detailed transactions on drawdowns, returns, refunds, and adjustments.

3

USDOE-Contiunation_000852

## SPECIFIC GRANT TERMS AND CONDITIONS FOR
## FINANCIAL AND PERFORMANCE REPORTS

**PERFORMANCE REPORTS:**

**(1) FINAL REPORTS - ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS - ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, 200.332, and 34 CFR §§ 75.590; 75.718; 75.720; 75.623; and 75.732.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1. That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2. That an interim performance report is required because of the nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(1)).

3. That other reports are required, e.g., program specific reports required in a program's statute or regulation or specific conditions are applied (2 CFR § 200.208).

**(3) FINANCIAL REPORTS – SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1. A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (OMB) does not collect cost sharing information;
2. Program income was earned;

1

USDOE-Contiunation_000853

3. Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by OMB does not collect indirect cost information;

4. Program regulations or statute require the submission of the FFR; or

5. Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part 200.208 and part 3474.10 and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at Standard Form (SF) 425 Federal Financial Report (FFR)):

1. Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2. Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3. Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4. Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR § 200.328).

When completing an FFR for submission, the following must be noted:

1. *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in item 2 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple grant and FFR attachment reference found in item 2 of the Line Item Instructions for the FFR is not applicable to Department grants.

2. *Program Income*: Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 2 CFR Part 200.307. A grantee is permitted, in accordance with 2 CFR Part 200.307, to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3. *Indirect Costs:* A grantee will complete item 11(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

2

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 15% of modified total direct cost (MTDC) must list its indirect cost rate in 11(a) as a Department Temporary Rate or De Minimis Rate.  The de minimis rate of 15% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)").

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with 34 CFR § 75.562 (c), must list its rate in 11(a) as a Department Training Grant Rate.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States[1] as defined in 2 CFR § 200.1.

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in 11(a).  A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.  If a restricted program grantee elects to utilize the temporary rate, it must list its rate as a Department Temporary Rate in 11(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in 11(a).  Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

USDOE-Contiunation_000855

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

Upon request of the Secretary, a grantee must, at the time of submission to the Secretary, post any performance and financial reports on a public-facing website maintained by the grantee, after redacting any privacy or confidential business information (34 CFR § 75.720).

4

USDOE-Contiunation_000856

**GAN ATTACHMENT 3**
**Revised 10/2024**

## AN OVERVIEW OF AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification (GAN).

**Summary of Audit Requirements for States, Local Governments, and Nonprofit Organizations:**

1.  Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)[1], or nonprofit organization) that expends $1,000,000 or more in Federal awards during the non-Federal entity's fiscal year must have a single audit conducted annually in accordance with 2 CFR § 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2.  Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program-specific audit conducted.  A program–specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3.  Exemption when Federal awards expended are less than $1,000,000.  A non-Federal entity that expends less than $1,000,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR § 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4.  Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity (2 CFR § 501(e)).

5.  Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (OMB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR § 200.512, as well as relevant

---

[1] As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

USDOE-Contiunation_000857

SF-SAC workbook(s) electronically to the Federal Audit Clearinghouse at:
https://www.fac.gov/.

6. The audit, the workbook(s), and reporting package must be submitted within of 30
   calendar days after receipt of the auditor's report(s) or nine months after the end of
   the audit period (whichever is earlier).  If the due date falls on a Saturday, Sunday,
   or Federal holiday, the reporting package is due the next business day.  The auditee
   must make copies available for public inspection unless restricted by Federal
   statutes or regulation.  Auditees and auditors must ensure that their respective
   parts of the reporting package do not include protected personally identifiable
   information (2 CFR § 200.512).

Additional grantee requirements can be found in Uniform Guidance §200.510, including:

- Preparing financial statements that reflect the grantee's financial position, results of operations
  or changes in net assets, and where appropriate, cash flows for the fiscal year audited;
- Preparing a schedule of expenditures of Federal awards (SEFA) for the period covered by the
  grantee's financial statements;
    o List Federal programs by Federal agency
    o For Federal awards received as a subrecipient, the name of the pass-through entity and
      assigned identifying number
    o Provide the total Federal awards expended for each Federal program and the Assistance
      Listing Number (ALN).  For a cluster of programs, also provide the total for the cluster
    o Include the total amount provided to subrecipients from each Federal program

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their
cognizant agency for single audit technical assistance. This supplement will be instructive to both
grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts
for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical
assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides
the predominant amount of direct funding to the recipient." The Compliance Supplement will be
instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal
Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail
addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees
should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-
federalaudit@ed.gov.  Additional resources for single audits are also available on the Non-Federal Audit
Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html.  For programmatic
questions, grantees should contact the education program contact shown on the Department's GAN.

Grantees can obtain information on audits from:

The OMB website at www.omb.gov.  Look under Office of Management and Budget (in right column)
then click Office of Federal Financial Management (to obtain the Current OMB Compliance Supplement

2

USDOE-Contiunation_000858

in the right column).  The SF-SAC Workbooks and Instructions can be found at the Federal Audit Clearinghouse at:
https://facides.census.gov/Files/2019-2021%20Checklist%20Instructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative OMB Single Audit report examples that might be of interest to accountants, auditors, or financial staff that can be downloaded by searching for "single audit report illustrations" at www.aicpa-cima.com.

USDOE-Contiunation_000859

**GAN ATTACHMENT 6**
**Revised 10/2024**

## REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307, which addresses the use and expenditure of program income as well as the methods for use of program income

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

_____ Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

_____ Not Allowed  Using program income to finance the non-Federal share of the project or program; and

_____ Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

1

USDOE-Contiunation_000860

## TRAFFICKING IN PERSONS

The Department of Education adopts the requirements of the Trafficking Victims Protection Act (TVPA) of 2000, as codified at 22 U.S.C. 7101 to 7115, in 22 U.S.C. 7104(g); 22 U.S.C. 7104a; 22 U.S.C. 7104b; and 22 U.S.C. 7104c into this grant through this condition as per the Code of Federal Regulations at 2 CFR Part 175 .

(a) Condition:

The Department, as authorized by 22 U.S.C. 7104b(c), may without penalty, terminate a grant or take any remedial actions if a recipient or subrecipient engages in:

(1) Severe forms of trafficking in persons;

(2) The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

(3) The use of forced labor in the performance of the grant or cooperative agreement; or

(4) Acts that directly support or advance trafficking in persons, including the following acts:

(i) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

(ii) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

(A) exempted from the requirement to provide or pay for such return transportation by the Department; or

(B) the employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

(iii) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

(iv) Charging recruited employees a placement or recruitment fee; or

1

(v) Providing or arranging housing that fails to meet the host country's housing and safety standards.

(b) Compliance plan and certification requirement:

(1) Prior to receiving a grant, if the estimated value of services required to be performed under the grant or cooperative agreement outside the United States exceeds $500,000, you must certify that:

(i) You have implemented a plan to prevent the activities described in paragraph (a) of this section, and are in compliance with this plan;

(ii) You have implemented procedures to prevent any activities described in paragraph (a) of this section and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in any activities described in paragraph (a) of this section; and

(iii) To the best of your knowledge, neither you, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in paragraph (a) of this section.

(2) Annual certification. You must submit an annual certification consistent with paragraph (b)(1) of this section for each year the award is in effect.

(3) Compliance plan. Any plan or procedures implemented pursuant to paragraph (b) must be appropriate to the size and complexity of the grant or cooperative agreement and to the nature and scope of its activities, including the number of non-United States citizens expected to be employed.

(4) Copies of the compliance plan. The recipient must provide a copy of the plan to the grant officer upon request, and as appropriate, must post the useful and relevant contents of the plan or related materials on its website and at the workplace.

(5) Minimum requirements of the compliance plan. The compliance plan must include, at a minimum, the following:

(i) An awareness program to inform recipient employees about the Government's policy prohibiting trafficking-related activities described in paragraph (a) of this section, the activities prohibited, and the actions that will be taken against the employee for violations. Additional information about Trafficking in Persons and examples of awareness programs can be found at the website for the Department of State's Office to Monitor and Combat Trafficking in Persons at http://www.state.gov/j/tip/.

2

USDOE-Contiunation_000862

(ii) A process for employees to report, without fear of retaliation, activity inconsistent with the policy prohibiting trafficking in persons.

(iii) A recruitment and wage plan that only permits the use of recruitment companies with trained employees, prohibits charging recruitment fees to the employees or potential employees and ensures that wages meet applicable host-country legal requirements or explains any variance.

(iv) A housing plan, if the recipient, subrecipient, contractor, or subcontractor intends to provide or arrange housing, that ensures that the housing meets host-country housing and safety standards.

(v) Procedures to prevent agents, subrecipients, contractors, or subcontractors at any tier and at any dollar value from engaging in trafficking in persons, including activities in paragraph (a) of this section, and to monitor, detect, and terminate any agents, subgrants, or subrecipient, contractor, or subcontractor employees that have engaged in such activities.

(c) Notification to Inspectors General and cooperation with government. In addition, you must:

(1) Immediately inform the Department and Inspector General of the Department of any information you receive from any source that alleges credible information that you, any subrecipient, contractor, or subcontractor, or any agent of your organization or subrecipient, contractor, or subcontractor, has engaged in conduct described in paragraph (a) of this section; and

(2) Fully cooperate with any Federal agencies responsible for audits, investigations, or corrective actions relating to trafficking in persons.

USDOE-Contiunation_000863

FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT
REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information.  To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000;
3. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
4. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 of the Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives*, and other key terms, are defined within item 5, Definitions, of this grant award term.

This grant award term is issued in accordance with 2 CFR Part 170—Reporting Subaward And Executive Compensation Information.

1. ***Reporting of First-tier Subawards -***

a. *Applicability and what to report.*

   Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

   You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

b. *Where and when to report.*

   The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS.

   Report subaward information no later than the end of the month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2025, the obligation must be reported by no later than December 31, 2025.

1

2. *Reporting Total Compensation of the Department's Grant Recipients' Executives -*

a. *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii    In the preceding fiscal year, you received—

A.    80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

B.    $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,

C.    The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b. *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

i.    As part of your registration profile at https://www.sam.gov.

ii.    No later than the month following the month in which this award is made and annually after that. (For example, if the obligation was made on November 7, 2025, the executive compensation must be reported by no later than December 31, 2025, and annually thereafter.)

3. *Reporting of Total Compensation of Subrecipient Executives –*

a. *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

2

    i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

    ii    In the preceding fiscal year, you received—

    A.   80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

    B.   $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,

    C.   The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b.   *Where and when to report.*

You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

    i.    In FSRS.  You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov.  Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

    ii.   No later than the end of the month following the month during which you make the subaward.  For example, if the subaward obligation was made on November 7, 2025 the subrecipient's executive compensation must be reported by no later than December 31, 2025.

**4.**  *Exemptions –*

a.  If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

    i.    Subawards, and

    ii.   The total compensation of the five most highly compensated executives of any **subrecipient**.

**5.**  *Definitions -*

a.  For purposes of this award term:

USDOE-Contiunation_000866

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;

(vii) Any other legal business entity;

(viii) Another grantee or contractor that is not excluded by subparagraph (2); and

(ix) Any State or locality;

(2) Does not include:

(i) An individual recipient of Federal financial assistance; or

(ii) A Federal employee.

Executive means an officer, managing partner, or any other employee holding a management position.

Subaward has the meaning given in 2 CFR § 200.1.

Subrecipient has the meaning given in 2 CFR § 200.1.

Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR § 229.402(c)(2).

4

**GAN ATTACHMENT 11**
**Revised 10/2024**

## SPECIFIC CONDITIONS FOR DISCLOSING
## FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1)  the percentage of the total costs of the program or project which will be financed with Federal money;

2)  the dollar amount of Federal funds for the project or program; and

3)  the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

USDOE-Contiunation_000868

## PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING
## DURING OFFICIAL FEDERAL GRANT BUSINESS

Federal grant recipients, subrecipients, and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

1

USDOE-Contiunation_000869

**GAN ATTACHMENT 13**
**Revised 10/2024**

## REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM.gov)

The U.S. Department of Education's (Department) Grants Management System (G5) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, to do business with the Department you must have a registered Unique Entity Identifier (UEI) and TIN number in SAM.gov, the U.S. Federal Government's primary registrant database.

What is a UEI?  SAM.gov assigns a UEI to entities when they pass validation in SAM.gov. The UEI is a 12-character alphanumeric identifier used in SAM.gov and other federal government systems to identify a unique entity.

If the payee UEI number is different than your grantee UEI number, both numbers must be registered in SAM.gov. Failure to register both will delay the receipt of payments from the Department.

What is a TIN?  A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with SAM.gov, you can easily register by going to www.sam.gov.  Allow at least ten business days after you submit your registration for it to become active in SAM.gov.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the Federal Service Desk (FSD).  Live chat information and other information about the FSD is available at: GSAFSD Service Portal Landing - GSA Federal Service Desk Service Portal.

If you are currently registered with SAM.gov, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the G5 Hotline at 888-336-8930.

                    USDOE-Contiunation_000870

## SYSTEM FOR AWARD MANAGEMENT REQUIREMENTS FOR RECIPIENTS AND THEIR SUBRECIPIENTS

**1.    Requirement for System for Award Management (SAM.gov)**

Unless you are exempted from this requirement under 2 CFR § 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM.gov registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency.  To remain registered in SAM.gov after your initial registration, you are required to review and update your information in SAM.gov on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

2.    **Recipient Requirements of Subrecipients**

In accordance with 2 CFR § 25.300 you are required to ensure that your subrecipients have a Unique Entity Identifier (UEI).  Note that subrecipients are not required to complete full registration in SAM.gov to obtain a UEI, which is required for an entity to **directly** do business with the Federal government. Instead, subrecipients may obtain a UEI by signing up in SAM.gov to get an account and establish a profile.

You may not make a subaward to a subrecipient that has not obtained a UEI and provided it to you, and you are required to notify any potential subrecipients that you cannot make a subaward unless the subrecipient obtains a UEI and provides it to you.

**3.    Definitions**

For purposes of this award term:

1.    System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient. See 2 CFR 25.400.

2.    Unique Entity Identifier (UEI) Means the universal identifier assigned by SAM.gov to uniquely identify business entities. See 2 CFR 25.400.

3.    Recipient means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award. See 2 CFR 200.1.

4.    Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with § 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

USDOE-Contiunation_000871

5. Subrecipient means an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency. See 2 CFR 200.1.

USDOE-Contiunation_000872

**ATTACHMENT B**
**SPECIAL GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**ALL RECIPIENTS** are required to submit a final performance report within 90 days after the expiration or termination of grant support.

**ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report.  The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED.  YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR PERFORMANCE REPORT SUBMISSIONS, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

Refer to the item(s) checked below for other reporting requirements that may apply to this grant:

_____1. A performance report is due before the next budget period begins.  The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

_____The continuation report is due on _____.

_____The Department will provide recipients with additional information about this report, including due date, at a later time.

_____2. An interim performance report is required because of the nature of this award or because of statutory or regulatory provisions governing the program under which this award is made.  The report is due more frequently than annually as indicated:

_____Quarterly  Submit within 30 days after the end of each quarter.

_____Semiannually  Submit within 30 days after the end of each 6-month period.

_____3. Other Required Reports:

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED.  IF A FINANCIAL REPORT IS REQUIRED, YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR FINANCIAL REPORT SUBMISSION, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

**FINANCIAL REPORTS:**

Unless an item down below is checked, a Standard Form 425 Federal Financial Report (FFR) is not required for this grant.  The Department will rely on the drawdown of funds by grant award and record such drawdowns as expenditures by grantees. (34 CFR 75.720)

_____Quarterly FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 45 days after each reporting period.

_____Semi-annual FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 45 days after each reporting period.

_____An annual FFR is required for reporting period ending 09/30, and is due within 45 days after the reporting period.

_____A final FFR is due within 90 days after the project or grant period end date.

A quarterly, semi-annual, annual, and/or final FFR as noted hereinabove is due for this grant because:

_____(34 CFR 74.14 or 80.12) Special Award Conditions or Special grant or subgrant conditions for "high-risk" grantees:

_____Statutory Requirement or Other Special Condition


**When completing an FFR for submission in accordance with the above referenced selection, the following must be noted:**

1.  While the FFR is a government wide form that is designed for single grant and multiple grant award reporting, the U.S. Department of Education's (EDs) policy is that multiple grant award reporting is not permitted for ED grants. Thus, an ED grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. The FFR attachment (Standard Form 425A), which is available for reporting multiple grants, is not to be used for ED grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to ED grantees. With regards to item 1 of the note found in the Federal Financial Report Instructions, it is EDs policy that a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the Federal Financial Report are not applicable to ED grants.

2.  Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h). A grantee is permitted, in accordance with 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h), to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  A grantee will complete item 11(a) by listing the rate type identified in its indirect cost rate agreement, as approved by its cognizant agency. An ED grantee that does not have an indirect cost rate agreement approved by its cognizant agency, and that is using the ED approved temporary rate of 10% of budgeted direct salaries and wages, must list its rate in 11(a) as an ED Temporary Rate. A training program grantee whose recovery of indirect cost is limited to 8% of a modified total direct cost base in accordance with EDGAR § 75.562 (c), must list its rate as an ED Training Grant Rate. A restricted rate program grantee (such as one with a supplement-not-supplant grant provision) that has not negotiated an indirect cost agreement with its cognizant agency and that has limited the recovery of indirect costs in accordance with 34 CFR 75.563 and 76.564 (c), must list its rate as an ED Restricted Rate.

4.  Quarterly, semi-annual, and annual interim reports shall be due within 45 days after the end of the reporting period. Although the Office of Management and Budget (OMB) published in its December 7, 2007 Federal Register Notice (72 FR 69236) that interim reports are due within 45 days of the interim reporting end dates instead of within 30 days as originally identified, OMB has not revised the FFR instructions to reflect this change. Grantees are, nevertheless, permitted to exercise the 45 day period as published by OMB

within the Federal Register.   Final reports shall be due no later than 90 days after the project or grant period end date.  Extensions of reporting due dates may be approved by the program office upon request by the grantee.

5. If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages.  These additional pages must indicate the following information at the top of each page: Federal Grant or other identifying number, recipient organization, Data Universal Number System (DUNS) number, Employer Identification Number (EIN), and period covered by the report.

**One original and one copy of all reports should be mailed to:**

U.S. Department of Education
Executive Director
Office of Elementary and Secondary Education
400 Maryland Avenue, SW, FB6, Room 3W342
Washington, DC 20202-6100

12/2012

USDOE-Contiunation_000875

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment to maintain proper stewardship of taxpayer dollars.  This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds.  In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 of the Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities.  The Education Department General Administrative Regulations (EDGAR) in 34 CFR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department.  The most recent version of these regulations may be accessed at the following URLs:

2 CFR 34 Subtitle A (see EDGAR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, & 99)

2 CFR Part 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards

The information on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200.  In addition, a few of the topics explain requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants).  The specific sections of 2 CFR Part 200 and of EDGAR that address the topics are shown in parentheses.  The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office.  Grantees should become familiar with those requirements as well because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget.  Doing so will help to ensure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding the topics on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

1

USDOE-Contiunation_000876

**SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS**

**I.        Financial Management Systems (2 CFR § 200.302)**

The grantee's and subrecipient's financial management system must provide for the following (see §§ 200.334, 200.335, 200.336, and 200.337):

- Identification of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the Assistance Listings title and number, Federal award identification number, year the Federal award was issued, and name of the Federal agency or pass-through entity.
- Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements in §§ 200.328 and 200.329.
- Maintaining records that sufficiently identify the amount, source, and expenditure of Federal funds for Federal awards. These records must contain information necessary to identify Federal awards, authorizations, financial obligations, unobligated balances, as well as assets, expenditures, income, and interest. All records must be supported by source documentation.
- Effective control over, and accountability for, all funds, property, and assets. The grantee or subrecipient must safeguard all assets and ensure they are used solely for authorized purposes. See § 200.303.
- Comparison of expenditures with budget amounts for each Federal award.
- Written procedures to implement the requirements of § 200.305.
- Written procedures for determining the allowability of costs in accordance with subpart E of 2 CFR Part 200 and the terms and conditions of the Federal award.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

**II.        Internal controls (2 CFR § 200.303)**

The grantee and subrecipient must:

- Establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the grantee or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should align with the guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States or the "Internal Control Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
- Comply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award.
- Evaluate and monitor the grantee's or subrecipient's compliance with statutes, regulations, and the terms and conditions of Federal awards.

USDOE-Contiunation_000877

- Take prompt action when instances of noncompliance are identified.
- Take reasonable cybersecurity and other measures to safeguard information including protected personally identifiable information (PII) and other types of information consistent with applicable Federal, State, local, and tribal laws regarding privacy and responsibility over confidentiality.

**III.     Federal Payment (2 CFR § 200.305)**

Under this part --

- the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
- where the time between the transfer of funds to the grantee and the disbursement of funds cannot be minimized, the preferred method of payment is reimbursement of expenditures incurred by the non-Federal entity;
- grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts that are insured; grantees or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the grantee or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment.  All interest in excess of $500 per year must be returned to PMS regardless of whether the grantee or subrecipient was paid through PMS. Instructions for returning interest can be found at: Returning Funds/Interest | HHS PSC FMP Payment Management Services.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant.  Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury.  In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.  The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department G5 Payment System at the time those funds are needed for payments to vendors and employees.

**IV.     Personnel (EDGAR 34 CFR §§ 75.511-75.519 and 2 CFR Part 200 Subparts D and E)**

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR § 200.308 (f)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the post Federal award requirements and cost principles in 2 CFR Part 200

3

Subparts D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

**V.    Cost Principles (2 CFR Part 200 Subpart E)**

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide a list of selected items of allowable and unallowable costs and must be used in determining the allowability of costs funded under the grant.

**VI.    Procurement Standards (2 CFR §§ 200.317-327)**

Under 2 CFR §§ 200.317 – 200.327, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees (i.e., grantees that are not States) may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

**VII.    Indirect Costs (EDGAR §§§75.560-564, 76.560-569, and 2 CFR § 200.414)**

In addition to the information presented below, see GAN ATTACHMENT 2 and 4 for additional information including restrictions related to temporary, de minimis, training, restricted and program prescribed indirect cost rates.

A.  Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate the grant must not have restricted (supplement-not-supplant), training, or program specific indirect cost rate restrictions.

To obtain an unrestricted indirect cost rate the grantee may:
- negotiate an indirect cost agreement with its cognizant agency for indirect costs (2 CFR §200.1 "Cognizant agency for indirect costs"), by submitting an indirect cost proposal within 90 days after the award of this grant; or
- elect to utilize the de minimis rate under 2 CFR §200.414(f); or
- a temporary indirect cost rate subject to the limitations in 34 CFR §75.560(d)

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

4

USDOE-Contiunation_000879

B.   Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR §§ 75.560(c) and 76.560(d)); or it may choose not to charge indirect costs to the grant.  The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

If the grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.   De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million (appendix VII to this part, paragraph D.1.b) in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including a provisional[2]) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis  indirect cost rate of 15% of modified total direct costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.  Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost (34 CFR §§ 75.563 and 76.563). The de minimis rate may be used indefinitely.  However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant Federal agency.  Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

D.   Restricted Indirect Cost Rate (Programs with a Supplement-not-supplant requirement

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant Federal agency for indirect costs

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[2] Provisional rate means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a final rate for the period.

5

or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR §§ 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[3] that is a restricted program grantee may not elect to utilize the 8% MTDC rate. Additionally, restricted program grantees may not utilize the de minimis rate but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.   Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[4], the grantee must negotiate a rate under 34 CFR § 75.562.  This provision limits indirect cost recovery to 8% of modified total direct costs or the grantee's negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

   i.    The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
   ii.   The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
   iii.  Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
   iv.   A grantee using the training rate of 8% is required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.   Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VIII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $1,000,000 in Federal funds in one fiscal year.  2 CFR Part 200 Subpart F contains the requirements imposed on grantees for audits conducted in connection with the Single Audit Act of 1984—Public Law No. 98-502 and its Amendments of 1996—Public Law No. 104-.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

---

[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[4] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally recognized Tribe is not considered a Tribe for these purposes.

USDOE-Contiunation_000881

**IX.    Other Considerations**

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR § 200.307), cost sharing or matching (2 CFR § 200.306), property management requirements for equipment (2 CFR § 200.313), and equipment and other capital expenditures (2 CFR § 200.439).

USDOE-Contiunation_000882

GAN  ENCLOSURE 2
**Revised 10/2024**

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education (*the* Department) grant account, you must:

- draw down only as much cash as is necessary to meet the immediate needs of the grant project;
- keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
- return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

- take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
- monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
- plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
- pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities.  If you need assistance with returning funds and interest, please contact the Department's G5 Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

- subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.10], which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

1

USDOE-Contiunation_000883

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(d)(3)(ii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

USDOE-Contiunation_000884

**Frequently Asked Questions (FAQs) to Assist U.S. Department of Education (ED) Grantees to Appropriately Use Federal Funds for Food, Conferences, and Meetings[1]**
August 2024

## Using Federal ED Grant (Discretionary and Formula) Funds for Food

1. **May a grantee use its U.S. Department of Education (ED) grant funds for food, beverages, or snacks at an event related to its grant?**

All grant expenditures, including those for food, beverages, or snacks, must be reasonable, necessary, allocable to the grant, and allowable. (Office of Management and Budget's (*OMB) Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance)* at 2 CFR §§ 200.403 through 200.405).[2]

Generally, a grantee needs to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant. When a grantee is hosting an event related to its ED grant, the grantee should first consider structuring the agenda for the meeting so that there is time for participants to bring or purchase their own food, beverages, and snacks. In addition, when planning a meeting, grantees may want to consider a location in which participants have easy access to food and beverages.

There may be limited circumstances under which providing food or beverages is reasonable and necessary to achieve the purpose of a particular grant. Because food and beverage costs are not of a type generally recognized as ordinary and necessary for the operation of the grantee or the proper and efficient performance of the Federal award (see 2 CFR § 200.404(a)), grantees must document their evidence and analysis that justify that the use of food or beverage is reasonable and necessary in each instance.

In determining reasonableness of a given cost, including those for food and drink, consideration must be given to:

- Whether the cost is generally recognized as ordinary and necessary for the grantee's operation or the proper and efficient performance of the Federal award;

- The restraints or requirements imposed by such factors as: sound business practices; arm's-length bargaining; Federal, State, local, Tribal, and other laws and regulations; and terms and conditions of the Federal award;

- Market prices for comparable costs for the geographic area;

- Whether the individuals concerned acted with prudence in the circumstances considering their responsibilities to the recipient or grantee, its employees, its students or membership (if applicable), the public at large, and the Federal Government; and

---

[1] Other than statutory and regulatory requirements included in the document, the contents of this FAQ document do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

[2] Revisions to 2 CFR part 200, referred to as the "OMB Uniform Guidance," were published on April 22, 2024, and are generally effective on October 1, 2024. In general, the April 2024 revisions do not substantively affect the content in this FAQ document. While the OMB Uniform Guidance in 2 CFR § 200.1 defines recipient, this FAQ uses the term grantee to align with the definitions that apply to ED regulations in the Education Department General Administrative Regulations (EDGAR) in 34 CFR § 77.1.

1

- Whether the cost represents a deviation from the recipient or grantee's established written policies and procedures for incurring (2 CFR § 200.404).

Please note that, in addition to determining whether the costs are necessary and reasonable, State grantees also must determine whether the same costs are allowable under State law for the use of State funds. Under 2 CFR § 200.302(a), States are required to expend and account for Federal funds in accordance with State laws and procedures for expending and accounting for their own State funds. In other words, if State laws or procedures would not permit the use of State funds for conferences or meals, then State grantees may not use their Federal grant funds to pay those costs either.

2. **Are there examples of when food costs might be considered reasonable and necessary to the performance of a particular grant?**

The question of whether a food cost is reasonable and necessary to the performance of a grant will depend on the ED grant, including any program-specific rules or requirements that may apply to that grant, as well as the unique circumstances of the food cost. The following are some examples of situations when a food cost might be considered reasonable and necessary:

- Food costs at a family engagement event: For some ED programs, family engagement is a critical part of the purpose of the program or of the success of a project. In such a program, if a family meeting would occur during a typical mealtime, or if the grantee has evidence that attendance at the event would be affected by the absence of food or snacks, the grantee may be able to justify that is reasonable and necessary to provide light refreshments or meals to participants.

- Food costs for a working lunch at a day-long meeting: A grantee may find that one critical component of its grant activities is hosting an onsite day-long training for professionals working in a field that is a central focus of the grant. If the grantee is able to demonstrate that the lunchtime session is necessary to achieve the goals of the project, attendance at the lunchtime session is necessary to achieve full participation by attendees, and the business carried out at the lunchtime session could not be carried out at another reasonable time, the grantee may be able to justify that it is reasonable and necessary to provide meals or a snack to attendees.

- Light refreshments at a series of regular after-hours meetings: A grantee may find that an important part of its grant activities is hosting meetings after the traditional working day so that professionals from within the field but across different employers have an opportunity to collaborate on focused topics. If the grantee can demonstrate that the sessions have planned agendas that are central to the grant, that engaging this group of people is necessary to achieve the purposes of the grant, and that there is evidence that attendance at the meetings would be affected by the absence of food, the grantee may be able to justify that it is reasonable and necessary to provide light refreshments to participants.

- Costs of light snacks at a day-long meeting: To achieve the purposes of its grant, a grantee may find that is necessary to host day-long meetings or training sessions so that involved individuals can collaborate. If the grantee has evidence that providing light snacks (e.g., granola bars and water) at the meeting will result in improved participation, such as more

2

time spent on grant activities and less time needed for breaks during the sessions, the grantee may be able to justify that is reasonable and necessary to provide light snacks to participants.

If an ED grantee has questions about a specific food cost, they should contact their ED program officer.

**3. What are examples of situations when costs for food would not be considered reasonable and necessary?**

There are some situations when food costs would not be considered reasonable and necessary to a grant or would otherwise be unallowable under the *Uniform Guidance* found at 2 CFR part 200.

- Food costs at networking sessions: In nearly all cases, using grant funds to pay for food and beverages for networking sessions with a purely social focus is not justified because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs at regular staff meetings: Food costs for recurring business meetings, staff meetings, or other day-to-day activities are generally not reasonable because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs for remote meetings: Food costs for meetings conducted remotely, such as sending food to individual meeting participants' locations, are generally not justified since participants' participation is less impacted by them attending the meeting remotely.

- Entertainment: Federal grant funds may not be used to pay for entertainment, which includes costs for amusement, diversion, and social activities, unless they have a specific and direct programmatic purpose and are included in the Federal award. 2 CFR § 200.438. Celebrations, receptions, banquets, and other social events generally are not events where purchasing food with ED grant funds is appropriate.

- Alcohol: In all cases, use of Federal funds for alcoholic beverages is unallowable. 2 CFR § 200.423.

**Using ED Federal Grant (Discretionary and Formula) Funds to Host a Meeting or Conference**

**4. May a grantee receiving funds from ED use its Federal grant funds to host a meeting or conference?**

Yes. Federal grant funds may be used to host a meeting or conference if doing so is:

- Consistent with its approved application or plan;

- For purposes that are directly relevant to the program and the operation of the grant, such as for conveying technical information related to the objectives of the grant; and

- Reasonable and necessary to achieve the goals and objectives of the approved grant.

