UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK,

                         Plaintiff,

                v.

UNITED STATES DEPARTMENT OF EDUCATION, et
al.,

                       Defendants.

---------------------------------------------------------------------------x

                  No. 25-cv-08547 (AS)

**PLAINTIFF'S REVISED MEMORANDUM OF LAW
IN SUPPORT OF SECOND MOTION TO ENFORCE SUMMARY JUDGMENT ORDER**


Dated: New York, New York
      July 24, 2026

STEVEN BANKS
Corporation Counsel of
 the City of New York
100 Church Street
New York, New York 10007
(212) 356-2276

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

       The Court's April 8 and June 4 Orders ...................................................... 3

       Defendants' Actions Since the Court's June 4 Order ................................. 5

       There Can be No Other Conclusion But That
       Defendants' Actions Since June 4 Are Based on
       Title IX or 'Civil Rights Violations' Related to Title
       IX ........................................................................................................... 13

       The Consequences for NYCPS of Defendants'
       Failure to Comply .................................................................................. 16

ARGUMENT .................................................................................................................. 17

     A.   The Court Has Inherent Authority to Enforce
         its April 8th and July 4 Orders............................................................. 17

     B.   USDE Has Violated the April 8 and June 4
         Orders by Reducing the FY2026 Grant Awards
         and Imposing an Onerous Reimbursement
         Condition on the Basis of Title IX Violations or
         Civil Rights Violations Relating to Title IX..................................... 19

     C.   This Court Should Issue a Further Order
         Enforcing its April 8 and June 4 Orders ........................................... 21

CONCLUSION................................................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Pompeo*,
No. 16-CV-3691-SJB, 2020 WL 6435834
(E.D.N.Y. Nov. 2, 2020) .................................................................................................18

*Boim v. Am. Muslims for Palestine*,
9 F.4th 545 (7th Cir. 2021) ............................................................................................17

*City of Chicago v. United States Dep't of Homeland Sec.*,
No. 25 C 5463, 2026 WL 353581
(N.D. Ill. Feb. 9, 2026)...................................................................................................18

*Degen v. United States*,
517 U.S. 820 (1996).......................................................................................................18

*Heartland Hosp. v. Thompson*,
328 F. Supp. 2d 8 (D.D.C. 2004),
*aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005) .........................................................................................18

*Int'l Ladies' Garment Workers' Union v. Donovan*,
733 F.2d 920 (D.C. Cir. 1984) .......................................................................................18

*Tangtiwatanapaibul v. Tom & Toon Inc.*,
No. 1:17-CV-0816 (KHP), 2025 WL 384545
(S.D.N.Y. Feb. 4, 2025) .................................................................................................17

*United States v. Spallone*,
399 F.3d 415 (2d Cir. 2005)...........................................................................................18

**Statutes**

34 C.F.R. § 75.251(b)(2)..................................................................................................21

34 C.F.R. § 75.253(e)......................................................................................................20

20 U.S.C. § 7231d(b)(2)(C) .............................................................................................14

20 U.S.C. § 7231d(c) ..................................................................................................13, 14

**PRELIMINARY STATEMENT**

After Plaintiff, the Board of Education of the City School District of the City of New York (Operating as New York City Public Schools ("NYCPS")) filed this motion to enforce the Court's Orders issued on April 8, 2026 and June 4, 2026, the Court found that it "[could] not determine on the current record on what basis defendants (1) reduced the grant amount and (2) non-continued the grants." The Court therefore directed Defendants to file an administrative record, and any declarations on which they wished to rely as the basis for their actions. Order dated July 13, 2026, ECF Dkt. 112 ("July 13 Order"). The Order also permitted NYCPS to revise its moving brief to address the record provided by Defendants, which it now does.

The administrative record (the "Record")[1] and declarations filed by Defendants on July 20, 2026 confirm that the United States Department of Education ("USDE") reduced NYCPS' grant amounts and truncated the grant award periods, and imposed onerous reimbursement requirements, in violation of this Court's June 4, Order that Defendants determine appropriate continued award amounts, and issue Grant Award Notifications ("GANs") reflecting those award determinations. USDE's actions are inextricably linked to the grant non-continuations that this Court previously vacated. They are, in no uncertain terms, *fruit of the poisonous tree*. Indeed, despite being offered the opportunity to identify some other, lawful basis for their actions, Defendants have failed to do so. Instead, Defendants provide the Court with no alternative basis

---

[1] The Record filed by Defendants on July 20, 2026, consists solely of the following documents, submitted as to each of the MSAP grants:

ECF Dkt. 113-5: Performance reports for the period Oct. 1, 2024 through Sept. 30, 2025, submitted by NYCPS on May 1, 2026 (1-232); Performance reports for the period Oct. 1, 2025 through March 31, 2026, submitted by NYCPS on May 15, 2026 (233-766);

ECF Dkt. 113-6: Carryover budgets for the period Oct 1, 2025 through June 30, 2026 (submitted by NYCPS on Dec. 1, 2025 pursuant to Consent Order) (1-15); GANs issued on June 9, 2026 (16-310); USDE certifications of civil rights compliance, dated June 9, 2026 (311-315);

For the convenience of the Court, the Record is cited throughout using both the page numbers of the ECF filings as well as the bates numbers used by USDE.

for their actions, asserting simply that they have a statutory grant of discretion. Their silence on this point must be taken as confirmation that their recent actions are linked to their prior unlawful Title IX violations.

