UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, LINDA MCMAHON, in her capacity as Secretary of the United States Department of Education, KIMBERLY M. RICHEY, in her capacity as Assistant Secretary for Civil Rights, and LINDSEY M. BURKE, in her capacity as Deputy Chief of Staff for Policy and Programs,<br><br>Defendants. | No. 25 Civ. 08547 (AS) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SECOND MOTION TO ENFORCE SUMMARY JUDGMENT ORDER**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2695
*Attorney for Defendants*

JEFFREY OESTERICHER
Assistant United States Attorney
- Of Counsel -

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

I. The Court Orders ED to Make Continuation Determinations ........ 2

II. Plaintiff's First Motion to Enforce ........ 3

III. ED Complies with the June 4 Order ........ 5

ARGUMENT ........ 7

I. The Tucker Act Precludes this Court from Ordering Plaintiff's Requested Relief Regarding Funding ........ 8

II. ED's Funding Determination Complied with the Court's Orders ........ 11

III. ED's Decision to Place the Grants on Reimbursement Pay Status Is Not Implicated by the Court's Orders and Is Outside the Scope of the Complaint ........ 16

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atterbury v. U.S. Marshals Serv.*,
805 F.3d 398 (2d Cir. 2015) ........ 9

*B.K. Instrument, Inc. v. United States,*
715 F.2d 713 (2d Cir. 1983) ........ 9

*Falls Riverway Realty, Inc. v. City of Niagara Falls,*
754 F.2d 49 (2d Cir. 1985) ........ 10

*FDA v. Wages & White Lion Invs. L.L.C.*,
604 U.S. 542 (2025) ........ 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 17

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ........ 9

*National Institutes of Health v. American Public Health Association*,
145 S. Ct. 2658 (2025) ........ 9

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*,
175 F.3d 132 (2d Cir. 1999) ........ 8, 9

*Sec. & Exch. Comm'n v. Chenery Corp.*,
318 U.S. 80 (1943) ........ 12

*Simon v. Eastern Ky. Welfare Rights Organization*,
426 U.S. 26 (1976) ........ 17

*Up State Fed. Credit Union v. Walker*,
198 F.3d 372 (2d Cir. 1999) ........ 9, 10

*Washington v. United States Dep't of Educ.*,
No. C25-1228-KKE, 2026 WL 1429284 (W.D. Wa. May 21, 2026) ........ 16, 17

**Statutes**

20 U.S.C. § 1226a-1 ........ 6, 16

20 U.S.C. § 7231(d) ........ 12

**Regulations**

34 C.F.R. § 75.118(a) ........................................................ 4

34 C.F.R. § 75.253(a)(3) ........................................................ 12

34 C.F.R. § 75.253(e) ........................................................ 4, 9, 10, 15

34 C.F.R. § 75.253(h) ........................................................ 9, 15

**PRELIMINARY STATEMENT**

Defendant the United States Department of Education ("ED") has complied with this Court's April 8 and June 4, 2026 orders (respectively, the "April 8 Order" and "June 4 Order"). The orders directed ED to make continuation determinations and to determine the appropriate continuation award amounts for five MSAP[1] grants. In April, ED continued all five grants through September 30, 2026 (the end of fiscal year 2026), and, on June 9, 2026, ED issued GANs with appropriate continuation award amounts for each grantee (the "June 9 GANs"). As a result of the June 9 GANs, ED provided the NYCPS grantees with access to $14,958,933 in FY 2026—within roughly $41,000 of the total annual estimated award amounts NYCPS insists it was promised. That was all ED was required to do under the Court's orders.

What is being raised now is a dispute about money—how much NYCPS believes it should receive and on what payment terms. That dispute belongs in the Court of Federal Claims. This Court previously found the Tucker Act was no obstacle to jurisdiction precisely because NYCPS sought only vacatur. Indeed, this Court expressly held that it could not order ED to award any funds to NYCPS. But NYCPS now complains that the awarded amount was reduced from prior years and that it expected more funding based on its interpretation of the contractual terms of prior GANs, and asks this Court to order ED to "forthwith issue GANs with grant awards for the entirety of FY2026 that are consistent with [ED's] prior practice . . . ." ECF No. 116 ("Pl.'s Br.") at 1. NYCPS also asks the Court to prohibit ED from considering the carryover funding it made available to the grantees, *id.* at 21-22, even though ED is permitted to do just that by regulation incorporated into the terms and conditions of the GANs. Both the right to additional funds asserted

---

[1] The Government incorporates by reference the defined terms contained in the Memorandum of Law in Support of Defendants' Cross-Motion to Dismiss or in the Alternative for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 57).

by NYCPS and the requested relief sound in contract; accordingly, the dispute belongs in the Court of Federal Claims.