The *Uniform Guidance* in 2 CFR § 200.432 describes costs associated with conferences that may be allowable.

**5. What are examples of "technical information" that may be conveyed at a meeting or conference?**

3

Examples of technical information include, but are not limited to, the following, each of which must be related to implementing the program or project funded by the grant:

- Specific programmatic, administrative, or fiscal accountability requirements;

- Best practices in a particular field;

- Theoretical, empirical, or methodological advances in a particular field;

- Effective methods of training or professional development; and

- Effective grant management and accountability.

**6. What factors should a grantee consider when deciding whether to host a meeting or conference?**

Grantees should consider whether a face-to-face meeting or conference is the most effective or efficient way to achieve the desired result and whether there are alternatives, such as webinars or video conferences, that would be equally or similarly effective and more efficient in terms of time and costs than a face-to-face meeting. In addition, grantees should consider how the meeting or conference will be perceived by the public; for example, will the meeting or conference be perceived as a good use of taxpayer dollars?

**7. Are there conflict-of-interest rules that grantees should follow when selecting vendors, such as logistics contractors, to help with a meeting or conference?**

As specified in 2 CFR § 200.317, States and Indian Tribes[3] must comply with their own procurement policies and procedures, including any policies or procedures for ensuring that there are no conflicts of interest in the procurement process. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the following procurement standards: 2 CFR §§ 200.321, 200.322, 200.323, and 200.327. If a State or Indian Tribe does not have its own procurement policies and procedures, it must follow the procurement standards in 2 CFR §§ 200.318 through 200.327.

Other grantees must follow procurement procedures that are consistent with their State, local, or Tribal laws and regulations, as appropriate, and that are also consistent with 2 CFR §§ 200.318 through 200.327, including the minimum requirements in 2 CFR § 200.318 related to conflict of interest rules.

**8. When a meeting or conference is hosted by a grantee and charged to a Federal grant, may the meeting or conference be promoted as a U.S. Department of Education event?**

No. Meetings and conferences hosted by grantees are directed by the grantee, not the U.S. Department of Education. Therefore, the meeting or conference may <u>not</u> be promoted as a U.S. Department of Education meeting or conference, and the seal of the U.S. Department of Education must <u>not</u> be used on conference materials or signage, without ED's written approval. In addition, all meeting or conference materials paid for with Federal grant funds must include appropriate disclaimers, such as the disclaimer provided in 34 CFR§ 75.620. That language reads:

---

[3] Please note that "States" were the only entities listed under 2 CFR § 200.317 prior to the revisions announced in OMB's April 22, 2024, *Federal Register* notice.

4

USDOE-Contiunation_000888

The contents of this [insert type of publication; such as book, report, film, website, and web page] were developed under a grant from the U.S. Department of Education (Department). The Department does not mandate or prescribe practices, models, or other activities described or discussed in this document. The contents of this [insert type of publication] may contain examples of, adaptations of, and links to resources created and maintained by another public or private organization. The Department does not control or guarantee the accuracy, relevance, timeliness, or completeness of this outside information. The content of this [insert type of publication] does not necessarily represent the policy of the Department. This publication is not intended to represent the views or policy of, or be an endorsement of any views expressed or materials provided by, any Federal agency.

**Please note that if a grantee charges a fee for attendance at a particular meeting or conference paid for with Federal grant funds, any income generated must be treated as program income under 2 CFR § 200.307 or specific program regulations addressing program income.**

9. **When a grantee is hosting a meeting or conference, may the grantee use Federal grant funds to pay for food, beverages, or snacks?**

As detailed in questions #1-3 above, in general there is a need to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant, but there may be circumstances when providing food or beverages at a conference is reasonable and necessary to achieve the purpose of the grant. Please see those questions for information about requirements and considerations related to food costs.

10. **May a grantee contract with a hotel under which Federal grant funds will be used to provide meals, snacks, and beverages as part of the cost for meeting rooms and other allowable conference-related costs?**

Federal grant funds may only be used for expenses that are reasonable and necessary. In planning a conference or meeting and negotiating with vendors for meeting space and other relevant goods and services, grantees may only pay for allowable costs. The fact that food and beverages are embedded in a contract for meeting space does not mean that the food and beverages are being provided at no cost to the grantee. Therefore, if the food and beverage cost is not an allowable cost, and a hotel vendor embeds food and beverage costs into a hotel contract for meeting space, the grantee should work with the hotel to have the food and beverage costs identified and removed from the contract, and have the price for the meeting space appropriately adjusted.

11. **What if a hotel or other venue provides "complimentary" beverages (e.g., coffee, tea) and there is no charge to the grantee hosting the meeting?**

The grantee has an obligation, under these circumstances, to confirm that the beverages are truly complimentary and will not be reflected as a charge to the grant in another area. For example, many hotels provide complimentary beverages to all guests who attend a meeting at their facility without reflecting the costs of those beverages in other items that their guests or, in this case, the grantee purchases. As noted above, it would not be acceptable for a vendor to embed the cost of beverages in other costs, such as meeting space, without those costs being separately allowable.

12. **May indirect cost funds be used to pay for food and beverages?**

No. The cost of food and beverages, which are related to meetings that are easily associated with a specific cost and grant objectives, are more appropriately treated as direct costs rather than indirect

5

USDOE-Contiunation_000889

costs. As noted above, Federal grant funds cannot be used to pay for food and beverages unless doing so is reasonable and necessary.

6

USDOE-Contiunation_000890

Case 1:25-cv-08547-AS    Document 113-6    Filed 07/20/26    Page 125 of 315
Enclosure 3
08 2024

13. **May a grantee use <u>non-Federal</u> resources (e.g., State or local resources) to pay for food or beverages at a meeting or conference that is being held to meet the goals and objectives of its grant?**

Grantees should follow their own policies and procedures and State and local law for using <u>non-Federal</u> resources to pay for food or beverages, including its policies and procedures for accepting gifts or in-kind contributions from third parties. Grantees should be sure that any food and beverages provided with non-Federal funds are appropriate for the grantee event, and do not detract from the event's purpose. Please note that, in general, any funds that a grantee contributes to a project as part of the program's matching or cost-sharing requirement would be subject to the same rules that govern the Federal funds; therefore, the non-Federal funds used to pay for food and beverages for a meeting or conference could only be eligible for use in meeting cost-share or match obligations if Federal funds would also be allowable to pay for the food and beverages.

14. **May grantees provide meeting participants with the option of paying for food and beverages (e.g., could a grantee have boxed lunches provided at cost for participants)?**

Yes. Grantees may offer meeting participants the option of paying for food (such as lunch, breakfast, or snacks) and beverages, and arrange for these items to be available at the meeting.

**<u>Using Federal Grant Funds to Pay for Costs of Attending a Meeting or Conference Sponsored by ED or a Third Party</u>**

15. **May grantees use Federal grant funds to pay for the cost of attending a meeting or conference?**

If attending a meeting or conference is necessary to achieve the goals and objectives of the grant, and if the expenses are reasonable (based on the grantee's own policies and procedures, and State and local laws), Federal grant funds may be used to pay for travel expenses of grantee employees, consultants, or experts to attend a meeting or conference. To determine whether a meeting or conference is "necessary," grantees should consider whether the goals and objectives of the grant can be achieved without the meeting or conference and whether there is an equally effective and more efficient way (in terms of time and money) to achieve the goals and objectives of the grant (see question #6). To determine whether the expenses are "reasonable," grantees should consider how the costs (e.g., lodging, travel, registration fees) compare with other similar events and whether the public would view the expenses as a worthwhile use of Federal funds.

16. **What should a grantee consider when planning to use Federal grant funds for attending a meeting or conference?**

Among other considerations, grantees should consider how many people should attend a meeting or conference on its behalf. The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant. The grantee should also determine whether it is necessary to attend the entire meeting or conference, or whether attending only a portion of the meeting or conference is reasonable and necessary.

17. **What travel expenses may be paid for with Federal grant funds?**

7

USDOE-Contiunation_000891

Grantees may use Federal grant funds for travel expenses only to the extent such costs are reasonable and necessary and do not exceed charges normally allowed by the grantee in its regular operations consistent with its written travel policies. See 2 CFR § 200.475. Federal grant funds may be used to pay expenses for transportation, per diem, and lodging if the costs are reasonable and necessary. Federal grant funds may not be spent on alcohol. See 2 CFR § 200.423. Grantees should follow their own travel and per diem rules and costs when charging travel expenses to their Federal grant. In the absence of an acceptable written policy regarding travel costs, grantees must satisfy the requirements of 2 CFR § 200.475(d).

### 18. What should grantees consider when including Federal employees at a grantee-sponsored meeting or conference?

In some situations, a grantee may invite a Federal employee to participate in or present at a grantee-organized meeting or conference. Federal employees are subject to Federal ethics laws and regulations. This includes laws and regulations governing conflicts of interest and gifts (e.g., waiver of a registration fee, travel expenses, and meals). Grantees may be subject to their own ethics laws and regulations, and grantee employees should ensure that they comply with them.

### Questions Regarding the Allowable Use of Federal Grant Funds

### 19. What resources are available to help grantees determine whether costs associated with meetings and conferences are reasonable and necessary?

Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable, necessary, and allowable, especially the regulations found at 2 CFR part 200.

### 20. Is it allowable for a person whose travel costs are being paid with Federal grant funds to attend a conference in Washington, D.C., and lobby members of Congress while in town?

Appropriated funds may not, except under very limited circumstances, be used for expenses related to any activity designed to influence the enactment of legislation, appropriations, regulations, administrative actions, or Executive Orders proposed or pending before the Congress or the Administration. See 2 CFR § 200.450. To the extent that a portion of time at a conference is spent on lobbying activities, costs associated with the lobbying, including transportation to and from Washington, D.C., lodging, and per diem, may not be charged to the Federal grant. For example, if a meeting or conference lasts for two days and a visit to lobby a member of Congress requires an additional day of travel, it could be determined that one-third (1/3) of all costs involved in attending the meeting or conference, including travel to and from Washington, D.C., may not be charged to the grant.

On the other hand, educating members of Congress about facts relevant to a particular grant program would not, absent other facts, constitute lobbying. For example, it would not be considered a prohibited lobbying activity for a grantee to inform a member of Congress about its program, the services it provides, and the individuals it serves. It also would not be considered a prohibited lobbying activity to attend a presentation by members of Congress related to issues relevant to a grantee's program or the population it serves in general. However, such education-oriented

8

discussions could easily cross—or appear to cross—the thin line to prohibited lobbying activities. For example, a discussion about the challenges a grantee faces with respect to requirements governing matching funds could easily expand to a discussion about the need for more appropriated funds or legislative changes, which would constitute prohibited lobbying activities. Given that Congress frequently considers the reauthorization of ED programs, a grantee's interactions with members of Congress on such topics could meet the definition of lobbying, which is prohibited. In that case, the costs associated with those interactions could not be supported with Federal funds.

**21. What are the consequences of using Federal grant funds on unallowable expenses?**

ED may seek to recover any Federal grant funds identified, in an audit or through program monitoring, as having been used for unallowable costs, including unallowable conference expenses.

**22. Whom should grantees call if they have specific questions about the allowable use of Federal grant funds?**

ED grantees are encouraged to contact their ED program officer to discuss the allowable use of Federal grant funds, including the allowable use of Federal grant funds for meetings and conferences.

9

USDOE-Contiunation_000893

**GAN Enclosure 4**
**Revised 10/2024**

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (the Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information.

A grantee's failure to comply with cash management requirements may result in an improper payment determination by the Department in accordance with the Payment Integrity Information Act (PIIA) of 2019.

**Excessive Drawdowns**

In the context of grants, excessive drawdown refers to the situation where a grantee withdraws more funds than necessary from the grantor, which can lead to financial and compliance issues. In accordance with cash management requirements, grant funds are drawn down incrementally to cover immediate expenses related to the grant activities. If a grantee draws down excessive funds, they may be required to return the surplus along with interest. This situation can arise from poor financial management, lack of proper accounting practices, or misalignment with the grant's stipulated budget and objectives.

To avoid excessive drawdown, it is crucial for grantees to implement and maintain robust accounting systems, track expenses accurately, and adhere to the grant's budget and reporting requirements. Proper planning and monitoring of fund allocation, maintaining accurate records, and ensuring timely drawdowns aligned with actual expenses are essential practices. Additionally, grantees should be aware of the specific drawdown procedures and requirements set by the grantor, which can vary depending on whether the grant is federally funded or comes from other sources.

**Cash Management Requirements**

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department.  The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1.  Payments to a State under programs that are covered by a State's Treasury State Agreement (TSA);

2.  Payments to States under programs that are not covered by a TSA; and

3.  Payments to other non-Federal entities, including nonprofit organizations and local governments.

---

[1] The Department adopts the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

USDOE-Contiunation_000894

**GAN Enclosure 4**
**Revised 10/2024**

**CMIA Requirements Applicable to Programs included in a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A.  Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15.  If a State makes a payment under a Federal assistance program before funds for that payment have been transferred to the State, Federal Government interest liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

**CMIA Requirements Applicable to Programs Not Included in a TSA**

Payments to States under programs not covered by a State's TSA are subject to subpart B of Treasury's regulations in 31 CFR § 205.  These regulations provide that a State must minimize the time between the drawdown of funds from the federal government and their disbursement for approved program activities.  The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.  31 CFR § 205.33(a).  States should exercise sound cash management in funds transfers to subgrantees.

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b).  However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA.  31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b).  These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "For recipients and subrecipients other than States, payment methods must minimize the time elapsing between the transfer of funds from the Federal agency or the pass-through entity and the disbursement of funds by the recipient or subrecipient regardless of whether the payment is made by electronic funds transfer or by other means."  2 CFR § 200.305(b).

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the recipient or subrecipient, and financial management systems that meet the standards for fund control and accountability." 2 CFR § 200.305(b)(1).  If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement.  See 2 CFR § 200.305(b)(1) and (3) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

USDOE-Contiunation_000895

**Returning Earned Interest**

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist.  See 2 CFR § 200.305(b)(11) for those conditions.  The requirements regarding interest accrual and remittance follow:

Recipients or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the recipient or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. All interest in excess of $500 per year must be returned to PMS regardless of whether the recipient or subrecipient was paid through PMS. Instructions for returning interest can be found at Returning Funds/Interest | HHS PSC FMP Payment Management Services. 2 CFR § 200.305(b)(12). Additionally, these instructions are provided below.

1. **Returning Interest to PMS**

   PMS is the central collection point for interest earned on all federal grants, whether they are paid through the Payment Management System or not.

   a. **Domestic** Automated Clearing House (ACH) Returns (Direct Deposit)

   Returning funds via Automated Clearing House (ACH) means you will most likely be returning funds in the manner in which they were received at your organization.

   ACH account information to be included:

   - PSC ACH Routing Number is: 051036706
   - PSC DFI Accounting Number: 303000
   - Bank Name: Credit Gateway - ACH Receiver
   - Location: St. Paul, MN

   Additionally, include the following:

   - An explanation stating that the refund is for interest
   - The name of the awarding agency
   - The grant number(s) for which the interest was earned
   - The return should be made payable to: Department of Health and Human Services.

   b. **International** Automated Clearing House (ACH) Returns (Direct Deposit)

   ACH Account Information to be Included For Payments Sent in **U.S. Dollars (USD)**:

   - Beneficiary Account: Federal Reserve Bank of New York/ITS (Can abbreviate: FRBNY/ITS)
   - Bank: Citibank N.A. (New York)
   - SWIFT Code: CITIUS33
   - Account Number: 36838868
   - Routing Number: 021000089
   - Bank Address: 388 Greenwich Street, New York, NY 10013

USDOE-Contiuation_000896

- Payment Details (Line 70): Agency Name (abbreviated when possible) and Agency Locator Code (ALC)
- Agency POC: James Kruper, (301) 492-4998

For a USD payment, the payment sender must include:

- **Agency Locator Code (ALC):** 75010501
- **Name:** US Department of Health and Human Services, PMS Account Number and Grant Subaccount Number in the Payment Details (Line 70) section of the SWIFT message.

This information must be in this section of the payment instructions, or the International Treasury Service (ITS) will not be able to identify the federal agency the payment is for. Without this identifying information, ITS will be required to return the payment as unidentified or unable to post. The receiving account is in the name of "Federal Reserve Bank of New York/ITS" and the payment originator should list that as the name on the beneficiary account.

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

   c.   FedWire Returns

Service charges may be incurred from a grantee's financial institution when a Fedwire to return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

   d.   Check Returns (USPS Only)

Interest may be returned by check using only the U.S. Postal Service; however, returning interest via check may take 4-6 weeks for processing before a check payment may be applied to the appropriate PMS account.

USDOE-Contiunation_000897

- Interests returned by check are to be mailed (USPS only) to:

    HHS Program Support Center
    PO Box 979132
    St. Louis, MO 63197

    A brief statement explaining the nature of the return must be included.

    To return interest on a grant not paid through the PMS, make the check payable to the Department of Health and Human Services, and include the following with the check:

    - An explanation stating that the refund is for interest
    - The name of the awarding agency
    - The grant number(s) for which the interest was earned
    - The return should be made payable to: Department of Health and Human Services.

**Cash Management Monitoring Responsibilities of Pass-Through Entities**

Grantees, including grantees that act as pass-through entities and subgrantees have other responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must have procedures for determining the allowability of costs for their awards.  We highlight the following practices related to the oversight of subgrantee compliance with the financial management requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must –

1.  Verify that the subrecipient is not excluded or disqualified in accordance with §180.300. Verification methods are provided in § 180.300, which include confirming in SAM.gov that a potential subrecipient is not suspended, debarred, or otherwise excluded from receiving Federal funds.

2.  Ensure that every subaward is clearly identified to the subrecipient as a subaward and includes the information identified in § 200.332(b).

3.  Evaluate each subrecipient's fraud risk and risk of noncompliance with a subaward to determine the appropriate subrecipient monitoring.  See § 200.332(b) & (f).

4.  Monitor the activities of a subrecipient as necessary to ensure that the subrecipient complies with Federal statutes, regulations, and the terms and conditions of the subaward.  The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. See § 200.332(e).

5.  Consider taking enforcement action against noncompliant subrecipients as described in § 200.339 and in program regulations.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations.  These program-specific requirements may supplement or override general cash management or payment requirements.  If you

5

**GAN Enclosure 4**
**Revised 10/2024**

have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

USDOE-Contiunation_000899

S165A220037 - 25

Giuseppina Cohen

NYC Department of Education - Community School District 32

School Leadership

5619 Flatlands Avenue

Brooklyn, NY 11234

USDOE-Contiunation_000900

S165A220037 - 25

Rebecca Lozada
NYC Department of Education - Community School District 32
School Leadership
797 Bushwick Avenue
Brooklyn, NY 11221

S165A220037 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

**1** | RECIPIENT NAME

NYC Department of Education - Community School
District 32
School Leadership
797 Bushwick Avenue
Brooklyn, NY 11221

**2** | AWARD INFORMATION

PR/AWARD NUMBER      S165A220037 - 25
ACTION NUMBER        13
ACTION TYPE          Continuation
AWARD TYPE           Discretionary

**3** | PROJECT STAFF

RECIPIENT PROJECT DIRECTOR
  Giuseppina Cohen          (917) 923-0769
  gcohen7@schools.nyc.gov
EDUCATION PROGRAM CONTACT
  Hans L Neseth             (202) 453-6515
  hans.neseth@ed.gov
EDUCATION PAYMENT HOTLINE
  G5 PAYEE HELPDESK      888-336-8930
  obssed@servicenowservices.com

**4** | PROJECT TITLE

84.165A
Community School Districts 32-16 Consortium Magnet
Schools Assistance Program

**5** | KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|------|-------|-----------------|
| Josephine Cohen | Project Director | 100 % |
| Todd Levitt | MSAP Coordinator | 20 % |

**6** | AWARD PERIODS

BUDGET PERIOD          10/01/2025 - 09/30/2026
PERFORMANCE PERIOD     10/01/2022 - 09/30/2026

FUTURE BUDGET PERIODS

N/A

**7** | AUTHORIZED FUNDING

THIS ACTION              $538,192.00
BUDGET PERIOD            $538,192.00
PERFORMANCE PERIOD     $9,538,189.00

**8** | ADMINISTRATIVE INFORMATION

UEI              DHJ6MWMNEH38
REGULATIONS      CFR PART 280
                 EDGAR AS APPLICABLE
                 2 CFR AS APPLICABLE
ATTACHMENTS      1 , 2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , B OESE , GE1 , GE2 , GE3 , GE4

**9** | LEGISLATIVE AND FISCAL DATA

AUTHORITY:              PL P.L. 114-95 V-A ELEMENTARY AND SECONDARY EDUCATION ACT
                        OF 1965, AS AMENDED BY THE EVERY STUDENT SUCCEEDS ACT
PROGRAM TITLE:          MAGNET SCHOOLS ASSISTANCE
CFDA/SUBPROGRAM NO:     84.165A

USDOE-Contiunation_000902

S165A220037 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|-----------|--------------|------------|-----------|----------|------------|----------|------|--------------|--------|
| 0204A | 2026 | 2026 | ES000000 | B | U60 | 000 | 165 | 4101C | $538,192.00 |

| | |
|---|---|
| PR/AWARD NUMBER: | S165A220037 - 25 |
| RECIPIENT NAME: | NYC Department of Education - Community School District 32 School Leadership |
| GRANTEE NAME: | CITY OF NEW YORK BOARD OF EDUCATION |
| | 65 COURT ST STE 823, |
| | BROOKLYN, NY 11201 - 4916 |
| PROGRAM INDIRECT COST TYPE: | Unrestricted |
| PROJECT INDIRECT COST RATE: | 3% |

TERMS AND CONDITIONS

(1)   THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:
1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180, NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIFIC CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.
IN ACCORDANCE WITH 2 CFR 200.308(f)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.
THIS AWARD SUPPORTS THE FINAL BUDGET PERIOD FOR THIS PROJECT. THE RECIPIENT IS REQUIRED TO SUBMIT ALL NECESSARY REPORTS TO THE DEPARTMENT OF EDUCATION WITHIN 120 DAYS AFTER THE END OF FEDERAL SUPPORT IN ACCORDANCE WITH 2 CFR 200.328 AND 200.329 (BLOCK 6).

(2)   By the drawdown of funds under this GAN, the grantee accepts that this award is subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards; Title 2 CFR Part 200 as revised at 89 FR 30136-30208 (April 22, 2024).

(3)   The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made to a subrecipient under this grant.
The term subaward means:
1) An award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor [See 2 CFR 200.331(a)(5)], beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

In accordance with 2 CFR 200.331 (a), a subaward is made to a subrecipient for the purpose of carrying out a portion of the Federal award and creates a Federal financial assistance relationship with a subrecipient. Characteristics that support the classification of the entity as a subrecipient include, but are not limited to, when the entity:

1) Determines who is eligible to receive what Federal assistance;
2) Has its performance measured in relation to whether the objectives of a Federal program were met;
3) Has responsibility for programmatic decision-making;
4) Is responsible for adherence to applicable Federal program requirements specified in the Federal award; and



S165A220037 - 25

## US Department of Education
### Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

5) Implements a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

(4)   Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(5)   Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions (34 CFR 75.564(a) and 34 CFR 76.562(a)). The negotiated indirect cost rate agreement authorizes a recipient to draw down indirect costs from the grant awards (34 CFR 75.564(b) and 34 CFR 76.562(b)). The following conditions apply to the below entities.

A. All entities (other than Institutions of Higher Education (IHE)

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under statutes, departmental regulations (Education Department General Administrative Regulations (EDGAR)), or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of Higher Education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant project period, the indirect cost rate set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6)   Per the Department s April 17, 2026, Notice of Continuation Determination, the June 4, 2026, Order in The Board of Education of the City School District of the City of New York v. U.S. Department of Education, et al., Case No. 25-cv-8547-AS (S.D.N.Y.) ( NYCPS v. ED ), and the Department s regulations at 34 C.F.R. 75.253(e), the Department has determined that the appropriate continuation award amount for this grants is $538,192.

The grantee submitted and received approval of its budget through June 30, 2026. The Department has limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made. Thus, the award amount was determined by dividing the annual requested and recommended average award amount for this grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000, or $750,000 for the three-month continuation period.

In the May 27, 2026 Declaration of Todd Levitt, filed in NYCPS v. ED, NYCPS represented that the remaining amount available under this grant, less amounts claimed as committed funds or open encumbrances for the duration of this school year was $211,808. Accordingly, the Department subtracted $211,808 from $750,000 to determine a continuation award amount of $538,192.



S165A220037 - 25

**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

This grant will operate under a reimbursement pay status, as permitted by the Department s discretionary authority under 20 U.S.C. 1226a-1. Grantees will still have access to their grant funds; however, such funds may only be drawn down after submitting documentation that substantiates allowable expenditures under the grant.

Consistent with the Department s original April 17, 2026, Notice of Continuation Determination, as noted earlier, this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue.

(7)    Grantees must not use federal funds under this project in any manner that violates the United States Constitution, Title VI or Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq. or 42 U.S.C. 2000e et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 504 of the Rehabilitation Act (29 U.S.C. 794), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131 et seq.), the Boy Scouts of America Equal Access Act of 2001 (20 U.S.C. 7905), section 117 of the Higher Education Act of 1965, as amended (20 U.S.C. 1011f), or other applicable federal law.

Please note the provisions of Executive Orders 14151, 14168, 14173, and 14190 as well as the U.S. Department of Justice s July 29, 2025, non-regulatory Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination, which clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ( DEI ) programs.

Such activities may risk violating federal civil rights laws and may jeopardize federal funding. This includes any discriminatory equity ideology in violation of a Federal anti-discrimination law. A definition of discriminatory equity ideology is contained in Section 2(b) of Executive Order 14190.

Additionally, grantees must comply with all Financial Assistance General Certifications and Representations annual registration requirements made in SAM.gov, including any provisions in the annual registration that address civil rights, DEI programs or activities, and support of illegal aliens.

To the extent that a grantee uses grant funds for such unallowable activities, ED may take appropriate enforcement action including the potential recovery of funds, or may pursue termination or non-continuation. The Grant Award Notification document accompanying your award may contain further terms and conditions, as necessary, to ensure grantee compliance with applicable laws, regulations, and administrative priorities.

LAVANNA WEEMS    Digitally signed by LAVANNA WEEMS
Date: 2026.06.09 17:11:54 -04'00'

_____    _____

**AUTHORIZING OFFICIAL**    **DATE**

Ver. 1

USDOE-Contiunation_000905

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**    (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -**  Unique items of information that identify this notification.

    **PR/AWARD NUMBER -** A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

    **ACTION NUMBER -** A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

    **ACTION TYPE -** The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

    **AWARD TYPE -** The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -** This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

    **\*RECIPIENT PROJECT DIRECTOR -** The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

    **EDUCATION PROGRAM CONTACT -** The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

    **EDUCATION PAYMENT CONTACT -** The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -**  Project activities and funding are approved with respect to three different time periods, described below:

    **BUDGET PERIOD -** A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

    **PERFORMANCE PERIOD -** The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

    **\*FUTURE BUDGET PERIODS -** The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -** The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

    **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

    **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

    **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

    **RECIPIENT COST SHARE -** The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

    **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -** This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

    **UEI -** The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

USDOE-Contiunation_000906

**\*REGULATIONS -** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS -** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA -** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS -** The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award. **AMOUNT -** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS -** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER -** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME -** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE -** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE -** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL -** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF -** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT -** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE -** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

* This item differs or does not appear on formula and block grants.

USDOE-Contiunation_000907

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
## & CHIEF INFORMATION OFFICER

Giuseppina Cohen
NYC Department of Education - Community School District 32
School Leadership
797 Bushwick Avenue

Brooklyn, NY 11221

SUBJECT: Payee Verification for Grant Award S165A220037 - 25

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: DHJ6MWMNEH38
Grantee Name: CITY OF NEW YORK BOARD OF EDUCATION

Payee UEI: DHJ6MWMNEH38
Payee Name: CITY OF NEW YORK BOARD OF EDUCATION

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

U.S. Department of Education
550 12th Street, SW
Room 6087
Washington, DC 20202

Attn: Stephanie Barnes
Phone: 202-245-8006

USDOE-Contiunation_000908

**SPECIFIC GRANT CONDITIONS FOR PAYMENTS**

<u>THE G5 PAYMENTS MODULE</u>

Payments under this award will be made through the Payments module of the U.S. Department of Education's (Department's) electronic grants system, G5. G5 is administered by the Office of Finance and Operations, Office of Business Support Services.

The internet address for G5 is https://g6.ed.gov/.  To draw funds from grant awards in the G5 Payments module, grantee representatives must have individual G5 accounts under their personal name and unique work email address, with the Payee role assigned and associated to a Unique Entity Identifier (UEI) associated with their grantee organization. The Grantee UEI number on the award is identified in **Block 8** of the **Grant Award Notification (GAN)**.

To establish a G5 Payee account, follow these steps:

CREATE A NEW ACCOUNT IN G5 UNDER YOUR OWN NAME AND WORK EMAIL ADDRESS:

- Navigate to G6.ed.gov.
- Click the "Sign in" button on the top right of the page.
- Scroll down the page and select the "G5 Sign in" button.
- Review and agree to the "Government System Warning."
- Below the "Login to G5" button on the top left of the page, click on the "Sign Up" link next to the words "Not registered?"
- Enter information requested.
- Answer "No" when asked if you are not an employee or contractor of the U.S. Department of Education.
- Click "Continue."
- Enter the required information. Do not use an email address from a shared email account, such as grants@school.edu. Use an email address that reflects your name and that only you can access.

A G5 account cannot be reassigned once an account is established. It is fixed to an individual.
-  Upon entering your initial information into the system, the website tells you to look for an "Account Request" email from G5.
- When the email arrives, open it and click on the words inside that say "Activate My Account."
-  Complete the portion of the registration concluding with "Activate Account."
- You will receive an email titled "User Account Activation," which will prompt you to log in to G5 and select the Payee role.

SELECT THE PAYEE ROLE AND COMPLETE AND EMAIL A FORM:
- Once you log in to G5, you will be on the EDIT PROFILE page. Scroll down to the "Available Types" field and select "Payee." (Full Access allows drawdowns of funds and viewing of payment history reports, View Only does not allow the drawdowns of funds, but permits viewing of payment history reports.)
- Click "Continue."
- On the next page, you are then prompted to fill out the following fields:
- Payee UEI (required) A Grant Award Notification shows a Grantee UEI. Some institutions use a different UEI

1

USDOE-Contiunation_000909

for payee information. Confirm that you are entering the PAYEE UEI that your institution uses to connect their grant awards to banking in G5.
- Grantee UEI (not required). Skip this field.
- Access Level. Select "View Only" to simply view drawdowns or "Full Access" to make and view drawdowns.
- After entering the above information, click "Continue."
- On the next page that appears, you will see instructions in red requesting that you click a link to print out a form that appears on the screen, which is populated with your name, date of birth, and role requested. Click on the link to get the form to appear and print it out but black out the date of birth. This is no longer required.
- Click the back button on your browser to get back to the G5 page where the instructions appeared and click "Submit" at the bottom of the page.
- Please make sure all fields are completed and the form is signed.
- If you want access to more than one UEI, write the additional UEIs next to the one that pre-populates on the form.
- Scan the completed form or fill it out electronically and email it to obssed@servicenowservices.com. Completed forms must bear the required signatures and be notarized (or, in lieu of notarization, contain a seal or stamp from the grantee organization, or be accompanied by a letter on letterhead from the Senior Officer who signs the authorization section).