As for the non-continuation of the grants, Defendants' declarants assert that the grant system automatically, but erroneously, inserted into the GAN provisions suggesting the grants were being discontinued at the end of FY 2027. This system error was a direct consequence of USDE's failure to comply with this Court's April 8 vacatur of the non-continuations by restoring the grants' original 5-year performance periods. However, in light of Defendants' explanation, NYCPS limits this motion to a request to enforce the April 8 and June 4 Orders as to the following issues: USDE's reduction of the grant awards, and the related decision to place the grants on Reimbursement Pay status. NYCPS also intends to separately assert that Defendants' recent actions were undertaken in violation of MSAP and GEPA rules, and are arbitrary and capricious.

This Court has inherent authority to enforce its orders and to protect its proceedings, and should do so here by vacating the GANs issued on June 9 and ordering USDE to forthwith issue GANs with grant awards for the entirety of FY2026 that are consistent with USDE's prior practice (*i.e.* from the acknowledged starting point of the requested and recommended average award amount for each grant); without considering or relying on the budget provided by NYCPS to facilitate interim relief under the November 20, 2025 Consent Order, or otherwise perpetuating the harmful effects of USDE's unlawful—and since vacated—September 16, 2025 non-continuation determinations; and without relying explicitly or implicitly, on Title IX findings or "civil rights violations" related to Title IX without following Title IX procedures.

## BACKGROUND

The relevant facts are set forth in the declarations and exhibits previously submitted in this action, together with the Declaration of Melanie Ash dated July 10, 2026 ("Ash July 10

2

Decl." ECF Dkt. 109), the Declaration of Todd Levitt in Support of Plaintiff's Second Motion to Enforce This Court's Orders, dated July 10, 2026 ("Levitt July 10 Decl." ECF Dkt. 108), and exhibits thereto, both of which were previously submitted in support of this motion. NYCPS also relies on the declarations submitted by Defendants in response to the Court's July 13 Order.

**The Court's April 8 and June 4 Orders**

By Order issued on June 4, 2026 ("June 4 Order"), ECF Dkt. 104, this Court found that Defendants had failed to comply with its Opinion and Order of April 8, 2026 ("April 8 Order"). In the April 8 Order, this Court granted summary judgment to NYCPS, vacated Defendants' non-continuation determinations with respect to five NYCPS Magnet School Assistance Program ("MSAP") grants for the current year, fiscal year ("FY") 2026, and ordered Defendants to make a continuation determination with respect to each of the grants within ten days of issuance of the Order. ECF Dkt. 83, at 10. Defendants were also permanently enjoined from "non-continuing MSAP grants to NYCPS based on Title IX findings or 'civil rights violations' related to Title IX without following the required Title IX procedures." *Id.*

Since then, Defendants have repeatedly failed to comply with the April 8 Order, running out the school year clock and, as a practical matter, implementing the same non-continuation decisions that the Court found unlawful. Defendants purported to comply with the April 8 Order by issuing notices on April 17, 2026 (the "April 17 Notices"), that the five MSAP grants were continued for FY 2026, but without making grant awards for the continued grants. On April 20, 2026 they issued GANs with zero-dollar grant awards. ECF Dkt. 87, Declaration of Todd Levitt dated May 14, 2026 ("Levitt May 14 Decl."), ¶¶ 5-8; ECF Dkt. 87-1 (April 17 Notices); ECF Dkt. 87-2 (April 20, 2026 GANs).

When the April 17 Notices were issued, USDE already possessed all the information they would have had in the usual course to make a continuation decision before the start of the 2025-

3

2026 federal fiscal year. Notwithstanding that fact, Defendants asserted in the April 17 Notices, and in emails sent on April 22, 2026 (after the April 8 Order's 10-day deadline), that they needed additional performance and financial information covering two additional time periods: the second half of the previous grant year (April through September 2025) and the first half of the current grant year (October 2025 through March 2026) in order to make the awards. Levitt May 14 Decl., ECF Dkt. 87, ¶¶ 7, 9; ECF Dkt. 87-3 (April 22 emails). Defendants set a deadline of May 15, 2026 to receive that information.

Despite the irregularity of these requests, in an attempt to resolve the matter, NYCPS submitted the first category of information on May 1, 2026. Levitt May 14 Decl., ECF Dkt. 87, ¶¶ 11-13. Having received no grant awards by May 14, NYCPS moved to enforce the April 8 Order. On May 15, 2026, NYCPS submitted the second category of information. *Id.* ¶ 14.

On June 4, 2026, the Court heard argument on NYCPS' motion. On the record, the Court reiterated its conclusion that Defendants had forfeited any argument going to the scope of the injunction, Tr. of Arg, at 33-34, and held that Defendants failed to show any basis in the MSAP regulations for their position that they could comply with the April 8 Order by merely issuing a determination that the grants' budget periods would continue without making an accompanying grant award. *Id.* at 34-35. The June 4 Order granted NYCPS' motion to enforce "for the reasons stated on the record at the June 4, 2026, hearing," and directed Defendants by June 9, 2026, "to determine the appropriate continued award amount for the grants at issue," including "any determination that serves as the predicate for the funding of the grants," and to "issue GANs reflecting these award determinations." ECF Dkt. 104.