In any event, NYCPS' assertion that ED violated the April 8 and June 4 Orders is mistaken. The June 9 GANs continued the grants and provided appropriate award amounts to each grantee. As permitted by the GANs, ED accounted for the grantees' use and planned use of carryover funding in determining the FY 2026 awards. While the awards are lower than the amount stated in the initial GANs—the terms and conditions of the GANs expressly state that those figures are only estimates and not binding on ED. Further, there is no support for NYCPS's accusation that ED considered Title IX or civil rights concerns of any kind in determining the FY 2026 award amounts. To the contrary, the Government has submitted a declaration from Assistant Secretary Murray Bessette confirming that ED did not consider alleged or actual civil rights violations or concerns, including Title IX concerns, in determining the June 9 funding amounts.

Finally, ED's decision to place the grantees on reimbursement pay status does not affect the continuation of the grants or the amount of funding available. It requires only that the grantees initially expend their own funds and then document expenditures before ED provides reimbursement. Accordingly, it does not violate any Court order and is outside the bounds of Plaintiff's complaint—which was filed eight months before the reimbursement pay status decision. For these reasons, and as discussed below in more detail, Plaintiff's second motion to enforce should be denied.

## BACKGROUND

### I. The Court Orders ED to Make Continuation Determinations

Plaintiff filed its Complaint on October 15, 2025. *See* ECF No. 1 ("Compl."). In the Complaint, Plaintiff sought an order: (1) "enjoining the Department's Discontinuation of NYCPS's MSAP grants," Compl. ¶¶ 108, 115, 127, 134; (2) "[p]reliminarily and permanently enjoin[ing]

the Department from implementing, maintaining, or reinstating the Discontinuation, or otherwise taking any other action to suspend, terminate, or refuse to continue the NYCPS' MSAP grants for the FY25 and FY26 periods," *id*. at Prayer for Relief (b); (3) ordering the continuation of the NYCPS MSAP grants, *id*. at Prayer for Relief (c); and (4) enjoining "the Department from freezing, terminating or otherwise interfering with any NYCPS' MSAP grant funding . . . ," *id*. at Prayer for Relief (d). In its motion for summary judgment, Plaintiff modified its requested relief, dropping its request to order ED to continue the grants and its request to enjoin ED from "interfering with [any NYCPS] MSAP grant funding." *See* ECF No. 75.

On April 8, 2026, the Court granted Plaintiff's motion for summary judgment. ECF No. 83 (the "April 8 Order"). In holding that the Tucker Act did not preclude its jurisdiction, the Court found "important" that NYCPS "[was] only seeking that the non-continuation decision be vacated with no guarantee that any money will ultimately flow," and that "NYCPS's summary-judgment motion d[id] not seek to have this Court order that any money be paid out . . . . Defendants would have to make a continuation decision after vacatur for any funds to flow—none would flow as an immediate result." *Id*. at 4-5 (internal citation omitted). The Court, then, vacated ED's non-continuation determination with respect to the NYCPS's MSAP grants, permanently enjoined ED from non-continuing NYCPS's MSAP grants based on Title IX findings or a civil rights violation related to Title IX without following the procedures required by Title IX, and ordered ED "to make a continuation determination with respect to each of NYCPS's MSAP grants within 10 days of this order." April 8 Order at 10. Notably, the Order did not require ED to disburse any funds or make a specific funding amount determination in connection with its continuation determination. *Id*.

## II. Plaintiff's First Motion to Enforce

On April 17, 2026—within 10 days of the Order—ED issued letters to each of the MSAP grantees notifying them that the "grant award is being continued from October 1, 2025 through

September 30, 2026." *See* Declaration of Murray Bessette dated May 21, 2026, ECF No. 94 ("May 2026 Bessette Decl.") ¶ 2 & Exhibit ("Ex.") A at 1. The letters noted that "this continuation determination is being issued in protest and solely to comply with the [ ] [O]rder, and the Department continues to have concerns regarding your grant." *Id.* On April 20, 2026, ED issued GANs effectuating the continuation determination. *Id.* ¶ 3 & Ex. B. The budget and performance periods for the grants were continued through September 30, 2026. *Id.* ¶ 4.