Multiple Payee users can be associated to a particular grantee institution in the G5 system, allowing for back-up Payee users to draw funds when a primary Payee user is away. However, each user must register for their own account under their own name and email address. Sharing of G5 accounts is prohibited.

In addition to establishing individual Payee account(s) in G5, new grantees are required to provide depositor account information via a completed SF1199A form, if this has not already been submitted for previous Department of Education grant awards at your organization. The form and instructions for completing the form can be found on the G5 Frequently Asked Questions page.

Payee users may begin requesting funds for the grantee once the award authorization is entered into G5, the award start date is reached, and a completed SF1199A is received and processed by the Department (if one does not already exist for a previous award). To log into G5 with an established Payee account, you may use one of two log in methods: Login.gov or G5. These choices appear after clicking "Sign In" on the G5 Home Page. When using Login.gov to access G5, be sure you are using the same email address you used to create the Payee account in G5. If you are not using the same email address, G5 and login.gov will not identify you are the same person, and you will not be able to access G5.

Guides to working in G5 can be found in the Help section of G5: https://g5.gov/G5HELP/exthelp1/index.html  For additional assistance, grantees may contact the G5 Hotline at (888) 336-8930. The Hotline is available Monday through Friday, from 8 a.m. to 6 p.m. Eastern time, except on Federal holidays.

USDOE-Contiunation_000910

REQUESTING FUNDS USING THE G5 PAYMENTS MODULE

To access the G5 Payments module, payees need a web browser (such as Microsoft Internet Explorer) and Internet connectivity.  Payees will request funds by award using **the PR/Award Number** found in **Block 5** of the **GAN**.  Instructions for navigating through the G5 Payments screens to make a payment request are provided in the G5 On Demand training located under the "Help" link.

G5 users with the Payee role who are unable to access G5 may request funds by calling the G5 Hotline at (888)336-8930.

AWARD INFORMATION

G5 users with the Payee role can view the following information in G5 on grant awards associated to the UEI on their account:

- Net authorization and authorization history;
- Net draws;
- Available balance;
- History of pending and completed payments;
- Award status; and
- Award history - including detailed transactions on drawdowns, returns, refunds, and adjustments.

USDOE-Contiunation_000911

## SPECIFIC GRANT TERMS AND CONDITIONS FOR
## FINANCIAL AND PERFORMANCE REPORTS

**PERFORMANCE REPORTS:**

**(1) FINAL REPORTS - ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS - ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, 200.332, and 34 CFR §§ 75.590; 75.718; 75.720; 75.623; and 75.732.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1. That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2. That an interim performance report is required because of the nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(1)).

3. That other reports are required, e.g., program specific reports required in a program's statute or regulation or specific conditions are applied (2 CFR § 200.208).

**(3) FINANCIAL REPORTS – SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1. A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (OMB) does not collect cost sharing information;
2. Program income was earned;

1

USDOE-Contiunation_000912

3. Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by OMB does not collect indirect cost information;

4. Program regulations or statute require the submission of the FFR; or

5. Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part 200.208 and part 3474.10 and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at Standard Form (SF) 425 Federal Financial Report (FFR)):

1. Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2. Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3. Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4. Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR § 200.328).

When completing an FFR for submission, the following must be noted:

1. *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in item 2 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple grant and FFR attachment reference found in item 2 of the Line Item Instructions for the FFR is not applicable to Department grants.

2. *Program Income*: Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 2 CFR Part 200.307. A grantee is permitted, in accordance with 2 CFR Part 200.307, to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3. *Indirect Costs:* A grantee will complete item 11(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

2

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 15% of modified total direct cost (MTDC) must list its indirect cost rate in 11(a) as a Department Temporary Rate or De Minimis Rate.  The de minimis rate of 15% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)").

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with 34 CFR § 75.562 (c), must list its rate in 11(a) as a Department Training Grant Rate.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States[1] as defined in 2 CFR § 200.1.

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in 11(a).  A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.  If a restricted program grantee elects to utilize the temporary rate, it must list its rate as a Department Temporary Rate in 11(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in 11(a).  Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

3

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

Upon request of the Secretary, a grantee must, at the time of submission to the Secretary, post any performance and financial reports on a public-facing website maintained by the grantee, after redacting any privacy or confidential business information (34 CFR § 75.720).

4

## AN OVERVIEW OF AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification (GAN).

**Summary of Audit Requirements for States, Local Governments, and Nonprofit Organizations:**

1. Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)[1], or nonprofit organization) that expends $1,000,000 or more in Federal awards during the non-Federal entity's fiscal year must have a single audit conducted annually in accordance with 2 CFR § 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2. Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program-specific audit conducted.  A program–specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3. Exemption when Federal awards expended are less than $1,000,000.  A non-Federal entity that expends less than $1,000,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR § 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4. Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity (2 CFR § 501(e)).

5. Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (OMB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR § 200.512, as well as relevant

---

[1] As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

1

SF-SAC workbook(s) electronically to the Federal Audit Clearinghouse at: https://www.fac.gov/.

6.  The audit, the workbook(s), and reporting package must be submitted within of 30 calendar days after receipt of the auditor's report(s) or nine months after the end of the audit period (whichever is earlier).  If the due date falls on a Saturday, Sunday, or Federal holiday, the reporting package is due the next business day.  The auditee must make copies available for public inspection unless restricted by Federal statutes or regulation.  Auditees and auditors must ensure that their respective parts of the reporting package do not include protected personally identifiable information (2 CFR § 200.512).

Additional grantee requirements can be found in Uniform Guidance §200.510, including:

-   Preparing financial statements that reflect the grantee's financial position, results of operations or changes in net assets, and where appropriate, cash flows for the fiscal year audited;
-   Preparing a schedule of expenditures of Federal awards (SEFA) for the period covered by the grantee's financial statements;
    -   List Federal programs by Federal agency
    -   For Federal awards received as a subrecipient, the name of the pass-through entity and assigned identifying number
    -   Provide the total Federal awards expended for each Federal program and the Assistance Listing Number (ALN).  For a cluster of programs, also provide the total for the cluster
    -   Include the total amount provided to subrecipients from each Federal program

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their cognizant agency for single audit technical assistance. This supplement will be instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides the predominant amount of direct funding to the recipient." The Compliance Supplement will be instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-federalaudit@ed.gov.  Additional resources for single audits are also available on the Non-Federal Audit Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html.  For programmatic questions, grantees should contact the education program contact shown on the Department's GAN.

Grantees can obtain information on audits from:

The OMB website at www.omb.gov.  Look under Office of Management and Budget (in right column) then click Office of Federal Financial Management (to obtain the Current OMB Compliance Supplement

USDOE-Contiunation_000917

in the right column).  The SF-SAC Workbooks and Instructions can be found at the Federal Audit Clearinghouse at:
https://facides.census.gov/Files/2019-2021%20Checklist%20Instructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative OMB Single Audit report examples that might be of interest to accountants, auditors, or financial staff that can be downloaded by searching for "single audit report illustrations" at www.aicpa-cima.com.

USDOE-Contiunation_000918

**GAN ATTACHMENT 6**
**Revised 10/2024**

## REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307, which addresses the use and expenditure of program income as well as the methods for use of program income

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

_____ Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

_____ Not Allowed  Using program income to finance the non-Federal share of the project or program; and

_____ Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

USDOE-Contiunation_000919

## TRAFFICKING IN PERSONS

The Department of Education adopts the requirements of the Trafficking Victims Protection Act (TVPA) of 2000, as codified at 22 U.S.C. 7101 to 7115, in 22 U.S.C. 7104(g); 22 U.S.C. 7104a; 22 U.S.C. 7104b; and 22 U.S.C. 7104c into this grant through this condition as per the Code of Federal Regulations at 2 CFR Part 175 .

(a) Condition:

The Department, as authorized by 22 U.S.C. 7104b(c), may without penalty, terminate a grant or take any remedial actions if a recipient or subrecipient engages in:

(1) Severe forms of trafficking in persons;

(2) The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

(3) The use of forced labor in the performance of the grant or cooperative agreement; or

(4) Acts that directly support or advance trafficking in persons, including the following acts:

(i) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

(ii) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

(A) exempted from the requirement to provide or pay for such return transportation by the Department; or

(B) the employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

(iii) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

(iv) Charging recruited employees a placement or recruitment fee; or

1

(v) Providing or arranging housing that fails to meet the host country's housing and safety standards.

(b) Compliance plan and certification requirement:

(1) Prior to receiving a grant, if the estimated value of services required to be performed under the grant or cooperative agreement outside the United States exceeds $500,000, you must certify that:

> (i) You have implemented a plan to prevent the activities described in paragraph (a) of this section, and are in compliance with this plan;
>
> (ii) You have implemented procedures to prevent any activities described in paragraph (a) of this section and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in any activities described in paragraph (a) of this section; and
>
> (iii) To the best of your knowledge, neither you, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in paragraph (a) of this section.

(2) Annual certification. You must submit an annual certification consistent with paragraph (b)(1) of this section for each year the award is in effect.

(3) Compliance plan. Any plan or procedures implemented pursuant to paragraph (b) must be appropriate to the size and complexity of the grant or cooperative agreement and to the nature and scope of its activities, including the number of non-United States citizens expected to be employed.

(4) Copies of the compliance plan. The recipient must provide a copy of the plan to the grant officer upon request, and as appropriate, must post the useful and relevant contents of the plan or related materials on its website and at the workplace.

(5) Minimum requirements of the compliance plan. The compliance plan must include, at a minimum, the following:

> (i) An awareness program to inform recipient employees about the Government's policy prohibiting trafficking-related activities described in paragraph (a) of this section, the activities prohibited, and the actions that will be taken against the employee for violations. Additional information about Trafficking in Persons and examples of awareness programs can be found at the website for the Department of State's Office to Monitor and Combat Trafficking in Persons at http://www.state.gov/j/tip/.

2

(ii) A process for employees to report, without fear of retaliation, activity inconsistent with the policy prohibiting trafficking in persons.

(iii) A recruitment and wage plan that only permits the use of recruitment companies with trained employees, prohibits charging recruitment fees to the employees or potential employees and ensures that wages meet applicable host-country legal requirements or explains any variance.

(iv) A housing plan, if the recipient, subrecipient, contractor, or subcontractor intends to provide or arrange housing, that ensures that the housing meets host-country housing and safety standards.

(v) Procedures to prevent agents, subrecipients, contractors, or subcontractors at any tier and at any dollar value from engaging in trafficking in persons, including activities in paragraph (a) of this section, and to monitor, detect, and terminate any agents, subgrants, or subrecipient, contractor, or subcontractor employees that have engaged in such activities.

(c) Notification to Inspectors General and cooperation with government. In addition, you must:

(1) Immediately inform the Department and Inspector General of the Department of any information you receive from any source that alleges credible information that you, any subrecipient, contractor, or subcontractor, or any agent of your organization or subrecipient, contractor, or subcontractor, has engaged in conduct described in paragraph (a) of this section; and

(2) Fully cooperate with any Federal agencies responsible for audits, investigations, or corrective actions relating to trafficking in persons.

USDOE-Contiunation_000922

**FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT**
**REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION**

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information.  To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000;
3. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
4. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 of the Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives*, and other key terms, are defined within item 5, Definitions, of this grant award term.

This grant award term is issued in accordance with 2 CFR Part 170—Reporting Subaward And Executive Compensation Information.

1. ***Reporting of First-tier Subawards -***

a. *Applicability and what to report.*

Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

b. *Where and when to report.*

The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS*.*

Report subaward information no later than the end of the month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2025, the obligation must be reported by no later than December 31, 2025.

1

2. *Reporting Total Compensation of the Department's Grant Recipients' Executives -*

a. *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii   In the preceding fiscal year, you received—

A.  80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,

C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b. *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

i.    As part of your registration profile at https://www.sam.gov.

ii.   No later than the month following the month in which this award is made and annually after that. (For example, if the obligation was made on November 7, 2025, the executive compensation must be reported by no later than December 31, 2025, and annually thereafter.)

3. *Reporting of Total Compensation of Subrecipient Executives –*

a. *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

2

i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii    In the preceding fiscal year, you received—

A.  80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**
B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,
C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b.  *Where and when to report.*

You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

i.    In FSRS.  You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov.  Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

ii.    No later than the end of the month following the month during which you make the subaward.  For example, if the subaward obligation was made on November 7, 2025 the subrecipient's executive compensation must be reported by no later than December 31, 2025.

**4.  *Exemptions –***

a.  If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i.    Subawards, and

ii.    The total compensation of the five most highly compensated executives of any **subrecipient**.

**5.  *Definitions -***

a.  For purposes of this award term:

USDOE-Contiunation_000925

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;

(vii) Any other legal business entity;

(viii) Another grantee or contractor that is not excluded by subparagraph (2); and

(ix) Any State or locality;

(2) Does not include:

(i) An individual recipient of Federal financial assistance; or

(ii) A Federal employee.

Executive means an officer, managing partner, or any other employee holding a management position.

Subaward has the meaning given in 2 CFR § 200.1.

Subrecipient has the meaning given in 2 CFR § 200.1.

Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR § 229.402(c)(2).

4

**GAN ATTACHMENT 11**
**Revised 10/2024**

**SPECIFIC CONDITIONS FOR DISCLOSING**
**FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS**

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1) the percentage of the total costs of the program or project which will be financed with Federal money;

2) the dollar amount of Federal funds for the project or program; and

3) the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

1

USDOE-Contiunation_000927

## PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING
## DURING OFFICIAL FEDERAL GRANT BUSINESS

Federal grant recipients, subrecipients, and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

USDOE-Contiunation_000928

## REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM.gov)

The U.S. Department of Education's (Department) Grants Management System (G5) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, to do business with the Department you must have a registered Unique Entity Identifier (UEI) and TIN number in SAM.gov, the U.S. Federal Government's primary registrant database.

What is a UEI?  SAM.gov assigns a UEI to entities when they pass validation in SAM.gov. The UEI is a 12-character alphanumeric identifier used in SAM.gov and other federal government systems to identify a unique entity.

If the payee UEI number is different than your grantee UEI number, both numbers must be registered in SAM.gov. Failure to register both will delay the receipt of payments from the Department.

What is a TIN?  A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with SAM.gov, you can easily register by going to www.sam.gov.  Allow at least ten business days after you submit your registration for it to become active in SAM.gov.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the Federal Service Desk (FSD).  Live chat information and other information about the FSD is available at: GSAFSD Service Portal Landing - GSA Federal Service Desk Service Portal.

If you are currently registered with SAM.gov, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the G5 Hotline at 888-336-8930.

USDOE-Contiunation_000929

## SYSTEM FOR AWARD MANAGEMENT REQUIREMENTS FOR RECIPIENTS AND THEIR SUBRECIPIENTS

**1.   Requirement for System for Award Management (SAM.gov)**

Unless you are exempted from this requirement under 2 CFR § 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM.gov registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency.  To remain registered in SAM.gov after your initial registration, you are required to review and update your information in SAM.gov on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

2.   **Recipient Requirements of Subrecipients**

In accordance with 2 CFR § 25.300 you are required to ensure that your subrecipients have a Unique Entity Identifier (UEI).  Note that subrecipients are not required to complete full registration in SAM.gov to obtain a UEI, which is required for an entity to **directly** do business with the Federal government. Instead, subrecipients may obtain a UEI by signing up in SAM.gov to get an account and establish a profile.

You may not make a subaward to a subrecipient that has not obtained a UEI and provided it to you, and you are required to notify any potential subrecipients that you cannot make a subaward unless the subrecipient obtains a UEI and provides it to you.

**3.   Definitions**

For purposes of this award term:

1.   System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient. See 2 CFR 25.400.

2.   Unique Entity Identifier (UEI) Means the universal identifier assigned by SAM.gov to uniquely identify business entities. See 2 CFR 25.400.

3.   Recipient means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award. See 2 CFR 200.1.

4.   Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with § 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

USDOE-Contiunation_000930

5. Subrecipient means an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency. See 2 CFR 200.1.

USDOE-Contiunation_000931

**ATTACHMENT B**
**SPECIAL GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**ALL RECIPIENTS** are required to submit a final performance report within 90 days after the expiration or termination of grant support.

**ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR PERFORMANCE REPORT SUBMISSIONS, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

Refer to the item(s) checked below for other reporting requirements that may apply to this grant:

_____1. A performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

_____The continuation report is due on _____.

_____The Department will provide recipients with additional information about this report, including due date, at a later time.

_____2. An interim performance report is required because of the nature of this award or because of statutory or regulatory provisions governing the program under which this award is made. The report is due more frequently than annually as indicated:

_____Quarterly  Submit within 30 days after the end of each quarter.

_____Semiannually  Submit within 30 days after the end of each 6-month period.

_____3. Other Required Reports:

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. IF A FINANCIAL REPORT IS REQUIRED, YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR FINANCIAL REPORT SUBMISSION, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

**FINANCIAL REPORTS:**

Unless an item down below is checked, a Standard Form 425 Federal Financial Report (FFR) is not required for this grant. The Department will rely on the drawdown of funds by grant award and record such drawdowns as expenditures by grantees. (34 CFR 75.720)

_____Quarterly FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 45 days after each reporting period.

_____Semi-annual FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 45 days after each reporting period.

_____An annual FFR is required for reporting period ending 09/30, and is due within 45 days after the reporting period.

_____A final FFR is due within 90 days after the project or grant period end date.

A quarterly, semi-annual, annual, and/or final FFR as noted hereinabove is due for this grant because:

_____(34 CFR 74.14 or 80.12) Special Award Conditions or Special grant or subgrant conditions for "high-risk" grantees:

_____Statutory Requirement or Other Special Condition

**When completing an FFR for submission in accordance with the above referenced selection, the following must be noted:**

1. While the FFR is a government wide form that is designed for single grant and multiple grant award reporting, the U.S. Department of Education's (EDs) policy is that multiple grant award reporting is not permitted for ED grants. Thus, an ED grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. The FFR attachment (Standard Form 425A), which is available for reporting multiple grants, is not to be used for ED grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to ED grantees. With regards to item 1 of the note found in the Federal Financial Report Instructions, it is EDs policy that a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the Federal Financial Report are not applicable to ED grants.

2. Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h). A grantee is permitted, in accordance with 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h), to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3. A grantee will complete item 11(a) by listing the rate type identified in its indirect cost rate agreement, as approved by its cognizant agency. An ED grantee that does not have an indirect cost rate agreement approved by its cognizant agency, and that is using the ED approved temporary rate of 10% of budgeted direct salaries and wages, must list its rate in 11(a) as an ED Temporary Rate. A training program grantee whose recovery of indirect cost is limited to 8% of a modified total direct cost base in accordance with EDGAR § 75.562 (c), must list its rate as an ED Training Grant Rate. A restricted rate program grantee (such as one with a supplement-not-supplant grant provision) that has not negotiated an indirect cost agreement with its cognizant agency and that has limited the recovery of indirect costs in accordance with 34 CFR 75.563 and 76.564 (c), must list its rate as an ED Restricted Rate.

4. Quarterly, semi-annual, and annual interim reports shall be due within 45 days after the end of the reporting period. Although the Office of Management and Budget (OMB) published in its December 7, 2007 Federal Register Notice (72 FR 69236) that interim reports are due within 45 days of the interim reporting end dates instead of within 30 days as originally identified, OMB has not revised the FFR instructions to reflect this change. Grantees are, nevertheless, permitted to exercise the 45 day period as published by OMB

within the Federal Register.   Final reports shall be due no later than 90 days after the project or grant period end date.  Extensions of reporting due dates may be approved by the program office upon request by the grantee.

5.  If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages.  These additional pages must indicate the following information at the top of each page: Federal Grant or other identifying number, recipient organization, Data Universal Number System (DUNS) number, Employer Identification Number (EIN), and period covered by the report.

**One original and one copy of all reports should be mailed to:**

U.S. Department of Education
Executive Director
Office of Elementary and Secondary Education
400 Maryland Avenue, SW, FB6, Room 3W342
Washington, DC 20202-6100

12/2012

USDOE-Contiunation_000934

**GAN ENCLOSURE 1**
**Revised 10/2024**

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment to maintain proper stewardship of taxpayer dollars.  This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds.  In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 of the Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities.  The Education Department General Administrative Regulations (EDGAR) in 34 CFR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department.  The most recent version of these regulations may be accessed at the following URLs:

2 CFR 34 Subtitle A (see EDGAR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, & 99)

2 CFR Part 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards

The information on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200.  In addition, a few of the topics explain requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants).  The specific sections of 2 CFR Part 200 and of EDGAR that address the topics are shown in parentheses.  The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office.  Grantees should become familiar with those requirements as well because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget.  Doing so will help to ensure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding the topics on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

1

USDOE-Contiunation_000935

### SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS

**I.      Financial Management Systems (2 CFR § 200.302)**

The grantee's and subrecipient's financial management system must provide for the following (see §§ 200.334, 200.335, 200.336, and 200.337):

- Identification of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the Assistance Listings title and number, Federal award identification number, year the Federal award was issued, and name of the Federal agency or pass-through entity.
- Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements in §§ 200.328 and 200.329.
- Maintaining records that sufficiently identify the amount, source, and expenditure of Federal funds for Federal awards. These records must contain information necessary to identify Federal awards, authorizations, financial obligations, unobligated balances, as well as assets, expenditures, income, and interest. All records must be supported by source documentation.
- Effective control over, and accountability for, all funds, property, and assets. The grantee or subrecipient must safeguard all assets and ensure they are used solely for authorized purposes. See § 200.303.
- Comparison of expenditures with budget amounts for each Federal award.
- Written procedures to implement the requirements of § 200.305.
- Written procedures for determining the allowability of costs in accordance with subpart E of 2 CFR Part 200 and the terms and conditions of the Federal award.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

**II.      Internal controls (2 CFR § 200.303)**

The grantee and subrecipient must:

- Establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the grantee or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should align with the guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States or the "Internal Control Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
- Comply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award.
- Evaluate and monitor the grantee's or subrecipient's compliance with statutes, regulations, and the terms and conditions of Federal awards.

2

USDOE-Contiunation_000936

- Take prompt action when instances of noncompliance are identified.
- Take reasonable cybersecurity and other measures to safeguard information including protected personally identifiable information (PII) and other types of information consistent with applicable Federal, State, local, and tribal laws regarding privacy and responsibility over confidentiality.

**III.    Federal Payment (2 CFR § 200.305)**

Under this part --

- the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
- where the time between the transfer of funds to the grantee and the disbursement of funds cannot be minimized, the preferred method of payment is reimbursement of expenditures incurred by the non-Federal entity;
- grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts that are insured; grantees or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the grantee or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment.  All interest in excess of $500 per year must be returned to PMS regardless of whether the grantee or subrecipient was paid through PMS. Instructions for returning interest can be found at: Returning Funds/Interest | HHS PSC FMP Payment Management Services.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant.  Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury.  In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.  The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department G5 Payment System at the time those funds are needed for payments to vendors and employees.

**IV.    Personnel (EDGAR 34 CFR §§ 75.511-75.519 and 2 CFR Part 200 Subparts D and E)**

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR § 200.308 (f)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the post Federal award requirements and cost principles in 2 CFR Part 200

3

Subparts D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

**V.      Cost Principles (2 CFR Part 200 Subpart E)**

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide a list of selected items of allowable and unallowable costs and must be used in determining the allowability of costs funded under the grant.

**VI.      Procurement Standards (2 CFR §§ 200.317-327)**

Under 2 CFR §§ 200.317 – 200.327, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees (i.e., grantees that are not States) may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

**VII.      Indirect Costs (EDGAR §§§75.560-564, 76.560-569, and 2 CFR § 200.414)**

In addition to the information presented below, see GAN ATTACHMENT 2 and 4 for additional information including restrictions related to temporary, de minimis, training, restricted and program prescribed indirect cost rates.

A.  Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate the grant must not have restricted (supplement-not-supplant), training, or program specific indirect cost rate restrictions.

To obtain an unrestricted indirect cost rate the grantee may:
- negotiate an indirect cost agreement with its cognizant agency for indirect costs (2 CFR §200.1 "Cognizant agency for indirect costs"), by submitting an indirect cost proposal within 90 days after the award of this grant; or
- elect to utilize the de minimis rate under 2 CFR §200.414(f); or
- a temporary indirect cost rate subject to the limitations in 34 CFR §75.560(d)

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

4

USDOE-Contiunation_000938

GAN ENCLOSURE 1
**Revised 10/2024**

B.  Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR §§ 75.560(c) and 76.560(d)); or it may choose not to charge indirect costs to the grant.  The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

If the grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.  De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million (appendix VII to this part, paragraph D.1.b) in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including a provisional[2]) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis  indirect cost rate of 15% of modified total direct costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.  Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost (34 CFR §§ 75.563 and 76.563). The de minimis rate may be used indefinitely.  However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant Federal agency.  Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

D.  Restricted Indirect Cost Rate (Programs with a Supplement-not-supplant requirement

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant Federal agency for indirect costs

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[2] Provisional rate means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a final rate for the period.

USDOE-Contiunation_000939

or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR §§ 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[3] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.   Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[4], the grantee must negotiate a rate under 34 CFR § 75.562.  This provision limits indirect cost recovery to 8% of modified total direct costs or the grantee's negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

i.    The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
ii.   The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
iii.  Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
iv.   A grantee using the training rate of 8% is required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.   Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VIII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $1,000,000 in Federal funds in one fiscal year.  2 CFR Part 200 Subpart F contains the requirements imposed on grantees for audits conducted in connection with the Single Audit Act of 1984—Public Law No. 98-502 and its Amendments of 1996—Public Law No. 104-.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

---

[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

[4] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally recognized Tribe is not considered a Tribe for these purposes.

USDOE-Contiunation_000940

**IX.        Other Considerations**

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR § 200.307), cost sharing or matching (2 CFR § 200.306), property management requirements for equipment (2 CFR § 200.313), and equipment and other capital expenditures (2 CFR § 200.439).

USDOE-Contiunation_000941

GAN  ENCLOSURE 2
**Revised 10/2024**

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education (*the* Department) grant account, you must:

- draw down only as much cash as is necessary to meet the immediate needs of the grant project;
- keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
- return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

- take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
- monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
- plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
- pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities.  If you need assistance with returning funds and interest, please contact the Department's G5 Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

- subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.10], which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

1

USDOE-Contiunation_000942

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(d)(3)(ii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

USDOE-Contiunation_000943

**Frequently Asked Questions (FAQs) to Assist U.S. Department of Education (ED) Grantees to Appropriately Use Federal Funds for Food, Conferences, and Meetings[1]**
August 2024

## Using Federal ED Grant (Discretionary and Formula) Funds for Food

1. **May a grantee use its U.S. Department of Education (ED) grant funds for food, beverages, or snacks at an event related to its grant?**

All grant expenditures, including those for food, beverages, or snacks, must be reasonable, necessary, allocable to the grant, and allowable. (Office of Management and Budget's (*OMB) Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance)* at 2 CFR §§ 200.403 through 200.405).[2]

Generally, a grantee needs to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant. When a grantee is hosting an event related to its ED grant, the grantee should first consider structuring the agenda for the meeting so that there is time for participants to bring or purchase their own food, beverages, and snacks. In addition, when planning a meeting, grantees may want to consider a location in which participants have easy access to food and beverages.

There may be limited circumstances under which providing food or beverages is reasonable and necessary to achieve the purpose of a particular grant. Because food and beverage costs are not of a type generally recognized as ordinary and necessary for the operation of the grantee or the proper and efficient performance of the Federal award (see 2 CFR § 200.404(a)), grantees must document their evidence and analysis that justify that the use of food or beverage is reasonable and necessary in each instance.

In determining reasonableness of a given cost, including those for food and drink, consideration must be given to:

- Whether the cost is generally recognized as ordinary and necessary for the grantee's operation or the proper and efficient performance of the Federal award;

- The restraints or requirements imposed by such factors as: sound business practices; arm's-length bargaining; Federal, State, local, Tribal, and other laws and regulations; and terms and conditions of the Federal award;

- Market prices for comparable costs for the geographic area;

- Whether the individuals concerned acted with prudence in the circumstances considering their responsibilities to the recipient or grantee, its employees, its students or membership (if applicable), the public at large, and the Federal Government; and

---

[1] Other than statutory and regulatory requirements included in the document, the contents of this FAQ document do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

[2] Revisions to 2 CFR part 200, referred to as the "OMB Uniform Guidance," were published on April 22, 2024, and are generally effective on October 1, 2024. In general, the April 2024 revisions do not substantively affect the content in this FAQ document. While the OMB Uniform Guidance in 2 CFR § 200.1 defines recipient, this FAQ uses the term grantee to align with the definitions that apply to ED regulations in the Education Department General Administrative Regulations (EDGAR) in 34 CFR § 77.1.

1

- Whether the cost represents a deviation from the recipient or grantee's established written policies and procedures for incurring (2 CFR § 200.404).

Please note that, in addition to determining whether the costs are necessary and reasonable, State grantees also must determine whether the same costs are allowable under State law for the use of State funds. Under 2 CFR § 200.302(a), States are required to expend and account for Federal funds in accordance with State laws and procedures for expending and accounting for their own State funds. In other words, if State laws or procedures would not permit the use of State funds for conferences or meals, then State grantees may not use their Federal grant funds to pay those costs either.

2. **Are there examples of when food costs might be considered reasonable and necessary to the performance of a particular grant?**

The question of whether a food cost is reasonable and necessary to the performance of a grant will depend on the ED grant, including any program-specific rules or requirements that may apply to that grant, as well as the unique circumstances of the food cost. The following are some examples of situations when a food cost might be considered reasonable and necessary:

- Food costs at a family engagement event: For some ED programs, family engagement is a critical part of the purpose of the program or of the success of a project. In such a program, if a family meeting would occur during a typical mealtime, or if the grantee has evidence that attendance at the event would be affected by the absence of food or snacks, the grantee may be able to justify that is reasonable and necessary to provide light refreshments or meals to participants.

- Food costs for a working lunch at a day-long meeting: A grantee may find that one critical component of its grant activities is hosting an onsite day-long training for professionals working in a field that is a central focus of the grant. If the grantee is able to demonstrate that the lunchtime session is necessary to achieve the goals of the project, attendance at the lunchtime session is necessary to achieve full participation by attendees, and the business carried out at the lunchtime session could not be carried out at another reasonable time, the grantee may be able to justify that it is reasonable and necessary to provide meals or a snack to attendees.

- Light refreshments at a series of regular after-hours meetings: A grantee may find that an important part of its grant activities is hosting meetings after the traditional working day so that professionals from within the field but across different employers have an opportunity to collaborate on focused topics. If the grantee can demonstrate that the sessions have planned agendas that are central to the grant, that engaging this group of people is necessary to achieve the purposes of the grant, and that there is evidence that attendance at the meetings would be affected by the absence of food, the grantee may be able to justify that it is reasonable and necessary to provide light refreshments to participants.