4

**Defendants' Actions Since the Court's June 4 Order**

**The June 5, 2026 Requests for Additional Information**. Late in the day on Friday, June 5, 2026, NYCPS' MSAP program directors each received an email from an attorney with USDE's Office for Civil Rights requesting additional information about one performance metric in the budget and performance reports NYCPS had submitted, and demanding a response by noon on Monday, June 8, 2026. Levitt July 10 Decl., ¶ 6.

NYCPS' counsel promptly contacted counsel for Defendants objecting to the requests, noting that they were improper in light of the June 4 Order, as the Court had clearly stated the previous day that USDE's ability to seek additional information was forfeited, and asking that USDE retract them. Ash July 10 Decl., ¶ 3 and Exhibit A; Levitt July 10 Decl., ¶ 7. While Defendants' counsel requested that the objections be put in writing and agreed to pass them on to Defendants, USDE did not otherwise respond: it neither retracted its requests for information, nor took any steps to follow up on the requests. Ash July 10 Decl., ¶ 3; Levitt July Decl., ¶ 8.[2]

**The June 9, 2026 GANs**. On June 9, 2026, Defendants issued five new GANs to NYCPS. Levitt July 10 Decl., ¶ 9 and Exhibit A; ECF Dkt. 113-6, USDOE-Continuation_000784 - 001076. The contents of those GANs make clear that Defendants have again failed to comply with this Court's Orders in several ways: first, the GANs purported to issue grant awards for FY2026, but they were dramatically reduced in amount, and truncated, covering only the final 3 months of the federal grant year, from July 1 – September 30, 2026. *See* ECF Dkt. 113-1, Declaration of Murray Bessette ("Bessette July 20 Decl.") at ¶¶ 5-7. Second, the GANs stated that FY2026 would be the final budget period for the grants, appearing to announce another non-

---

[2] On June 23, 2026, USDE again requested the additional information it had sought on June 5. NYCPS timely provided it on July 8, 2026. Levitt July10 Decl., ¶ 8.

continuation of the grants, beginning October 1, 2026. *See* ECF Dkt. 113-6 at 18 (USDOE-Continuation_000784); 77 (USDOE-Continuation_000843); 136 (USDOE-Continuation_000902); 195 (USDOE-Continuation_000961); 254 (USDOE-Continuation_001020). Third, the GANs purport to impose a punitive "reimbursement pay status" on NYCPS' truncated grant awards. *See*, *e.g.*, ECF Dkt. 113-6 at 20, ¶ 6 (USDOE-Continuation_000786 at ¶ 6).

**The Reduced and Truncated Awards**. *First,* USDE applied an unprecedented method of calculating the grant awards that sharply reduced both the funding period and the amounts. In USDE's initial GANs for these grants, issued at their inception, the expected amount of new funding is set out for the first grant year (e.g. October 1, 2022 to September 30, 2023) and then for each of the following four years, and is uniformly $2,999,999 each year. USDE stated in those initial GANs that although the future stated grant amounts were not binding, USDE expected that they would be uniform over the full course of the grant performance period: "[t]he Secretary anticipates future funding for this award according to the schedule identified in Block 6." Declaration of Seritta Scott dated October 15, 2025 ("Scott Decl."), ECF Dkt. 32, ¶ 9; ECF Dkt. 32-1 at 2-3, 8-9, 14-15, 20-21, 26-27 (GANs Block 6). Subsequent continuation GANs consistently show the same five-year expected duration of the grants, with the same consistent award amounts. *See*, Declaration of Jennifer Todd, dated October 29, 2025 ("Todd Oct. 29 Decl."), Exhibit 4, ECF Dkt. 25-4, Block 6.

In the June 9 GANs, however, USDE abandoned this practice and adopted a new funding methodology that resulted in major reductions in the FY2026 grants. *See* Bessette July 20 Decl., ECF Dkt. 113-1 ¶¶ 5-7. It imposed an offset against the grant amounts based on NYCPS' access to and use of FY2025 carryover funds this year. Levitt July 10 Decl., ¶¶ 9-10, Exhibit A, Block

10. As this Court will recall, NYCPS moved for a preliminary injunction in October 2025 at the outset of this action to obtain interim relief pending the litigation, because USDE had non-continued its grant funding for FY2026 and denied NYCPS access to essential carryover funds from the previous grant year, FY2025. Without access to this carryover funding, the MSAP projects would have had no available federal funding for FY2026, effective immediately. This Court ordered on November 12, 2025 that USDE's counsel consult with his client to determine whether USDE would allow NYCPS to access the carryover funding during the pendency of the litigation. ECF Dkt. 33. The parties entered into a Consent Order on November 20, 2025 to resolve the motion. In connection with the Consent Order, on December 1, 2025, NYCPS submitted a budget for each grant recipient's planned use of the carryover funds through the end of the 2025-2026 school year, June 30, 2026. *See* ECF Dkt. 42.