With respect to grant funding, the April 17 letters informed the grantees that, pursuant to 34 C.F.R. § 75.118(a), ED would be requesting "updated grant performance and financial information before making available further funding," that the requested information "is needed to fulfill [ED's] responsibility to understand the grant's current operations and to determine an appropriate continuation award," and that following production and review of the requested information, ED "will evaluate the amount of continuation funding consistent with the procedures of 34 C.F.R. § 75.253(e)." *Id.* ¶ 2 & Ex. A at 1. ED also noted that the grantees continue to have access to carryover funds (*i.e.*, excess funds not expended as budgeted) based on their previously approved budgets. *Id.* at 1-2. Those budgets were submitted and approved in connection with this Court's November 20, 2025 Consent Order, ECF No. 42. Pursuant to that order, the parties resolved NYCPS's motion for a preliminary injunction and permitted NYCPS to access non-expended funds awarded in and carried over from Fiscal Year 2025 for the period of October 1, 2025 through June 30, 2026. *Id.* ¶ 1. The previously approved budgets submitted by the grantees identified their projected expenditures for the school year based on the available carryover funding. Declaration of Jennifer Todd dated May 22, 2026, ECF No. 95 ¶ 10.

On May 14, 2026, Plaintiff filed a motion to enforce the April 8 Order, seeking to compel ED to make a funding amount determination for FY 2026 on the newly continued grants. *See* ECF

No. 85. On June 4, 2026, that motion was granted. ECF No. 104 (the "June 4 Order"). This Court's order required ED "to determine the appropriate continued award amount for the grants at issue" by June 9, 2026, including "any determination that serves as the predicate for the funding of the grants by [that] deadline, as well as issue GANs reflecting those award determinations." *Id.*

## III. ED Complies with the June 4 Order

On June 9, 2026, in accordance with the June 4 Order, ED awarded funding for Plaintiff's five MSAP grants. Declaration of Jennifer Todd dated July 20, 2026, ECF No. 113-2 ("Todd Decl.") ¶ 4. The funding determination was made by taking the annual requested and estimated average award amount as stated in Plaintiff's initial GANs ($2,999,999, which was then rounded up to $3,000,000) and dividing it by 12 to determine a monthly estimated average award amount ($250,000). Declaration of Murray Bessette dated July 20, 2026, ECF No. 113-1 ("Bessette Decl.") ¶ 6(a).[2] Because ED had limited information regarding the specific activities the grantees planned for the three-month period remaining in the fiscal year (July 1, 2026 to September 30, 2026), ED multiplied the monthly estimated average award amount described above ($250,000) by 3 to provide a proportionate amount of funds ($750,000) to each grantee. *Id.* To the extent that a particular grantee had additional carry-over funding remaining, that amount was subtracted from the average $750,000 award. *Id.* ¶ 6(c).

[2] Pursuant to the parties' consent order dated November 20, 2025, Plaintiff had access to its large carry-over balances through June 30, 2026. *See* ECF No. 42. Plaintiff submitted, and received approval for, budgets to utilize the remaining carry-over funding through that date. Bessette Decl. ¶ 6(b).

The chart below illustrates ED's calculations:

| Grant | Annual Requested & Estimated Average Award Amount | Average Three-Month Award | Remaining Carry-Over Funds as reported by grantee | June 9 GAN Award Amount | Total amount of funds available for FY26 | Percentage of Annual Requested & Estimated Average Award Amount |
|---|---|---|---|---|---|---|
| S165A220032 | $2,999,999 | $750,000 | $0 | $750,000 | $2,217,172 | 74% |
| S165A220034 | $2,999,999 | $750,000 | $252,131 | $497,869 | $3,682,792 | 123% |
| S165A220037 | $2,999,999 | $750,000 | $211,808 | $538,192 | $2,983,374 | 99% |
| S165A230011 | $2,999,999 | $750,000 | $40,362 | $709,638 | $2,583,924 | 86% |
| S165A230012 | $2,999,999 | $750,000 | $0 | $750,000 | $3,491,671 | 116% |

*Id.* ¶ 7.[3] When making the funding decision, in accordance with the Court's June 4 Order, ED "did not consider any alleged or actual civil rights violations or civil rights compliance concerns, including those regarding Title IX." *Id.* ¶ 8. Indeed, while it acted under protest, ED made the necessary civil rights certification prior to making the funding determinations. *See* USDOE-Continuation_001077-001081.