- Costs of light snacks at a day-long meeting: To achieve the purposes of its grant, a grantee may find that is necessary to host day-long meetings or training sessions so that involved individuals can collaborate. If the grantee has evidence that providing light snacks (e.g., granola bars and water) at the meeting will result in improved participation, such as more

2

USDOE-Contiunation_000945

time spent on grant activities and less time needed for breaks during the sessions, the grantee may be able to justify that is reasonable and necessary to provide light snacks to participants.

If an ED grantee has questions about a specific food cost, they should contact their ED program officer.

**3.  What are examples of situations when costs for food would not be considered reasonable and necessary?**

There are some situations when food costs would not be considered reasonable and necessary to a grant or would otherwise be unallowable under the *Uniform Guidance* found at 2 CFR part 200.

- Food costs at networking sessions: In nearly all cases, using grant funds to pay for food and beverages for networking sessions with a purely social focus is not justified because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs at regular staff meetings: Food costs for recurring business meetings, staff meetings, or other day-to-day activities are generally not reasonable because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs for remote meetings: Food costs for meetings conducted remotely, such as sending food to individual meeting participants' locations, are generally not justified since participants' participation is less impacted by them attending the meeting remotely.

- Entertainment: Federal grant funds may not be used to pay for entertainment, which includes costs for amusement, diversion, and social activities, unless they have a specific and direct programmatic purpose and are included in the Federal award. 2 CFR § 200.438. Celebrations, receptions, banquets, and other social events generally are not events where purchasing food with ED grant funds is appropriate.

- Alcohol: In all cases, use of Federal funds for alcoholic beverages is unallowable. 2 CFR § 200.423.

**Using ED Federal Grant (Discretionary and Formula) Funds to Host a Meeting or Conference**

**4.  May a grantee receiving funds from ED use its Federal grant funds to host a meeting or conference?**

Yes. Federal grant funds may be used to host a meeting or conference if doing so is:

- Consistent with its approved application or plan;

- For purposes that are directly relevant to the program and the operation of the grant, such as for conveying technical information related to the objectives of the grant; and

- Reasonable and necessary to achieve the goals and objectives of the approved grant.

The *Uniform Guidance* in 2 CFR § 200.432 describes costs associated with conferences that may be allowable.

**5.  What are examples of "technical information" that may be conveyed at a meeting or conference?**

3

Examples of technical information include, but are not limited to, the following, each of which must be related to implementing the program or project funded by the grant:

- Specific programmatic, administrative, or fiscal accountability requirements;

- Best practices in a particular field;

- Theoretical, empirical, or methodological advances in a particular field;

- Effective methods of training or professional development; and

- Effective grant management and accountability.

**6.  What factors should a grantee consider when deciding whether to host a meeting or conference?**

Grantees should consider whether a face-to-face meeting or conference is the most effective or efficient way to achieve the desired result and whether there are alternatives, such as webinars or video conferences, that would be equally or similarly effective and more efficient in terms of time and costs than a face-to-face meeting. In addition, grantees should consider how the meeting or conference will be perceived by the public; for example, will the meeting or conference be perceived as a good use of taxpayer dollars?

**7.  Are there conflict-of-interest rules that grantees should follow when selecting vendors, such as logistics contractors, to help with a meeting or conference?**

As specified in 2 CFR § 200.317, States and Indian Tribes[3] must comply with their own procurement policies and procedures, including any policies or procedures for ensuring that there are no conflicts of interest in the procurement process. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the following procurement standards: 2 CFR §§ 200.321, 200.322, 200.323, and 200.327. If a State or Indian Tribe does not have its own procurement policies and procedures, it must follow the procurement standards in 2 CFR §§ 200.318 through 200.327.

Other grantees must follow procurement procedures that are consistent with their State, local, or Tribal laws and regulations, as appropriate, and that are also consistent with 2 CFR §§ 200.318 through 200.327, including the minimum requirements in 2 CFR § 200.318 related to conflict of interest rules.

**8.  When a meeting or conference is hosted by a grantee and charged to a Federal grant, may the meeting or conference be promoted as a U.S. Department of Education event?**

No. Meetings and conferences hosted by grantees are directed by the grantee, not the U.S. Department of Education. Therefore, the meeting or conference may <u>not</u> be promoted as a U.S. Department of Education meeting or conference, and the seal of the U.S. Department of Education must <u>not</u> be used on conference materials or signage, without ED's written approval. In addition, all meeting or conference materials paid for with Federal grant funds must include appropriate disclaimers, such as the disclaimer provided in 34 CFR§ 75.620. That language reads:

---

[3] Please note that "States" were the only entities listed under 2 CFR § 200.317 prior to the revisions announced in OMB's April 22, 2024, *Federal Register* notice.

4

USDOE-Contiunation_000947

The contents of this [insert type of publication; such as book, report, film, website, and web page] were developed under a grant from the U.S. Department of Education (Department). The Department does not mandate or prescribe practices, models, or other activities described or discussed in this document. The contents of this [insert type of publication] may contain examples of, adaptations of, and links to resources created and maintained by another public or private organization. The Department does not control or guarantee the accuracy, relevance, timeliness, or completeness of this outside information. The content of this [insert type of publication] does not necessarily represent the policy of the Department. This publication is not intended to represent the views or policy of, or be an endorsement of any views expressed or materials provided by, any Federal agency.

**Please note that if a grantee charges a fee for attendance at a particular meeting or conference paid for with Federal grant funds, any income generated must be treated as program income under 2 CFR § 200.307 or specific program regulations addressing program income.**

9. **When a grantee is hosting a meeting or conference, may the grantee use Federal grant funds to pay for food, beverages, or snacks?**

As detailed in questions #1-3 above, in general there is a need to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant, but there may be circumstances when providing food or beverages at a conference is reasonable and necessary to achieve the purpose of the grant. Please see those questions for information about requirements and considerations related to food costs.

10. **May a grantee contract with a hotel under which Federal grant funds will be used to provide meals, snacks, and beverages as part of the cost for meeting rooms and other allowable conference-related costs?**

Federal grant funds may only be used for expenses that are reasonable and necessary. In planning a conference or meeting and negotiating with vendors for meeting space and other relevant goods and services, grantees may only pay for allowable costs. The fact that food and beverages are embedded in a contract for meeting space does not mean that the food and beverages are being provided at no cost to the grantee. Therefore, if the food and beverage cost is not an allowable cost, and a hotel vendor embeds food and beverage costs into a hotel contract for meeting space, the grantee should work with the hotel to have the food and beverage costs identified and removed from the contract, and have the price for the meeting space appropriately adjusted.

11. **What if a hotel or other venue provides "complimentary" beverages (e.g., coffee, tea) and there is no charge to the grantee hosting the meeting?**

The grantee has an obligation, under these circumstances, to confirm that the beverages are truly complimentary and will not be reflected as a charge to the grant in another area. For example, many hotels provide complimentary beverages to all guests who attend a meeting at their facility without reflecting the costs of those beverages in other items that their guests or, in this case, the grantee purchases. As noted above, it would not be acceptable for a vendor to embed the cost of beverages in other costs, such as meeting space, without those costs being separately allowable.

12. **May indirect cost funds be used to pay for food and beverages?**

No. The cost of food and beverages, which are related to meetings that are easily associated with a specific cost and grant objectives, are more appropriately treated as direct costs rather than indirect

5

costs. As noted above, Federal grant funds cannot be used to pay for food and beverages unless doing so is reasonable and necessary.

USDOE-Contiunation_000949

**13. May a grantee use <u>non-Federal</u> resources (e.g., State or local resources) to pay for food or beverages at a meeting or conference that is being held to meet the goals and objectives of its grant?**

Grantees should follow their own policies and procedures and State and local law for using <u>non-Federal</u> resources to pay for food or beverages, including its policies and procedures for accepting gifts or in-kind contributions from third parties. Grantees should be sure that any food and beverages provided with non-Federal funds are appropriate for the grantee event, and do not detract from the event's purpose. Please note that, in general, any funds that a grantee contributes to a project as part of the program's matching or cost-sharing requirement would be subject to the same rules that govern the Federal funds; therefore, the non-Federal funds used to pay for food and beverages for a meeting or conference could only be eligible for use in meeting cost-share or match obligations if Federal funds would also be allowable to pay for the food and beverages.

**14. May grantees provide meeting participants with the option of paying for food and beverages (e.g., could a grantee have boxed lunches provided at cost for participants)?**

Yes. Grantees may offer meeting participants the option of paying for food (such as lunch, breakfast, or snacks) and beverages, and arrange for these items to be available at the meeting.

<u>**Using Federal Grant Funds to Pay for Costs of Attending a Meeting or Conference Sponsored by ED or a Third Party**</u>

**15. May grantees use Federal grant funds to pay for the cost of attending a meeting or conference?**

If attending a meeting or conference is necessary to achieve the goals and objectives of the grant, and if the expenses are reasonable (based on the grantee's own policies and procedures, and State and local laws), Federal grant funds may be used to pay for travel expenses of grantee employees, consultants, or experts to attend a meeting or conference. To determine whether a meeting or conference is "necessary," grantees should consider whether the goals and objectives of the grant can be achieved without the meeting or conference and whether there is an equally effective and more efficient way (in terms of time and money) to achieve the goals and objectives of the grant (see question #6). To determine whether the expenses are "reasonable," grantees should consider how the costs (e.g., lodging, travel, registration fees) compare with other similar events and whether the public would view the expenses as a worthwhile use of Federal funds.

**16. What should a grantee consider when planning to use Federal grant funds for attending a meeting or conference?**

Among other considerations, grantees should consider how many people should attend a meeting or conference on its behalf. The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant. The grantee should also determine whether it is necessary to attend the entire meeting or conference, or whether attending only a portion of the meeting or conference is reasonable and necessary.

**17. What travel expenses may be paid for with Federal grant funds?**

7

Grantees may use Federal grant funds for travel expenses only to the extent such costs are reasonable and necessary and do not exceed charges normally allowed by the grantee in its regular operations consistent with its written travel policies. See 2 CFR § 200.475. Federal grant funds may be used to pay expenses for transportation, per diem, and lodging if the costs are reasonable and necessary. Federal grant funds may not be spent on alcohol. See 2 CFR § 200.423. Grantees should follow their own travel and per diem rules and costs when charging travel expenses to their Federal grant. In the absence of an acceptable written policy regarding travel costs, grantees must satisfy the requirements of 2 CFR § 200.475(d).

**18. What should grantees consider when including Federal employees at a grantee-sponsored meeting or conference?**

In some situations, a grantee may invite a Federal employee to participate in or present at a grantee-organized meeting or conference. Federal employees are subject to Federal ethics laws and regulations. This includes laws and regulations governing conflicts of interest and gifts (e.g., waiver of a registration fee, travel expenses, and meals). Grantees may be subject to their own ethics laws and regulations, and grantee employees should ensure that they comply with them.

**Questions Regarding the Allowable Use of Federal Grant Funds**

**19. What resources are available to help grantees determine whether costs associated with meetings and conferences are reasonable and necessary?**

Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable, necessary, and allowable, especially the regulations found at 2 CFR part 200.

**20. Is it allowable for a person whose travel costs are being paid with Federal grant funds to attend a conference in Washington, D.C., and lobby members of Congress while in town?**

Appropriated funds may not, except under very limited circumstances, be used for expenses related to any activity designed to influence the enactment of legislation, appropriations, regulations, administrative actions, or Executive Orders proposed or pending before the Congress or the Administration. See 2 CFR § 200.450. To the extent that a portion of time at a conference is spent on lobbying activities, costs associated with the lobbying, including transportation to and from Washington, D.C., lodging, and per diem, may not be charged to the Federal grant. For example, if a meeting or conference lasts for two days and a visit to lobby a member of Congress requires an additional day of travel, it could be determined that one-third (1/3) of all costs involved in attending the meeting or conference, including travel to and from Washington, D.C., may not be charged to the grant.

On the other hand, educating members of Congress about facts relevant to a particular grant program would not, absent other facts, constitute lobbying. For example, it would not be considered a prohibited lobbying activity for a grantee to inform a member of Congress about its program, the services it provides, and the individuals it serves. It also would not be considered a prohibited lobbying activity to attend a presentation by members of Congress related to issues relevant to a grantee's program or the population it serves in general. However, such education-oriented

8

discussions could easily cross—or appear to cross—the thin line to prohibited lobbying activities. For example, a discussion about the challenges a grantee faces with respect to requirements governing matching funds could easily expand to a discussion about the need for more appropriated funds or legislative changes, which would constitute prohibited lobbying activities. Given that Congress frequently considers the reauthorization of ED programs, a grantee's interactions with members of Congress on such topics could meet the definition of lobbying, which is prohibited. In that case, the costs associated with those interactions could not be supported with Federal funds.

**21. What are the consequences of using Federal grant funds on unallowable expenses?**

ED may seek to recover any Federal grant funds identified, in an audit or through program monitoring, as having been used for unallowable costs, including unallowable conference expenses.

**22. Whom should grantees call if they have specific questions about the allowable use of Federal grant funds?**

ED grantees are encouraged to contact their ED program officer to discuss the allowable use of Federal grant funds, including the allowable use of Federal grant funds for meetings and conferences.

9

USDOE-Contiunation_000952

**GAN Enclosure 4**
**Revised 10/2024**

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (the Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information.

A grantee's failure to comply with cash management requirements may result in an improper payment determination by the Department in accordance with the Payment Integrity Information Act (PIIA) of 2019.

**Excessive Drawdowns**

In the context of grants, excessive drawdown refers to the situation where a grantee withdraws more funds than necessary from the grantor, which can lead to financial and compliance issues. In accordance with cash management requirements, grant funds are drawn down incrementally to cover immediate expenses related to the grant activities. If a grantee draws down excessive funds, they may be required to return the surplus along with interest. This situation can arise from poor financial management, lack of proper accounting practices, or misalignment with the grant's stipulated budget and objectives.

To avoid excessive drawdown, it is crucial for grantees to implement and maintain robust accounting systems, track expenses accurately, and adhere to the grant's budget and reporting requirements. Proper planning and monitoring of fund allocation, maintaining accurate records, and ensuring timely drawdowns aligned with actual expenses are essential practices. Additionally, grantees should be aware of the specific drawdown procedures and requirements set by the grantor, which can vary depending on whether the grant is federally funded or comes from other sources.

**Cash Management Requirements**

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department.  The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1. Payments to a State under programs that are covered by a State's Treasury State Agreement (TSA);

2. Payments to States under programs that are not covered by a TSA; and

3. Payments to other non-Federal entities, including nonprofit organizations and local governments.

---

[1] The Department adopts the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

1

USDOE-Contiunation_000953

**CMIA Requirements Applicable to Programs included in a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A.  Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15.  If a State makes a payment under a Federal assistance program before funds for that payment have been transferred to the State, Federal Government interest liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

**CMIA Requirements Applicable to Programs Not Included in a TSA**

Payments to States under programs not covered by a State's TSA are subject to subpart B of Treasury's regulations in 31 CFR § 205.  These regulations provide that a State must minimize the time between the drawdown of funds from the federal government and their disbursement for approved program activities.  The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.  31 CFR § 205.33(a).  States should exercise sound cash management in funds transfers to subgrantees.

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b).  However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA.  31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b).  These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "For recipients and subrecipients other than States, payment methods must minimize the time elapsing between the transfer of funds from the Federal agency or the pass-through entity and the disbursement of funds by the recipient or subrecipient regardless of whether the payment is made by electronic funds transfer or by other means."  2 CFR § 200.305(b).

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the recipient or subrecipient, and financial management systems that meet the standards for fund control and accountability." 2 CFR § 200.305(b)(1).  If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement.  See 2 CFR § 200.305(b)(1) and (3) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

USDOE-Contiunation_000954

**Returning Earned Interest**

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist.  See 2 CFR § 200.305(b)(11) for those conditions.  The requirements regarding interest accrual and remittance follow:

Recipients or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the recipient or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. All interest in excess of $500 per year must be returned to PMS regardless of whether the recipient or subrecipient was paid through PMS. Instructions for returning interest can be found at Returning Funds/Interest | HHS PSC FMP Payment Management Services. 2 CFR § 200.305(b)(12). Additionally, these instructions are provided below.

1.  **Returning Interest to PMS**

    PMS is the central collection point for interest earned on all federal grants, whether they are paid through the Payment Management System or not.

    a.  **Domestic** Automated Clearing House (ACH) Returns (Direct Deposit)

    Returning funds via Automated Clearing House (ACH) means you will most likely be returning funds in the manner in which they were received at your organization.

    ACH account information to be included:

    - PSC ACH Routing Number is: 051036706
    - PSC DFI Accounting Number: 303000
    - Bank Name: Credit Gateway - ACH Receiver
    - Location: St. Paul, MN

    Additionally, include the following:

    - An explanation stating that the refund is for interest
    - The name of the awarding agency
    - The grant number(s) for which the interest was earned
    - The return should be made payable to: Department of Health and Human Services.

    b.  **International** Automated Clearing House (ACH) Returns (Direct Deposit)

    ACH Account Information to be Included For Payments Sent in **U.S. Dollars (USD)**:

    - Beneficiary Account: Federal Reserve Bank of New York/ITS (Can abbreviate: FRBNY/ITS)
    - Bank: Citibank N.A. (New York)
    - SWIFT Code: CITIUS33
    - Account Number: 36838868
    - Routing Number: 021000089
    - Bank Address: 388 Greenwich Street, New York, NY 10013

USDOE-Contiuation_000955

**GAN Enclosure 4**
**Revised 10/2024**

- Payment Details (Line 70): Agency Name (abbreviated when possible) and Agency Locator Code (ALC)
- Agency POC: James Kruper, (301) 492-4998

For a USD payment, the payment sender must include:

- **Agency Locator Code (ALC):** 75010501
- **Name:** US Department of Health and Human Services, PMS Account Number and Grant Subaccount Number in the Payment Details (Line 70) section of the SWIFT message.

This information must be in this section of the payment instructions, or the International Treasury Service (ITS) will not be able to identify the federal agency the payment is for. Without this identifying information, ITS will be required to return the payment as unidentified or unable to post. The receiving account is in the name of "Federal Reserve Bank of New York/ITS" and the payment originator should list that as the name on the beneficiary account.

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

c.  FedWire Returns

Service charges may be incurred from a grantee's financial institution when a Fedwire to return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

d.  Check Returns (USPS Only)

Interest may be returned by check using only the U.S. Postal Service; however, returning interest via check may take 4-6 weeks for processing before a check payment may be applied to the appropriate PMS account.

4

USDOE-Contiunation_000956

- Interests returned by check are to be mailed (USPS only) to:

  HHS Program Support Center
  PO Box 979132
  St. Louis, MO 63197

  A brief statement explaining the nature of the return must be included.

  To return interest on a grant not paid through the PMS, make the check payable to the Department of Health and Human Services, and include the following with the check:

  - An explanation stating that the refund is for interest
  - The name of the awarding agency
  - The grant number(s) for which the interest was earned
  - The return should be made payable to: Department of Health and Human Services.

**Cash Management Monitoring Responsibilities of Pass-Through Entities**

Grantees, including grantees that act as pass-through entities and subgrantees have other responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must have procedures for determining the allowability of costs for their awards.  We highlight the following practices related to the oversight of subgrantee compliance with the financial management requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must –

1. Verify that the subrecipient is not excluded or disqualified in accordance with §180.300.  Verification methods are provided in § 180.300, which include confirming in SAM.gov that a potential subrecipient is not suspended, debarred, or otherwise excluded from receiving Federal funds.

2. Ensure that every subaward is clearly identified to the subrecipient as a subaward and includes the information identified in § 200.332(b).

3. Evaluate each subrecipient's fraud risk and risk of noncompliance with a subaward to determine the appropriate subrecipient monitoring.  See § 200.332(b) & (f).

4. Monitor the activities of a subrecipient as necessary to ensure that the subrecipient complies with Federal statutes, regulations, and the terms and conditions of the subaward.  The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. See § 200.332(e).

5. Consider taking enforcement action against noncompliant subrecipients as described in § 200.339 and in program regulations.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations.  These program-specific requirements may supplement or override general cash management or payment requirements.  If you

5

USDOE-Contiunation_000957

**GAN Enclosure 4**
**Revised 10/2024**

have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

6

USDOE-Contiunation_000958

S165A230011 - 25
Shannon Lynch
NYC Department of Education - Community School District 4
School Leadership
5619 Flatlands Avenue
Brooklyn , NY 11234

USDOE-Contiunation_000959

S165A230011 - 25

Todd Levitt
NYC Department of Education - Community School District 4
School Leadership
160 East 120th Street
New York, NY 10035

USDOE-Contiunation_000960

S165A230011 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| | | | |
|---|---|---|---|
| **1** | **RECIPIENT NAME**<br><br>NYC Department of Education - Community School District 4<br>School Leadership<br>160 East 120th Street<br>New York, NY 10035 | **2** | **AWARD INFORMATION**<br><br>PR/AWARD NUMBER   S165A230011 - 25<br>ACTION NUMBER     14<br>ACTION TYPE       Continuation<br>AWARD TYPE       Discretionary |
| **3** | **PROJECT STAFF**<br><br>RECIPIENT PROJECT DIRECTOR<br>  Shannon Lynch<br>  slynch2@schools.nyc.gov<br>EDUCATION PROGRAM CONTACT<br>  Hans L Neseth      (202) 453-6515<br>  hans.neseth@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>  G5 PAYEE HELPDESK    888-336-8930<br>  obssed@servicenowservices.com | **4** | **PROJECT TITLE**<br><br>84.165A<br>Community School Districts 4-6-2 Manhattan Inter-district Consortium |

| | |
|---|---|
| **5** | **KEY PERSONNEL** |

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Shannon Lynch | Project Director | 50 % |
| Todd Levitt | MSAP Coordinator | 20 % |

| | |
|---|---|
| **6** | **AWARD PERIODS**<br><br>      BUDGET PERIOD     10/01/2025 - 09/30/2026<br>PERFORMANCE PERIOD    10/01/2023 - 09/30/2026<br><br>FUTURE BUDGET PERIODS<br><br>N/A |

| | |
|---|---|
| **7** | **AUTHORIZED FUNDING**<br><br>         THIS ACTION     $709,638.00<br>     BUDGET PERIOD     $709,638.00<br>PERFORMANCE PERIOD   $6,709,636.00 |

| | |
|---|---|
| **8** | **ADMINISTRATIVE INFORMATION**<br><br>          UEI    DHJ6MWMNEH38<br>   REGULATIONS    CFR PART 280<br>               EDGAR AS APPLICABLE<br>               2 CFR AS APPLICABLE<br>   ATTACHMENTS   1 , 2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , B OESE , GE1 , GE2 , GE3 , GE4 |

| | |
|---|---|
| **9** | **LEGISLATIVE AND FISCAL DATA**<br><br>AUTHORITY:           PL P.L. 114-95 V-A ELEMENTARY AND SECONDARY EDUCATION ACT OF 1965, AS AMENDED BY THE EVERY STUDENT SUCCEEDS ACT<br>PROGRAM TITLE:     MAGNET SCHOOLS ASSISTANCE<br>CFDA/SUBPROGRAM NO:   84.165A |

S165A230011 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 0204A | 2026 | 2026 | ES000000 | B | U60 | 000 | 165 | 4101C | $709,638.00 |

PR/AWARD NUMBER: S165A230011 - 25

RECIPIENT NAME: NYC Department of Education - Community School District 4 School Leadership

GRANTEE NAME: CITY OF NEW YORK BOARD OF EDUCATION

65 COURT ST STE 823,

BROOKLYN, NY 11201 - 4916

PROGRAM INDIRECT COST TYPE: Unrestricted

PROJECT INDIRECT COST RATE: 3%

TERMS AND CONDITIONS

(1) THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:
1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180, NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIFIC CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.
IN ACCORDANCE WITH 2 CFR 200.308(f)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.
THIS AWARD SUPPORTS THE FINAL BUDGET PERIOD FOR THIS PROJECT. THE RECIPIENT IS REQUIRED TO SUBMIT ALL NECESSARY REPORTS TO THE DEPARTMENT OF EDUCATION WITHIN 120 DAYS AFTER THE END OF FEDERAL SUPPORT IN ACCORDANCE WITH 2 CFR 200.328 AND 200.329 (BLOCK 6).

(2) By the drawdown of funds under this GAN, the grantee accepts that this award is subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards; Title 2 CFR Part 200 as revised at 89 FR 30136-30208 (April 22, 2024).

(3) The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made to a subrecipient under this grant.
The term subaward means:
1) An award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor [See 2 CFR 200.331(a)(5)], beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

In accordance with 2 CFR 200.331 (a), a subaward is made to a subrecipient for the purpose of carrying out a portion of the Federal award and creates a Federal financial assistance relationship with a subrecipient. Characteristics that support the classification of the entity as a subrecipient include, but are not limited to, when the entity:

1) Determines who is eligible to receive what Federal assistance;
2) Has its performance measured in relation to whether the objectives of a Federal program were met;
3) Has responsibility for programmatic decision-making;
4) Is responsible for adherence to applicable Federal program requirements specified in the Federal award; and

USDOE-Continuation_000962



## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

5) Implements a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

(4) Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(5) Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions (34 CFR 75.564(a) and 34 CFR 76.562(a)). The negotiated indirect cost rate agreement authorizes a recipient to draw down indirect costs from the grant awards (34 CFR 75.564(b) and 34 CFR 76.562(b)). The following conditions apply to the below entities.

A. All entities (other than Institutions of Higher Education (IHE)

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under statutes, departmental regulations (Education Department General Administrative Regulations (EDGAR)), or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of Higher Education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant project period, the indirect cost rate set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6) Per the Department s April 17, 2026, Notice of Continuation Determination, the June 4, 2026, Order in The Board of Education of the City School District of the City of New York v. U.S. Department of Education, et al., Case No. 25-cv-8547-AS (S.D.N.Y.) ( NYCPS v. ED ), and the Department s regulations at 34 C.F.R. 75.253(e), the Department has determined that the appropriate continuation award amount for this grants is $709,638.

The grantee submitted and received approval of its budget through June 30, 2026. The Department has limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made. Thus, the award amount was determined by dividing the annual requested and recommended average award amount for this grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000, or $750,000 for the three-month continuation period.

In the May 27, 2026 Declaration of Todd Levitt, filed in NYCPS v. ED, NYCPS represented that the remaining amount available under this grant, less amounts claimed as committed funds or open encumbrances for the duration of this school year was $40,362. Accordingly, the Department subtracted $40,362 from $750,000 to determine a continuation award amount of 709,638.

USDOE-Contiunation_000963



US Department of Education
Washington, D.C. 20202

S165A230011 - 25

# GRANT AWARD NOTIFICATION

This grant will operate under a reimbursement pay status, as permitted by the Department s discretionary authority under 20 U.S.C. 1226a-1. Grantees will still have access to their grant funds; however, such funds may only be drawn down after submitting documentation that substantiates allowable expenditures under the grant.

Consistent with the Department s original April 17, 2026, Notice of Continuation Determination, as noted earlier, this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue.

(7)    Grantees must not use federal funds under this project in any manner that violates the United States Constitution, Title VI or Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq. or 42 U.S.C. 2000e et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 504 of the Rehabilitation Act (29 U.S.C. 794), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131 et seq.), the Boy Scouts of America Equal Access Act of 2001 (20 U.S.C. 7905), section 117 of the Higher Education Act of 1965, as amended (20 U.S.C. 1011f), or other applicable federal law.

Please note the provisions of Executive Orders 14151, 14168, 14173, and 14190 as well as the U.S. Department of Justice s July 29, 2025, non-regulatory Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination, which clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ( DEI ) programs.

Such activities may risk violating federal civil rights laws and may jeopardize federal funding. This includes any discriminatory equity ideology in violation of a Federal anti-discrimination law. A definition of discriminatory equity ideology is contained in Section 2(b) of Executive Order 14190.

Additionally, grantees must comply with all Financial Assistance General Certifications and Representations annual registration requirements made in SAM.gov, including any provisions in the annual registration that address civil rights, DEI programs or activities, and support of illegal aliens.

To the extent that a grantee uses grant funds for such unallowable activities, ED may take appropriate enforcement action including the potential recovery of funds, or may pursue termination or non-continuation. The Grant Award Notification document accompanying your award may contain further terms and conditions, as necessary, to ensure grantee compliance with applicable laws, regulations, and administrative priorities.

LAVANNA WEEMS   Digitally signed by LAVANNA WEEMS
Date: 2026.06.09 17:17:59 -04'00'

_____    _____

**AUTHORIZING OFFICIAL**                                          **DATE**

Ver. 1

USDOE-Contiunation_000964

## EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**    (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -**  Unique items of information that identify this notification.

    **PR/AWARD NUMBER -**  A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

    **ACTION NUMBER -**  A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

    **ACTION TYPE -**  The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

    **AWARD TYPE -**  The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -**  This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

    **\*RECIPIENT PROJECT DIRECTOR -**  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

    **EDUCATION PROGRAM CONTACT -**  The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

    **EDUCATION PAYMENT CONTACT -**  The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -**  Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -**  Project activities and funding are approved with respect to three different time periods, described below:

    **BUDGET PERIOD -**  A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

    **PERFORMANCE PERIOD -**  The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

    **\*FUTURE BUDGET PERIODS -**  The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -**  The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

    **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

    **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

    **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

    **RECIPIENT COST SHARE -**  The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

    **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -**  This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

    **UEI -**  The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

USDOE-Contiunation_000965

**\*REGULATIONS -** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS -** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA -** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS -** The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award. **AMOUNT -** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS -** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER -** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME -** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE -** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE -** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL -** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF -** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT -** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE -** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

---

\* This item differs or does not appear on formula and block grants.

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
## & CHIEF INFORMATION OFFICER

Shannon Lynch
NYC Department of Education - Community School District 4
School Leadership
160 East 120th Street

New York, NY 10035


SUBJECT: Payee Verification for Grant Award S165A230011 - 25

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: DHJ6MWMNEH38
Grantee Name: CITY OF NEW YORK BOARD OF EDUCATION

Payee UEI: DHJ6MWMNEH38
Payee Name: CITY OF NEW YORK BOARD OF EDUCATION

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

U.S. Department of Education
550 12th Street, SW
Room 6087
Washington, DC 20202

Attn: Stephanie Barnes
Phone: 202-245-8006

USDOE-Contiunation_000967

**GAN ATTACHMENT 1**
**Revised 10/2024**

**SPECIFIC GRANT CONDITIONS FOR PAYMENTS**

THE G5 PAYMENTS MODULE

Payments under this award will be made through the Payments module of the U.S. Department of Education's (Department's) electronic grants system, G5. G5 is administered by the Office of Finance and Operations, Office of Business Support Services.

The internet address for G5 is https://g6.ed.gov/.  To draw funds from grant awards in the G5 Payments module, grantee representatives must have individual G5 accounts under their personal name and unique work email address, with the Payee role assigned and associated to a Unique Entity Identifier (UEI) associated with their grantee organization. The Grantee UEI number on the award is identified in **Block 8** of the **Grant Award Notification (GAN)**.

To establish a G5 Payee account, follow these steps:

CREATE A NEW ACCOUNT IN G5 UNDER YOUR OWN NAME AND WORK EMAIL ADDRESS:

- Navigate to G6.ed.gov.
- Click the "Sign in" button on the top right of the page.
- Scroll down the page and select the "G5 Sign in" button.
- Review and agree to the "Government System Warning."
- Below the "Login to G5" button on the top left of the page, click on the "Sign Up" link next to the words "Not registered?"
- Enter information requested.
- Answer "No" when asked if you are not an employee or contractor of the U.S. Department of Education.
- Click "Continue."
- Enter the required information. Do not use an email address from a shared email account, such as grants@school.edu. Use an email address that reflects your name and that only you can access.