That budget was not submitted in connection with new grant funding for FY2026. Rather, it was submitted as an interim budget to demonstrate how NYCPS would use the carryover funds "during the pendency" of a planned motion for summary judgment seeking an order that USDE's non-continuation of the FY2026 grants was unlawful. *Id.* Indeed, the Consent Order expressly noted that NYCPS was withdrawing its motion for preliminary injunction "without prejudice"— language that was repeated in the Court's memo-endorsement—and stipulated to expedited scheduling of the parties' cross-motions for summary judgment. *Id.*

The June 9 GANs mischaracterized and obfuscated the agreed-upon nature of the interim budgets NYCPS submitted pursuant to the Consent Order ("The grantee submitted and received approval of its budget through June 30, 2026"). Levitt July 10 Decl., ¶¶ 9-10, Exhibit A, Block 10, Item 6. *See* Bessette July 20 Decl., ECF Dkt. 113-1, ¶ 6(b). USDE then truncated the FY2026 new grant awards to reflect new funding for only the last quarter of the grant year, July through

September 2026, and reduced the award for each grant from the expected $2,999,999 to a stub amount, as follows:

(1) It limited the grant award period for the current grant year, FY2026, to the last quarter, July through September.

(2) As to that period, based on alleged "limited information regarding the specific activities taking place in the last quarter of the performance period, and therefore the anticipated obligations of funds to be made," and putting to the side its decades-long practice of issuing continuation awards based on the initial and APR budgets, USDE calculated new grant funding only for the last quarter of the 2025-2026 grant year by dividing the "annual requested and recommended average award amount for [each] grant ($3,000,000) by the 12-month fiscal year period, resulting in an average monthly amount of $250,000, or $750,000 for the three-month continuation period." Levitt July 10 Decl., ¶¶ 9-10, Exhibit A, Block 10, Item 6; Bessette July 20 Decl., ¶ 6(b).

(3) Using $750,000 as the starting point, USDE then further reduced four of the grants by deducting from each grant the amount of carryover funds still remaining as of May 27, 2026, based on the information set forth in the Supplemental Declaration of Todd Levitt dated May 27, 2026 ("Levitt May 27 Decl."), ECF Dkt. 96. Bessette July 20 Decl., ECF Dkt. 113-1, ¶¶ 5-6.

(4) The resulting grant awards ranged from $497,869 to $750,000.

These changes in methodology were unprecedented and unexplained, and relied entirely on interim relief agreed to in the Consent Order as a temporary measure to allow the magnet schools to continue to operate—albeit on a forced austerity budget due to the unlawful non-continuations that are the subject of this litigation—pending NYCPS' request for vacatur of the

unlawful non-continuation of the grants.

USDE had also never before used available funds carried over from prior years to justify providing only truncated new funding for the grant awards. This is because carryover funds are an integral and standard element in the lifetime of each MSAP grant, given that the timing of grantees' access to new grant funds does not align with the school calendar, but instead is based on the federal fiscal year. For that reason, the initial grant award, which is always received well into the school year, can effectively only be used for planning and initial implementation activities in year 1 of the grant. This results in unused funds at the end of year 1 that are carried over to the following year. In each subsequent grant year, the grant award again arrives after the school year is already underway, and schools operate using the prior year's carryover funds until the arrival of the next year's grant funding, resulting in some portion of the new grant year funding being carried over at the conclusion of the year. *See* Declaration of Melissa Aviles-Ramos dated October 15, 2025 ("Aviles-Ramos Decl."), ECF Dkt. 6, ¶ 11; Scott Decl., ECF Dkt. 32, ¶ 12.

As a result of this school year/grant funding year mis-alignment, the MSAP regulations provide grant recipients a 12-month period at the end of the grant, under a no-cost extension, to enable the use of remaining carryover funds to continue into a sixth year, allowing for an orderly wind-down of the grants. 34 C.F.R. § 75.253(h).

Defendants' July 20, 2026 submissions, *see* ECF Dkt. 113, make clear that despite being ordered by this Court to determine the "appropriate continued award amount," for each grant, June 4 Order, ECF Dkt. 104, the June 9 GANs actually did the opposite: they disregarded MSAP regulation 34 C.F.R. § 75.253(h)—which facilitates the longstanding function of carryover funding—and USDE's own consistent prior practice.

9

Mr. Bessette's declaration does not address the standard expectation of, and reliance on, carryover funding. Instead, he asserts only that he has the discretion to set an appropriate amount of funds; that amounts are based on grantee performance, existing carryover funds, "entity risk reviews," and "other appropriate information"; that funding amounts as provided in initial GANs are not guaranteed; and that in setting the appropriate amounts in the June 9 GANs, USDE relied upon a formula. Bessette July 20 Decl., ECF Dkt. 113-1, ¶¶ 2-7. The formula, as set out and "explained" in the Bessette July 20 Declaration, *id.* ¶¶ 5-7, is no more informative than it was in the June 9 GANs themselves.[3]

Mr. Bessette also does not address how the factors he lists, *id.* ¶ 3, were used in determining the NYCPS grants, other than to reduce the awards through the unprecedented deduction of carryover funds. There is no mention of the schools' performance, "entity risk reviews," or any other "appropriate information." Aside from the calculation method itself, there is no explanation for why Defendants departed from their consistent prior practice of awarding the expected grant amounts, set out in the initial GANs, without deducting any carryover funds. Nor does Mr. Bessette explain why USDE treated the Consent Order—an interim remedial measure with a sole purpose of enabling the magnet schools to function during the FY2026 school year pending the resolution of NYCPS' claims—as permitting them to substitute carryover funds from prior years for a new grant award for FY2026, thereby effectively relieving USDE of any obligation to provide a grant for three quarters of the October 1, 2025 - September 30, 2026 budget period.