In addition, when continuation funds were awarded, all five grants were placed into "Reimbursement Pay Status," in accordance with the Secretary's authority under 20 U.S.C. § 1226a-1. Todd Decl. ¶ 8; *see also* 20 U.S.C. § 1226a-1 ("Payments pursuant to grants or contracts under any applicable program may be made . . . by way of reimbursement . . . as the Secretary may

[3] Plaintiff claims it is unclear how the columns entitled "Total amount of funds available for FY 26" and "Percentage of Annual Requested & Estimated Average Award Amount" were calculated. Pl.'s Br. at 10 n.3. The former was calculated by adding the June 9 GAN Award Amount to the FY 2025 carryover funds available for use by the grantees in FY 2026 in accordance with the Court's November 20, 2025 Consent Order (ECF No. 42). *See* ECF No. 113-6 at USDOE-Continuation_000767 - USDOE-Continuation_000781. The latter was calculated by comparing the Total Amount of Funds Available for FY 2026 to the Annual Requested & Estimated Average Award Amount.

determine.”). This status does not prohibit access to funds; it requires grantees to spend their own funds first and then request reimbursement along with appropriate documentation. Todd Decl. ¶ 9.

On July 10, 2026, Plaintiff filed a second motion to enforce arguing that ED failed to comply with this Court’s prior orders because it allegedly “severely reduced” grant funding for this year and placed the grants in reimbursement status.[4] ECF No. 110 at 4. On July 20, 2026, the Government filed the relevant administrative record for the issuance of the June 9 GANs and supporting declarations. ECF No. 113. On July 24, 2026, Plaintiff renewed its second motion to enforce, this time incorporating the administrative record and incorporating the supporting declarations filed by the Government. ECF No. 116.

## ARGUMENT

### PLAINTIFF’S SECOND MOTION TO ENFORCE SHOULD BE DENIED

NYCPS argues that ED violated this Court’s April 8 and June 4 Orders by (i) awarding a grant funding amount for FY 2026 below the grantees’ annual requested and estimated average awards; and (ii) placing the grants on reimbursement pay status. Pl.’s Br. at 2. However, contrary to Plaintiff’s assertions, ED fully complied with this Court’s orders. As discussed below, nothing in the Court’s orders required ED to award a specific funding amount. ED followed a reasoned approach permitted by the contractual language in the GANs resulting in the grantees having access to millions of dollars in funding for FY 2026. Any dispute now regarding the amount of

[4] Plaintiff’s original motion also pointed to the fact that the GANs “indicated that the grants will end this year.” ECF No. 110 at 4. In its renewed motion following the Government’s filing of the administrative record and supporting declarations, Plaintiff acknowledged that “Defendant’s declarants assert that the grant system automatically, but erroneously, inserted into the GAN provisions suggesting the grants were being discontinued at the end of FY 2027,” and therefore limited their motion to enforce to ED’s alleged reduction in funding and the decision to place the grants in reimbursement pay status. ECF No. 116 (“Pl.’s Br.”) at 2.

funding or the reasonableness of ED's approach belongs exclusively in the Court of Federal Claims.

In an attempt to manufacture jurisdiction, Plaintiff claims that ED's June 9 funding determination was motivated by Title IX concerns in violation of the Court's prior orders. *Id*. at 19-21. But there is no basis for this assertion in the record. As explained in the declaration of Murray Bessette, "[w]hen deciding on continuation awards and their respective funding amounts for the GANs issued on June 9, 2026, the Department did not consider any alleged or actual civil rights violations or civil rights compliance concerns, including those regarding Title IX." Bessette Decl. ¶ 8.

Further, this Court's orders do not reach ED's determination to place the grants on reimbursement pay status. This is unsurprising as the Complaint never raised the issue, it was never mentioned in prior briefing or motions, and the determination does not have any impact on the issues raised by Plaintiff in its Complaint—the continuation of the grants and the amount of funding available to the grantees. Todd Decl. ¶¶ 9-11. Accordingly, ED has complied with the Court's orders and Plaintiff's second motion to enforce the summary judgment order should be denied.