A G5 account cannot be reassigned once an account is established. It is fixed to an individual.
-  Upon entering your initial information into the system, the website tells you to look for an "Account Request" email from G5.
- When the email arrives, open it and click on the words inside that say "Activate My Account."
-  Complete the portion of the registration concluding with "Activate Account."
- You will receive an email titled "User Account Activation," which will prompt you to log in to G5 and select the Payee role.

SELECT THE PAYEE ROLE AND COMPLETE AND EMAIL A FORM:
- Once you log in to G5, you will be on the EDIT PROFILE page. Scroll down to the "Available Types" field and select "Payee." (Full Access allows drawdowns of funds and viewing of payment history reports, View Only does not allow the drawdowns of funds, but permits viewing of payment history reports.)
- Click "Continue."
- On the next page, you are then prompted to fill out the following fields:
- Payee UEI (required) A Grant Award Notification shows a Grantee UEI. Some institutions use a different UEI

1

USDOE-Contiunation_000968

for payee information. Confirm that you are entering the PAYEE UEI that your institution uses to connect their grant awards to banking in G5.
- Grantee UEI (not required). Skip this field.
- Access Level. Select "View Only" to simply view drawdowns or "Full Access" to make and view drawdowns.
- After entering the above information, click "Continue."
- On the next page that appears, you will see instructions in red requesting that you click a link to print out a form that appears on the screen, which is populated with your name, date of birth, and role requested. Click on the link to get the form to appear and print it out but black out the date of birth. This is no longer required.
- Click the back button on your browser to get back to the G5 page where the instructions appeared and click "Submit" at the bottom of the page.
- Please make sure all fields are completed and the form is signed.
- If you want access to more than one UEI, write the additional UEIs next to the one that pre-populates on the form.
- Scan the completed form or fill it out electronically and email it to obssed@servicenowservices.com. Completed forms must bear the required signatures and be notarized (or, in lieu of notarization, contain a seal or stamp from the grantee organization, or be accompanied by a letter on letterhead from the Senior Officer who signs the authorization section).

Multiple Payee users can be associated to a particular grantee institution in the G5 system, allowing for back-up Payee users to draw funds when a primary Payee user is away. However, each user must register for their own account under their own name and email address. Sharing of G5 accounts is prohibited.

In addition to establishing individual Payee account(s) in G5, new grantees are required to provide depositor account information via a completed SF1199A form, if this has not already been submitted for previous Department of Education grant awards at your organization. The form and instructions for completing the form can be found on the G5 Frequently Asked Questions page.

Payee users may begin requesting funds for the grantee once the award authorization is entered into G5, the award start date is reached, and a completed SF1199A is received and processed by the Department (if one does not already exist for a previous award). To log into G5 with an established Payee account, you may use one of two log in methods: Login.gov or G5. These choices appear after clicking "Sign In" on the G5 Home Page. When using Login.gov to access G5, be sure you are using the same email address you used to create the Payee account in G5. If you are not using the same email address, G5 and login.gov will not identify you are the same person, and you will not be able to access G5.

Guides to working in G5 can be found in the Help section of G5: https://g5.gov/G5HELP/exthelp1/index.html  For additional assistance, grantees may contact the G5 Hotline at (888) 336-8930. The Hotline is available Monday through Friday, from 8 a.m. to 6 p.m. Eastern time, except on Federal holidays.

USDOE-Contiunation_000969

<u>REQUESTING FUNDS USING THE G5 PAYMENTS MODULE</u>

To access the G5 Payments module, payees need a web browser (such as Microsoft Internet Explorer) and Internet connectivity.  Payees will request funds by award using **the PR/Award Number** found in **Block 5** of the **GAN**.  Instructions for navigating through the G5 Payments screens to make a payment request are provided in the G5 On Demand training located under the "Help" link.

G5 users with the Payee role who are unable to access G5 may request funds by calling the G5 Hotline at (888)336-8930.

<u>AWARD INFORMATION</u>

G5 users with the Payee role can view the following information in G5 on grant awards associated to the UEI on their account:

- Net authorization and authorization history;
- Net draws;
- Available balance;
- History of pending and completed payments;
- Award status; and
- Award history - including detailed transactions on drawdowns, returns, refunds, and adjustments.

3

USDOE-Contiunation_000970

## SPECIFIC GRANT TERMS AND CONDITIONS FOR
## FINANCIAL AND PERFORMANCE REPORTS

**PERFORMANCE REPORTS:**

**(1) FINAL REPORTS - ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS - ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, 200.332, and 34 CFR §§ 75.590; 75.718; 75.720; 75.623; and 75.732.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1.  That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2.  That an interim performance report is required because of the nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(1)).

3.  That other reports are required, e.g., program specific reports required in a program's statute or regulation or specific conditions are applied (2 CFR § 200.208).

**(3) FINANCIAL REPORTS – SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1.  A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (OMB) does not collect cost sharing information;
2.  Program income was earned;

1

USDOE-Contiunation_000971

3. Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by OMB does not collect indirect cost information;
4. Program regulations or statute require the submission of the FFR; or
5. Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part 200.208 and part 3474.10 and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at Standard Form (SF) 425 Federal Financial Report (FFR)):

1. Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2. Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3. Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4. Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR § 200.328).

When completing an FFR for submission, the following must be noted:

1. *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in item 2 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple grant and FFR attachment reference found in item 2 of the Line Item Instructions for the FFR is not applicable to Department grants.

2. *Program Income*: Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 2 CFR Part 200.307. A grantee is permitted, in accordance with 2 CFR Part 200.307, to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3. *Indirect Costs:* A grantee will complete item 11(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

2

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 15% of modified total direct cost (MTDC) must list its indirect cost rate in 11(a) as a Department Temporary Rate or De Minimis Rate.  The de minimis rate of 15% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)").

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with 34 CFR § 75.562 (c), must list its rate in 11(a) as a Department Training Grant Rate.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States[1] as defined in 2 CFR § 200.1.

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in 11(a).  A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.  If a restricted program grantee elects to utilize the temporary rate, it must list its rate as a Department Temporary Rate in 11(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in 11(a).  Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

3

USDOE-Contiunation_000973

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

Upon request of the Secretary, a grantee must, at the time of submission to the Secretary, post any performance and financial reports on a public-facing website maintained by the grantee, after redacting any privacy or confidential business information (34 CFR § 75.720).

4

USDOE-Contiunation_000974

## AN OVERVIEW OF AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification (GAN).

**Summary of Audit Requirements for States, Local Governments, and Nonprofit Organizations:**

1. Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)[1], or nonprofit organization) that expends $1,000,000 or more in Federal awards during the non-Federal entity's fiscal year must have a single audit conducted annually in accordance with 2 CFR § 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2. Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program-specific audit conducted.  A program–specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3. Exemption when Federal awards expended are less than $1,000,000.  A non-Federal entity that expends less than $1,000,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR § 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4. Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity (2 CFR § 501(e)).

5. Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (OMB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR § 200.512, as well as relevant

---

[1] As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

USDOE-Contiunation_000975

SF-SAC workbook(s) electronically to the Federal Audit Clearinghouse at:
https://www.fac.gov/.

6.  The audit, the workbook(s), and reporting package must be submitted within of 30
    calendar days after receipt of the auditor's report(s) or nine months after the end of
    the audit period (whichever is earlier).  If the due date falls on a Saturday, Sunday,
    or Federal holiday, the reporting package is due the next business day.  The auditee
    must make copies available for public inspection unless restricted by Federal
    statutes or regulation.  Auditees and auditors must ensure that their respective
    parts of the reporting package do not include protected personally identifiable
    information (2 CFR § 200.512).

Additional grantee requirements can be found in Uniform Guidance §200.510, including:

- Preparing financial statements that reflect the grantee's financial position, results of operations
  or changes in net assets, and where appropriate, cash flows for the fiscal year audited;
- Preparing a schedule of expenditures of Federal awards (SEFA) for the period covered by the
  grantee's financial statements;
  - List Federal programs by Federal agency
  - For Federal awards received as a subrecipient, the name of the pass-through entity and
    assigned identifying number
  - Provide the total Federal awards expended for each Federal program and the Assistance
    Listing Number (ALN).  For a cluster of programs, also provide the total for the cluster
  - Include the total amount provided to subrecipients from each Federal program

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their
cognizant agency for single audit technical assistance. This supplement will be instructive to both
grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts
for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical
assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides
the predominant amount of direct funding to the recipient." The Compliance Supplement will be
instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal
Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail
addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees
should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-
federalaudit@ed.gov.  Additional resources for single audits are also available on the Non-Federal Audit
Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html.  For programmatic
questions, grantees should contact the education program contact shown on the Department's GAN.

Grantees can obtain information on audits from:

The OMB website at www.omb.gov.  Look under Office of Management and Budget (in right column)
then click Office of Federal Financial Management (to obtain the Current OMB Compliance Supplement

USDOE-Contiunation_000976

in the right column).  The SF-SAC Workbooks and Instructions can be found at the Federal Audit Clearinghouse at:
https://facides.census.gov/Files/2019-2021%20Checklist%20Instructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative OMB Single Audit report examples that might be of interest to accountants, auditors, or financial staff that can be downloaded by searching for "single audit report illustrations" at www.aicpa-cima.com.

USDOE-Contiunation_000977

**GAN ATTACHMENT 6**
**Revised 10/2024**

### REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307, which addresses the use and expenditure of program income as well as the methods for use of program income

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

\_\_\_\_\_ Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

\_\_\_\_\_ Not Allowed  Using program income to finance the non-Federal share of the project or program; and

\_\_\_\_\_ Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

1

USDOE-Contiunation_000978

**TRAFFICKING IN PERSONS**

The Department of Education adopts the requirements of the Trafficking Victims Protection Act (TVPA) of 2000, as codified at 22 U.S.C. 7101 to 7115, in 22 U.S.C. 7104(g); 22 U.S.C. 7104a; 22 U.S.C. 7104b; and 22 U.S.C. 7104c into this grant through this condition as per the Code of Federal Regulations at 2 CFR Part 175 .

(a) Condition:

The Department, as authorized by 22 U.S.C. 7104b(c), may without penalty, terminate a grant or take any remedial actions if a recipient or subrecipient engages in:

(1) Severe forms of trafficking in persons;

(2) The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

(3) The use of forced labor in the performance of the grant or cooperative agreement; or

(4) Acts that directly support or advance trafficking in persons, including the following acts:

(i) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

(ii) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

(A) exempted from the requirement to provide or pay for such return transportation by the Department; or

(B) the employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

(iii) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

(iv) Charging recruited employees a placement or recruitment fee; or

1

(v) Providing or arranging housing that fails to meet the host country's housing and safety standards.

(b) Compliance plan and certification requirement:

(1) Prior to receiving a grant, if the estimated value of services required to be performed under the grant or cooperative agreement outside the United States exceeds $500,000, you must certify that:

(i) You have implemented a plan to prevent the activities described in paragraph (a) of this section, and are in compliance with this plan;

(ii) You have implemented procedures to prevent any activities described in paragraph (a) of this section and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in any activities described in paragraph (a) of this section; and

(iii) To the best of your knowledge, neither you, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in paragraph (a) of this section.

(2) Annual certification. You must submit an annual certification consistent with paragraph (b)(1) of this section for each year the award is in effect.

(3) Compliance plan. Any plan or procedures implemented pursuant to paragraph (b) must be appropriate to the size and complexity of the grant or cooperative agreement and to the nature and scope of its activities, including the number of non-United States citizens expected to be employed.

(4) Copies of the compliance plan. The recipient must provide a copy of the plan to the grant officer upon request, and as appropriate, must post the useful and relevant contents of the plan or related materials on its website and at the workplace.

(5) Minimum requirements of the compliance plan. The compliance plan must include, at a minimum, the following:

(i) An awareness program to inform recipient employees about the Government's policy prohibiting trafficking-related activities described in paragraph (a) of this section, the activities prohibited, and the actions that will be taken against the employee for violations. Additional information about Trafficking in Persons and examples of awareness programs can be found at the website for the Department of State's Office to Monitor and Combat Trafficking in Persons at http://www.state.gov/j/tip/.

2

(ii) A process for employees to report, without fear of retaliation, activity inconsistent with the policy prohibiting trafficking in persons.

(iii) A recruitment and wage plan that only permits the use of recruitment companies with trained employees, prohibits charging recruitment fees to the employees or potential employees and ensures that wages meet applicable host-country legal requirements or explains any variance.

(iv) A housing plan, if the recipient, subrecipient, contractor, or subcontractor intends to provide or arrange housing, that ensures that the housing meets host-country housing and safety standards.

(v) Procedures to prevent agents, subrecipients, contractors, or subcontractors at any tier and at any dollar value from engaging in trafficking in persons, including activities in paragraph (a) of this section, and to monitor, detect, and terminate any agents, subgrants, or subrecipient, contractor, or subcontractor employees that have engaged in such activities.

(c) Notification to Inspectors General and cooperation with government. In addition, you must:

(1) Immediately inform the Department and Inspector General of the Department of any information you receive from any source that alleges credible information that you, any subrecipient, contractor, or subcontractor, or any agent of your organization or subrecipient, contractor, or subcontractor, has engaged in conduct described in paragraph (a) of this section; and

(2) Fully cooperate with any Federal agencies responsible for audits, investigations, or corrective actions relating to trafficking in persons.

3

USDOE-Contiunation_000981

**FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT**
**REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION**

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information.  To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000;
3. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
4. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 of the Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives*, and other key terms, are defined within item 5, Definitions, of this grant award term.

This grant award term is issued in accordance with 2 CFR Part 170—Reporting Subaward And Executive Compensation Information.

1. ***Reporting of First-tier Subawards -***

   a. *Applicability and what to report.*

   Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

   You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

   b. *Where and when to report.*

   The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS.

   Report subaward information no later than the end of the month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2025, the obligation must be reported by no later than December 31, 2025.

1

2. ***Reporting Total Compensation of the Department's Grant Recipients' Executives -***

a. *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii    In the preceding fiscal year, you received—

    A.    80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

    B.    $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,

    C.    The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b. *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

i.    As part of your registration profile at https://www.sam.gov.

ii.    No later than the month following the month in which this award is made and annually after that. (For example, if the obligation was made on November 7, 2025, the executive compensation must be reported by no later than December 31, 2025, and annually thereafter.)

3. ***Reporting of Total Compensation of Subrecipient Executives –***

a. *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

2

    i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

    ii    In the preceding fiscal year, you received—

    A.  80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

    B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,

    C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b.  *Where and when to report.*

You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

    i.    In FSRS.  You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov.  Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

    ii.    No later than the end of the month following the month during which you make the subaward.  For example, if the subaward obligation was made on November 7, 2025 the subrecipient's executive compensation must be reported by no later than December 31, 2025.

**4.**  *Exemptions –*

a.  If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

    i.    Subawards, and

    ii.    The total compensation of the five most highly compensated executives of any **subrecipient**.

**5.**  *Definitions -*

a.  For purposes of this award term:

USDOE-Contiunation_000984

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;

(vii) Any other legal business entity;

(viii) Another grantee or contractor that is not excluded by subparagraph (2); and

(ix) Any State or locality;

(2) Does not include:

(i) An individual recipient of Federal financial assistance; or

(ii) A Federal employee.

Executive means an officer, managing partner, or any other employee holding a management position.

Subaward has the meaning given in 2 CFR § 200.1.

Subrecipient has the meaning given in 2 CFR § 200.1.

Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR § 229.402(c)(2).

4

USDOE-Contiunation_000985

**GAN ATTACHMENT 11**
**Revised 10/2024**

## SPECIFIC CONDITIONS FOR DISCLOSING
## FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1) the percentage of the total costs of the program or project which will be financed with Federal money;

2) the dollar amount of Federal funds for the project or program; and

3) the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

1

USDOE-Contiunation_000986

## PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING
## DURING OFFICIAL FEDERAL GRANT BUSINESS

Federal grant recipients, subrecipients, and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

USDOE-Contiunation_000987

**GAN ATTACHMENT 13**
**Revised 10/2024**

## REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM.gov)

The U.S. Department of Education's (Department) Grants Management System (G5) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, to do business with the Department you must have a registered Unique Entity Identifier (UEI) and TIN number in SAM.gov, the U.S. Federal Government's primary registrant database.

What is a UEI?  SAM.gov assigns a UEI to entities when they pass validation in SAM.gov. The UEI is a 12-character alphanumeric identifier used in SAM.gov and other federal government systems to identify a unique entity.

If the payee UEI number is different than your grantee UEI number, both numbers must be registered in SAM.gov. Failure to register both will delay the receipt of payments from the Department.

What is a TIN?  A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with SAM.gov, you can easily register by going to www.sam.gov.  Allow at least ten business days after you submit your registration for it to become active in SAM.gov.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the Federal Service Desk (FSD).  Live chat information and other information about the FSD is available at: GSAFSD Service Portal Landing - GSA Federal Service Desk Service Portal.

If you are currently registered with SAM.gov, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the G5 Hotline at 888-336-8930.

USDOE-Contiunation_000988

**GAN ATTACHMENT 14**
**Revised 10/2024**

## SYSTEM FOR AWARD MANAGEMENT REQUIREMENTS FOR RECIPIENTS AND THEIR SUBRECIPIENTS

**1.    Requirement for System for Award Management (SAM.gov)**

Unless you are exempted from this requirement under 2 CFR § 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM.gov registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency.  To remain registered in SAM.gov after your initial registration, you are required to review and update your information in SAM.gov on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

2.    **Recipient Requirements of Subrecipients**

In accordance with 2 CFR § 25.300 you are required to ensure that your subrecipients have a Unique Entity Identifier (UEI).  Note that subrecipients are not required to complete full registration in SAM.gov to obtain a UEI, which is required for an entity to **directly** do business with the Federal government. Instead, subrecipients may obtain a UEI by signing up in SAM.gov to get an account and establish a profile.

You may not make a subaward to a subrecipient that has not obtained a UEI and provided it to you, and you are required to notify any potential subrecipients that you cannot make a subaward unless the subrecipient obtains a UEI and provides it to you.

**3.    Definitions**

For purposes of this award term:

1.    System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient. See 2 CFR 25.400.

2.    Unique Entity Identifier (UEI) Means the universal identifier assigned by SAM.gov to uniquely identify business entities. See 2 CFR 25.400.

3.    Recipient means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award. See 2 CFR 200.1.

4.    Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with § 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

USDOE-Contiunation_000989

5. Subrecipient means an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency. See 2 CFR 200.1.

USDOE-Contiunation_000990

**ATTACHMENT B**
**SPECIAL GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**ALL RECIPIENTS** are required to submit a final performance report within 90 days after the expiration or termination of grant support.

**ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR PERFORMANCE REPORT SUBMISSIONS, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

Refer to the item(s) checked below for other reporting requirements that may apply to this grant:

_____1. A performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

_____The continuation report is due on _____.

_____The Department will provide recipients with additional information about this report, including due date, at a later time.

_____2. An interim performance report is required because of the nature of this award or because of statutory or regulatory provisions governing the program under which this award is made. The report is due more frequently than annually as indicated:

        _____Quarterly  Submit within 30 days after the end of each quarter.

        _____Semiannually  Submit within 30 days after the end of each 6-month period.

_____3. Other Required Reports:

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. IF A FINANCIAL REPORT IS REQUIRED, YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR FINANCIAL REPORT SUBMISSION, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

**FINANCIAL REPORTS:**

Unless an item down below is checked, a Standard Form 425 Federal Financial Report (FFR) is not required for this grant. The Department will rely on the drawdown of funds by grant award and record such drawdowns as expenditures by grantees. (34 CFR 75.720)

_____Quarterly FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 45 days after each reporting period.

_____Semi-annual FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 45 days after each reporting period.

_____An annual FFR is required for reporting period ending 09/30, and is due within 45 days after the reporting period.

_____A final FFR is due within 90 days after the project or grant period end date.

A quarterly, semi-annual, annual, and/or final FFR as noted hereinabove is due for this grant because:

_____(34 CFR 74.14 or 80.12) Special Award Conditions or Special grant or subgrant conditions for "high-risk" grantees:

_____Statutory Requirement or Other Special Condition


**When completing an FFR for submission in accordance with the above referenced selection, the following must be noted:**

1.  While the FFR is a government wide form that is designed for single grant and multiple grant award reporting, the U.S. Department of Education's (EDs) policy is that multiple grant award reporting is not permitted for ED grants. Thus, an ED grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. The FFR attachment (Standard Form 425A), which is available for reporting multiple grants, is not to be used for ED grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to ED grantees. With regards to item 1 of the note found in the Federal Financial Report Instructions, it is EDs policy that a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the Federal Financial Report are not applicable to ED grants.


2.  Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h). A grantee is permitted, in accordance with 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h), to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  A grantee will complete item 11(a) by listing the rate type identified in its indirect cost rate agreement, as approved by its cognizant agency. An ED grantee that does not have an indirect cost rate agreement approved by its cognizant agency, and that is using the ED approved temporary rate of 10% of budgeted direct salaries and wages, must list its rate in 11(a) as an ED Temporary Rate. A training program grantee whose recovery of indirect cost is limited to 8% of a modified total direct cost base in accordance with EDGAR § 75.562 (c), must list its rate as an ED Training Grant Rate. A restricted rate program grantee (such as one with a supplement-not-supplant grant provision) that has not negotiated an indirect cost agreement with its cognizant agency and that has limited the recovery of indirect costs in accordance with 34 CFR 75.563 and 76.564 (c), must list its rate as an ED Restricted Rate.

4.  Quarterly, semi-annual, and annual interim reports shall be due within 45 days after the end of the reporting period. Although the Office of Management and Budget (OMB) published in its December 7, 2007 Federal Register Notice (72 FR 69236) that interim reports are due within 45 days of the interim reporting end dates instead of within 30 days as originally identified, OMB has not revised the FFR instructions to reflect this change. Grantees are, nevertheless, permitted to exercise the 45 day period as published by OMB

within the Federal Register.   Final reports shall be due no later than 90 days after the project or grant period end date.  Extensions of reporting due dates may be approved by the program office upon request by the grantee.

5.   If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages.  These additional pages must indicate the following information at the top of each page: Federal Grant or other identifying number, recipient organization, Data Universal Number System (DUNS) number, Employer Identification Number (EIN), and period covered by the report.

**One original and one copy of all reports should be mailed to:**

U.S. Department of Education
Executive Director
Office of Elementary and Secondary Education
400 Maryland Avenue, SW, FB6, Room 3W342
Washington, DC 20202-6100

12/2012

USDOE-Contiunation_000993

**GAN ENCLOSURE 1**
**Revised 10/2024**

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment to maintain proper stewardship of taxpayer dollars.  This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds.  In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 of the Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities.  The Education Department General Administrative Regulations (EDGAR) in 34 CFR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department.  The most recent version of these regulations may be accessed at the following URLs:

2 CFR 34 Subtitle A (see EDGAR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, & 99)

2 CFR Part 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards

The information on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200.  In addition, a few of the topics explain requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants).  The specific sections of 2 CFR Part 200 and of EDGAR that address the topics are shown in parentheses.  The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office.  Grantees should become familiar with those requirements as well because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget.  Doing so will help to ensure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding the topics on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

USDOE-Contiunation_000994

GAN ENCLOSURE 1
**Revised 10/2024**

**SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS**

**I.      Financial Management Systems (2 CFR § 200.302)**

The grantee's and subrecipient's financial management system must provide for the following (see §§ 200.334, 200.335, 200.336, and 200.337):

- Identification of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the Assistance Listings title and number, Federal award identification number, year the Federal award was issued, and name of the Federal agency or pass-through entity.
- Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements in §§ 200.328 and 200.329.
- Maintaining records that sufficiently identify the amount, source, and expenditure of Federal funds for Federal awards. These records must contain information necessary to identify Federal awards, authorizations, financial obligations, unobligated balances, as well as assets, expenditures, income, and interest. All records must be supported by source documentation.
- Effective control over, and accountability for, all funds, property, and assets. The grantee or subrecipient must safeguard all assets and ensure they are used solely for authorized purposes. See § 200.303.
- Comparison of expenditures with budget amounts for each Federal award.
- Written procedures to implement the requirements of § 200.305.
- Written procedures for determining the allowability of costs in accordance with subpart E of 2 CFR Part 200 and the terms and conditions of the Federal award.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

**II.     Internal controls (2 CFR § 200.303)**

The grantee and subrecipient must:

- Establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the grantee or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should align with the guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States or the "Internal Control Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
- Comply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award.
- Evaluate and monitor the grantee's or subrecipient's compliance with statutes, regulations, and the terms and conditions of Federal awards.

USDOE-Contiunation_000995

- Take prompt action when instances of noncompliance are identified.
- Take reasonable cybersecurity and other measures to safeguard information including protected personally identifiable information (PII) and other types of information consistent with applicable Federal, State, local, and tribal laws regarding privacy and responsibility over confidentiality.

**III.    Federal Payment (2 CFR § 200.305)**

Under this part --

- the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
- where the time between the transfer of funds to the grantee and the disbursement of funds cannot be minimized, the preferred method of payment is reimbursement of expenditures incurred by the non-Federal entity;
- grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts that are insured; grantees or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the grantee or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment.  All interest in excess of $500 per year must be returned to PMS regardless of whether the grantee or subrecipient was paid through PMS. Instructions for returning interest can be found at: Returning Funds/Interest | HHS PSC FMP Payment Management Services.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant.  Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury.  In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.  The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department G5 Payment System at the time those funds are needed for payments to vendors and employees.

**IV.    Personnel (EDGAR 34 CFR §§ 75.511-75.519 and 2 CFR Part 200 Subparts D and E)**

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR § 200.308 (f)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the post Federal award requirements and cost principles in 2 CFR Part 200

3

Subparts D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

**V.      Cost Principles (2 CFR Part 200 Subpart E)**

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide a list of selected items of allowable and unallowable costs and must be used in determining the allowability of costs funded under the grant.

**VI.      Procurement Standards (2 CFR §§ 200.317-327)**

Under 2 CFR §§ 200.317 – 200.327, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees (i.e., grantees that are not States) may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

**VII.      Indirect Costs (EDGAR §§§75.560-564, 76.560-569, and 2 CFR § 200.414)**

In addition to the information presented below, see GAN ATTACHMENT 2 and 4 for additional information including restrictions related to temporary, de minimis, training, restricted and program prescribed indirect cost rates.

A.  Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate the grant must not have restricted (supplement-not-supplant), training, or program specific indirect cost rate restrictions.

To obtain an unrestricted indirect cost rate the grantee may:
- negotiate an indirect cost agreement with its cognizant agency for indirect costs (2 CFR §200.1 "Cognizant agency for indirect costs"), by submitting an indirect cost proposal within 90 days after the award of this grant; or
- elect to utilize the de minimis rate under 2 CFR §200.414(f); or
- a temporary indirect cost rate subject to the limitations in 34 CFR §75.560(d)

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

4

USDOE-Contiunation_000997

B.  Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR §§ 75.560(c) and 76.560(d)); or it may choose not to charge indirect costs to the grant.  The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

If the grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.  De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million (appendix VII to this part, paragraph D.1.b) in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including a provisional[2]) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis  indirect cost rate of 15% of modified total direct costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.  Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost (34 CFR §§ 75.563 and 76.563). The de minimis rate may be used indefinitely.  However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant Federal agency.  Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

D.  Restricted Indirect Cost Rate (Programs with a Supplement-not-supplant requirement

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant Federal agency for indirect costs

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[2] Provisional rate means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a final rate for the period.

5

or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR §§ 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[3] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.   Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[4], the grantee must negotiate a rate under 34 CFR § 75.562.  This provision limits indirect cost recovery to 8% of modified total direct costs or the grantee's negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

i.     The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
ii.    The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
iii.   Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
iv.    A grantee using the training rate of 8% is required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.   Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VIII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $1,000,000 in Federal funds in one fiscal year.  2 CFR Part 200 Subpart F contains the requirements imposed on grantees for audits conducted in connection with the Single Audit Act of 1984—Public Law No. 98-502 and its Amendments of 1996—Public Law No. 104-.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

---

[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[4] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally recognized Tribe is not considered a Tribe for these purposes.

USDOE-Contiunation_000999

**IX.      Other Considerations**

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR § 200.307), cost sharing or matching (2 CFR § 200.306), property management requirements for equipment (2 CFR § 200.313), and equipment and other capital expenditures (2 CFR § 200.439).

USDOE-Contiunation_001000

GAN  ENCLOSURE 2
**Revised 10/2024**

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education (*the* Department) grant account, you must:

- draw down only as much cash as is necessary to meet the immediate needs of the grant project;
- keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
- return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

- take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
- monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
- plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
- pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities.  If you need assistance with returning funds and interest, please contact the Department's G5 Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

- subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.10], which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

1

USDOE-Contiunation_001001

**GAN  ENCLOSURE 2**
**Revised 10/2024**

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(d)(3)(ii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

2

USDOE-Contiunation_001002

**Frequently Asked Questions (FAQs) to Assist U.S. Department of Education (ED) Grantees to Appropriately Use Federal Funds for Food, Conferences, and Meetings[1]**
August 2024

## Using Federal ED Grant (Discretionary and Formula) Funds for Food

1.  **May a grantee use its U.S. Department of Education (ED) grant funds for food, beverages, or snacks at an event related to its grant?**

All grant expenditures, including those for food, beverages, or snacks, must be reasonable, necessary, allocable to the grant, and allowable. (Office of Management and Budget's (*OMB*) *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance)* at 2 CFR §§ 200.403 through 200.405).[2]

Generally, a grantee needs to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant. When a grantee is hosting an event related to its ED grant, the grantee should first consider structuring the agenda for the meeting so that there is time for participants to bring or purchase their own food, beverages, and snacks. In addition, when planning a meeting, grantees may want to consider a location in which participants have easy access to food and beverages.

There may be limited circumstances under which providing food or beverages is reasonable and necessary to achieve the purpose of a particular grant. Because food and beverage costs are not of a type generally recognized as ordinary and necessary for the operation of the grantee or the proper and efficient performance of the Federal award (see 2 CFR § 200.404(a)), grantees must document their evidence and analysis that justify that the use of food or beverage is reasonable and necessary in each instance.

In determining reasonableness of a given cost, including those for food and drink, consideration must be given to:

- Whether the cost is generally recognized as ordinary and necessary for the grantee's operation or the proper and efficient performance of the Federal award;

- The restraints or requirements imposed by such factors as: sound business practices; arm's-length bargaining; Federal, State, local, Tribal, and other laws and regulations; and terms and conditions of the Federal award;

- Market prices for comparable costs for the geographic area;

- Whether the individuals concerned acted with prudence in the circumstances considering their responsibilities to the recipient or grantee, its employees, its students or membership (if applicable), the public at large, and the Federal Government; and

---

[1] Other than statutory and regulatory requirements included in the document, the contents of this FAQ document do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

[2] Revisions to 2 CFR part 200, referred to as the "OMB Uniform Guidance," were published on April 22, 2024, and are generally effective on October 1, 2024. In general, the April 2024 revisions do not substantively affect the content in this FAQ document. While the OMB Uniform Guidance in 2 CFR § 200.1 defines recipient, this FAQ uses the term grantee to align with the definitions that apply to ED regulations in the Education Department General Administrative Regulations (EDGAR) in 34 CFR § 77.1.