Mr. Bessette purports to represent that "the Department did not consider any alleged or

---

[3] In fact, it is less informative. Mr. Bessette presents a chart, *id*. ¶ 7, with unexplained columns listing "Total amount of funds available for FY 26" in dollar amounts and as a percentage of the "Annual Requested & Estimated Average Award Amount." He fails to state how these amounts were calculated.

actual civil rights compliance concerns, including those regarding Title IX" in determining the funding amounts. *Id.* ¶ 8. However, that statement is entirely unconvincing when weighed against Defendants' failure to provide any reasoning—other than the existence of budgets submitted to facilitate interim relief from the September 2025 non-continuations—to support their departure from prior practice, and in light of Defendants' repeated objections to providing these continuation grants, as stated in the April 17, 2026 Notices and the June 9 GANs.

In short, despite being offered the opportunity to do so by this Court, USDE has failed to provide any factually-supported explanation for its actions, leaving only the conclusion that they represent a continuing failure, consistent with their repeated expressions of "protest" of this Court's April 8 and June 4 Orders, to comply with the Court's Orders vacating the non-continuations.

**The Apparent Grant Cut-offs**. *Second*, in addition to the massive reduction in the FY2026 grants, the June 9 GANs expressly state that the 2026 budget period will be the final budget period for each of the grants. If true, that would have put all five grants into a wind-down posture after September 30, 2026, meaning that the grants would not be continued or would be terminated effective after that date. Levitt July 10 Decl., ¶¶ 11-12; ECF Dkt. 113-6 at 18 (USDOE-Continuation 000784); 77 (USDOE-Continuation_000843); 136 (USDOE-Continuation_000902); 195 (USDOE-Continuation_000961); 254 (USDOE-Continuation_001020). In the letter and declarations submitted by USDE in connection with its opposition to NYCPS' second motion to enforce, USDE portrays this apparent grant discontinuation as a mistake: an automatic "glitch" of the system based on USDE's allegedly temporary truncation of the stated performance period of the grants caused by its provision of funding for FY2026 only. *See, e.g.* ECF Dkt. 113 at 1; Declaration of Jennifer Todd dated July

11

20, 2026, ECF Dkt. 113-2 ("Todd July 20 Decl.") at ¶¶ 5-7. Based on Defendants' representations to the Court under penalty of perjury that in fact USDE has not discontinued or otherwise yet even made continuation determinations with respect to FY2027 (the October 1, 2026 – September 30, 2026 grant year), NYCPS withdraws without prejudice the allegations in this motion that USDE has unlawfully discontinued the grants for FY2027.

That said, USDE's representations that the system was programmed to "automatically treat the grant as being in its final year" based on the performance period reflected in the GANs is further evidence that the irregularities that continue to affect NYCPS' grants are a direct consequence of the unlawful non-continuations. Typically—and but for the unlawful non-continuations carried out by USDE before being vacated as unlawful by this Court—the performance periods for these grants would have reflected the entirety of the grants' original 5-year grant periods. After this Court vacated the non-continuations, rather than restoring the 5-year performance periods that existed in the initial GANs, as necessitated by the Court's vacatur of the non-continuations, USDE only restored the performance and budget periods for the current, FY2026 (October 1, 2025 - September 30, 2026) grant year. This begrudging action, which required intervention by this Court, demonstrates that the failure to properly restore the grants to their prior status has allowed the ripple effects of the non-continuations to prejudice NYCPS and the magnet schools.

**The Imposition of an Onerous Reimbursement Condition.** In addition to drastically reducing the typical grant awards and the funded grant award period—providing only a truncated three months of FY2026 funding—the GANs have also imposed an onerous and unusual pre-reimbursement approval process on NYCPS for the remainder of the current budget period, requiring that the grantees seek pre-approval for all future expenditures, pay for those

12

expenditures using their own funds, and submit documentation that substantiates that their expenditures are allowable under the grant **before** being allowed to draw down for reimbursement. Levitt July 10 Decl., ¶ 13, Exhibit A; ECF Dkt. 113-6 at 20 ¶ 6, USDOE-Continuation 000786; Todd July 20 Decl., at ¶¶ 8-9. Like the unprecedented award reductions, the GANs included no explanation for this change in reimbursement method. Likewise, neither the new Administrative Record nor the July 20, 2026 declarations submitted by Defendants even attempt to justify the imposition of reimbursement pay status. *Id.*

**There Can be No Other Conclusion But That Defendants' Actions Since June 4 Are Based on Title IX or 'Civil Rights Violations' Related to Title IX**

Defendants have provided no explanation for adopting this novel practice for calculating grant award amounts for these MSAP grants or for imposing pre-reimbursement approval requirements. However, what the GANs do emphasize is USDE's ongoing objections to the Court's April 8 Opinion and Order overturning the non-continuation of the grants:

> Consistent with the Department's original April 17, 2026, Notice of Continuation Determination, as noted earlier, **this award amount, as well as the certification required under 20 U.S.C. 7231d(c) is provided under protest and solely to comply with the court order requiring the Department to determine by June 9, 2026, the appropriate continued award amount for the grant at issue**.