## I. The Tucker Act Precludes this Court from Ordering Plaintiff's Requested Relief Regarding Funding

As the parties have extensively briefed, district courts lack subject matter jurisdiction over claims against the federal government that are in essence contract claims. "Where a claim arises out of a contract with the United States, the Tucker Act 'impliedly forbids' relief other than the remedy provided by the Court of Federal Claims." *See Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*, 175 F.3d 132, 143 (2d Cir. 1999). "Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged

analysis: a court must examine both 'the source of the rights upon which the plaintiff bases his claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) and *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Where "'the prime objective of the plaintiff is to obtain money from the Government,'" the Court lacks jurisdiction. *See Presidential Gardens Assocs.*, 175 F.3d at 143 (quoting *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir. 1983)). Indeed, this Court has already held that it "cannot . . . order defendants to expend any funds to NYCPS." April 8 Order at 8.

Here, Plaintiff complains that the funding made available to it in FY 2026 is not appropriate, and asserts that it expected and should receive $2,999,999 for each grantee. *See*, *e.g.*, Pl.'s Br. at 20. In support of its position, Plaintiff cites provisions of the contract between ED and the grantees—the GANs. *See, e.g.*, *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658, 2661 (2025) (per curiam) (treating grants as contracts). For example, Plaintiff argues that the grantees expected to receive $2,999,999 annually because "[t]hat expectation was included in the original GANs issued at the inception of each of the grants." Pl.'s Br. at 21; *see also* Pl.'s Br. at 6 (arguing that provisions in the initial GANs and "[s]ubsequent continuation GANs" establish Plaintiff's expectation of a $2,999,999 annual award). Plaintiff also asserts that MSAP regulations—which are incorporated into the GANs—provided the same "assurances." *Id*. Further, Plaintiff disputes ED's use of 34 C.F.R. § 75.253(e)—another regulation incorporated into the GANs—to determine the appropriate funding amount, Pl.'s Br. at 20 n.7, and invokes 34 C.F.R. § 75.253(h)—which is likewise incorporated into the GANs—to support its claim that ED did not set an appropriate award amount, Pl.'s Br. at 9. *See, e.g.*, USDOE002613 – USDOE003099 (incorporating 34 C.F.R. Part 75 into the terms and conditions of the GANs).

Accordingly, the basis for Plaintiff's claimed relief is contractual; without the GANs Plaintiff could not claim to expect additional funds. *See Up State Fed. Credit Union*, 198 F.3d at 377; *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55 (2d Cir. 1985).

Further, it is abundantly clear that Plaintiff's primary objective in bringing this motion is to obtain more funding from ED. As discussed above, ED has already continued the grants, issued a FY 2026 funding award, and made nearly $15,000,000 available to the grantees during the current fiscal year. In issuing the funding, ED did not consider alleged or actual Title IX violations, Bassette Decl. ¶ 8, but exercised its authority under 34 C.F.R. § 75.253(e) to consider carryover funds available to the grantees in issuing the award amount, *id*. ¶ 6. Dissatisfied with the funding amount, Plaintiff challenges the "Reduced and Truncated Awards" and claims that ED—through the GANs or regulations incorporated into the GANs—gave "assurances that funding would be continued as initially expected"—$2,999,999 annually for each grantee.[5] Pl.'s Br. at 6, 20-21. In other words, Plaintiff seeks additional funding from the Government, which this Court cannot grant under the Tucker Act. *See* April 8 Order at 8 (holding that the Court "cannot . . . order defendants to expend any funds to NYCPS"). Further, Plaintiff asks the Court to prohibit ED from relying upon 34 C.F.R. § 75.253(e) in determining the appropriate continuation award amount. Pl.'s Br. at 21-22 (requesting that the Court order ED to determine the award amount "without consideration of or reliance on the budget provided by NYCPS" regarding the FY 2025 carryover funds). But, as noted above, 34 C.F.R. § 75.253(e) is incorporated into the contract between ED and the grantees. Accordingly, Plaintiff's requested relief sounds in contract—enjoining ED from

[5] Plaintiff cites language in the GANs that is standard across all GANs issued by ED, and ignores that ED was not required to continue the grants—let alone award a specific amount of funding each year.

invoking a contract term. The Tucker Act thus deprives the Court of jurisdiction to order the requested relief and Plaintiff's motion to enforce should be denied.