1

- Whether the cost represents a deviation from the recipient or grantee's established written policies and procedures for incurring (2 CFR § 200.404).

Please note that, in addition to determining whether the costs are necessary and reasonable, State grantees also must determine whether the same costs are allowable under State law for the use of State funds. Under 2 CFR § 200.302(a), States are required to expend and account for Federal funds in accordance with State laws and procedures for expending and accounting for their own State funds. In other words, if State laws or procedures would not permit the use of State funds for conferences or meals, then State grantees may not use their Federal grant funds to pay those costs either.

2. **Are there examples of when food costs might be considered reasonable and necessary to the performance of a particular grant?**

The question of whether a food cost is reasonable and necessary to the performance of a grant will depend on the ED grant, including any program-specific rules or requirements that may apply to that grant, as well as the unique circumstances of the food cost. The following are some examples of situations when a food cost might be considered reasonable and necessary:

- Food costs at a family engagement event: For some ED programs, family engagement is a critical part of the purpose of the program or of the success of a project. In such a program, if a family meeting would occur during a typical mealtime, or if the grantee has evidence that attendance at the event would be affected by the absence of food or snacks, the grantee may be able to justify that is reasonable and necessary to provide light refreshments or meals to participants.

- Food costs for a working lunch at a day-long meeting: A grantee may find that one critical component of its grant activities is hosting an onsite day-long training for professionals working in a field that is a central focus of the grant. If the grantee is able to demonstrate that the lunchtime session is necessary to achieve the goals of the project, attendance at the lunchtime session is necessary to achieve full participation by attendees, and the business carried out at the lunchtime session could not be carried out at another reasonable time, the grantee may be able to justify that it is reasonable and necessary to provide meals or a snack to attendees.

- Light refreshments at a series of regular after-hours meetings: A grantee may find that an important part of its grant activities is hosting meetings after the traditional working day so that professionals from within the field but across different employers have an opportunity to collaborate on focused topics. If the grantee can demonstrate that the sessions have planned agendas that are central to the grant, that engaging this group of people is necessary to achieve the purposes of the grant, and that there is evidence that attendance at the meetings would be affected by the absence of food, the grantee may be able to justify that it is reasonable and necessary to provide light refreshments to participants.

- Costs of light snacks at a day-long meeting: To achieve the purposes of its grant, a grantee may find that is necessary to host day-long meetings or training sessions so that involved individuals can collaborate. If the grantee has evidence that providing light snacks (e.g., granola bars and water) at the meeting will result in improved participation, such as more

2

USDOE-Contiunation_001004

time spent on grant activities and less time needed for breaks during the sessions, the grantee may be able to justify that is reasonable and necessary to provide light snacks to participants.

If an ED grantee has questions about a specific food cost, they should contact their ED program officer.

**3. What are examples of situations when costs for food would not be considered reasonable and necessary?**

There are some situations when food costs would not be considered reasonable and necessary to a grant or would otherwise be unallowable under the *Uniform Guidance* found at 2 CFR part 200.

- Food costs at networking sessions: In nearly all cases, using grant funds to pay for food and beverages for networking sessions with a purely social focus is not justified because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs at regular staff meetings: Food costs for recurring business meetings, staff meetings, or other day-to-day activities are generally not reasonable because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs for remote meetings: Food costs for meetings conducted remotely, such as sending food to individual meeting participants' locations, are generally not justified since participants' participation is less impacted by them attending the meeting remotely.

- Entertainment: Federal grant funds may not be used to pay for entertainment, which includes costs for amusement, diversion, and social activities, unless they have a specific and direct programmatic purpose and are included in the Federal award. 2 CFR § 200.438. Celebrations, receptions, banquets, and other social events generally are not events where purchasing food with ED grant funds is appropriate.

- Alcohol: In all cases, use of Federal funds for alcoholic beverages is unallowable. 2 CFR § 200.423.

**Using ED Federal Grant (Discretionary and Formula) Funds to Host a Meeting or Conference**

**4. May a grantee receiving funds from ED use its Federal grant funds to host a meeting or conference?**

Yes. Federal grant funds may be used to host a meeting or conference if doing so is:

- Consistent with its approved application or plan;

- For purposes that are directly relevant to the program and the operation of the grant, such as for conveying technical information related to the objectives of the grant; and

- Reasonable and necessary to achieve the goals and objectives of the approved grant.

The *Uniform Guidance* in 2 CFR § 200.432 describes costs associated with conferences that may be allowable.

**5. What are examples of "technical information" that may be conveyed at a meeting or conference?**

3

Examples of technical information include, but are not limited to, the following, each of which must be related to implementing the program or project funded by the grant:

- Specific programmatic, administrative, or fiscal accountability requirements;

- Best practices in a particular field;

- Theoretical, empirical, or methodological advances in a particular field;

- Effective methods of training or professional development; and

- Effective grant management and accountability.

**6. What factors should a grantee consider when deciding whether to host a meeting or conference?**

Grantees should consider whether a face-to-face meeting or conference is the most effective or efficient way to achieve the desired result and whether there are alternatives, such as webinars or video conferences, that would be equally or similarly effective and more efficient in terms of time and costs than a face-to-face meeting. In addition, grantees should consider how the meeting or conference will be perceived by the public; for example, will the meeting or conference be perceived as a good use of taxpayer dollars?

**7. Are there conflict-of-interest rules that grantees should follow when selecting vendors, such as logistics contractors, to help with a meeting or conference?**

As specified in 2 CFR § 200.317, States and Indian Tribes[3] must comply with their own procurement policies and procedures, including any policies or procedures for ensuring that there are no conflicts of interest in the procurement process. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the following procurement standards: 2 CFR §§ 200.321, 200.322, 200.323, and 200.327. If a State or Indian Tribe does not have its own procurement policies and procedures, it must follow the procurement standards in 2 CFR §§ 200.318 through 200.327.

Other grantees must follow procurement procedures that are consistent with their State, local, or Tribal laws and regulations, as appropriate, and that are also consistent with 2 CFR §§ 200.318 through 200.327, including the minimum requirements in 2 CFR § 200.318 related to conflict of interest rules.

**8. When a meeting or conference is hosted by a grantee and charged to a Federal grant, may the meeting or conference be promoted as a U.S. Department of Education event?**

No. Meetings and conferences hosted by grantees are directed by the grantee, not the U.S. Department of Education. Therefore, the meeting or conference may not be promoted as a U.S. Department of Education meeting or conference, and the seal of the U.S. Department of Education must not be used on conference materials or signage, without ED's written approval. In addition, all meeting or conference materials paid for with Federal grant funds must include appropriate disclaimers, such as the disclaimer provided in 34 CFR§ 75.620. That language reads:

---

[3] Please note that "States" were the only entities listed under 2 CFR § 200.317 prior to the revisions announced in OMB's April 22, 2024, *Federal Register* notice.

4

USDOE-Contiunation_001006

The contents of this [insert type of publication; such as book, report, film, website, and web page] were developed under a grant from the U.S. Department of Education (Department). The Department does not mandate or prescribe practices, models, or other activities described or discussed in this document. The contents of this [insert type of publication] may contain examples of, adaptations of, and links to resources created and maintained by another public or private organization. The Department does not control or guarantee the accuracy, relevance, timeliness, or completeness of this outside information. The content of this [insert type of publication] does not necessarily represent the policy of the Department. This publication is not intended to represent the views or policy of, or be an endorsement of any views expressed or materials provided by, any Federal agency.

**Please note that if a grantee charges a fee for attendance at a particular meeting or conference paid for with Federal grant funds, any income generated must be treated as program income under 2 CFR § 200.307 or specific program regulations addressing program income.**

9. **When a grantee is hosting a meeting or conference, may the grantee use Federal grant funds to pay for food, beverages, or snacks?**

As detailed in questions #1-3 above, in general there is a need to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant, but there may be circumstances when providing food or beverages at a conference is reasonable and necessary to achieve the purpose of the grant. Please see those questions for information about requirements and considerations related to food costs.

10. **May a grantee contract with a hotel under which Federal grant funds will be used to provide meals, snacks, and beverages as part of the cost for meeting rooms and other allowable conference-related costs?**

Federal grant funds may only be used for expenses that are reasonable and necessary. In planning a conference or meeting and negotiating with vendors for meeting space and other relevant goods and services, grantees may only pay for allowable costs. The fact that food and beverages are embedded in a contract for meeting space does not mean that the food and beverages are being provided at no cost to the grantee. Therefore, if the food and beverage cost is not an allowable cost, and a hotel vendor embeds food and beverage costs into a hotel contract for meeting space, the grantee should work with the hotel to have the food and beverage costs identified and removed from the contract, and have the price for the meeting space appropriately adjusted.

11. **What if a hotel or other venue provides "complimentary" beverages (e.g., coffee, tea) and there is no charge to the grantee hosting the meeting?**

The grantee has an obligation, under these circumstances, to confirm that the beverages are truly complimentary and will not be reflected as a charge to the grant in another area. For example, many hotels provide complimentary beverages to all guests who attend a meeting at their facility without reflecting the costs of those beverages in other items that their guests or, in this case, the grantee purchases. As noted above, it would not be acceptable for a vendor to embed the cost of beverages in other costs, such as meeting space, without those costs being separately allowable.

12. **May indirect cost funds be used to pay for food and beverages?**

No. The cost of food and beverages, which are related to meetings that are easily associated with a specific cost and grant objectives, are more appropriately treated as direct costs rather than indirect

5

costs. As noted above, Federal grant funds cannot be used to pay for food and beverages unless doing so is reasonable and necessary.

USDOE-Contiunation_001008

**13. May a grantee use <u>non-Federal</u> resources (e.g., State or local resources) to pay for food or beverages at a meeting or conference that is being held to meet the goals and objectives of its grant?**

Grantees should follow their own policies and procedures and State and local law for using <u>non-Federal</u> resources to pay for food or beverages, including its policies and procedures for accepting gifts or in-kind contributions from third parties. Grantees should be sure that any food and beverages provided with non-Federal funds are appropriate for the grantee event, and do not detract from the event's purpose. Please note that, in general, any funds that a grantee contributes to a project as part of the program's matching or cost-sharing requirement would be subject to the same rules that govern the Federal funds; therefore, the non-Federal funds used to pay for food and beverages for a meeting or conference could only be eligible for use in meeting cost-share or match obligations if Federal funds would also be allowable to pay for the food and beverages.

**14. May grantees provide meeting participants with the option of paying for food and beverages (e.g., could a grantee have boxed lunches provided at cost for participants)?**

Yes. Grantees may offer meeting participants the option of paying for food (such as lunch, breakfast, or snacks) and beverages, and arrange for these items to be available at the meeting.

## <u>Using Federal Grant Funds to Pay for Costs of Attending a Meeting or Conference Sponsored by ED or a Third Party</u>

**15. May grantees use Federal grant funds to pay for the cost of attending a meeting or conference?**

If attending a meeting or conference is necessary to achieve the goals and objectives of the grant, and if the expenses are reasonable (based on the grantee's own policies and procedures, and State and local laws), Federal grant funds may be used to pay for travel expenses of grantee employees, consultants, or experts to attend a meeting or conference. To determine whether a meeting or conference is "necessary," grantees should consider whether the goals and objectives of the grant can be achieved without the meeting or conference and whether there is an equally effective and more efficient way (in terms of time and money) to achieve the goals and objectives of the grant (see question #6). To determine whether the expenses are "reasonable," grantees should consider how the costs (e.g., lodging, travel, registration fees) compare with other similar events and whether the public would view the expenses as a worthwhile use of Federal funds.

**16. What should a grantee consider when planning to use Federal grant funds for attending a meeting or conference?**

Among other considerations, grantees should consider how many people should attend a meeting or conference on its behalf. The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant. The grantee should also determine whether it is necessary to attend the entire meeting or conference, or whether attending only a portion of the meeting or conference is reasonable and necessary.

**17. What travel expenses may be paid for with Federal grant funds?**

7

Grantees may use Federal grant funds for travel expenses only to the extent such costs are reasonable and necessary and do not exceed charges normally allowed by the grantee in its regular operations consistent with its written travel policies. See 2 CFR § 200.475. Federal grant funds may be used to pay expenses for transportation, per diem, and lodging if the costs are reasonable and necessary. Federal grant funds may not be spent on alcohol. See 2 CFR § 200.423. Grantees should follow their own travel and per diem rules and costs when charging travel expenses to their Federal grant. In the absence of an acceptable written policy regarding travel costs, grantees must satisfy the requirements of 2 CFR § 200.475(d).

**18. What should grantees consider when including Federal employees at a grantee-sponsored meeting or conference?**

In some situations, a grantee may invite a Federal employee to participate in or present at a grantee-organized meeting or conference. Federal employees are subject to Federal ethics laws and regulations. This includes laws and regulations governing conflicts of interest and gifts (e.g., waiver of a registration fee, travel expenses, and meals). Grantees may be subject to their own ethics laws and regulations, and grantee employees should ensure that they comply with them.

**Questions Regarding the Allowable Use of Federal Grant Funds**

**19. What resources are available to help grantees determine whether costs associated with meetings and conferences are reasonable and necessary?**

Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable, necessary, and allowable, especially the regulations found at 2 CFR part 200.

**20. Is it allowable for a person whose travel costs are being paid with Federal grant funds to attend a conference in Washington, D.C., and lobby members of Congress while in town?**

Appropriated funds may not, except under very limited circumstances, be used for expenses related to any activity designed to influence the enactment of legislation, appropriations, regulations, administrative actions, or Executive Orders proposed or pending before the Congress or the Administration. See 2 CFR § 200.450. To the extent that a portion of time at a conference is spent on lobbying activities, costs associated with the lobbying, including transportation to and from Washington, D.C., lodging, and per diem, may not be charged to the Federal grant. For example, if a meeting or conference lasts for two days and a visit to lobby a member of Congress requires an additional day of travel, it could be determined that one-third (1/3) of all costs involved in attending the meeting or conference, including travel to and from Washington, D.C., may not be charged to the grant.

On the other hand, educating members of Congress about facts relevant to a particular grant program would not, absent other facts, constitute lobbying. For example, it would not be considered a prohibited lobbying activity for a grantee to inform a member of Congress about its program, the services it provides, and the individuals it serves. It also would not be considered a prohibited lobbying activity to attend a presentation by members of Congress related to issues relevant to a grantee's program or the population it serves in general. However, such education-oriented

8

discussions could easily cross—or appear to cross—the thin line to prohibited lobbying activities. For example, a discussion about the challenges a grantee faces with respect to requirements governing matching funds could easily expand to a discussion about the need for more appropriated funds or legislative changes, which would constitute prohibited lobbying activities. Given that Congress frequently considers the reauthorization of ED programs, a grantee's interactions with members of Congress on such topics could meet the definition of lobbying, which is prohibited. In that case, the costs associated with those interactions could not be supported with Federal funds.

**21. What are the consequences of using Federal grant funds on unallowable expenses?**

ED may seek to recover any Federal grant funds identified, in an audit or through program monitoring, as having been used for unallowable costs, including unallowable conference expenses.

**22. Whom should grantees call if they have specific questions about the allowable use of Federal grant funds?**

ED grantees are encouraged to contact their ED program officer to discuss the allowable use of Federal grant funds, including the allowable use of Federal grant funds for meetings and conferences.

USDOE-Contiunation_001011

**GAN Enclosure 4**
**Revised 10/2024**

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (the Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information.

A grantee's failure to comply with cash management requirements may result in an improper payment determination by the Department in accordance with the Payment Integrity Information Act (PIIA) of 2019.

**Excessive Drawdowns**

In the context of grants, excessive drawdown refers to the situation where a grantee withdraws more funds than necessary from the grantor, which can lead to financial and compliance issues. In accordance with cash management requirements, grant funds are drawn down incrementally to cover immediate expenses related to the grant activities. If a grantee draws down excessive funds, they may be required to return the surplus along with interest. This situation can arise from poor financial management, lack of proper accounting practices, or misalignment with the grant's stipulated budget and objectives.

To avoid excessive drawdown, it is crucial for grantees to implement and maintain robust accounting systems, track expenses accurately, and adhere to the grant's budget and reporting requirements. Proper planning and monitoring of fund allocation, maintaining accurate records, and ensuring timely drawdowns aligned with actual expenses are essential practices. Additionally, grantees should be aware of the specific drawdown procedures and requirements set by the grantor, which can vary depending on whether the grant is federally funded or comes from other sources.

**Cash Management Requirements**

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department.  The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1. Payments to a State under programs that are covered by a State's Treasury State Agreement (TSA);

2. Payments to States under programs that are not covered by a TSA; and

3. Payments to other non-Federal entities, including nonprofit organizations and local governments.

---

[1] The Department adopts the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

1

**GAN Enclosure 4**
**Revised 10/2024**

**CMIA Requirements Applicable to Programs included in a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A.  Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15.  If a State makes a payment under a Federal assistance program before funds for that payment have been transferred to the State, Federal Government interest liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

**CMIA Requirements Applicable to Programs Not Included in a TSA**

Payments to States under programs not covered by a State's TSA are subject to subpart B of Treasury's regulations in 31 CFR § 205.  These regulations provide that a State must minimize the time between the drawdown of funds from the federal government and their disbursement for approved program activities.  The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.  31 CFR § 205.33(a).  States should exercise sound cash management in funds transfers to subgrantees.

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b).  However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA.  31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b).  These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "For recipients and subrecipients other than States, payment methods must minimize the time elapsing between the transfer of funds from the Federal agency or the pass-through entity and the disbursement of funds by the recipient or subrecipient regardless of whether the payment is made by electronic funds transfer or by other means."  2 CFR § 200.305(b).

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the recipient or subrecipient, and financial management systems that meet the standards for fund control and accountability." 2 CFR § 200.305(b)(1).  If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement.  See 2 CFR § 200.305(b)(1) and (3) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

2

**Returning Earned Interest**

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist.  See 2 CFR § 200.305(b)(11) for those conditions.  The requirements regarding interest accrual and remittance follow:

Recipients or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the recipient or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. All interest in excess of $500 per year must be returned to PMS regardless of whether the recipient or subrecipient was paid through PMS. Instructions for returning interest can be found at Returning Funds/Interest | HHS PSC FMP Payment Management Services. 2 CFR § 200.305(b)(12). Additionally, these instructions are provided below.

1. **Returning Interest to PMS**

   PMS is the central collection point for interest earned on all federal grants, whether they are paid through the Payment Management System or not.

   a. **Domestic** Automated Clearing House (ACH) Returns (Direct Deposit)

   Returning funds via Automated Clearing House (ACH) means you will most likely be returning funds in the manner in which they were received at your organization.

   ACH account information to be included:

   - PSC ACH Routing Number is: 051036706
   - PSC DFI Accounting Number: 303000
   - Bank Name: Credit Gateway - ACH Receiver
   - Location: St. Paul, MN

   Additionally, include the following:

   - An explanation stating that the refund is for interest
   - The name of the awarding agency
   - The grant number(s) for which the interest was earned
   - The return should be made payable to: Department of Health and Human Services.

   b. **International** Automated Clearing House (ACH) Returns (Direct Deposit)

   ACH Account Information to be Included For Payments Sent in **U.S. Dollars (USD)**:

   - Beneficiary Account: Federal Reserve Bank of New York/ITS (Can abbreviate: FRBNY/ITS)
   - Bank: Citibank N.A. (New York)
   - SWIFT Code: CITIUS33
   - Account Number: 36838868
   - Routing Number: 021000089
   - Bank Address: 388 Greenwich Street, New York, NY 10013

3

USDOE-Contiuation_001014

- Payment Details (Line 70): Agency Name (abbreviated when possible) and Agency Locator Code (ALC)
- Agency POC: James Kruper, (301) 492-4998

For a USD payment, the payment sender must include:

- **Agency Locator Code (ALC):** 75010501
- **Name:** US Department of Health and Human Services, PMS Account Number and Grant Subaccount Number in the Payment Details (Line 70) section of the SWIFT message.

This information must be in this section of the payment instructions, or the International Treasury Service (ITS) will not be able to identify the federal agency the payment is for. Without this identifying information, ITS will be required to return the payment as unidentified or unable to post. The receiving account is in the name of "Federal Reserve Bank of New York/ITS" and the payment originator should list that as the name on the beneficiary account.

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

c.  FedWire Returns

Service charges may be incurred from a grantee's financial institution when a Fedwire to return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

d.  Check Returns (USPS Only)

Interest may be returned by check using only the U.S. Postal Service; however, returning interest via check may take 4-6 weeks for processing before a check payment may be applied to the appropriate PMS account.

4

- Interests returned by check are to be mailed (USPS only) to:

   HHS Program Support Center
   PO Box 979132
   St. Louis, MO 63197

   A brief statement explaining the nature of the return must be included.

   To return interest on a grant not paid through the PMS, make the check payable to the Department of Health and Human Services, and include the following with the check:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

**Cash Management Monitoring Responsibilities of Pass-Through Entities**

Grantees, including grantees that act as pass-through entities and subgrantees have other responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must have procedures for determining the allowability of costs for their awards.  We highlight the following practices related to the oversight of subgrantee compliance with the financial management requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must –

1. Verify that the subrecipient is not excluded or disqualified in accordance with §180.300. Verification methods are provided in § 180.300, which include confirming in SAM.gov that a potential subrecipient is not suspended, debarred, or otherwise excluded from receiving Federal funds.

2. Ensure that every subaward is clearly identified to the subrecipient as a subaward and includes the information identified in § 200.332(b).

3. Evaluate each subrecipient's fraud risk and risk of noncompliance with a subaward to determine the appropriate subrecipient monitoring.  See § 200.332(b) & (f).

4. Monitor the activities of a subrecipient as necessary to ensure that the subrecipient complies with Federal statutes, regulations, and the terms and conditions of the subaward.  The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. See § 200.332(e).

5. Consider taking enforcement action against noncompliant subrecipients as described in § 200.339 and in program regulations.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations.  These program-specific requirements may supplement or override general cash management or payment requirements.  If you

5

have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

6

S165A230012 - 25

Todd Levitt

NYC Department of Education - Community School District 7

School Leadership

5619 Flatlands

Brooklyn, NY 11234

USDOE-Contiunation_001018

S165A230012 - 25

Roberto Padilla
NYC Department of Education - Community School District 7
School Leadership
501 Courtlandt Avenue
Bronx, NY 10451

USDOE-Contiunation_001019



S165A230012 - 25

# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| **1** RECIPIENT NAME | **2** AWARD INFORMATION |
|---|---|
| NYC Department of Education - Community School District 7<br>School Leadership<br>501 Courtlandt Avenue<br>Bronx, NY 10451 | PR/AWARD NUMBER    S165A230012 - 25<br>ACTION NUMBER      11<br>ACTION TYPE        Continuation<br>AWARD TYPE        Discretionary |

| **3** PROJECT STAFF | **4** PROJECT TITLE |
|---|---|
| RECIPIENT PROJECT DIRECTOR<br>  Todd Levitt<br>  tlevitt@schools.nyc.gov<br>EDUCATION PROGRAM CONTACT<br>  Hans L Neseth        (202) 453-6515<br>  hans.neseth@ed.gov<br>EDUCATION PAYMENT HOTLINE<br>  G5 PAYEE HELPDESK    888-336-8930<br>  obssed@servicenowservices.com | 84.165A<br>Community School Districts 7-10-11 Bronx Inter-district Magnet Consortium |

**5** KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Shannon Lynch | Project Director | 50 % |

**6** AWARD PERIODS

        BUDGET PERIOD      10/01/2025 - 09/30/2026
    PERFORMANCE PERIOD    10/01/2023 - 09/30/2026

FUTURE BUDGET PERIODS

N/A

**7** AUTHORIZED FUNDING

            THIS ACTION      $750,000.00
         BUDGET PERIOD      $750,000.00
    PERFORMANCE PERIOD    $6,749,998.00

**8** ADMINISTRATIVE INFORMATION

          UEI     DHJ6MWMNEH38
    REGULATIONS     CFR PART 280
              EDGAR AS APPLICABLE
              2 CFR AS APPLICABLE
    ATTACHMENTS    1 , 2 , 3 , 6 , 8 , 9 , 11 , 12 , 13 , 14 , B OESE , GE1 , GE2 , GE3 , GE4

**9** LEGISLATIVE AND FISCAL DATA

    AUTHORITY:               PL P.L. 114-95 V-A ELEMENTARY AND SECONDARY EDUCATION ACT OF 1965, AS AMENDED BY THE EVERY STUDENT SUCCEEDS ACT
    PROGRAM TITLE:        MAGNET SCHOOLS ASSISTANCE
    CFDA/SUBPROGRAM NO:    84.165A

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 0204A | 2026 | 2026 | ES000000 | B | U60 | 000 | 165 | 4101C | $750,000.00 |

USDOE-Contiunation_001020

S165A230012 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| | |
|---|---|
| PR/AWARD NUMBER: | S165A230012 - 25 |
| RECIPIENT NAME: | NYC Department of Education - Community School District 7 School Leadership |
| GRANTEE NAME: | CITY OF NEW YORK BOARD OF EDUCATION |
| | 65 COURT ST STE 823, |
| | BROOKLYN, NY 11201 - 4916 |
| PROGRAM INDIRECT COST TYPE: | Unrestricted |
| PROJECT INDIRECT COST RATE: | 3% |

TERMS AND CONDITIONS

(1) THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:
1) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180, NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8), AND 34 CFR PARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99; AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIFIC CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.
IN ACCORDANCE WITH 2 CFR 200.308(f)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.
THIS AWARD SUPPORTS THE FINAL BUDGET PERIOD FOR THIS PROJECT. THE RECIPIENT IS REQUIRED TO SUBMIT ALL NECESSARY REPORTS TO THE DEPARTMENT OF EDUCATION WITHIN 120 DAYS AFTER THE END OF FEDERAL SUPPORT IN ACCORDANCE WITH 2 CFR 200.328 AND 200.329 (BLOCK 6).

(2) By the drawdown of funds under this GAN, the grantee accepts that this award is subject to the requirements of the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards; Title 2 CFR Part 200 as revised at 89 FR 30136-30208 (April 22, 2024).

(3) The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Number (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN. If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made to a subrecipient under this grant.
The term subaward means:
1) An award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor [See 2 CFR 200.331(a)(5)], beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

In accordance with 2 CFR 200.331 (a), a subaward is made to a subrecipient for the purpose of carrying out a portion of the Federal award and creates a Federal financial assistance relationship with a subrecipient. Characteristics that support the classification of the entity as a subrecipient include, but are not limited to, when the entity:

1) Determines who is eligible to receive what Federal assistance;
2) Has its performance measured in relation to whether the objectives of a Federal program were met;
3) Has responsibility for programmatic decision-making;
4) Is responsible for adherence to applicable Federal program requirements specified in the Federal award; and
5) Implements a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.



S165A230012 - 25

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

(4) Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights of FBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. The Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(5) Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions (34 CFR 75.564(a) and 34 CFR 76.562(a)). The negotiated indirect cost rate agreement authorizes a recipient to draw down indirect costs from the grant awards (34 CFR 75.564(b) and 34 CFR 76.562(b)). The following conditions apply to the below entities.

A. All entities (other than Institutions of Higher Education (IHE)

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under statutes, departmental regulations (Education Department General Administrative Regulations (EDGAR)), or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of Higher Education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grant project period, the indirect cost rate set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(6) Per the Department s April 17, 2026, Notice of Continuation Determination, the June 4, 2026, Order in The Board of Education of the City School District of the City of New York v. U.S. Department of Education, et al., Case No. 25-cv-8547-AS (S.D.N.Y.) ( NYCPS v. ED ), and the Department s regulations at 34 C.F.R. 75.253(e), the Department has determined that the appropriate continuation award amount for this grants is $750,000.

The grantee submitted and received approval of its budget through June 30, 2026. The Department has limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made. Thus, the award amount was determined by dividing the annual requested and recommended average award amount for this grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000, or $750,000 for the three-month continuation period.

This grant will operate under a reimbursement pay status, as permitted by the Department s discretionary authority under 20 U.S.C. 1226a-1. Grantees will still have access to their grant funds; however, such funds may only be drawn down after submitting documentation that substantiates allowable expenditures under the grant.

Consistent with the Department s original April 17, 2026, Notice of Continuation Determination, as noted earlier, this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to

USDOE-Contiunation_001022



S165A230012 - 25

**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue.

(7)   Grantees must not use federal funds under this project in any manner that violates the United States Constitution, Title VI or Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq. or 42 U.S.C. 2000e et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 504 of the Rehabilitation Act (29 U.S.C. 794), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131 et seq.), the Boy Scouts of America Equal Access Act of 2001 (20 U.S.C. 7905), section 117 of the Higher Education Act of 1965, as amended (20 U.S.C. 1011f), or other applicable federal law.

Please note the provisions of Executive Orders 14151, 14168, 14173, and 14190 as well as the U.S. Department of Justice s July 29, 2025, non-regulatory Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination, which clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ( DEI ) programs.

Such activities may risk violating federal civil rights laws and may jeopardize federal funding. This includes any discriminatory equity ideology in violation of a Federal anti-discrimination law. A definition of discriminatory equity ideology is contained in Section 2(b) of Executive Order 14190.

Additionally, grantees must comply with all Financial Assistance General Certifications and Representations annual registration requirements made in SAM.gov, including any provisions in the annual registration that address civil rights, DEI programs or activities, and support of illegal aliens.

To the extent that a grantee uses grant funds for such unallowable activities, ED may take appropriate enforcement action including the potential recovery of funds, or may pursue termination or non-continuation. The Grant Award Notification document accompanying your award may contain further terms and conditions, as necessary, to ensure grantee compliance with applicable laws, regulations, and administrative priorities.

LAVANNA WEEMS    Digitally signed by LAVANNA WEEMS
Date: 2026.06.09 17:19:29 -04'00'

———————————————————————————        —————————

**AUTHORIZING OFFICIAL**                                      **DATE**

Ver. 1

USDOE-Contiunation_001023

## EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**    (See Block 2 of the Notification)

**1. RECIPIENT NAME -** The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION -**  Unique items of information that identify this notification.

   **PR/AWARD NUMBER -** A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant number" or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

   **ACTION NUMBER -** A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

   **ACTION TYPE -** The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

   **AWARD TYPE -** The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF -** This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

   **\*RECIPIENT PROJECT DIRECTOR -** The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

   **EDUCATION PROGRAM CONTACT -** The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

   **EDUCATION PAYMENT CONTACT -** The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER -** Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5.\* KEY PERSONNEL -** Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS -**  Project activities and funding are approved with respect to three different time periods, described below:

   **BUDGET PERIOD -** A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

   **PERFORMANCE PERIOD -** The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

   **\*FUTURE BUDGET PERIODS -** The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING -** The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

   **\*THIS ACTION -** The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

   **\*BUDGET PERIOD -** The total amount of funds available for use by the grantee during the stated budget period to this date.