Levitt July 10 Decl., Exhibit A, ECF Dkt. 113-6 at 20 ¶ 6, USDOE-Continuation 000786 (emphasis added).[4]

USDE has from the beginning of this case relied on 20 U.S.C. § 7231d(c) as the basis for non-continuing the MSAP grants. That section provides that the Assistant Secretary for Civil

---

[4] Defendants state that the certifications, ECF Dkt 113-6 at 311-315; USDE-Continuation_001077-001081, are required for grant continuation determinations. Declaration of Joseph Wheeler, ECF Dkt 113-3 at ¶¶ 5-6. As NYCPS explained in its memorandum of law in support of its motion for summary judgment, however, the certification requirement applies only to applications for new grants. *See*, Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, dated December 16, 2025, ECF Dkt 52, pp. 4-5.

Rights must determine that certain assurances given by the grant applicant will be met. Those assurances, set out in 20 U.S.C. § 7231d(b)(2)(C), are that the applicant "will not engage in discrimination based on race, religion, color, national origin, sex, or disability in

(i)     The hiring, promotion, or assignment of employees of the applicant or other personnel for whom the applicant has any administrative responsibility;

(ii)    The assignment of students to schools, or to courses of instruction within the schools, of such applicant, except to carry out the approved plan; and

(iii)   Designing or operating extracurricular activities for students

This is the statutory provision that USDE's Assistant Secretary Trainor relied on in his September 16, 2025 letter to NYCPS that conveyed USDE's "findings" that NYCPS' Guidelines violate Title IX. ("As a result of these findings, I will not certify NYC DOE's grant under 20 U.S.C. § 7231d(c).") Aviles-Ramos Decl., ECF Dkt. 6, ¶ 6 and Exhibit 1.

Further, USDE's current internal policy guidance to program staff and leadership of its grantmaking offices demonstrates that its actions here are similarly based on Title IX findings, in violation of the Court's Order. On June 5, 2025, USDE's Office of Planning, Evaluation and Policy Development ("OPEPD") issued a memorandum "to provide guidance to program offices regarding the review criteria . . . to be used in considering non-competing continuation (NCC) awards in discretionary grant portfolios and no cost extensions." ("USDE Policy Memo"). A copy of the USDE Policy Memo is annexed as Exhibit B to the Declaration of Melanie Ash previously submitted in support of this motion. ECF Dkt. 109; 109-2. As set forth more fully below, that guidance memo directs that continuation grant award decisions *shall* include consideration of Title IX and "civil rights violations." [5]

---

[5] Notably, this document was nevertheless not included by USDE in the initial Administrative Record produced in this case, nor does it form part of the Administrative Record filed on July 20, 2026. ECF Dkt 113-5, 113-6.

The guidance, which was operative at the time of the unlawful non-continuation determination in September 2025, remains in effect. On June 1, 2026, USDE Assistant Secretary for OPEPD Murray Bessette submitted the USDE Policy Memo as an exhibit to his declaration in *State of California, et al. v. U.S. Department of Education, et al.*, 25-cv-10548 (D. Mass.), ECF Dkt 155, 155-1. In his declaration, Assistant Secretary Bessette admitted that the USDE Policy Memo has been the operative guidance to program offices since its issuance on June 5, 2025. Bessette Decl., Exhibit B to Ash Decl. ECF Dkt. 109, at ¶¶ 2, 5-6.

The USDE Policy Memo clearly states USDE's position regarding its interpretation of Title IX and confirms that such considerations must form part of the grant continuation and funding analysis:

> … grantees must not use federal funds in any manner that violates . . . Title IX. . . . To the extent that a grantee uses or has used grant funds in a manner that violates these laws, program offices *must* make appropriate recommendations, including denial of continuation funding . . . ." Policy Memo, Exhibit B to Ash Decl., at p. 1.
>
> Program offices, in reviewing each discretionary grant award for an NCC award, *shall review each grant to ensure that grant funds are not supporting any discriminatory activities*, such as . . .
>
> -   allowing males into female-only sports
>
> -   allowing males into female intimate spaces (e.g. bathrooms, locker rooms)." *Id.*, p. 2. (emphasis added).

This guidance was in effect for the September 2025 non-continuation decision, which the Court vacated in its April 8 Order as unlawful. As Assistant Secretary Bessette's June 1, 2026, declaration demonstrates, this memorandum—and the mandate to be governed by USDE's interpretation of Title IX—remained in effect for USDE's issuance of the June 9 GANs, in violation of the Court's April 8 Order. *Id.*

USDE's June 2025 Policy Memo, together with Defendants' strenuous objection to

15

providing the certification of the grantee's compliance with civil rights in connection with both the April l7, 2026 Notice of Grant Continuations and the June 9 GANs, and the absence of any legitimate attempt in the GANs to otherwise explain USDE's novel methodology for determining the grant awards and its imposition of the onerous Reimbursement Pay Status condition, demonstrate that Defendants are plainly still taking actions against NYCPS' MSAP grants on the same basis stated by Assistant Secretary Trainor—the purported finding that NYCPS' Guidelines violate Title IX. Defendants' submissions on July 20, 2026 do nothing to rebut this conclusion.