## II. ED's Funding Determination Complied with the Court's Orders

ED's funding determination resulted in NYCPS having access to $14,958,933 for FY 2026. *See* Bessette Decl. ¶ 7 (sum of the figures found in the column entitled "Total amount of funds available for FY26"). In contrast, the requested amount for FY 2026 totaled $14,999,995. *Id.* (sum of the figures found in the column entitled "Annual Requested & Estimated Average Award Amount"). While ED's funding determination was reasonable and well within its regulatory discretion, the only question before the Court is whether the funding determination complied with its April 8 and June 4 Orders. As explained below, it does, and Plaintiff's motion to enforce should be denied.

This Court's prior orders (i) vacated ED's September 2025 non-continuation determination, *see* April 8 Order at 10; (ii) enjoined ED from non-continuing MSAP grants to NYCPS based on Title IX concerns without following Title IX procedures, *id.*; (iii) required ED to make a continuation determination within 10 days of the April 8 Order, *id.*; and (iv) after ED continued the grants, required it to "determine the appropriate continued award amount for the grants at issue" by June 9, 2026, *see* June 4 Order. ED carried out each of the Court's commands. On April 17, 2026, ED continued the relevant MSAP grants to September 30, 2026 (*i.e.*, to the end of the fiscal year) and issued GANs effectuating the same on April 20, 2026. *See* ECF No. 94 ¶¶ 2-3. On June 9, ED issued GANs awarding funding to the grantees for FY 2026. *See* ECF No. 113-6 at USDOE-Continuation_000782 - USDOE-Continuation_001076. Each grantee received between $497,869 to $750,000 in funding and, accordingly, had access to between $2,217,172 to $3,682,792 during FY 2026. Bassette Decl. ¶ 7.

Plaintiff's entire argument for non-compliance is premised on ED allegedly "issu[ing] truncated grant awards based on purported Title IX violations." Pl.'s Br. at 19. But there is no basis in the administrative record for this allegation. To the contrary, the Government submitted a declaration from Assistant Secretary Bessette confirming that ED did not consider alleged or actual civil rights violations or concerns, including Title IX concerns, in determining the June 9 funding amounts. Bessette Decl. ¶ 8.

Rather than relying upon documents in the administrative record, as it must, *see* April 8 Order at 8 (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)), Plaintiff cites a June 5, 2025 memorandum from Assistant Secretary Bessette, ECF 109-2, that purportedly "mandates consideration of Title IX violations and civil rights violations based on Title IX in review and issuance of continuation grant awards." *See* Pl.'s Br. at 19. But ED did not consider this memo in reaching its determinations regarding the grants, including the June 9 funding determination. *See* ECF No. 113 (providing the certified administrative record on which ED relied in issuing the June 9 GANs, which does not include the memo).[6] Indeed, the signatory of the memo—Assistant Secretary Bessette—has confirmed that civil rights considerations played no role in ED's June 9 funding determination. Bessette Decl. ¶ 8. Plaintiff has offered no reason beyond its own speculation to doubt Assistant Secretary Bessette's sworn declaration, and

---

[6] Plaintiff claims that it is notable that the administrative record produced in this action regarding the September 2025 non-continuation determination did not include the Policy Memo. Pl.'s Br. at 14 n.5. It was not included because it was not relied upon. This is because, unlike other grant programs, the MSAP statute and regulations already required the Assistant Secretary of Civil Rights to conduct a civil rights compliance review. *See* 20 U.S.C. § 7231(d) and 34 C.F.R. § 75.253(a)(3).