   **\*PERFORMANCE PERIOD -** The amount of funds obligated from the start date of the first budget period to this date.

   **RECIPIENT COST SHARE -** The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

   **RECIPIENT NON-FEDERAL AMOUNT -** The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION -** This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

   **UEI -**          The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

USDOE-Contiunation_001024

**\*REGULATIONS -** Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS -** Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA -** The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS -** The fiscal information recorded by the U.S. Department of Education's Grants Management System (G5) to track obligations by award. **AMOUNT -** The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS -** Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER -** The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME -** The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE -** The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE -** The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL -** The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF -** The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT -** The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT -** The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE -** If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

USDOE-Contiunation_001025

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
### & CHIEF INFORMATION OFFICER

Todd Levitt
NYC Department of Education - Community School District 7
School Leadership
501 Courtlandt Avenue

Bronx, NY 10451

SUBJECT: Payee Verification for Grant Award S165A230012 - 25

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: DHJ6MWMNEH38
Grantee Name: CITY OF NEW YORK BOARD OF EDUCATION

Payee UEI: DHJ6MWMNEH38
Payee Name: CITY OF NEW YORK BOARD OF EDUCATION

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

U.S. Department of Education
550 12th Street, SW
Room 6087
Washington, DC 20202

Attn: Stephanie Barnes
Phone: 202-245-8006

**GAN ATTACHMENT 1**
**Revised 10/2024**

## SPECIFIC GRANT CONDITIONS FOR PAYMENTS

THE G5 PAYMENTS MODULE

Payments under this award will be made through the Payments module of the U.S. Department of Education's (Department's) electronic grants system, G5. G5 is administered by the Office of Finance and Operations, Office of Business Support Services.

The internet address for G5 is https://g6.ed.gov/.  To draw funds from grant awards in the G5 Payments module, grantee representatives must have individual G5 accounts under their personal name and unique work email address, with the Payee role assigned and associated to a Unique Entity Identifier (UEI) associated with their grantee organization. The Grantee UEI number on the award is identified in **Block 8** of the **Grant Award Notification (GAN)**.

To establish a G5 Payee account, follow these steps:

CREATE A NEW ACCOUNT IN G5 UNDER YOUR OWN NAME AND WORK EMAIL ADDRESS:

- Navigate to G6.ed.gov.
- Click the "Sign in" button on the top right of the page.
- Scroll down the page and select the "G5 Sign in" button.
- Review and agree to the "Government System Warning."
- Below the "Login to G5" button on the top left of the page, click on the "Sign Up" link next to the words "Not registered?"
- Enter information requested.
- Answer "No" when asked if you are not an employee or contractor of the U.S. Department of Education.
- Click "Continue."
- Enter the required information. Do not use an email address from a shared email account, such as grants@school.edu. Use an email address that reflects your name and that only you can access.

A G5 account cannot be reassigned once an account is established. It is fixed to an individual.
- Upon entering your initial information into the system, the website tells you to look for an "Account Request" email from G5.
- When the email arrives, open it and click on the words inside that say "Activate My Account."
- Complete the portion of the registration concluding with "Activate Account."
- You will receive an email titled "User Account Activation," which will prompt you to log in to G5 and select the Payee role.

SELECT THE PAYEE ROLE AND COMPLETE AND EMAIL A FORM:
- Once you log in to G5, you will be on the EDIT PROFILE page. Scroll down to the "Available Types" field and select "Payee." (Full Access allows drawdowns of funds and viewing of payment history reports, View Only does not allow the drawdowns of funds, but permits viewing of payment history reports.)
- Click "Continue."
- On the next page, you are then prompted to fill out the following fields:
- Payee UEI (required) A Grant Award Notification shows a Grantee UEI. Some institutions use a different UEI

1

USDOE-Contiunation_001027

for payee information. Confirm that you are entering the PAYEE UEI that your institution uses to connect their grant awards to banking in G5.
- Grantee UEI (not required). Skip this field.
- Access Level. Select "View Only" to simply view drawdowns or "Full Access" to make and view drawdowns.
- After entering the above information, click "Continue."
- On the next page that appears, you will see instructions in red requesting that you click a link to print out a form that appears on the screen, which is populated with your name, date of birth, and role requested. Click on the link to get the form to appear and print it out but black out the date of birth. This is no longer required.
- Click the back button on your browser to get back to the G5 page where the instructions appeared and click "Submit" at the bottom of the page.
- Please make sure all fields are completed and the form is signed.
- If you want access to more than one UEI, write the additional UEIs next to the one that pre-populates on the form.
- Scan the completed form or fill it out electronically and email it to obssed@servicenowservices.com. Completed forms must bear the required signatures and be notarized (or, in lieu of notarization, contain a seal or stamp from the grantee organization, or be accompanied by a letter on letterhead from the Senior Officer who signs the authorization section).

Multiple Payee users can be associated to a particular grantee institution in the G5 system, allowing for back-up Payee users to draw funds when a primary Payee user is away. However, each user must register for their own account under their own name and email address. Sharing of G5 accounts is prohibited.

In addition to establishing individual Payee account(s) in G5, new grantees are required to provide depositor account information via a completed SF1199A form, if this has not already been submitted for previous Department of Education grant awards at your organization. The form and instructions for completing the form can be found on the G5 Frequently Asked Questions page.

Payee users may begin requesting funds for the grantee once the award authorization is entered into G5, the award start date is reached, and a completed SF1199A is received and processed by the Department (if one does not already exist for a previous award). To log into G5 with an established Payee account, you may use one of two log in methods: Login.gov or G5. These choices appear after clicking "Sign In" on the G5 Home Page. When using Login.gov to access G5, be sure you are using the same email address you used to create the Payee account in G5. If you are not using the same email address, G5 and login.gov will not identify you are the same person, and you will not be able to access G5.

Guides to working in G5 can be found in the Help section of G5: https://g5.gov/G5HELP/exthelp1/index.html  For additional assistance, grantees may contact the G5 Hotline at (888) 336-8930. The Hotline is available Monday through Friday, from 8 a.m. to 6 p.m. Eastern time, except on Federal holidays.

USDOE-Contiunation_001028

REQUESTING FUNDS USING THE G5 PAYMENTS MODULE

To access the G5 Payments module, payees need a web browser (such as Microsoft Internet Explorer) and Internet connectivity.  Payees will request funds by award using **the PR/Award Number** found in **Block 5** of the **GAN**.  Instructions for navigating through the G5 Payments screens to make a payment request are provided in the G5 On Demand training located under the "Help" link.

G5 users with the Payee role who are unable to access G5 may request funds by calling the G5 Hotline at (888)336-8930.

AWARD INFORMATION

G5 users with the Payee role can view the following information in G5 on grant awards associated to the UEI on their account:

- Net authorization and authorization history;
- Net draws;
- Available balance;
- History of pending and completed payments;
- Award status; and
- Award history - including detailed transactions on drawdowns, returns, refunds, and adjustments.

**SPECIFIC GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**(1) FINAL REPORTS - ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS - ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, 200.332, and 34 CFR §§ 75.590; 75.718; 75.720; 75.623; and 75.732.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1. That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2. That an interim performance report is required because of the nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(1)).

3. That other reports are required, e.g., program specific reports required in a program's statute or regulation or specific conditions are applied (2 CFR § 200.208).

**(3) FINANCIAL REPORTS – SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1. A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (OMB) does not collect cost sharing information;
2. Program income was earned;

1

USDOE-Contiunation_001030

3. Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by OMB does not collect indirect cost information;

4. Program regulations or statute require the submission of the FFR; or

5. Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part 200.208 and part 3474.10 and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at Standard Form (SF) 425 Federal Financial Report (FFR)):

1. Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2. Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3. Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4. Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR § 200.328).

When completing an FFR for submission, the following must be noted:

1. *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in item 2 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple grant and FFR attachment reference found in item 2 of the Line Item Instructions for the FFR is not applicable to Department grants.

2. *Program Income*: Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 2 CFR Part 200.307. A grantee is permitted, in accordance with 2 CFR Part 200.307, to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3. *Indirect Costs:* A grantee will complete item 11(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

USDOE-Contiunation_001031

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 15% of modified total direct cost (MTDC) must list its indirect cost rate in 11(a) as a Department Temporary Rate or De Minimis Rate.  The de minimis rate of 15% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)").

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with 34 CFR § 75.562 (c), must list its rate in 11(a) as a Department Training Grant Rate.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States[1] as defined in 2 CFR § 200.1.

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in 11(a).  A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.  If a restricted program grantee elects to utilize the temporary rate, it must list its rate as a Department Temporary Rate in 11(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in 11(a).  Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

3

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

Upon request of the Secretary, a grantee must, at the time of submission to the Secretary, post any performance and financial reports on a public-facing website maintained by the grantee, after redacting any privacy or confidential business information (34 CFR § 75.720).

4

USDOE-Contiunation_001033

## AN OVERVIEW OF AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification (GAN).

**Summary of Audit Requirements for States, Local Governments, and Nonprofit Organizations:**

1.  Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)[1], or nonprofit organization) that expends $1,000,000 or more in Federal awards during the non-Federal entity's fiscal year must have a single audit conducted annually in accordance with 2 CFR § 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2.  Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program-specific audit conducted.  A program–specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3.  Exemption when Federal awards expended are less than $1,000,000.  A non-Federal entity that expends less than $1,000,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR § 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4.  Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity (2 CFR § 501(e)).

5.  Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (OMB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR § 200.512, as well as relevant

---

[1] As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

USDOE-Contiunation_001034

SF-SAC workbook(s) electronically to the Federal Audit Clearinghouse at:
https://www.fac.gov/.

6. The audit, the workbook(s), and reporting package must be submitted within of 30
   calendar days after receipt of the auditor's report(s) or nine months after the end of
   the audit period (whichever is earlier).  If the due date falls on a Saturday, Sunday,
   or Federal holiday, the reporting package is due the next business day.  The auditee
   must make copies available for public inspection unless restricted by Federal
   statutes or regulation.  Auditees and auditors must ensure that their respective
   parts of the reporting package do not include protected personally identifiable
   information (2 CFR § 200.512).

Additional grantee requirements can be found in Uniform Guidance §200.510, including:

- Preparing financial statements that reflect the grantee's financial position, results of operations
  or changes in net assets, and where appropriate, cash flows for the fiscal year audited;
- Preparing a schedule of expenditures of Federal awards (SEFA) for the period covered by the
  grantee's financial statements;
  - List Federal programs by Federal agency
  - For Federal awards received as a subrecipient, the name of the pass-through entity and
    assigned identifying number
  - Provide the total Federal awards expended for each Federal program and the Assistance
    Listing Number (ALN).  For a cluster of programs, also provide the total for the cluster
  - Include the total amount provided to subrecipients from each Federal program

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their
cognizant agency for single audit technical assistance. This supplement will be instructive to both
grantees and their auditors.  Appendix III of the supplement provides a list of Federal Agency Contacts
for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical
assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides
the predominant amount of direct funding to the recipient." The Compliance Supplement will be
instructive to both grantees and their auditors.  Appendix III of the supplement provides a list of Federal
Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail
addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees
should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-
federalaudit@ed.gov.  Additional resources for single audits are also available on the Non-Federal Audit
Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html.  For programmatic
questions, grantees should contact the education program contact shown on the Department's GAN.

Grantees can obtain information on audits from:

The OMB website at www.omb.gov.  Look under Office of Management and Budget (in right column)
then click Office of Federal Financial Management (to obtain the Current OMB Compliance Supplement

2

in the right column).  The SF-SAC Workbooks and Instructions can be found at the Federal Audit Clearinghouse at:
https://facides.census.gov/Files/2019-2021%20Checklist%20Instructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative OMB Single Audit report examples that might be of interest to accountants, auditors, or financial staff that can be downloaded by searching for "single audit report illustrations" at www.aicpa-cima.com.

USDOE-Contiunation_001036

**GAN ATTACHMENT 6**
**Revised 10/2024**

## REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307, which addresses the use and expenditure of program income as well as the methods for use of program income

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

\_\_\_\_\_ Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

\_\_\_\_\_ Not Allowed  Using program income to finance the non-Federal share of the project or program; and

\_\_\_\_\_ Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

1

USDOE-Contiunation_001037

## TRAFFICKING IN PERSONS

The Department of Education adopts the requirements of the Trafficking Victims Protection Act (TVPA) of 2000, as codified at 22 U.S.C. 7101 to 7115, in 22 U.S.C. 7104(g); 22 U.S.C. 7104a; 22 U.S.C. 7104b; and 22 U.S.C. 7104c into this grant through this condition as per the Code of Federal Regulations at 2 CFR Part 175 .

(a) Condition:

The Department, as authorized by 22 U.S.C. 7104b(c), may without penalty, terminate a grant or take any remedial actions if a recipient or subrecipient engages in:

> (1) Severe forms of trafficking in persons;

> (2) The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

> (3) The use of forced labor in the performance of the grant or cooperative agreement; or

> (4) Acts that directly support or advance trafficking in persons, including the following acts:

>> (i) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

>> (ii) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

>>> (A) exempted from the requirement to provide or pay for such return transportation by the Department; or

>>> (B) the employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;

>> (iii) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

>> (iv) Charging recruited employees a placement or recruitment fee; or

1

USDOE-Contiunation_001038

(v) Providing or arranging housing that fails to meet the host country's housing and safety standards.

(b) Compliance plan and certification requirement:

(1) Prior to receiving a grant, if the estimated value of services required to be performed under the grant or cooperative agreement outside the United States exceeds $500,000, you must certify that:

(i) You have implemented a plan to prevent the activities described in paragraph (a) of this section, and are in compliance with this plan;

(ii) You have implemented procedures to prevent any activities described in paragraph (a) of this section and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in any activities described in paragraph (a) of this section; and

(iii) To the best of your knowledge, neither you, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in paragraph (a) of this section.

(2) Annual certification. You must submit an annual certification consistent with paragraph (b)(1) of this section for each year the award is in effect.

(3) Compliance plan. Any plan or procedures implemented pursuant to paragraph (b) must be appropriate to the size and complexity of the grant or cooperative agreement and to the nature and scope of its activities, including the number of non-United States citizens expected to be employed.

(4) Copies of the compliance plan. The recipient must provide a copy of the plan to the grant officer upon request, and as appropriate, must post the useful and relevant contents of the plan or related materials on its website and at the workplace.

(5) Minimum requirements of the compliance plan. The compliance plan must include, at a minimum, the following:

(i) An awareness program to inform recipient employees about the Government's policy prohibiting trafficking-related activities described in paragraph (a) of this section, the activities prohibited, and the actions that will be taken against the employee for violations. Additional information about Trafficking in Persons and examples of awareness programs can be found at the website for the Department of State's Office to Monitor and Combat Trafficking in Persons at http://www.state.gov/j/tip/.

2

(ii) A process for employees to report, without fear of retaliation, activity inconsistent with the policy prohibiting trafficking in persons.

(iii) A recruitment and wage plan that only permits the use of recruitment companies with trained employees, prohibits charging recruitment fees to the employees or potential employees and ensures that wages meet applicable host-country legal requirements or explains any variance.

(iv) A housing plan, if the recipient, subrecipient, contractor, or subcontractor intends to provide or arrange housing, that ensures that the housing meets host-country housing and safety standards.

(v) Procedures to prevent agents, subrecipients, contractors, or subcontractors at any tier and at any dollar value from engaging in trafficking in persons, including activities in paragraph (a) of this section, and to monitor, detect, and terminate any agents, subgrants, or subrecipient, contractor, or subcontractor employees that have engaged in such activities.


(c) Notification to Inspectors General and cooperation with government. In addition, you must:

(1) Immediately inform the Department and Inspector General of the Department of any information you receive from any source that alleges credible information that you, any subrecipient, contractor, or subcontractor, or any agent of your organization or subrecipient, contractor, or subcontractor, has engaged in conduct described in paragraph (a) of this section; and

(2) Fully cooperate with any Federal agencies responsible for audits, investigations, or corrective actions relating to trafficking in persons.

USDOE-Contiunation_001040

FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT
REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information.  To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000;
3. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
4. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 of the Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives*, and other key terms, are defined within item 5, Definitions, of this grant award term.

This grant award term is issued in accordance with 2 CFR Part 170—Reporting Subaward And Executive Compensation Information.

1. ***Reporting of First-tier Subawards -***

   a. *Applicability and what to report.*

      Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

      You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

   b. *Where and when to report.*

      The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS.

      Report subaward information no later than the end of the month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2025, the obligation must be reported by no later than December 31, 2025.

1

2.  *Reporting Total Compensation of the Department's Grant Recipients' Executives -*

a.  *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

ii   In the preceding fiscal year, you received—

A.  80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**
B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,
C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b.  *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

i.   As part of your registration profile at https://www.sam.gov.

ii.  No later than the month following the month in which this award is made and annually after that. (For example, if the obligation was made on November 7, 2025, the executive compensation must be reported by no later than December 31, 2025, and annually thereafter.)

3.  *Reporting of Total Compensation of Subrecipient Executives –*

a.  *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

2

    i    The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000**;

    ii    In the preceding fiscal year, you received—

      A.  80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

      B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and**,

      C.  The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receipt of a subaward.  (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

b.   *Where and when to report.*

    You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

    i.    In FSRS.  You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov.  Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

    ii.   No later than the end of the month following the month during which you make the subaward.  For example, if the subaward obligation was made on November 7, 2025 the subrecipient's executive compensation must be reported by no later than December 31, 2025.

**4.**  *Exemptions –*

a.   If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

    i.    Subawards, and

    ii.   The total compensation of the five most highly compensated executives of any **subrecipient**.

**5.**  *Definitions -*

a.   For purposes of this award term:

3

USDOE-Contiunation_001043

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;

(vii) Any other legal business entity;

(viii) Another grantee or contractor that is not excluded by subparagraph (2); and

(ix) Any State or locality;

(2) Does not include:

(i) An individual recipient of Federal financial assistance; or

(ii) A Federal employee.

Executive means an officer, managing partner, or any other employee holding a management position.

Subaward has the meaning given in 2 CFR § 200.1.

Subrecipient has the meaning given in 2 CFR § 200.1.

Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR § 229.402(c)(2).

4

**GAN ATTACHMENT 11**
**Revised 10/2024**

## SPECIFIC CONDITIONS FOR DISCLOSING
## FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1) the percentage of the total costs of the program or project which will be financed with Federal money;

2) the dollar amount of Federal funds for the project or program; and

3) the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

1

USDOE-Contiunation_001045

## PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING DURING OFFICIAL FEDERAL GRANT BUSINESS

Federal grant recipients, subrecipients, and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

1

USDOE-Contiunation_001046

**REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM.gov)**

The U.S. Department of Education's (Department) Grants Management System (G5) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, to do business with the Department you must have a registered Unique Entity Identifier (UEI) and TIN number in SAM.gov, the U.S. Federal Government's primary registrant database.

What is a UEI?  SAM.gov assigns a UEI to entities when they pass validation in SAM.gov. The UEI is a 12-character alphanumeric identifier used in SAM.gov and other federal government systems to identify a unique entity.

If the payee UEI number is different than your grantee UEI number, both numbers must be registered in SAM.gov. Failure to register both will delay the receipt of payments from the Department.

What is a TIN?  A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with SAM.gov, you can easily register by going to www.sam.gov.  Allow at least ten business days after you submit your registration for it to become active in SAM.gov.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the Federal Service Desk (FSD).  Live chat information and other information about the FSD is available at: GSAFSD Service Portal Landing - GSA Federal Service Desk Service Portal.

If you are currently registered with SAM.gov, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the G5 Hotline at 888-336-8930.

USDOE-Contiunation_001047

## SYSTEM FOR AWARD MANAGEMENT REQUIREMENTS FOR RECIPIENTS AND THEIR SUBRECIPIENTS

1. **Requirement for System for Award Management (SAM.gov)**

Unless you are exempted from this requirement under 2 CFR § 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM.gov registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency. To remain registered in SAM.gov after your initial registration, you are required to review and update your information in SAM.gov on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

2. **Recipient Requirements of Subrecipients**

In accordance with 2 CFR § 25.300 you are required to ensure that your subrecipients have a Unique Entity Identifier (UEI). Note that subrecipients are not required to complete full registration in SAM.gov to obtain a UEI, which is required for an entity to **directly** do business with the Federal government. Instead, subrecipients may obtain a UEI by signing up in SAM.gov to get an account and establish a profile.

You may not make a subaward to a subrecipient that has not obtained a UEI and provided it to you, and you are required to notify any potential subrecipients that you cannot make a subaward unless the subrecipient obtains a UEI and provides it to you.

3. **Definitions**

For purposes of this award term:

1. System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient. See 2 CFR 25.400.

2. Unique Entity Identifier (UEI) Means the universal identifier assigned by SAM.gov to uniquely identify business entities. See 2 CFR 25.400.

3. Recipient means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award. See 2 CFR 200.1.

4. Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant. A subaward may be provided through any form of legal agreement consistent with criteria in with § 200.331, including an agreement the pass-through entity considers a contract. See 2 CFR 200.1.

1

5.  Subrecipient means an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency. See 2 CFR 200.1.

USDOE-Contiunation_001049

**ATTACHMENT B**
**SPECIAL GRANT TERMS AND CONDITIONS FOR**
**FINANCIAL AND PERFORMANCE REPORTS**

**PERFORMANCE REPORTS:**

**ALL RECIPIENTS** are required to submit a final performance report within 90 days after the expiration or termination of grant support.

**ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR PERFORMANCE REPORT SUBMISSIONS, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

Refer to the item(s) checked below for other reporting requirements that may apply to this grant:

_____1. A performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. (34 CFR 75.118)

_____The continuation report is due on _____.

_____The Department will provide recipients with additional information about this report, including due date, at a later time.

_____2. An interim performance report is required because of the nature of this award or because of statutory or regulatory provisions governing the program under which this award is made. The report is due more frequently than annually as indicated:

_____Quarterly  Submit within 30 days after the end of each quarter.

_____Semiannually  Submit within 30 days after the end of each 6-month period.

_____3. Other Required Reports:

**\*\*\* IF YOU HAVE RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY, THE ITEMS BELOW WILL NOT BE CHECKED. IF A FINANCIAL REPORT IS REQUIRED, YOUR EDUCATION PROGRAM CONTACT WILL PROVIDE YOU WITH INFORMATION ABOUT YOUR FINANCIAL REPORT SUBMISSION, INCLUDING THE DUE DATE, AS A GRANT TERM OR CONDITION IN BOX 10 ON THE GRANT AWARD NOTIFICATION, OR THROUGH ANOTHER NOTIFICATION AT A LATER TIME. \*\*\***

**FINANCIAL REPORTS:**

Unless an item down below is checked, a Standard Form 425 Federal Financial Report (FFR) is not required for this grant. The Department will rely on the drawdown of funds by grant award and record such drawdowns as expenditures by grantees. (34 CFR 75.720)

_____Quarterly FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 45 days after each reporting period.

_____Semi-annual FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 45 days after each reporting period.

_____An annual FFR is required for reporting period ending 09/30, and is due within 45 days after the reporting period.

_____A final FFR is due within 90 days after the project or grant period end date.

A quarterly, semi-annual, annual, and/or final FFR as noted hereinabove is due for this grant because:

_____(34 CFR 74.14 or 80.12) Special Award Conditions or Special grant or subgrant conditions for "high-risk" grantees:

_____Statutory Requirement or Other Special Condition


**When completing an FFR for submission in accordance with the above referenced selection, the following must be noted:**

1.  While the FFR is a government wide form that is designed for single grant and multiple grant award reporting, the U.S. Department of Education's (EDs) policy is that multiple grant award reporting is not permitted for ED grants. Thus, an ED grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. The FFR attachment (Standard Form 425A), which is available for reporting multiple grants, is not to be used for ED grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to ED grantees. With regards to item 1 of the note found in the Federal Financial Report Instructions, it is EDs policy that a grantee must complete items 10(a) through 10(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before 10(a), in item 10(b), before 10(d), before 10(i) and before 10(l) of the Line Item Instructions for the Federal Financial Report are not applicable to ED grants.


2.  Unless disallowed by statute or regulation, a grantee will complete item 10(m) or 10(n) in accordance with the options or combination of options as provided in 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h). A grantee is permitted, in accordance with 34 CFR 74.24(a)-(h) and 34 CFR 80.25(a)-(h), to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  A grantee will complete item 11(a) by listing the rate type identified in its indirect cost rate agreement, as approved by its cognizant agency. An ED grantee that does not have an indirect cost rate agreement approved by its cognizant agency, and that is using the ED approved temporary rate of 10% of budgeted direct salaries and wages, must list its rate in 11(a) as an ED Temporary Rate. A training program grantee whose recovery of indirect cost is limited to 8% of a modified total direct cost base in accordance with EDGAR § 75.562 (c), must list its rate as an ED Training Grant Rate. A restricted rate program grantee (such as one with a supplement-not-supplant grant provision) that has not negotiated an indirect cost agreement with its cognizant agency and that has limited the recovery of indirect costs in accordance with 34 CFR 75.563 and 76.564 (c), must list its rate as an ED Restricted Rate.

4.  Quarterly, semi-annual, and annual interim reports shall be due within 45 days after the end of the reporting period. Although the Office of Management and Budget (OMB) published in its December 7, 2007 Federal Register Notice (72 FR 69236) that interim reports are due within 45 days of the interim reporting end dates instead of within 30 days as originally identified, OMB has not revised the FFR instructions to reflect this change. Grantees are, nevertheless, permitted to exercise the 45 day period as published by OMB

within the Federal Register.    Final reports shall be due no later than 90 days after the project or grant period end date.  Extensions of reporting due dates may be approved by the program office upon request by the grantee.

5.    If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages.  These additional pages must indicate the following information at the top of each page: Federal Grant or other identifying number, recipient organization, Data Universal Number System (DUNS) number, Employer Identification Number (EIN), and period covered by the report.

**One original and one copy of all reports should be mailed to:**

U.S. Department of Education
Executive Director
Office of Elementary and Secondary Education
400 Maryland Avenue, SW, FB6, Room 3W342
Washington, DC 20202-6100

12/2012

**GAN ENCLOSURE 1**
**Revised 10/2024**

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment to maintain proper stewardship of taxpayer dollars.  This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds.  In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 of the Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities.  The Education Department General Administrative Regulations (EDGAR) in 34 CFR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department.  The most recent version of these regulations may be accessed at the following URLs:

2 CFR 34 Subtitle A (see EDGAR Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, & 99)

2 CFR Part 200 Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards

The information on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200.  In addition, a few of the topics explain requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants).  The specific sections of 2 CFR Part 200 and of EDGAR that address the topics are shown in parentheses.  The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office.  Grantees should become familiar with those requirements as well because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget.  Doing so will help to ensure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding the topics on page 2 of this enclosure, "Selected Topics in Administering Department Discretionary Grants," or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

1

**SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS**

**I.      Financial Management Systems (2 CFR § 200.302)**

The grantee's and subrecipient's financial management system must provide for the following (see §§ 200.334, 200.335, 200.336, and 200.337):

- Identification of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the Assistance Listings title and number, Federal award identification number, year the Federal award was issued, and name of the Federal agency or pass-through entity.
- Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements in §§ 200.328 and 200.329.
- Maintaining records that sufficiently identify the amount, source, and expenditure of Federal funds for Federal awards. These records must contain information necessary to identify Federal awards, authorizations, financial obligations, unobligated balances, as well as assets, expenditures, income, and interest. All records must be supported by source documentation.
- Effective control over, and accountability for, all funds, property, and assets. The grantee or subrecipient must safeguard all assets and ensure they are used solely for authorized purposes. See § 200.303.
- Comparison of expenditures with budget amounts for each Federal award.
- Written procedures to implement the requirements of § 200.305.
- Written procedures for determining the allowability of costs in accordance with subpart E of 2 CFR Part 200 and the terms and conditions of the Federal award.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

**II.      Internal controls (2 CFR § 200.303)**

The grantee and subrecipient must:

- Establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the grantee or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should align with the guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States or the "Internal Control Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
- Comply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award.
- Evaluate and monitor the grantee's or subrecipient's compliance with statutes, regulations, and the terms and conditions of Federal awards.

USDOE-Contiunation_001054

- Take prompt action when instances of noncompliance are identified.
- Take reasonable cybersecurity and other measures to safeguard information including protected personally identifiable information (PII) and other types of information consistent with applicable Federal, State, local, and tribal laws regarding privacy and responsibility over confidentiality.

**III.     Federal Payment (2 CFR § 200.305)**

Under this part --

- the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
- where the time between the transfer of funds to the grantee and the disbursement of funds cannot be minimized, the preferred method of payment is reimbursement of expenditures incurred by the non-Federal entity;
- grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts that are insured; grantees or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the grantee or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment.  All interest in excess of $500 per year must be returned to PMS regardless of whether the grantee or subrecipient was paid through PMS. Instructions for returning interest can be found at: Returning Funds/Interest | HHS PSC FMP Payment Management Services.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant.  Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury.  In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.  The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department G5 Payment System at the time those funds are needed for payments to vendors and employees.

**IV.     Personnel (EDGAR 34 CFR §§ 75.511-75.519 and 2 CFR Part 200 Subparts D and E)**

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR § 200.308 (f)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the post Federal award requirements and cost principles in 2 CFR Part 200

3

Subparts D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

**V.      Cost Principles (2 CFR Part 200 Subpart E)**

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide a list of selected items of allowable and unallowable costs and must be used in determining the allowability of costs funded under the grant.

**VI.     Procurement Standards (2 CFR §§ 200.317-327)**

Under 2 CFR §§ 200.317 – 200.327, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees (i.e., grantees that are not States) may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

**VII.    Indirect Costs (EDGAR §§§75.560-564, 76.560-569, and 2 CFR § 200.414)**

In addition to the information presented below, see GAN ATTACHMENT 2 and 4 for additional information including restrictions related to temporary, de minimis, training, restricted and program prescribed indirect cost rates.

A.   Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate the grant must not have restricted (supplement-not-supplant), training, or program specific indirect cost rate restrictions.

To obtain an unrestricted indirect cost rate the grantee may:
- negotiate an indirect cost agreement with its cognizant agency for indirect costs (2 CFR §200.1 "Cognizant agency for indirect costs"), by submitting an indirect cost proposal within 90 days after the award of this grant; or
- elect to utilize the de minimis rate under 2 CFR §200.414(f); or
- a temporary indirect cost rate subject to the limitations in 34 CFR §75.560(d)

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

4

USDOE-Contiunation_001056

**GAN ENCLOSURE 1**
**Revised 10/2024**

B.   Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR §§ 75.560(c) and 76.560(d)); or it may choose not to charge indirect costs to the grant.  The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

If the grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.   De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million (appendix VII to this part, paragraph D.1.b) in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including a provisional[2]) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis  indirect cost rate of 15% of modified total direct costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $50,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.  Other items, including contract costs in excess of $50,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (2 CFR 200.1 "Modified Total Direct Cost (MTDC)).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost (34 CFR §§ 75.563 and 76.563). The de minimis rate may be used indefinitely.  However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant Federal agency.  Once a grantee obtains a current federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

D.   Restricted Indirect Cost Rate (Programs with a Supplement-not-supplant requirement

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant Federal agency for indirect costs

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[2] Provisional rate means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a final rate for the period.