**The Consequences for NYCPS of Defendants' Failure to Comply**

USDE's ongoing failure to issue grant awards for the 2026 federal fiscal year in compliance with this Court's Orders has caused and is continuing to cause serious harms to the 19 magnet schools. Levitt May 14 Decl., ECF Dkt. 87, ¶¶ 15-25; Levitt May 27 Decl., ECF Dkt. 96, ¶¶ 11-13; Levitt July 10 Decl., ¶ 15. As a result of USDE's actions, the NYCPS MSAP grants are now confronting the same type of uncertainty they faced last September, but this time exacerbated by the absence of carryover funds to rely on: because NYCPS was forced to expend the FY2025 carryover funds for school operations this year, it has only small amounts—and in some cases, negative balances—remaining.

The programs were forced to forego summer programming this year, including planning and curriculum development for the upcoming school year, professional development sessions for staff (including workshops for newly hired teachers), and summer enrichment activities for students. Levitt May 14 Decl., ECF Dkt. 87, ¶¶ 17-21; Levitt July 10 Decl., ¶ 15. The uncertainty and continued delay in grant awards makes it impossible for the schools to plan for the upcoming year, including for programming, recruitment, and hiring of staff. Levitt May 14 Decl., ECF Dkt. 87, ¶¶ 15-25; Levitt July 10 Decl., ¶ 15. With the carryover funding essentially exhausted, the loss of funding from the June 9 GANs is detrimental to these schools and their programs. Levitt

16

May 27 Decl., ECF Dkt. 96, ¶ 17; Levitt July 10 Decl., ¶¶ 14-15.

## ARGUMENT

In the April 8 Order, this Court permanently enjoined Defendants from "non-continuing MSAP grants to NYCPS based on Title IX findings or 'civil rights violations' related to Title IX without following the required Title IX procedures." ECF Dkt. 83, at 10. The Court further directed Defendants to make new grant continuation determinations within ten days. Defendants themselves determined to continue the grants for the current year. After first flouting the April 8 Order by making continuation determinations without any grant funding award, and then being ordered in the June 4 Order to make the funding determinations, Defendants have now continued their non-compliance by making new awards that can only be reasonably understood as based on the same Title IX violation defendants relied on in September 2025 to non-continue this year's grants.

As the April 17, 2026 Notices of Grant Continuation and the June 9 GANs themselves make clear, Defendants made these grant awards solely because they were compelled to by the April 8 and June 4 Orders. They continue to oppose making these awards and specifically oppose certifying the assurances that the grants do not violate anti-discrimination laws, including discrimination on the basis of sex. Levitt May 14 Decl., Exhibit A, ECF Dkt. 87-1; Levitt July 10 Decl., Exhibit A, Block 10.[6]

### A.    The Court Has Inherent Authority to Enforce its April 8th and July 4 Orders

"[E]very court with the power to enter a judgment has the power to enforce it, even if the docket is closed." *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 1:17-CV-0816 (KHP), 2025 WL

---

[6] Nevertheless, despite Defendants' repeated protests, and their filing on June 8, 2026 of a Notice of Appeal from the April 8 Order, Defendants withdrew the appeal on June 18, 2026.

17

384545, at \*1 (S.D.N.Y. Feb. 4, 2025) (citing *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 554 (7th Cir. 2021)). This power furthers "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). An order to enforce "is particularly appropriate… where an administrative agency plainly neglects the terms of a mandate" issued by the court. *Id.*

A motion brought to enforce the court's previous judgment should be granted "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Ali v. Pompeo*, No. 16-CV-3691-SJB, 2020 WL 6435834, at \*4 (E.D.N.Y. Nov. 2, 2020) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004), *aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24 (D.C. Cir. 2005)). On a motion to enforce, the Court is also empowered to construe and interpret the language of its prior judgment. *See United States v. Spallone*, 399 F.3d 415, 422 (2d Cir. 2005) ("[T]he power to construe a court decree is essential to its enforcement.").

This Court thus has inherent authority to ensure compliance by USDE with the terms of its April 8 and June 4 Orders. *See, e.g., City of Chicago v. United States Dep't of Homeland Sec.*, No. 25 C 5463, 2026 WL 353581, at \*6 (N.D. Ill. Feb. 9, 2026) ("The Court thus exercises its equitable authority to enforce its orders and requires that DHS finally comply with its regulatory and Court-ordered obligations within fourteen days." *See Degen v. United States*, 517 U.S. 820, 827 (1996) (explaining that "[a] federal court has at its disposal an array of means to enforce its orders," including "by inherent authority")).

For the reasons described in this memorandum of law, this Court should exercise its authority to vacate the June 9 GANs; and require that USDE make new grant awards for FY2026

18

that comport with prior and expected practice, are without consideration of the funds authorized for use as an interim measure pursuant to the Consent Agreement, and are not based on Title IX findings or civil rights violations related to Title IX without following Title IX procedures, and issue new GANs effectuating such awards.

**B.    USDE Has Violated the April 8 and June 4 Orders by Reducing the FY2026 Grant Awards and Imposing an Onerous Reimbursement Condition on the Basis of Title IX Violations or Civil Rights Violations Relating to Title IX**

As described above, since the April 8 Order was issued USDE has engaged in a series of actions regarding the MSAP grant awards that have no reasonable explanation other than that USDE has issued truncated grant awards based on purported Title IX violations. USDE has expressed its strong objection to continuing the grants, making the grant awards, and certifying NYCPS' assurances of compliance with civil rights laws. USDE's own Policy Memo mandates consideration of Title IX violations and civil rights violations based on Title IX in review and issuance of continuation grant awards. These statements are entirely consistent with its September 16, 2025 notice that it was discontinuing the MSAP grants for the current year, based solely on asserted Title IX violations, particularly in the absence of any other substantive explanation.