Plaintiff's assertion that the funding determination was based on "purported Title IX violations," Pl.'s Br. at 19, is false.[7]

While the Court's analysis should stop there, Plaintiff's claim that ED lacked a legitimate basis for "severely reduc[ing] the expected award amounts," *id*. at 20, is wrong. As an initial matter, it is incorrect that ED "reduced" the grant amounts because Plaintiff was not entitled to any specific grant amount for FY 2026. While the initial GANs provided for an anticipated future award of $2,999,999 annually for a five-year period, Plaintiff conveniently ignores the express term of the GANs that "[t]hese figures are estimates only and do not bind the Secretary to funding the award for these periods or for the specific amounts shown." *See* USDOE002622-USDOE002623; USDOE002745-USDOE002746; USDOE002992-USDOE002993; USDOE002858-USDOE002859; and USDOE002920-USDOE002921. Accordingly, the fact that Plaintiff may have anticipated a certain amount of funds and relied upon purported assurances or ED's past practices regarding the same, Pl.'s Br. at 10-11, 21, is immaterial because that anticipation and reliance is directly contradicted by the terms to which the grantees agreed in exchange for receiving the initial grant funding. In other words, from the very beginning of the contractual relationship, Plaintiff was on notice that it should not develop reliance interests because future years' funding was not guaranteed. Moreover, "a belief about how an agency is likely to exercise its . . . discretion

---

[7] Plaintiff argues that ED's June 9 funding determination is "inextricably linked" to the September 2025 non-continuation determination and therefore "*fruit of the poisonous tree*." Pl.'s Br. at 1 (emphasis in original). Plaintiff cites no support for its position. Further, if taken to its logical conclusion, it would grossly enlarge the Court's April 8 injunction enjoining ED from non-continuing the grants based on Title IX concerns without following Title IX procedures, *see* April 8 Order at 10, to an injunction enjoining ED from taking any action except that desired by Plaintiff because all of its actions are "poisoned" by the initial non-continuation. This cannot be correct. Indeed, the Court's April 8 Order permitted ED to non-continue the grants. *See* April 8 Order at 10.

is not a serious reliance interest." *FDA v. Wages & White Lion Invs. L.L.C.*, 604 U.S. 542, 585 (2025) (citation and internal quotation marks omitted).

Further, ED had a legitimate basis for issuing the June 9 grant awards. In determining the amount of continuation funding to award, ED is entitled to consider the amount of carryover funding available to a grantee. *See* 34 C.F.R. § 75.253(e)(2)(ii) ("The Secretary may . . . [d]etermine the amount of new funds that the Department will make available for the subsequent budget period after considering the statement the grantee provides [describing how carryover funds will be used] and any other information available to the Secretary about the use of funds under the grant."). That is precisely what ED did here. Bassette Decl. ¶¶ 5-6. In connection with the Court's November 20, 2025 Consent Order, ED agreed to permit the grantees to use the FY 2025 carryover in FY 2026, and Plaintiff submitted budgets "reflecting the current intended use of the Carryover Funds." ECF No. 42 at 3. The carryover funding was significant—ranging from $1,467,172 to $3,184,293—and the budgets submitted by Plaintiff ran through June 30, 2026 (the end of the school year). *See* ECF No. 113-6 at USDOE-Continuation_000767-USDOE-Continuation_000781. In May 2026, Plaintiff provided the Court with a chart identifying each grantee's remaining carryover funding given anticipated personnel costs and open encumbrances. *See* Declaration of Todd Levitt, ECF No. 96 ¶¶ 7-8. The Department used this information to ascertain the approximate amount of carryover funds that would remain available to each grantee after June 30, 2026, and took this into consideration when issuing the FY 2026 awards. *See* Bassette Decl. ¶ 6. Specifically, ED rounded the $2,999,999 annual requested and estimated average award amount to $3,000,000, prorated it for the three-month period not covered by the FY 2025 carryover fund budget, and subtracted the FY 2025 carryover funding anticipated to be remaining after June 30, 2026 from the prorated amount. *Id.*

This was entirely appropriate and certainly does not run afoul of the Court's orders. In fact, Plaintiff concedes that 34 C.F.R. § 75.253(e) permits ED to "consider whether carryover funds are needed" in determining the continuation award amount. Pl.'s Br. at 20 n.7. Nonetheless, Plaintiff contends, in a footnote, that § 75.253(e) is not applicable here because "NYCPS moves for an order enforcing this Court's prior order prohibiting [ED] from making non-continuation decisions on an unlawful basis" and the "choice to reduce the continuation award here stems from its prior Title IX violation or its findings associated with that violation." *Id*. This attempt to evade ED's conceded authority to consider carryover funding in determining a continuation award amount fails. The Court's order prohibiting an unlawful non-continuation decision has no connection to § 75.253(e) and has no logical relationship here because ED *continued* the grants. Todd Decl. ¶¶ 4-7. Further, simply asserting that ED reduced the continuation award based on Title IX considerations does not make it so, as explained *supra*, and in no way undermines ED's authority to consider carryover funding in determining the award amount.