5

or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR §§ 75.563 and 76.564 – 76.569, is not less than 8% MTDC.  A State or local government[3] that is a restricted program grantee may not elect to utilize the 8% MTDC rate. Additionally, restricted program grantees may not utilize the de minimis rate but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.   Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[4], the grantee must negotiate a rate under 34 CFR § 75.562.  This provision limits indirect cost recovery to 8% of modified total direct costs or the grantee's negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

i.    The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
ii.   The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
iii.  Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
iv.   A grantee using the training rate of 8% is required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.   Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VIII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $1,000,000 in Federal funds in one fiscal year.  2 CFR Part 200 Subpart F contains the requirements imposed on grantees for audits conducted in connection with the Single Audit Act of 1984—Public Law No. 98-502 and its Amendments of 1996—Public Law No. 104-.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

---

[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[4] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally recognized Tribe is not considered a Tribe for these purposes.

6

**IX.**    **Other Considerations**

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR § 200.307), cost sharing or matching (2 CFR § 200.306), property management requirements for equipment (2 CFR § 200.313), and equipment and other capital expenditures (2 CFR § 200.439).

7

USDOE-Contiunation_001059

GAN  ENCLOSURE 2
**Revised 10/2024**

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education (*the* Department) grant account, you must:

- draw down only as much cash as is necessary to meet the immediate needs of the grant project;
- keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
- return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

- take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
- monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
- plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
- pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities.  If you need assistance with returning funds and interest, please contact the Department's G5 Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

- subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.10], which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

1

USDOE-Contiunation_001060

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(d)(3)(ii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

2

USDOE-Contiunation_001061

**Frequently Asked Questions (FAQs) to Assist U.S. Department of Education (ED) Grantees to Appropriately Use Federal Funds for Food, Conferences, and Meetings[1]**
August 2024

**Using Federal ED Grant (Discretionary and Formula) Funds for Food**

1. **May a grantee use its U.S. Department of Education (ED) grant funds for food, beverages, or snacks at an event related to its grant?**

All grant expenditures, including those for food, beverages, or snacks, must be reasonable, necessary, allocable to the grant, and allowable. (Office of Management and Budget's (*OMB) Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance)* at 2 CFR §§ 200.403 through 200.405).[2]

Generally, a grantee needs to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant. When a grantee is hosting an event related to its ED grant, the grantee should first consider structuring the agenda for the meeting so that there is time for participants to bring or purchase their own food, beverages, and snacks. In addition, when planning a meeting, grantees may want to consider a location in which participants have easy access to food and beverages.

There may be limited circumstances under which providing food or beverages is reasonable and necessary to achieve the purpose of a particular grant. Because food and beverage costs are not of a type generally recognized as ordinary and necessary for the operation of the grantee or the proper and efficient performance of the Federal award (see 2 CFR § 200.404(a)), grantees must document their evidence and analysis that justify that the use of food or beverage is reasonable and necessary in each instance.

In determining reasonableness of a given cost, including those for food and drink, consideration must be given to:

- Whether the cost is generally recognized as ordinary and necessary for the grantee's operation or the proper and efficient performance of the Federal award;

- The restraints or requirements imposed by such factors as: sound business practices; arm's-length bargaining; Federal, State, local, Tribal, and other laws and regulations; and terms and conditions of the Federal award;

- Market prices for comparable costs for the geographic area;

- Whether the individuals concerned acted with prudence in the circumstances considering their responsibilities to the recipient or grantee, its employees, its students or membership (if applicable), the public at large, and the Federal Government; and

---

[1] Other than statutory and regulatory requirements included in the document, the contents of this FAQ document do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

[2] Revisions to 2 CFR part 200, referred to as the "OMB Uniform Guidance," were published on April 22, 2024, and are generally effective on October 1, 2024. In general, the April 2024 revisions do not substantively affect the content in this FAQ document. While the OMB Uniform Guidance in 2 CFR § 200.1 defines recipient, this FAQ uses the term grantee to align with the definitions that apply to ED regulations in the Education Department General Administrative Regulations (EDGAR) in 34 CFR § 77.1.

1

- Whether the cost represents a deviation from the recipient or grantee's established written policies and procedures for incurring (2 CFR § 200.404).

Please note that, in addition to determining whether the costs are necessary and reasonable, State grantees also must determine whether the same costs are allowable under State law for the use of State funds. Under 2 CFR § 200.302(a), States are required to expend and account for Federal funds in accordance with State laws and procedures for expending and accounting for their own State funds. In other words, if State laws or procedures would not permit the use of State funds for conferences or meals, then State grantees may not use their Federal grant funds to pay those costs either.

2. **Are there examples of when food costs might be considered reasonable and necessary to the performance of a particular grant?**

The question of whether a food cost is reasonable and necessary to the performance of a grant will depend on the ED grant, including any program-specific rules or requirements that may apply to that grant, as well as the unique circumstances of the food cost. The following are some examples of situations when a food cost might be considered reasonable and necessary:

- Food costs at a family engagement event: For some ED programs, family engagement is a critical part of the purpose of the program or of the success of a project. In such a program, if a family meeting would occur during a typical mealtime, or if the grantee has evidence that attendance at the event would be affected by the absence of food or snacks, the grantee may be able to justify that is reasonable and necessary to provide light refreshments or meals to participants.

- Food costs for a working lunch at a day-long meeting: A grantee may find that one critical component of its grant activities is hosting an onsite day-long training for professionals working in a field that is a central focus of the grant. If the grantee is able to demonstrate that the lunchtime session is necessary to achieve the goals of the project, attendance at the lunchtime session is necessary to achieve full participation by attendees, and the business carried out at the lunchtime session could not be carried out at another reasonable time, the grantee may be able to justify that it is reasonable and necessary to provide meals or a snack to attendees.

- Light refreshments at a series of regular after-hours meetings: A grantee may find that an important part of its grant activities is hosting meetings after the traditional working day so that professionals from within the field but across different employers have an opportunity to collaborate on focused topics. If the grantee can demonstrate that the sessions have planned agendas that are central to the grant, that engaging this group of people is necessary to achieve the purposes of the grant, and that there is evidence that attendance at the meetings would be affected by the absence of food, the grantee may be able to justify that it is reasonable and necessary to provide light refreshments to participants.

- Costs of light snacks at a day-long meeting: To achieve the purposes of its grant, a grantee may find that is necessary to host day-long meetings or training sessions so that involved individuals can collaborate. If the grantee has evidence that providing light snacks (e.g., granola bars and water) at the meeting will result in improved participation, such as more

2

time spent on grant activities and less time needed for breaks during the sessions, the grantee may be able to justify that is reasonable and necessary to provide light snacks to participants.

If an ED grantee has questions about a specific food cost, they should contact their ED program officer.

**3. What are examples of situations when costs for food would not be considered reasonable and necessary?**

There are some situations when food costs would not be considered reasonable and necessary to a grant or would otherwise be unallowable under the *Uniform Guidance* found at 2 CFR part 200.

- Food costs at networking sessions: In nearly all cases, using grant funds to pay for food and beverages for networking sessions with a purely social focus is not justified because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs at regular staff meetings: Food costs for recurring business meetings, staff meetings, or other day-to-day activities are generally not reasonable because participation in such activities is rarely necessary to achieve the purpose of the grant.

- Food costs for remote meetings: Food costs for meetings conducted remotely, such as sending food to individual meeting participants' locations, are generally not justified since participants' participation is less impacted by them attending the meeting remotely.

- Entertainment: Federal grant funds may not be used to pay for entertainment, which includes costs for amusement, diversion, and social activities, unless they have a specific and direct programmatic purpose and are included in the Federal award. 2 CFR § 200.438. Celebrations, receptions, banquets, and other social events generally are not events where purchasing food with ED grant funds is appropriate.

- Alcohol: In all cases, use of Federal funds for alcoholic beverages is unallowable. 2 CFR § 200.423.

**<u>Using ED Federal Grant (Discretionary and Formula) Funds to Host a Meeting or Conference</u>**

**4. May a grantee receiving funds from ED use its Federal grant funds to host a meeting or conference?**

Yes. Federal grant funds may be used to host a meeting or conference if doing so is:

- Consistent with its approved application or plan;

- For purposes that are directly relevant to the program and the operation of the grant, such as for conveying technical information related to the objectives of the grant; and

- Reasonable and necessary to achieve the goals and objectives of the approved grant.

The *Uniform Guidance* in 2 CFR § 200.432 describes costs associated with conferences that may be allowable.

**5. What are examples of "technical information" that may be conveyed at a meeting or conference?**

3

Examples of technical information include, but are not limited to, the following, each of which must be related to implementing the program or project funded by the grant:

- Specific programmatic, administrative, or fiscal accountability requirements;

- Best practices in a particular field;

- Theoretical, empirical, or methodological advances in a particular field;

- Effective methods of training or professional development; and

- Effective grant management and accountability.

**6.  What factors should a grantee consider when deciding whether to host a meeting or conference?**

Grantees should consider whether a face-to-face meeting or conference is the most effective or efficient way to achieve the desired result and whether there are alternatives, such as webinars or video conferences, that would be equally or similarly effective and more efficient in terms of time and costs than a face-to-face meeting. In addition, grantees should consider how the meeting or conference will be perceived by the public; for example, will the meeting or conference be perceived as a good use of taxpayer dollars?

**7.  Are there conflict-of-interest rules that grantees should follow when selecting vendors, such as logistics contractors, to help with a meeting or conference?**

As specified in 2 CFR § 200.317, States and Indian Tribes[3] must comply with their own procurement policies and procedures, including any policies or procedures for ensuring that there are no conflicts of interest in the procurement process. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the following procurement standards: 2 CFR §§ 200.321, 200.322, 200.323, and 200.327. If a State or Indian Tribe does not have its own procurement policies and procedures, it must follow the procurement standards in 2 CFR §§ 200.318 through 200.327.

Other grantees must follow procurement procedures that are consistent with their State, local, or Tribal laws and regulations, as appropriate, and that are also consistent with 2 CFR §§ 200.318 through 200.327, including the minimum requirements in 2 CFR § 200.318 related to conflict of interest rules.

**8.  When a meeting or conference is hosted by a grantee and charged to a Federal grant, may the meeting or conference be promoted as a U.S. Department of Education event?**

No. Meetings and conferences hosted by grantees are directed by the grantee, not the U.S. Department of Education. Therefore, the meeting or conference may <u>not</u> be promoted as a U.S. Department of Education meeting or conference, and the seal of the U.S. Department of Education must <u>not</u> be used on conference materials or signage, without ED's written approval. In addition, all meeting or conference materials paid for with Federal grant funds must include appropriate disclaimers, such as the disclaimer provided in 34 CFR§ 75.620. That language reads:

---

[3] Please note that "States" were the only entities listed under 2 CFR § 200.317 prior to the revisions announced in OMB's April 22, 2024, *Federal Register* notice.

4

USDOE-Contiunation_001065

The contents of this [insert type of publication; such as book, report, film, website, and web page] were developed under a grant from the U.S. Department of Education (Department). The Department does not mandate or prescribe practices, models, or other activities described or discussed in this document. The contents of this [insert type of publication] may contain examples of, adaptations of, and links to resources created and maintained by another public or private organization. The Department does not control or guarantee the accuracy, relevance, timeliness, or completeness of this outside information. The content of this [insert type of publication] does not necessarily represent the policy of the Department. This publication is not intended to represent the views or policy of, or be an endorsement of any views expressed or materials provided by, any Federal agency.

**Please note that if a grantee charges a fee for attendance at a particular meeting or conference paid for with Federal grant funds, any income generated must be treated as program income under 2 CFR § 200.307 or specific program regulations addressing program income.**

9. **When a grantee is hosting a meeting or conference, may the grantee use Federal grant funds to pay for food, beverages, or snacks?**

As detailed in questions #1-3 above, in general there is a need to substantiate with specificity the rationale for why paying for food and beverages with Department funds is necessary to meet the goals and objectives of a grant, but there may be circumstances when providing food or beverages at a conference is reasonable and necessary to achieve the purpose of the grant. Please see those questions for information about requirements and considerations related to food costs.

10. **May a grantee contract with a hotel under which Federal grant funds will be used to provide meals, snacks, and beverages as part of the cost for meeting rooms and other allowable conference-related costs?**

Federal grant funds may only be used for expenses that are reasonable and necessary. In planning a conference or meeting and negotiating with vendors for meeting space and other relevant goods and services, grantees may only pay for allowable costs. The fact that food and beverages are embedded in a contract for meeting space does not mean that the food and beverages are being provided at no cost to the grantee. Therefore, if the food and beverage cost is not an allowable cost, and a hotel vendor embeds food and beverage costs into a hotel contract for meeting space, the grantee should work with the hotel to have the food and beverage costs identified and removed from the contract, and have the price for the meeting space appropriately adjusted.

11. **What if a hotel or other venue provides "complimentary" beverages (e.g., coffee, tea) and there is no charge to the grantee hosting the meeting?**

The grantee has an obligation, under these circumstances, to confirm that the beverages are truly complimentary and will not be reflected as a charge to the grant in another area. For example, many hotels provide complimentary beverages to all guests who attend a meeting at their facility without reflecting the costs of those beverages in other items that their guests or, in this case, the grantee purchases. As noted above, it would not be acceptable for a vendor to embed the cost of beverages in other costs, such as meeting space, without those costs being separately allowable.

12. **May indirect cost funds be used to pay for food and beverages?**

No. The cost of food and beverages, which are related to meetings that are easily associated with a specific cost and grant objectives, are more appropriately treated as direct costs rather than indirect

5

USDOE-Contiunation_001066

costs. As noted above, Federal grant funds cannot be used to pay for food and beverages unless doing so is reasonable and necessary.

USDOE-Contiunation_001067

**13. May a grantee use <u>non-Federal</u> resources (e.g., State or local resources) to pay for food or beverages at a meeting or conference that is being held to meet the goals and objectives of its grant?**

Grantees should follow their own policies and procedures and State and local law for using <u>non-Federal</u> resources to pay for food or beverages, including its policies and procedures for accepting gifts or in-kind contributions from third parties. Grantees should be sure that any food and beverages provided with non-Federal funds are appropriate for the grantee event, and do not detract from the event's purpose. Please note that, in general, any funds that a grantee contributes to a project as part of the program's matching or cost-sharing requirement would be subject to the same rules that govern the Federal funds; therefore, the non-Federal funds used to pay for food and beverages for a meeting or conference could only be eligible for use in meeting cost-share or match obligations if Federal funds would also be allowable to pay for the food and beverages.

**14. May grantees provide meeting participants with the option of paying for food and beverages (e.g., could a grantee have boxed lunches provided at cost for participants)?**

Yes. Grantees may offer meeting participants the option of paying for food (such as lunch, breakfast, or snacks) and beverages, and arrange for these items to be available at the meeting.

<u>**Using Federal Grant Funds to Pay for Costs of Attending a Meeting or Conference Sponsored by ED or a Third Party**</u>

**15. May grantees use Federal grant funds to pay for the cost of attending a meeting or conference?**

If attending a meeting or conference is necessary to achieve the goals and objectives of the grant, and if the expenses are reasonable (based on the grantee's own policies and procedures, and State and local laws), Federal grant funds may be used to pay for travel expenses of grantee employees, consultants, or experts to attend a meeting or conference. To determine whether a meeting or conference is "necessary," grantees should consider whether the goals and objectives of the grant can be achieved without the meeting or conference and whether there is an equally effective and more efficient way (in terms of time and money) to achieve the goals and objectives of the grant (see question #6). To determine whether the expenses are "reasonable," grantees should consider how the costs (e.g., lodging, travel, registration fees) compare with other similar events and whether the public would view the expenses as a worthwhile use of Federal funds.

**16. What should a grantee consider when planning to use Federal grant funds for attending a meeting or conference?**

Among other considerations, grantees should consider how many people should attend a meeting or conference on its behalf. The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant. The grantee should also determine whether it is necessary to attend the entire meeting or conference, or whether attending only a portion of the meeting or conference is reasonable and necessary.

**17. What travel expenses may be paid for with Federal grant funds?**

7

Grantees may use Federal grant funds for travel expenses only to the extent such costs are reasonable and necessary and do not exceed charges normally allowed by the grantee in its regular operations consistent with its written travel policies. See 2 CFR § 200.475. Federal grant funds may be used to pay expenses for transportation, per diem, and lodging if the costs are reasonable and necessary. Federal grant funds may not be spent on alcohol. See 2 CFR § 200.423. Grantees should follow their own travel and per diem rules and costs when charging travel expenses to their Federal grant. In the absence of an acceptable written policy regarding travel costs, grantees must satisfy the requirements of 2 CFR § 200.475(d).

### 18. What should grantees consider when including Federal employees at a grantee-sponsored meeting or conference?

In some situations, a grantee may invite a Federal employee to participate in or present at a grantee-organized meeting or conference. Federal employees are subject to Federal ethics laws and regulations. This includes laws and regulations governing conflicts of interest and gifts (e.g., waiver of a registration fee, travel expenses, and meals). Grantees may be subject to their own ethics laws and regulations, and grantee employees should ensure that they comply with them.

### Questions Regarding the Allowable Use of Federal Grant Funds

### 19. What resources are available to help grantees determine whether costs associated with meetings and conferences are reasonable and necessary?

Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable, necessary, and allowable, especially the regulations found at 2 CFR part 200.

### 20. Is it allowable for a person whose travel costs are being paid with Federal grant funds to attend a conference in Washington, D.C., and lobby members of Congress while in town?

Appropriated funds may not, except under very limited circumstances, be used for expenses related to any activity designed to influence the enactment of legislation, appropriations, regulations, administrative actions, or Executive Orders proposed or pending before the Congress or the Administration. See 2 CFR § 200.450. To the extent that a portion of time at a conference is spent on lobbying activities, costs associated with the lobbying, including transportation to and from Washington, D.C., lodging, and per diem, may not be charged to the Federal grant. For example, if a meeting or conference lasts for two days and a visit to lobby a member of Congress requires an additional day of travel, it could be determined that one-third (1/3) of all costs involved in attending the meeting or conference, including travel to and from Washington, D.C., may not be charged to the grant.

On the other hand, educating members of Congress about facts relevant to a particular grant program would not, absent other facts, constitute lobbying. For example, it would not be considered a prohibited lobbying activity for a grantee to inform a member of Congress about its program, the services it provides, and the individuals it serves. It also would not be considered a prohibited lobbying activity to attend a presentation by members of Congress related to issues relevant to a grantee's program or the population it serves in general. However, such education-oriented

USDOE-Contiunation_001069

discussions could easily cross—or appear to cross—the thin line to prohibited lobbying activities. For example, a discussion about the challenges a grantee faces with respect to requirements governing matching funds could easily expand to a discussion about the need for more appropriated funds or legislative changes, which would constitute prohibited lobbying activities. Given that Congress frequently considers the reauthorization of ED programs, a grantee's interactions with members of Congress on such topics could meet the definition of lobbying, which is prohibited. In that case, the costs associated with those interactions could not be supported with Federal funds.

**21. What are the consequences of using Federal grant funds on unallowable expenses?**

ED may seek to recover any Federal grant funds identified, in an audit or through program monitoring, as having been used for unallowable costs, including unallowable conference expenses.

**22. Whom should grantees call if they have specific questions about the allowable use of Federal grant funds?**

ED grantees are encouraged to contact their ED program officer to discuss the allowable use of Federal grant funds, including the allowable use of Federal grant funds for meetings and conferences.

9

USDOE-Contiunation_001070

**GAN Enclosure 4**
**Revised 10/2024**

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (the Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information.

A grantee's failure to comply with cash management requirements may result in an improper payment determination by the Department in accordance with the Payment Integrity Information Act (PIIA) of 2019.

**Excessive Drawdowns**

In the context of grants, excessive drawdown refers to the situation where a grantee withdraws more funds than necessary from the grantor, which can lead to financial and compliance issues. In accordance with cash management requirements, grant funds are drawn down incrementally to cover immediate expenses related to the grant activities. If a grantee draws down excessive funds, they may be required to return the surplus along with interest. This situation can arise from poor financial management, lack of proper accounting practices, or misalignment with the grant's stipulated budget and objectives.

To avoid excessive drawdown, it is crucial for grantees to implement and maintain robust accounting systems, track expenses accurately, and adhere to the grant's budget and reporting requirements. Proper planning and monitoring of fund allocation, maintaining accurate records, and ensuring timely drawdowns aligned with actual expenses are essential practices. Additionally, grantees should be aware of the specific drawdown procedures and requirements set by the grantor, which can vary depending on whether the grant is federally funded or comes from other sources.

**Cash Management Requirements**

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department. The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1. Payments to a State under programs that are covered by a State's Treasury State Agreement (TSA);

2. Payments to States under programs that are not covered by a TSA; and

3. Payments to other non-Federal entities, including nonprofit organizations and local governments.

---

[1] The Department adopts the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

USDOE-Contiunation_001071

GAN Enclosure 4
Revised 10/2024

**CMIA Requirements Applicable to Programs included in a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A.  Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15.  If a State makes a payment under a Federal assistance program before funds for that payment have been transferred to the State, Federal Government interest liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

**CMIA Requirements Applicable to Programs Not Included in a TSA**

Payments to States under programs not covered by a State's TSA are subject to subpart B of Treasury's regulations in 31 CFR § 205.  These regulations provide that a State must minimize the time between the drawdown of funds from the federal government and their disbursement for approved program activities.  The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.  31 CFR § 205.33(a).  States should exercise sound cash management in funds transfers to subgrantees.

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b).  However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA.  31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b).  These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "For recipients and subrecipients other than States, payment methods must minimize the time elapsing between the transfer of funds from the Federal agency or the pass-through entity and the disbursement of funds by the recipient or subrecipient regardless of whether the payment is made by electronic funds transfer or by other means."  2 CFR § 200.305(b).

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the recipient or subrecipient, and financial management systems that meet the standards for fund control and accountability." 2 CFR § 200.305(b)(1).  If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement.  See 2 CFR § 200.305(b)(1) and (3) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

2

**Returning Earned Interest**

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist.  See 2 CFR § 200.305(b)(11) for those conditions.  The requirements regarding interest accrual and remittance follow:

Recipients or subrecipients may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the recipient or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment. All interest in excess of $500 per year must be returned to PMS regardless of whether the recipient or subrecipient was paid through PMS. Instructions for returning interest can be found at Returning Funds/Interest | HHS PSC FMP Payment Management Services. 2 CFR § 200.305(b)(12). Additionally, these instructions are provided below.

1.    **Returning Interest to PMS**

PMS is the central collection point for interest earned on all federal grants, whether they are paid through the Payment Management System or not.

a.    **Domestic** Automated Clearing House (ACH) Returns (Direct Deposit)

Returning funds via Automated Clearing House (ACH) means you will most likely be returning funds in the manner in which they were received at your organization.

ACH account information to be included:

- PSC ACH Routing Number is: 051036706
- PSC DFI Accounting Number: 303000
- Bank Name: Credit Gateway - ACH Receiver
- Location: St. Paul, MN

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

b.    **International** Automated Clearing House (ACH) Returns (Direct Deposit)

ACH Account Information to be Included For Payments Sent in **U.S. Dollars (USD)**:

- Beneficiary Account: Federal Reserve Bank of New York/ITS (Can abbreviate: FRBNY/ITS)
- Bank: Citibank N.A. (New York)
- SWIFT Code: CITIUS33
- Account Number: 36838868
- Routing Number: 021000089
- Bank Address: 388 Greenwich Street, New York, NY 10013

3

- Payment Details (Line 70): Agency Name (abbreviated when possible) and Agency Locator Code (ALC)
- Agency POC: James Kruper, (301) 492-4998

For a USD payment, the payment sender must include:

- **Agency Locator Code (ALC):** 75010501
- **Name:** US Department of Health and Human Services, PMS Account Number and Grant Subaccount Number in the Payment Details (Line 70) section of the SWIFT message.

This information must be in this section of the payment instructions, or the International Treasury Service (ITS) will not be able to identify the federal agency the payment is for. Without this identifying information, ITS will be required to return the payment as unidentified or unable to post. The receiving account is in the name of "Federal Reserve Bank of New York/ITS" and the payment originator should list that as the name on the beneficiary account.

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

c. FedWire Returns

Service charges may be incurred from a grantee's financial institution when a Fedwire to return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

Additionally, include the following:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

d. Check Returns (USPS Only)

Interest may be returned by check using only the U.S. Postal Service; however, returning interest via check may take 4-6 weeks for processing before a check payment may be applied to the appropriate PMS account.

4

USDOE-Contiunation_001074

- Interests returned by check are to be mailed (USPS only) to:

    HHS Program Support Center
    PO Box 979132
    St. Louis, MO 63197

A brief statement explaining the nature of the return must be included.

To return interest on a grant not paid through the PMS, make the check payable to the Department of Health and Human Services, and include the following with the check:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to: Department of Health and Human Services.

**Cash Management Monitoring Responsibilities of Pass-Through Entities**

Grantees, including grantees that act as pass-through entities and subgrantees have other responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must have procedures for determining the allowability of costs for their awards.  We highlight the following practices related to the oversight of subgrantee compliance with the financial management requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must –

1. Verify that the subrecipient is not excluded or disqualified in accordance with §180.300.  Verification methods are provided in § 180.300, which include confirming in SAM.gov that a potential subrecipient is not suspended, debarred, or otherwise excluded from receiving Federal funds.

2. Ensure that every subaward is clearly identified to the subrecipient as a subaward and includes the information identified in § 200.332(b).

3. Evaluate each subrecipient's fraud risk and risk of noncompliance with a subaward to determine the appropriate subrecipient monitoring.  See § 200.332(b) & (f).

4. Monitor the activities of a subrecipient as necessary to ensure that the subrecipient complies with Federal statutes, regulations, and the terms and conditions of the subaward.  The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. See § 200.332(e).

5. Consider taking enforcement action against noncompliant subrecipients as described in § 200.339 and in program regulations.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations.  These program-specific requirements may supplement or override general cash management or payment requirements.  If you

5

have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

6

USDOE-Contiunation_001076

**NONDISCRIMINATION DETERMINATION OF THE ASSISTANT SECRETARY
FOR CIVIL RIGHTS
FY 2025**

I make this determination under protest and solely to comply with a federal court order requiring the U.S. Department of Education to determine by June 9, 2026, the appropriate continued award amount for the grant at issue. *Board of Education of the City School District of the City of New York v. United States Department of Education,* No. 25-CV-8547 (S.D.N.Y. June 4, 2026). Please be advised that the Office for Civil Rights continues to have compliance concerns regarding your MSAP grant.

**New York City Department of Education
Community School Districts 32 and 16**

---

I have determined pursuant to 20 U.S.C. § 7231d(c), based on assurances made by the applicant and information received from DOJ, EEOC, and OCR Enforcement Offices, that the assurances described at 20 U.S.C. § 7231d(b)(2)(C) will be met:

1. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the hiring, promotion, or assignment of its employees or other personnel for whom it has administrative responsibility.

2. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the assignment of students to its schools or to courses of instruction within its schools.

3. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the design or operation of extracurricular activities.

Kimberly M. Richey
Assistant Secretary for Civil Rights
United States Department of Education

Date: 6/9/2026

USDOE-Contiunation_001077

## NONDISCRIMINATION DETERMINATION OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS
### FY 2025

I make this determination under protest and solely to comply with a federal court order requiring the U.S. Department of Education to determine by June 9, 2026, the appropriate continued award amount for the grant at issue. *Board of Education of the City School District of the City of New York v. United States Department of Education,* No. 25-CV-8547 (S.D.N.Y. June 4, 2026). Please be advised that the Office for Civil Rights continues to have compliance concerns regarding your MSAP grant.

### New York City Department of Education
### Community School Districts 28 and 29

---

I have determined pursuant to 20 U.S.C. § 7231d(c), based on assurances made by the applicant and information received from DOJ, EEOC, and OCR Enforcement Offices, that the assurances described at 20 U.S.C. § 7231d(b)(2)(C) will be met:

1. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the hiring, promotion, or assignment of its employees or other personnel for whom it has administrative responsibility.

2. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the assignment of students to its schools or to courses of instruction within its schools.

3. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the design or operation of extracurricular activities.

Kimberly M. Richey
Assistant Secretary for Civil Rights
United States Department of Education

Date: 6/9/2026

USDOE-Contiunation_001078

## NONDISCRIMINATION DETERMINATION OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS
### FY 2025

I make this determination under protest and solely to comply with a federal court order requiring the U.S. Department of Education to determine by June 9, 2026, the appropriate continued award amount for the grant at issue. *Board of Education of the City School District of the City of New York v. United States Department of Education,* No. 25-CV-8547 (S.D.N.Y. June 4, 2026). Please be advised that the Office for Civil Rights continues to have compliance concerns regarding your MSAP grant.

### New York City Department of Education
### Community School Districts 19 and 27

---

I have determined pursuant to 20 U.S.C. § 7231d(c), based on assurances made by the applicant and information received from DOJ, EEOC, and OCR Enforcement Offices, that the assurances described at 20 U.S.C. § 7231d(b)(2)(C) will be met:

1. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the hiring, promotion, or assignment of its employees or other personnel for whom it has administrative responsibility.

2. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the assignment of students to its schools or to courses of instruction within its schools.

3. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the design or operation of extracurricular activities.

Kimberly M. Richey
Assistant Secretary for Civil Rights
United States Department of Education

Date: 6/9/2026

USDOE-Contiunation_001079

## NONDISCRIMINATION DETERMINATION OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS
## FY 2025

I make this determination under protest and solely to comply with a federal court order requiring the U.S. Department of Education to determine by June 9, 2026, the appropriate continued award amount for the grant at issue. *Board of Education of the City School District of the City of New York v. United States Department of Education*, No. 25-CV-8547 (S.D.N.Y. June 4, 2026). Please be advised that the Office for Civil Rights continues to have compliance concerns regarding your MSAP grant.

**New York City Department of Education**
**Community School Districts 7, 10, and 11**

I have determined pursuant to 20 U.S.C. § 7231d(c), based on assurances made by the applicant and information received from DOJ, EEOC, and OCR Enforcement Offices, that the assurances described at 20 U.S.C. § 7231d(b)(2)(C) will be met:

1. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the hiring, promotion, or assignment of its employees or other personnel for whom it has administrative responsibility.

2. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the assignment of students to its schools or to courses of instruction within its schools.

3. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the design or operation of extracurricular activities.

Kimberly M. Richey
Assistant Secretary for Civil Rights
United States Department of Education

Date:  6/9/2026

USDOE-Contiunation_001080

## NONDISCRIMINATION DETERMINATION OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS
## FY 2025

I make this determination under protest and solely to comply with a federal court order requiring the U.S. Department of Education to determine by June 9, 2026, the appropriate continued award amount for the grant at issue. *Board of Education of the City School District of the City of New York v. United States Department of Education*, No. 25-CV-8547 (S.D.N.Y. June 4, 2026). Please be advised that the Office for Civil Rights continues to have compliance concerns regarding your MSAP grant.

**New York City Department of Education
Community School Districts 2, 4, and 6**

---

I have determined pursuant to 20 U.S.C. § 7231d(c), based on assurances made by the applicant and information received from DOJ, EEOC, and OCR Enforcement Offices, that the assurances described at 20 U.S.C. § 7231d(b)(2)(C) will be met:

1. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the hiring, promotion, or assignment of its employees or other personnel for whom it has administrative responsibility.

2. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the assignment of students to its schools or to courses of instruction within its schools.

3. The applicant will not engage in discrimination based on race, color, national origin, religion, disability, or sex in the design or operation of extracurricular activities.

Kimberly M. Richey
Assistant Secretary for Civil Rights
United States Department of Education

Date: 6/9/2026

USDOE-Contiunation_001081