That USDE has continued to flout this Court's Orders is apparent in its vehement statements of objection to the Orders, and reaffirmed by its actions with respect to the grant awards. First, it failed to meet the April 8 Order's 10-day deadline for new grant continuation determinations, necessitating a motion and a new order to elicit the required grant awards. Second, the day after the June 4 Order, where this Court made clear on the record that USDE had forfeited the ability to seek additional information in connection with the grant award amounts, USDE ignored that direction and issued a new demand for information with a deadline of noon of the next business day. The day after that deadline passed, USDE issued the June 9 GANs to meet this Court's deadline, but veered sharply from its prior practice. For the first time in NYCPS'

19

experience, instead of awarding an amount of funding consistent with its practice each prior year—a funding amount that USDE itself had said in the initial GANs was expected—USDE treated carryover funds as a substitute for the current grant award as to the first three quarters of the grant year, and reduced the award to cover only the remaining fraction of the year. It further added another reduction to even that fractional award to offset the carryover amount that still remained.

Without any legitimate stated basis, USDE severely reduced the expected award amounts even though the original GANs, issued at the outset of each grant indicated that the grant amounts for each year of these five-year grants would likely be uniform, $2,999,999.[7] Scott Decl., Exhibit 1, ECF Dkt 32-1, Block 6. USDE acknowledged as much in the June 9 GANs when it expressly began its award determination from a starting point of "the annual requested and recommended average award amount for [each] grant ($3,000,000)," Levitt July 10 Decl., Exhibit A, Block 10, Item 6. Likewise, in the Terms & Conditions set out in the June 9 GANs, USDE has, for the first time ever, placed the grants on "reimbursement pay status," without any stated justification. Levitt July 10 Decl., ¶ 13 and Exhibit A, Block 10, Item 6. All of these actions can only be understood as perpetuating the harmful effects of the original, unlawful, non-continuation determination that has since been vacated by this Court.

Defendants' July 20, 2026 declarations assert that Defendants did not base these actions on "any alleged or actual civil rights violations or civil rights compliance concerns, including those regarding Title IX." Bessette July 20 Decl., ECF Dkt. 113-1, ¶ 8. Nonetheless, neither the

---

[7] Although 34 C.F.R. § 75.253(e) provides that the Secretary may consider whether carryover funds are needed, this allowance is not a relevant consideration here, where NYCPS moves for an order enforcing this Court's prior order prohibiting the USDE from making non-continuation decisions on an unlawful basis. Moreover, where USDE's choice to reduce the continuation award here stems from its prior Title IX violation or its findings associated with that violation, that action violates both Title IX and the Court's April 8 Order, regardless of what discretion USDE may generally possess.

20

June 9 GANs nor these recent declarations provide any alternate substantive explanation for Defendants' actions that is not in some way tethered to the unlawful non-continuations that are the subject of this action.

In multiple ways, USDE previously gave assurances that funding would be continued as initially expected and communicated to NYCPS. That expectation was included in the original GANs issued at the inception of each of the grants. It was confirmed by USDE's consistent practice, in which the amount of funding remained consistent in every prior year of the grant before September 2025. Such assurances are also included in the MSAP regulations, which recognize the "intention to make continuation awards to fund the remainder of the project period." 34 C.F.R. § 75.251(b)(2). Despite ample opportunity to do so, USDE has offered no reason for completely and abruptly changing course. The only reasonable conclusion is that their actions continue to be rooted in their Title IX objection.

**C.      This Court Should Issue a Further Order Enforcing its April 8 and June 4 Orders**

For the reasons described herein, it is apparent that USDE failed to comply with this Court's April 8 and June 4 Orders in a continuing effort to deny federal grant funding to NYCPS' magnet schools based on the same asserted Title IX violation that motivated USDE's September 16, 2025 unlawful non-continuation determination.

**CONCLUSION**

For all the reasons set forth above, this Court should exercise its inherent power to enforce its orders by granting this motion to enforce; vacating the June 9 GANs; and ordering Defendant USDE to forthwith issue GANs with grant awards that are consistent with USDE's prior practice (*i.e.* for the full funding year, from the acknowledged starting point of the requested and recommended average award amount for each grant), without consideration of or reliance on the budget provided by NYCPS to facilitate interim relief under the November 20, 2025 Consent

Order, or otherwise perpetuating the harmful effects of USDE's unlawful—and since vacated—September 16, 2025 non-continuation determination, and without imposing punitive or otherwise onerous terms and conditions based explicitly or implicitly on Title IX findings or "civil rights violations" related to Title IX without following Title IX procedures; and/or grant such other and further relief as the Court deems proper.

Dated: July 24, 2026                          Respectfully submitted,

**STEVEN BANKS**
Corporation Counsel of the City of
 New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov

By: Melanie C.T. Ash
June Buch
Hope Lu
Gavin Mackie
Emeline Kong

22

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE

As required by Local Civil Rule 7.1(c), I certify that the document contains 7021 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

_____

Melanie C.T. Ash