Finally, Plaintiff protests that the June 9 GANs did not determine an "appropriate award amount" because ED purportedly "disregarded MSAP regulation 34 C.F.R. § 75.253(h)—which facilitates the longstanding function of carryover funding—and USDE's own consistent prior practice." Pl.'s Br. at 9. Plaintiff is simply wrong. Section 75.253(h) has no connection to carryover funding but rather regards no-cost extensions. 34 C.F.R. § 75.253(h) (entitled "[n]o-cost extension when a continuation award is not made"). A no-cost extension is only implicated when a grant is not continued, which did not occur here, Todd Decl. ¶¶ 4-7, and is completely at ED's discretion. 34 C.F.R. § 75.253(h). Accordingly, Plaintiff's cited authorities have no bearing on the determination of the continuation award amounts.

## III. ED's Decision to Place the Grants on Reimbursement Pay Status Is Not Implicated by the Court's Orders and Is Outside the Scope of the Complaint

NYCPS also argues that ED violated this Court's April 8 and June 4 Orders by placing the grants on reimbursement pay status. Pl.'s Br. at 2. Reimbursement pay status has no impact on the continuation of the grants and does not prohibit access to grant funds. Todd Decl. ¶¶ 4-7, 9. It merely requires the grantees to spend their own funds first and then request reimbursement with appropriate documentation. *Id.* ¶ 9. Further, 20 U.S.C. § 1226a-1 permits ED to place grantees on reimbursement pay status at the discretion of the Secretary. 20 U.S.C. § 1226a-1 ("Payments pursuant to grants or contracts under any applicable program may be made in installments, and in advance or by way of reimbursement, with necessary adjustments on account of overpayments or underpayments, as the Secretary may determine.").

Unable to point to any language in the Court's orders prohibiting reimbursement pay status, Plaintiff argues that ED did not justify its action and that it "can only be understood as perpetuating the harmful effects of the original, unlawful, non-continuation determination." Pl.'s Br. at 20. Plaintiff cites nothing in the record to support this proposition. Since the Court vacated the September 2025 non-continuation determination, ED continued the grants—even though it was not required to do so—and issued funding for FY 2026. *See* Bessette Decl. ¶¶ 5-6; Todd Decl. ¶¶ 4-7. As a result, the grantees have had access to nearly $15,000,000 in MSAP funding during FY 2026. Bessette Decl. ¶ 7. Reimbursement pay status does not impact either the continuation status of the grants or the amount of funds available to the grantees. *See* Todd Decl. ¶ 7. Accordingly, placing the grants in reimbursement pay status does not violate the Court's prior orders. *See Washington v. United States Dep't of Educ.*, No. C25-1228-KKE, 2026 WL 1429284, at *5 (W.D. Wa. May 21, 2026) (finding that placing grantees in reimbursement pay status did not violate prior court orders requiring ED to issue continuation determinations and awards).

For this same reason, the issue of reimbursement pay status is well outside the confines of Plaintiff's Complaint and should not be considered by the Court. The Complaint is premised on the non-continuation of the grants in September 2025 based on Title IX concerns without following Title IX procedures. *See*, *e.g.*, Compl. ¶¶ 1-2. As discussed above, reimbursement pay status has no impact on grant continuation or the amount of funds available to the grantees. Accordingly, any relief premised on ED's June 9 decision (8 months after the Complaint was filed) to place the grantees on Reimbursement Pay Status lacks the required causal connection between the conduct alleged in the Complaint and the relief requested. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant . . . .") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)); *see, e.g.*, *Washington*, 2026 WL 1429284, at *5 (limiting analysis to whether placing grants on reimbursement pay status violated the court's prior orders).

**CONCLUSION**

Plaintiff's second motion to enforce should be denied.

Dated: New York, New York
August 14, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: */s/ Jeffrey Oestericher*
JEFFREY S. OESTERICHER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2695

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil. As measured by the word processing system used to prepare it, this memorandum contains 5,431 words.

*/s/ Jeffrey Oestericher*
Assistant United States Attorney