**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------- x

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,
Plaintiff,
v.
UNITED STATES DEPARTMENT OF EDUCATION, et al.,
Defendants.

No. 25-cv-8547 (AS)

--------------------------------------------------------------------- x

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,
Plaintiff,
v.
UNITED STATES DEPARTMENT OF EDUCATION, et al.,
Defendants.

No. 26-cv-6584 (AS)

------------------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN 26-CV-6584 AND FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER IN 25-CV-8547 AND 26-CV-6584**

Dated: New York, New York
August 26, 2026

**STEVEN BANKS**
Corporation Counsel of
the City of New York
100 Church Street
New York, New York 10007
(212) 356-1000

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................1
FACTS ....................3
ARGUMENT ....................8
I. This Court has Jurisdiction Over the Dispute and the Relief Sought ....................9
II. NYCPS is Entitled to Judgment as a Matter of Law on Each of its Five Causes of Action ....................11
A. The Grant Reduction and Reimbursement Pay Condition Are Unlawful Actions Taken Without Observance of Procedure Required by Law ....................11
B. The Reimbursement Pay Condition was Imposed Without Observance of Procedure Required by Law ....................13
C. The Department's Actions were Arbitrary and Capricious, 5 U.S.C. § 706(2)(A) 14
1. The Grant Reduction ....................15
2. The Reimbursement Pay Condition ....................19
D. In Implementing and Enforcing a New Rule Concerning Title IX Without Revoking the Prior Rule and Engaging in Notice-and-Comment Rulemaking, the Department Acted Without Observance of Procedure Required by Law ....................19
E. The Department's Interpretation of Title IX is Contrary to Law ....................22
III. NYCPS is Entitled to Vacatur and Declaratory and Injunctive Relief ....................25
IV. This Court Should Issue a Preliminary Injunction and Temporary Restraining Order to Protect its Ability to Provide an Effective Remedy ....................26
CONCLUSION ....................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. v. Metro. Sch. Dist. of Martinsville*,
75 F.4th 760 (7th Cir. 2023)....................23

*AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*,
740 F. Supp. 2d 465 (S.D.N.Y. 2010)....................27

*Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*,
770 F. Supp. 3d 822 (D. Md. 2025)....................21

*American Association of University Professors v. Rubio*,
802 F. Supp. 3d 120 (D. Mass. Sept. 30, 2025)....................14

*Ass'n of Am. Universities v. Nat'l Sci. Found.*,
788 F. Supp. 3d 106 (D. Mass. 2025)....................17

*Ass'n of Amer. Universities v. Dep't of Defense*,
806 F. Supp. 3d 79 (D. Mass. Oct. 10, 2025)....................9

*City of Houston v. Department of Housing & Urban Dev.*,
24 F.3d 1421 (D.C. Cir. 1994)....................28

*Council for Opportunity in Educ. v. U.S. Dep't of Educ.*,
No. 25-CV-03491 (TSC), 2026 WL 120984 (D.D.C. Jan. 16, 2026)......21

*County of Suffolk v. Sebelius*,
605 F.3d 135 (2d Cir. 2010)....................28

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019)....................14, 15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)....................17

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021)....................14, 19

*FDA v. Wages & White Lion Invs.*,
604 U.S. 542 (2025)....................14, 16, 17, 19

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (June 28, 2021)....................23

*Hecox v. Little*,
104 F.4th 1061 (9th Cir. 2023) ....................23

*Humane Soc'y of the United States v. United States Dep't of Agric.*,
41 F.4th 564 (D.C. Cir. 2022) ....................19, 20

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ....................10, 11

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .................... *passim*

*N.H. Hosp. Ass'n v. Azar*,
887 F.3d 62 (1st Cir. 2018) ....................19, 20

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) ....................17

*New York v. U.S. Dep't of Homeland Sec.*,
969 F.3d 42 (2d Cir. 2020) ....................27

*Nken v. Holder*,
556 U.S. 418 (2009) ....................27

*Parents for Priv. v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ....................24

*Thakur v. Trump*,
787 F.Supp.3d 955 (N.D. Cal. 2025) ....................14

*Washington v. United States Dep't of Educ.*,
167 F.4th 1241 (9th Cir. 2026) ....................21

*Washington v. United States Dep't of Education*,
813 F. Supp.3d 1222 (W.D. Wash. 2025) ....................25, 28

*West Virginia v. B.P.J.*,
225 L. ED. 2d 1040 (2026) ....................22, 23, 24

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008) ....................27

*Yakima Valley Cablevision, Inc. v. FCC*,
794 F.2d 737 (D.C. Cir. 1986) ....................19

*Yale-New Haven Hosp. v. Leavitt*,
470 F.3d 71 (2d Cir. 2006) ....................19

**Statutes**

5 U.S.C. §553(a)(2) ....................20

5 U.S.C. § 702 ....................9

5 U.S.C. § 706 .................... *passim*

20 U.S.C. § 1221 *et seq.* ....................2, 10, 13

20 U.S.C. § 1226a-1 ....................13, 26

20 U.S.C. § 1232 ....................20

20 U.S.C. § 1682 *et seq.* ....................4

20 U.S.C. §§ 7231-7231j....................1

20 U.S.C. § 7231(a)(4) ....................26, 29

**Other Authorities**

2 C.F.R. § 200 *et seq.* ....................3, 4, 10, 13

2 C.F.R. § 200.208....................26

2 C.F.R. § 200.208(c) ....................13

34 C.F.R. § 75.253....................15

U.S. Dep't of Justice, Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination (July 29, 2025), available at https://www.justice.gov/ag/media/1409486/dl....................22

## PRELIMINARY STATEMENT

In *The Board of Education of the City School District of the City of New York v. United States Department of Education, et al.*, 26-cv-6584 (S.D.N.Y) (the "Second Action"), Plaintiff The Board of Education of the City School District of the City of New York, operating as New York City Public Schools ("NYCPS"), challenges five Grant Award Notifications ("GANs") issued by Defendant United States Department of Education ("the Department") on June 9, 2026 (the "June 9 GANs") in connection with the continuation of grants to NYCPS under the Magnet School Assistance Program ("MSAP"), 20 U.S.C. §§ 7231-7231j, for the 2025-2026 budget year ("FY2026"), issued in supposed accordance with the June 4, 2026 Order of this Court (the "June 4 Order") in the related action, *The Board of Education of the City School District of the City of New York v. United States Department of Education, et al.*, 25-cv-8547, Dkt. 104 (S.D.N.Y. June 4, 2026) (the "First Action").

In this motion for summary judgment, NYCPS seeks an order that the June 9 GANs be vacated and set aside as having been undertaken without observance of procedures required by law, as arbitrary and capricious, based on an interpretive rule that was not adopted by notice and comment rulemaking, and as contrary to law, and further requests an order that the June 9 GANs be replaced with new GANs for FY2026 that reflect a lawful, appropriate, full-year funding determination that is consistent with the statutes and regulations that govern MSAP grants. NYCPS also seeks permanent injunctive relief enjoining the Department, in issuing future GANs in connection with NYCPS' MSAP grants, from unlawfully defunding or drastically reducing funds for the grants and from unlawfully imposing onerous or otherwise punitive conditions on the MSAP projects without a valid basis and/or in a manner inconsistent with the statutes and regulations that govern MSAP, or imposing other unlawful conditions, together with any other

appropriate relief required to effectuate the lawful, appropriate, full-year funding of NYCPS' continued FY2026 MSAP grants.

NYCPS is also moving, by order to show cause, for a preliminary injunction to require Defendants to preserve sufficient funds to enable Defendants to comply with a future order, preserving this Court's ability to provide an effective remedy.

In the First Action, brought by NYCPS against the Department, its Secretary, and other Department officials, this Court granted summary judgment to NYCPS on its claim that the Department had unlawfully non-continued the MSAP grants as an enforcement measure under Title IX without following Title IX's required procedures; vacated the non-continuation determinations; and ordered the Department to rectify its unlawful action by making new continuation determinations. *Id*. ECF Dkt. 83 ("April 8 Order"). The Court did not address NYCPS' four other causes of action.

As described below, after the Department determined to continue the MSAP grants, NYCPS moved in the First Action to enforce the April 8 Order because the Department failed to make any continuation awards. The June 4 Order granted the motion to enforce and directed the Department to make appropriate grant awards and to issue new GANs by June 9.

After the Department issued the new GANs, NYCPS moved again in the First Action on July 10, 2026 to enforce the April 8 Order and the June 4 Order, asserting that the Department's June 9 GANs themselves violate both the April 8 Order, as a further agency action pursuant to Title IX without following Title IX procedures, and the June 4 Order, in that they do not constitute appropriate grant awards. That motion is pending as of this date.

NYCPS brings this action to challenge the June 9 GANs as further failing to comply with Title IX's procedural requirements, and on additional legal grounds: as agency action that

fails to comply with required procedures under the General Education Provisions Act ("GEPA," 20 U.S.C. § 1221 *et seq.*) and the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 C.F.R. § 200 *et seq.*); as arbitrary and capricious; as based on an interpretive rule that was not adopted by notice and comment rulemaking; and as contrary to law.

**FACTS**

The relevant facts, summarized below, are set forth in the accompanying Declarations of Todd Levitt dated August 26, 2026 ("Levitt Aug.26 Decl."), and exhibits thereto, and of Melanie Ash, dated August 26, 2026 ("Ash Aug. 26 Decl."). NYCPS also relies on certain declarations and exhibits submitted in the First Action.[1]

**NYCPS' MSAP Grants and the Grant Continuation Process**

MSAP grants provide multi-year funding for magnet schools and are critical to support innovation, equal educational opportunity, and increased achievement. NYCPS has received such grants since at least 2010. Levitt Aug. 26 Decl. ¶ 4-5. In 2022 and 2023, the Department awarded five MSAP grants to NYCPS, three in 2022 and two others in 2023 (the "Projects"). Each Project was awarded a five-year grant of $2,999,999 per year, for an expected total award of approximately $15 million per Project. *Id.* ¶¶ 8-9. After the first year of a multi-year MSAP grant, the Department determines annually whether to continue the grant. Until FY2026, NYCPS' grants have, without exception, been continued each year with full continuation funding, including in those years where NYCPS had carryover funds available. *Id.* ¶¶ 7, 18.

[1] NYCPS requests that the Court take judicial notice of documents filed in the First Action as filed in both the related actions.

**OCR's Discontinuation of NYCPS' MSAP Grants Based on Title IX**

In September 2025, the Department discontinued the five NYCPS MSAP grants as of September 30, 2025, the end of federal FY2025. This Court previously found, in the April 8 Order, that the Department's action was based on the Department's finding that NYCPS' district-wide Guidelines to Support Transgender and Gender Expansive Students violate Title IX.[2] The Department also declined to approve a no-cost extension of the grants' performance period, which would have enabled the Projects to use approximately $11 million in unspent funds from the FY2025 grants ("Carryover Funding") during FY2026. Levitt Aug. 26 Decl. ¶¶ 23-28.[3]

**The First Action**

On October 15, 2025, NYCPS filed a complaint in the First Action asserting five claims under the Administrative Procedure Act ("APA"): (1) agency action without observance of procedure required by Title IX; (2) agency action without observance of procedure required by GEPA, MSAP, 2 C.F.R. § 200; (3) arbitrary and capricious agency action; (4) agency action without notice and comment rulemaking; and (5) agency action contrary to law. NYCPS sought vacatur of the non-continuations, and declaratory and injunctive relief. First Action, ECF Dkt. 1.

---

[2] Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682 *et seq.* As described in declarations and exhibits submitted in the First Action, the Guidelines set out NYCPS' protocols and best practices for supporting its transgender and gender expansive students. Declaration of Melissa Aviles-Ramos (First Action, ECF Dkt. 6), ¶ 43-47 and Ex. 5; Administrative Record at 3120-3126.

[3] Carryover Funding results from the circumstances that (1) funding for the first year of a grant is not received until after the school year has begun, limiting the ability to hire staff in the first year; (2) the first year includes primarily planning, not full implementation of the program, so not all of the funding is used; and (3) in subsequent years, the carryover must be used before the new grant funding is used, which results, each subsequent year, in some of the new funding being carried over to the next year. Levitt Aug. 26 Decl. ¶17.

NYCPS moved for a preliminary injunction, seeking interim relief to enable it to access the Carryover Funding, First Action, ECF Dkt. 4-8, which was obviated by a Consent Order that permitted such access through June 30, 2026. NYCPS then withdrew the motion without prejudice, and the parties agreed to expedited briefing on summary judgment. *Id.* ECF Dkt. 42. In connection with the Consent Order, NYCPS prepared and submitted to the Department budget plans documenting each Project's planned expenditures of the Carryover Funding, which became available to NYCPS in December 2025. Levitt Aug. 26 Decl. ¶ 37.

On December 16, 2025, NYCPS moved for summary judgment on all of its claims. First Action, ECF Dkt. 50-52. Defendants opposed and cross-moved for dismissal, or in the alternative, for summary judgment. First Action, ECF Dkt. 56. The April 8 Order granted NYCPS' motion as to Count I and denied Defendants' cross-motions. *Id.* ECF Dkt. 83. The Court found that the Department had failed to follow the procedures required under Title IX to discontinue funding, and therefore had acted "without observance of procedure required by law" under the APA, 5 U.S.C. § 706(2)(D). The Court did not reach the other four Counts alleged in the Complaint.

The April 8 Order vacated the non-continuation determinations, declared that the Department had failed to follow the required Title IX procedures, permanently enjoined the Department from non-continuing NYCPS' MSAP grants based on Title IX findings or on "civil rights violations" related to Title IX without following Title IX procedures, and ordered the Department to make a new continuation determination with respect to each of the grants within 10 days of the Order. First Action, Dkt. 83 at 10.

**Defendants' Failure to Comply with the April 8 Order**

The Department failed entirely to comply with the April 8 Order. On April 17, 2026, the Department issued Notices of Continuation Determination (the "April 17 Notices") that extended the budget period for the grants at issue for FY2026, through September 30, 2026. However, the Notices failed to include an award amount, and indicated that the Department would first seek updated performance and financial information from NYCPS. Levitt Aug. 26 Decl. ¶¶ 31-33. On April 20, 2026, the Department purported to issue new GANs which again did not include any award of funding, causing NYCPS to object on May 1, 2026, and to again call upon this Court for relief. *Id.* ¶¶ 34-35.

**NYCPS' First Motion to Enforce the April 8 Order**

On May 14, 2026, NYCPS moved for an order enforcing the April 8 Order. The motion was heard on June 4, 2026; the Court held that Defendants had violated the April 8 Order and directed Defendants, by June 9, 2026, to determine the appropriate continued award amounts for the grants, including any predicate determination for the funding, and to issue new GANs reflecting the awards. First Action, Dkt. 104.

The Defendants nevertheless again failed to comply.[4] On June 9, 2026, the Department issued new GANs that differed markedly from its prior practice in multiple respects and failed to provide any substantive justification for its actions. First, the amounts were truncated. Although they purported to be awards for the full fiscal year of FY2026, the GANs stated that the

---

[4] On June 5, 2026, OCR requested additional information about one performance metric, requiring a response by 12 noon on June 8, the next business day. Counsel for NYCPS objected to the requests as improper and requested that the Department retract the requests. The Department neither retracted the requests nor pursued them at that time. However, it requested the same information on June 23, 2026, this time for the express purpose of seeking information relating to its continuation determinations for FY2027. NYCPS provided the information on July 8, 2026. Levitt Aug. 26 Decl., ¶¶ 40-42.

grant awards were actually intended to cover only the final quarter of the year, July 1 through September 30, and were further reduced by any amounts of Carryover Funding that remained unencumbered or uncommitted. Levitt Aug. 26 Decl. ¶¶ 43-44.

Second, the GANs imposed—without providing explanation or justification—a burdensome and highly unusual condition on reimbursement even as to the truncated grant awards, requiring NYCPS to submit item by item documentation and justification of all expenses, and await the Department's pre-approval of each such expense, before being permitted to draw down reimbursement funds. Requiring approval of every line item expended, in addition to imposing a significant administrative burden on NYCPS, and inevitable delays in receiving reimbursement, will also put NYCPS at increased risk that its expenditures will be second-guessed and unjustifiably denied. Levitt Aug. 26 Decl. ¶¶ 45-49.

Third, the new GANs appeared to indicate that the grants would all end effective September 30, 2026, effectuating a non-continuation of the grants without issuing a Notice of Non-Continuation and thus without affording NYCPS notice and an opportunity to appeal or seek reconsideration.[5]

Finally, the GANs purported to impose restrictions on the MSAP Projects based on the Department's interpretation of Title IX, including based on two federal Executive Orders issued in January 2025. First Action, ECF Dkt. 108-1 (GANs, Block 10, Item 7).

---

[5] In a declaration submitted in opposition to NYCPS' second motion to enforce in the First Action, the Department explained that the apparent non-continuation was an error introduced by its computer system due to the Department's failure to restore the grants—upon vacatur of the non-continuations—to their original 5-year performance periods, instead choosing to reinstate only a single year's performance period tied to the year's budget period. This action, too, violated the Court's April 8 order, as it failed to effectuate the vacatur of the Department's non-continuation determinations. Nonetheless, at the present time, NYCPS has accepted the Department's representation that it has made no decision either way as to whether the grants will be continued for the 2027 federal fiscal year.

**NYCPS' Second Motion to Enforce the April 8 Order and the June 4 Order**

On July 10, 2026, NYCPS again moved to enforce the April 8 Order, seeking a new order vacating the June 9 GANs and directing Defendants to make appropriate new continuation awards, consistent with the June 4 Order and with their prior practice.

On July 13, 2026, the Court directed the Department to file the Administrative Record for the June 9 GANs, together with any supporting declarations, by July 20, 2026. First Action, ECF Dkt. 112. None of those materials provided a lawful explanation for the Department's actions in the June 9 GANs. *Id.*, ECF Dkt. 113-1, 113-2, 113-3, 113-5, 113-6.

**NYCPS Continues to be Harmed by the September 2025 Discontinuation of the MSAP Grants, the Failure to Restore the Grant Awards Upon the Court's Vacatur, and Ongoing Actions Taken by Defendants Impacting NYCPS and the Grants**

This Court found in the April 8 Order that the Department's Discontinuation, done without notice, investigation, hearing, or opportunity to respond, had failed to comply with the exacting process required by law to adjudicate a Title IX violation. Those actions forced the 19 MSAP schools to operate without any funding at all beginning on October 1, 2025, and then, beginning on December 1, 2025, to operate under an interim, austerity budget using only the unspent Carryover Funding from the prior year. As a consequence, planned programming and projects for the 2025-2026 school year and beyond were eliminated, reduced, or cast into doubt. These actions gave the Projects no opportunity to provide many of the services and events typically provided at the end of the school year, such as summer enrichment activities for students, or to plan for the upcoming school year. Levitt Aug. 26 Decl., ¶¶ 52-55.

## ARGUMENT

This Court has jurisdiction to decide this action, and NYCPS is entitled to judgment on each of its five causes of action under the APA as a matter of law: the Department acted "without observance of procedure required by law" *id.* § 706(2)(D), in multiple respects (Counts

I, II, and IV); the actions of the Department in determining NYCPS' MSAP funding awards were "arbitrary [and] capricious" (Count III); and the Department's actions were "otherwise not in accordance with law" *id*. §706(2)(A) (Count V). On these bases, the Grant Reduction and the Reimbursement Pay Condition in the June 9 GANs are void, illegal, and of no force or effect, and should be vacated and set aside, and declaratory and injunctive relief should issue to govern future grant continuation awards. NYCPS also moves for preliminary injunctive relief to require Defendants to set aside sufficient funds so that a remedy will remain available in the event that Plaintiff prevails on its claims, and an order that the statutory expiry of the FY 2026 be suspended insofar as it applies to the funds set aside.

In deciding a summary judgment motion in a civil action challenging agency action, the Court reviews the agency action "'not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious' or otherwise unlawful," *Ass'n of Amer. Universities v. Dep't of Defense*, 806 F. Supp. 3d 79, 89-90 (D. Mass. Oct. 10, 2025) (*quoting Bos. Redevelopment v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016).

## I. This Court has Jurisdiction Over the Dispute and the Relief Sought

This Court has jurisdiction to decide this action under the APA, which waives federal sovereign immunity for suits alleging injury by agency action. 5 U.S.C. § 706. The waiver does not apply if the suit seeks "money damages," 5 U.S.C. § 702, or if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *id.,* 704, such as the Tucker Act, which requires claims sounding in contract be heard by the Court of Federal Claims; however, neither exception applies here.

This Court previously held in the April 8 Order that "[t]he source of the right that NYCPS seeks to vindicate is not rooted in contract" and that "NYCPS does not seek relief based

on a violation of the grants' terms." First Action, ECF Dkt. 83, at 4. "Instead, NYCPS is only seeking that the non-continuation decision be vacated" and "in support of that request, it cites alleged violations of the APA without relying on the grant agreements." *Id.* ECF Dkt. 83, at 4-5. In that Order, the Court held that it had jurisdiction to vacate the determinations and to order Defendants to make new continuation determinations and, in the June 4 Order, that it had jurisdiction to direct Defendants—having determined to continue the grants—to issue grant continuation awards. *Id*. ECF Dkt 104.

In this action, NYCPS challenges the Grant Reduction and Reimbursement Pay Condition in the June 9 GANs on the grounds that they were unlawful on five grounds: they reduced the grant funding as a result of the previously-adjudicated Title IX violation without following Title IX procedures (Count 1); the Reimbursement Pay Condition was unlawful because its imposition failed to comply with the GEPA statute, 20 U.S.C. § 1221 *et seq.*, and the regulations under 2 C.F.R. Part 200 (Count II); the Grant Reduction and the Reimbursement Pay Condition were arbitrary and capricious (Count III); the policy underlying the Grant Reduction and the Reimbursement Pay Condition was unlawful in that it purported to impose a novel interpretation of Title IX without having been promulgated through notice-and-comment rulemaking (Count IV); and the Department's Title IX finding, which underlay the Grant Reduction and Reimbursement Pay Condition as well as the Discontinuation, was contrary to law as an erroneous and unsupported interpretation of Title IX (Count V). All of these claims are properly before this Court. *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982).

In addition to vacatur of the June 9 GANs, NYCPS seeks declaratory and injunctive relief to clarify and guide the relationship between NYCPS and the Department, given that NYCPS' five MSAP grants are each multi-year grants with additional grant years remaining, and

that the Department will be required to make future grant continuation determinations. This Court has jurisdiction to issue a permanent injunction.

## II. NYCPS is Entitled to Judgment as a Matter of Law on Each of its Five Causes of Action

The facts before the Court are sufficient to warrant summary judgment in favor of NYCPS, as the full record has been produced in the First Action and the Court is familiar with the issues to be decided.

### A. The Grant Reduction and Reimbursement Pay Condition Are Unlawful Actions Taken Without Observance of Procedure Required by Law

The April 8 Order previously found that the Department's initial discontinuation was, in essence, a Title IX enforcement action. This Court found that Defendants' argument that the initial Discontinuation was not a Title IX enforcement action "flies in the face of the record." First Action, ECF Dkt. 83 at 7. The June 9 GANs perpetuate and rely on that initial unlawful Discontinuation.

As the Court is aware, "[t]o revoke funding under Title IX, an agency must (1) make findings on the record after a hearing; (2) attempt to secure voluntary compliance; (3) file a written report with both Houses of Congress detailing the circumstances of the violation; and (4) wait thirty days after the report is filed." *Id*. "It is undisputed both that defendants did not follow these statutory procedures, and that the procedures would apply if they non-continued the grants because of Title IX violations." *Id.* The June 9 GANs constituted unlawful agency action without observance of procedure required by law, contrary to the APA.

As discussed above, the July 9 GANs issued funding for only the final quarter of the year, from July 1 to September 30, 2026, and further reduced that amount of funding by the remaining amounts of Carryover Funding. Levitt Aug. 26 Decl. ¶¶ 43-44. The Department's decision to issue less than a quarter of the funding that would have been issued absent the

Discontinuation perpetuates the initial violation of Title IX procedures. The assertion contained in the declaration of Murray Bessette that "the Department did not consider any alleged or actual civil rights violations or civil rights compliance concerns, including those regarding Title IX," First Action, ECF Dkt. 113-1 ¶ 8, in its calculations does not absolve the Department of the fact that it violated Title IX procedure and must issue new grants for the *entire* year, not simply the period following the Court's decision.

The Department's admissions confirm that its unlawful non-continuation determinations remain the but-for cause of a reduction in NYCPS' MSAP funding, without compliance with the procedural steps required by Title IX. The GANs expressly rely on the fact that "[t]he grantee submitted and received approval of its budget through June 30, 2026," and on that basis slashed NYCPS' continuation funds by 75%, since October 1 to June 30 represents 75% of the budget period Levitt Aug. 26 Decl., Ex. J (GANs Block 10, Item 6). But the budget referred to was submitted only because of the Consent Order entered into to resolve NYCPS's request for a preliminary injunction in the first action, and was intended only as an interim measure to provide funding during the litigation; it was not intended to be a replacement for the FY2026 grant funding. The June 9 GANs' reduced funding thus is directly traceable to the Department's violation of Title IX in the issuance of its non-continuation decisions. In addition, the Department further reduced NYCPS' continuation funding based on the amount of Carryover Funding available as of June 30, 2026. *Id.* Here, too, the carryover amounts were not intended to take the place of new funding. As a result of these improper actions, NYCPS continues to suffer the effects of the Department's Title IX violations in the form of reduced funding.

Additionally, the June 9 GANs themselves make clear that the Department continues to consider Title IX. The GANs require, without justification, that NYCPS submit all

requests for reimbursement to the MSAP office prior to accessing funding. They also impose new restrictions on the MSAP funding that are based on the Department's new interpretation of Title IX. *Id.* (GANs, Block 10, Item 7). The Department has offered no other explanation for its decision to reduce the funding awarded in the original grants. The only statement approaching an explanation for the Department's actions is its vague pronouncement that "this continuation determination is being issued in protest and solely to comply with the above court order, and *the Department continues to have concerns regarding your grant*." *Id.,* Ex. G (April 17, 2026 Notices of Continuation Determination, at 1 (emphasis added)). What that statement leaves unsaid, but yet is inescapable, is that from the outset, the only "concerns" that the Department has identified about NYCPS' grants is NYCPS' purported violation of Title IX. Not a single other "concern" has ever been identified that explains or justifies its actions in the June 9 GANs.

For all of these reasons, the Reduced Grant and Reimbursement Pay Condition in the June 9 GANs are unprecedented funding actions that can only be understood as building upon and inextricably linked to its prior Discontinuations—since ruled unlawful—based on Title IX.

### B. The Reimbursement Pay Condition was Imposed Without Observance of Procedure Required by Law

NYCPS is entitled to judgment as a matter of law on its claim for relief based on the Department's failure to act in accordance with required procedure in imposing the Reimbursement Pay Condition. The imposition of that condition is governed by the General Education Procedures Act ("GEPA"), 20 U.S.C. § 1221 *et seq.*,. and the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 2 C.F.R. § 200 *et seq.*

GEPA authorizes the Department to impose a reimbursement payment condition, 20 U.S.C. § 1226a-1, 2 C.F.R. § 200.208(c), but any such action is subject to detailed

regulations. The Department was required to first perform an analysis of four factors going to NYCPS' history of compliance with federal award terms and conditions and its ability, including financial ability, to perform. *Id*. § 200.208(b). It also was required to notify NYCPS of the nature of the condition, the reason for its imposition, the action needed to remove the condition and the time allowed, and the method for requesting reconsideration of the condition. *Id.* § 200.208(d). The Department followed none of these required steps before imposing the Reimbursement Pay Condition.

**C. The Department's Actions were Arbitrary and Capricious, 5 U.S.C. § 706(2)(A)**

The Department's dramatic reduction of NYCPS's MSAP grant awards were arbitrary and capricious on multiple grounds and should be vacated in their entirety.

An agency action is arbitrary and capricious where it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), does not show "a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citation omitted), or does not "offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Commerce v. New York*, 588 U.S. 752, 758 (2019). This is particularly the case where agency action is an abrupt change from prior policy. *See, e.g., American Association of University Professors v. Rubio*, 802 F. Supp. 3d 120, 192 (D. Mass. Sept. 30, 2025). Under the "change-in-position doctrine," agencies seeking to change their existing policies must provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests. *FDA v. Wages & White Lion Invs.*, 604 U.S. 542, 568 (2025) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22

(2016) (explaining "change-in-position doctrine")); *Thakur v. Trump*, 787 F.Supp.3d 955, 1106 (N.D. Cal. 2025).

**1. The Grant Reduction**

The Department's significant reduction of NYCPS' MSAP grant awards based on an unprecedented method of calculating the amounts and a misrepresentation of the nature of the "budget" that was submitted pursuant to the Consent Order was arbitrary and capricious. *FCC*, 592 U.S. at 423; *Wages & White Lion Invs.*, 604 U.S. at 567. *See* Levitt Aug. 26 Decl. ¶ 44.

*First*, the Department did not articulate a satisfactory explanation for its chosen methodology. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Dep't of Com. vs. New York*, 588 U.S. at 773. The Department failed to adequately and contemporaneously explain or justify its decisions to rely on the Consent Order budgets in order to limit the grant award to the last quarter and to divide the annual requested and recommended average award for each grant ($3,000,000) by the 12-month fiscal year period.

At various points, the Department has adverted to the idea that 34 C.F.R. § 75.253 affords it discretion to consider how the grantee will use carryover funds in determining the amount of continuation funding to award. But the Department may not exercise any such discretion in a manner that is arbitrary and capricious or contrary to law—and it has done so here.

The parties entered into the Consent Order in November 2025 to enable NYCPS to access the Carryover Funding as an interim measure, in response to NYCPS' motion for a preliminary injunction. The parties never discussed with each other or the Court that Defendants would subsequently use the Carryover Funding so as to substantially obviate the need for a continuation grant award for FY2026. Rather, they expressly agreed that the use of the Carryover was to be merely an interim measure to bridge the gap until either the non-continuation was vacated by the Court, or it was upheld—a means to an end, rather than an end in itself. The Department's

consideration of and reliance on the Carryover Funding in this manner, under circumstances never contemplated by the parties, is arbitrary and capricious.

The Department's reliance on NYCPS' Carryover Funding disregards the fact that the availability of such funds at the end of the 5-year performance period are an integral, expected part of the MSAP grant cycle. Levitt Aug. 26 Decl. ¶ 55. MSAP regulations recognize the critical role of carryover funding to the sustainability of the magnet schools by providing grantees with the option of a no-cost extension at the end of a grant's performance period to enable the use of the funds during a sixth year. The Department failed to offer any satisfactory explanation for adopting a methodology that represents a complete departure from its prior consistent agency procedure in making awards for the NYCPS MSAP grants, and undermines the post grant viability and sustainability of the schools.

Further, the Department's assertion in the GANs that it had "limited information regarding the specific activities taking place in the last quarter of the performance period," June 9 GANs at 2-3, disregarded the fact that NYCPS had already provided the Department with that information in its Annual Performance Reports. Levitt Aug. 26 Decl. ¶¶ 35-36. Thus, the Grant Reduction fails to show "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S.*, 463 U.S. at 43.

*Second*, the Department's methodology for calculating NYCPS' grant amounts also violates "[t]he change-in-position doctrine," by failing to "display awareness that [they are] changing position," and failing to "provide a reasoned explanation for the change." *Wages & White Lion Invs.*, 604 U.S. at 567 (quoting *Encino Motorcars, LLC*, 579 U.S. at 221–22). The methodology used to calculate NYCPS' FY2026 grant awards differs from that of any other GANs NYCPS has ever received. Levitt Aug. 26 Decl. ¶¶ 43-44. The Department's initial and predicted future grant awards for these GANs were uniformly set at $2,999,999 for each year. *Id.* ¶¶ 9,13. Subsequent continuation GANs were consistent with those expected, uniform award amounts. *Id.* ¶¶ 13,16,18. The Department

has never before adjusted or reduced the MSAP grant awards from the expected amounts as set out in the initial GANs or reduced the awards based on Carryover Funding being available during subsequent budget periods. *Id.* ¶¶ 16-18.

The Department's reduction of the grant amounts based on NYCPS' access to and use of FY2025 Carryover Funding is also unprecedented and without reasoned explanation. "Unexplained inconsistency between agency actions is a reason for holding an interpretation to be an arbitrary and capricious change." *Washington v. U.S. Dep't of Health and Human Services*, 2025 WL 3002366, 2025 U.S. Dist. LEXIS 211013 *56 (D. Or. Oct. 27, 2025), *quoting Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) and *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005). The Department also failed to acknowledge this significant change in longstanding practice. Levitt Aug. 26 Decl. ¶ 52. Moreover, the Department failed to supply a reasoned explanation for relying on the budgets NYCPS submitted for using the Carryover Funding in connection with the Consent Order.

*Third*, courts have set aside agency actions when agencies failed to consider significant relevant factors, rendering their decisions unreasonable under the APA. *Motor Vehicle*, 463 U.S. at 43. Here, the Department failed to consider that, because the Carryover Funding was effectively exhausted in an effort to mitigate the effects of the unlawful Discontinuation, the Department's failure to provide funding for the entirety of the grant year resulted in very little funding remaining at the end of the 2025-2026 school year to support the expected end-of-year activities, summer programs, and planning and purchases for the upcoming school year. Levitt Aug. 26 Decl. ¶¶ 52-54. Instead, the drastic reduction in funding has compounded the harms associated with the Discontinuation.

The Grant Reduction is also arbitrary and capricious because it fails to account for the serious reliance interests of NYCPS and the MSAP Program's participants and beneficiaries, such as students, teachers, and staff. *Wages & White Lion Invs.*, 604 U.S. at 567. *See also Dep't of Homeland*

*Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) ("When an agency changes course, … it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account … It would be arbitrary and capricious to ignore such matters.") (internal quotations omitted); *cf. Ass'n of Am. Universities v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106 (D. Mass. 2025) (federal agency failed to meaningfully address the reliance interests of universities that had structured long-term financial commitments around negotiated rates).

NYCPS reasonably expected to receive annual continuation awards that provide funding for the entirety of the grant year, based on the MSAP Projects' performance, consistent with the Department's priorities as expressed in the grant NIAs. Levitt Aug. 26 Decl. ¶¶ 7-9. NYCPS also reasonably expected that, due to the mis-alignment of the grant year and the school year and other circumstances that normally lead to unexpended carryover funding, at the end of every grant year there would remain such funding to be used until receipt of the following year's grant funding, allowing the year. *Id.* ¶¶17-18. NYCPS also had an expectation, based on past practice and experiences, that these circumstances would repeat annually so that at the end of each grant's final budget period, NYCPS would have access to carryover funding to fully complete each school's planned programming and projects in the year following the final funded grant year, in order to permit an orderly transition to self-sufficiency, and thereby to ensure the health and sustainability of the magnet schools after the five years of MSAP funding had been exhausted. *Id.* ¶¶ 19-20, 55.

The Administrative Record provides no indication that the Department took into account NYCPS' investment in staffing, curriculum development, contracted programming, partnerships with community-based organizations, and materials and infrastructure. Nor is there any indication that the Department considered the reliance interests of the thousands of students enrolled in these magnet schools, and their families. Students have chosen to enroll, and parents and caregivers have chosen to enroll their children, in the MSAP-funded schools with the

expectation that funding will be provided for the full 5-year Project term, consistent with Congressional intent, to allow the benefits of the carefully designed and planned magnet program to be realized. *See* Levitt Aug. 26 Decl. ¶¶ 52-53. The NYCPS MSAP Projects are replete with such benefits. *Id.* ¶¶ 10-12, 20-22.

**2. The Reimbursement Pay Condition**

The Department's decision to impose a rare and burdensome Reimbursement Pay Condition for the remaining three-month FY2026 grant continuation period, without reasoned explanation, is similarly arbitrary and capricious. *FCC*, 592 U.S. at 423; *Wages & White Lion Invs.*, 604 U.S. at 567.

The Department has failed to offer a reasoned explanation—and in fact has offered *no* explanation at all—for imposing this unusual and onerous condition on NYCPS. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 740 (D.C. Cir. 1986) (finding federal agency action arbitrary and capricious because there was no basis in the administrative record for the change, and the agency did not offer any explanation for its action). The June 9 GANs simply impose the condition without providing the Department's basis for doing so, and the administrative record and declarations the Department submitted are devoid of any explanation as well. This type of procedure is strict and burdensome. Levitt Aug. 26 Decl. ¶¶ 45-48. The Department's failure to provide a reasoned explanation for its decision is fatal. *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 83-85 (2d Cir. 2006).

**D. In Implementing and Enforcing a New Rule Concerning Title IX Without Revoking the Prior Rule and Engaging in Notice-and-Comment Rulemaking, the Department Acted Without Observance of Procedure Required by Law**

NYCPS also is entitled to judgment as a matter of law on its claim that in implementing and enforcing a new interpretation of Title IX without engaging in notice-and-comment rulemaking, the Department has acted without observance of procedure required by

law. "The APA generally requires that before a federal agency adopts a rule it must first publish the proposed rule in the Federal Register and provide interested parties with an opportunity to submit comments and information concerning the proposal." *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (citing 5 U.S.C. § 553); *see also, Humane Soc'y of the United States v. United States Dep't of Agric.,* 41 F.4th 564, 569 (D.C. Cir. 2022). "Failure to abide by these requirements renders a rule procedurally invalid." *Azar, Id.* Moreover, under GEPA, the Department is required to follow the APA's notice-and-comment rulemaking procedure when implementing a new policy guiding its enforcement of Title IX. *See* 20 U.S.C. § 1232(a) (defining "regulation" to include any "rule, regulation, guideline, interpretation or other requirement that … has legally binding effect in connection with, or affecting, the provision of financial assistance under any applicable program").[6]

The Department has unlawfully instituted a new policy, set out in the USDE Grant Continuation Policy,[7] without first engaging in notice-and-comment rulemaking. The USDE Grant Continuation Policy is a clear attempt to carry out the Trump Administration's new interpretation of Title IX, requiring the Department to ensure that grant funds are not being used to support activities such as "[a]llowing males into female-only sports," and "[a]llowing males into female intimate spaces (e.g. bathrooms, locker rooms)," and stating that "[p]rogram office leadership shall flag for further review any project that includes any activities, such as those

[6] Although the APA generally excludes "a matter relating to … grants, benefits, or contracts," 5 U.S.C. §553(a)(2), under GEPA such exception "shall only apply to regulations … that govern the first grant competition under a new or substantially revised program authority as determined by the secretary." 20 U.S.C. § 1232(d). The continuation grants at issue here plainly are not a "first grant competition" such that they would be excluded from notice-and-comment requirements.

[7] USDE "Non-Competing Continuation Discretionary Grant Award Review Policy," dated June 5, 2025 (First Action, Declaration of Melanie Ash, ¶ 4 and Ex. B, ECF Dkt. 109, 109-2).

listed above, that violate… Title IX." Further, the USDE Grant Continuation Policy mandates that each discretionary grant continuation award "shall" be reviewed to "to ensure that grant funds are not supporting any discriminatory activities." *Id*. at p.2.

Courts have routinely found that such internal agency directives and priorities that are used as part of the Department's grant review process constitute a regulation under GEPA that requires notice and comment rulemaking. *See, e.g., Washington v. United States Dep't of Educ.,* 167 F.4th 1241, 1245 (9th Cir. 2026) (USDE internal directive was legally binding and implicated GEPA's rulemaking requirement because it "mandated an across-the-board review of all new grant awards and the re-review of all issued grants in accordance with the Department's new policy objectives"); *Council for Opportunity in Educ. v. U.S. Dep't of Educ.,* No. 25-CV-03491 (TSC), 2026 WL 120984, at *13 (D.D.C. Jan. 16, 2026) (GEPA required notice and comment rulemaking for "any priorities and other generally applicable criteria utilized" in the grant selection process); *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 854 (D. Md. 2025) (under GEPA, "department priorities," which are "established by the Secretary or Department and [which] grant recipients must abide…to avoid cancellation" must go through notice and comment rule making).

The Department did not cite the USDE Grant Continuation Policy in implementing the Grant Reduction and the Reimbursement Pay Condition, but it necessarily relied on and implemented it when it required adherence to two "gender ideology" Executive Orders (the "Gender Ideology EOs") as a condition in the June 9 GANs. Levitt Aug. 26 Decl., Ex. J (Box 10, Item 7). The Gender Ideology EOs impose the same interpretation of Title IX as is found in the USDE Grant Continuation Policy. *See, e.g,* EO 14168 § 3(f), 4(d); EO 14190 § 2(e) (imposing an interpretation of Title IX that rejects gender identity-based access to intimate spaces such as

bathrooms or locker rooms); USDE Grant Continuation Policy at 2 (requiring program offices to ensure grant funds are not being used to allow males into female intimate spaces such as bathrooms and locker rooms).

Accordingly, this Court should issue a declaratory order and an order and judgment vacating the GANs, and enjoining the Grant Reduction and the imposition of the Reimbursement Pay as in violation of procedures required by law.

**E. The Department's Interpretation of Title IX is Contrary to Law**

As discussed above at Point II.A, the June 9 GANs perpetuate the Department's unlawful Title IX determination. Although the April 8 Order did not reach this issue, the Department's interpretation continues to be contrary to law. NYCPS is entitled to judgment as a matter of law on its fifth claim under the APA because the June 9 GANs require NYCPS to adhere to the Department's novel interpretation of Title IX, including based on the Gender Ideology EOs and guidance issued by the Department of Justice[8] that are entirely unsupported by the statute or precedent. Levitt Aug. 26 Decl., Ex. J (GANs, Block 10, Item 7). Agency action that is "otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), is unlawful and must be set aside.

The July 9 GANs state that "[g]rantees must not use federal funds … in any manner that violates … Title IX" and that Executive Orders and guidance that purport to limit recipients from permitting transgender-inclusive policies will be applied to the Department's consideration of appropriate uses. Levitt Aug. 26 Decl., Ex. J (GANs, Block 10, Item 7). These Executive Orders

[8] U.S. Dep't of Justice, Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination (July 29, 2025), available at https://www.justice.gov/ag/media/1409486/dl.

have no basis in law, and these limitations on NYCPS' use of MSAP funding is not an appropriate avenue for the Department to use to enact its policy goals absent statutory or other legal authority.

The Supreme Court recently clarified that Title IX does not require schools to enact transgender-inclusive policies. *See West Virginia v. B.P.J.*, 225 L. ED. 2d 1040 (2026). In doing so, it rejected prior determinations by lower courts that such policies were required. *See, e.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (June 28, 2021); *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023); *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2023). The Court framed the question not as a matter of whether Title IX allows schools to implement protections for transgender students, but rather as "whether Title IX permits schools to maintain women's and girls' sports for biological females," and found that "[t]he answer is yes." *B.P.J.*, 225 L. ED 2d at 1055. The Court rejected arguments that *Bostock v. Clayton County*, which held that Title VII prohibits employment discrimination "because of . . . sex," and therefore prohibits employers from making adverse determinations against an employee "for being gay or transgender," 590 U.S. 644, 662 (2020), controlled in the Title IX context. The Court said that Title VII and Title IX are "vastly different" and that while "Title VII generally requires that men and women be treated without regard to their sex" in the workplace, in the context of education Title IX "authorizes separate men's and women's sports teams." *B.P.J.*, 225 L. ED 2d at 1058.

Nothing in the Court's opinion in *B.P.J.* suggests, however, that schools are required to bar transgender students from participation in sports or otherwise deny them protection. Indeed, as Justice Gorsuch notes in his concurrence, because Title IX is authorized under the Spending Clause any conditions it requires must be "clear and unambiguous." *B.P.J.*, 225 L. ED.

2d at 1069 (*Gorsuch, J.* concurring). Just as "[n]othing in Title IX clearly and unambiguously alerts funding recipients that they are prohibited from restricting a school-sponsored sports team to biological women or girls," *id.*, nothing in the statute clearly and unambiguously alerts funding recipients that they are prohibited from enacting transgender-inclusive policies. Thus, while the Court did not explicitly address this issue, *B.P.J.* suggests that the decision of whether to enact such policies is a matter for the states and individual school districts to determine.

While there is no controlling precedent on point in the Second Circuit, the Ninth Circuit has found that Title IX does not prevent school districts from treating transgender students equally to their peers. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1227 (9th Cir. 2020) (finding it likely that a grant condition that would have *required* UCLA "to adopt novel interpretations of the law, favored by Defendants but not yet imposed by Congress or the courts," violated the Tenth Amendment/Spending Clause). As the 9th Circuit stated in *Barr*, "just because Title IX authorizes sex-segregated [locker and bathroom] facilities does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity"; "[n]owhere does the [Title IX] statute explicitly state, or even suggest, that schools may not allow transgender students to use the facilities that are most consistent with their gender identity." 949 F.3d at 1227.

This Court should follow the sound reasoning of the Ninth Circuit in finding that Title IX does not prohibit states from allowing transgender students equal access. Accordingly, the Department's attempt to impose its unsupported legal analysis of Title IX on NYCPS through the June 9 GANs should be rejected by this Court as contrary to law, and should be vacated.

## III. NYCPS is Entitled to Vacatur and Declaratory and Injunctive Relief

For the reasons described above, this Court should vacate and set aside the June 9 GANs as unlawful; declare that the Department's actions in imposing the Grant Reduction and the Reimbursement Pay Condition were unlawful; direct that Defendants issue new FY2026 continuation awards, including GANs; and permanently enjoin the Department from interfering with NYCPS' MSAP grant funding or imposing onerous terms or conditions, except as permitted by MSAP and/or GEPA procedures, and from perpetuating harms from alleged Title IX violations without complying with Title IX procedures.

NYCPS has demonstrated above its actual success on the merits as to each of its claims. Having established that, the record on this motion also demonstrates that NYCPS has met the remaining elements to establish entitlement to a permanent injunction.

To obtain permanent injunctive relief, a prevailing plaintiff must demonstrate (1) irreparable injury; (2) that remedies available at law, such as damages, are inadequate, (3) that, on the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction. *Washington v. United States Dep't of Education*, 813 F. Supp.3d 1222, 1246 (W.D. Wash. 2025).

*First*, there is substantial evidence in the Levitt Aug. 26 Declaration and exhibits thereto that NYCPS, its students, parents, and magnet schools will suffer irreparable harm in the absence of permanent injunctive relief barring the Department from imposing in future grant years the Grand Reduction or the Reimbursement Pay Condition.

*Second*, NYCPS has demonstrated that a damages remedy will not address the prospective risk of harm, in that each of the grants will require at least one additional continuation decision between now and the end of their grant performance periods in 2027 and 2028. Unless

permanently enjoined by this Court, there is no way to ensure that the Department will not take the same actions in the future.

*Third*, the balance of hardships weighs entirely in favor of NYCPS and the magnet schools, which, absent injunctive relief, will face the annual threat of loss of substantial portions of their grants and the imposition of the Reimbursement Pay Condition. On the other hand, there is no hardship that the Department can claim in being required to follow the law.

*Fourth*, NYCPS easily meets the final prong, that the public interest will be served by issuance of a permanent injunction. The public interest is best expressed through the will of Congress, which determined that the "best interest" of the United States supports the continued funding of magnet schools, 20 U.S.C. § 7231(a)(4). And Congress has determined that the Department may not impose conditions on MSAP funding without following prescribed procedures, 20 U.S.C. § 1226a-1, *see* 2 C.F.R. § 200.208. Accordingly, a permanent injunction should issue.

## IV. This Court Should Issue a Preliminary Injunction and Temporary Restraining Order to Protect its Ability to Provide an Effective Remedy

On August 18, 2026, in light of the upcoming end of the FY2026 fiscal year on September 30, 2026, NYCPS requested that Defendants agree to preserve sufficient funds in the FY2026 appropriation to enable them to comply with any order that this Court might issue that vacated the June 9 GANs and directed Defendants to issue new lawful GANs – whether in deciding NYCPS' July 10 Second Motion to Enforce in the First Action or its summary judgment motion in this action. Ash Aug. 26 Decl., ¶ 9.

On August 24, 2026, Defendants declined to agree to NYCPS' request. *Id.* ¶ 10. NYCPS therefore moves for a preliminary injunction and temporary restraining order to require Defendants to immediately set aside and preserve funds sufficient to constitute the expected award

for each NYCPS MSAP grant, and thereby ensure that sufficient funds will be available to be awarded to NYCPS should the Court vacate the June 9 GANs and order USDE to make a new, lawful, appropriate funding award, and should USDE then determine that a higher award amount is appropriate.

In addition, NYCPS seeks an expedited ruling that the statutory lapse date for those set-aside, FY2026 appropriated funds be suspended to permit any such funding award to be issued following the date on which the appropriation would otherwise expire, September 30, 2026.

The Administrative Procedure Act, 5 U.S.C. § 705, authorizes this Court to "issue all necessary and appropriate process … to preserve status or rights pending conclusion of the review proceedings" to prevent irreparable injury"). A preliminary injunction is urgently needed in this case to preserve the Court's ability to provide an effective remedy if NYCPS prevails in its claims.

To obtain a preliminary injunction, a movant must show a likelihood of success on the merits; that it will suffer irreparable harm in the absence a preliminary injunction; a balance of the equities in its favor; and a public interest served by issuance of the preliminary injunction.. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020). The final two factors – the balance of equities and the public interest – "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The standards for granting a temporary restraining order are the same as those governing preliminary injunctions. *AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465 (S.D.N.Y. 2010).

NYCPS has demonstrated in Point III above its actual success on the merits as to each of its claims and easily meets the test of a likelihood of success.

The irreparable harm to NYCPS, in the absence of a preliminary injunction, is evident: if this Court vacates the June 9 GANs and orders Defendants to issue new, lawful GANs, and if Defendants determine to make a larger award, unless Defendants preserve sufficient funds they will be unable to comply with their new award determinations. That result would mean that this Court's remedial order would have no effect.

Similar irreparable harm would result if, pending this litigation, the FY2026 MSAP appropriation lapses by operation of law on September 30, 2026, the end of the fiscal year, and Defendants are therefore unable to make a new grant award for FY2026 following that date from the funds that were set aside.

The likelihood of irreparable harm here is underscored by the Department's acknowledgement in the First Action that "The Department expended all of MSAP's FY 2025 appropriated funds as required by Congress by September 30, 2025. The Department awarded FY 2025 MSAP funding to other MSAP grantees." First Action, ECF Dkt. 95 ¶ 13 (Declaration of Jennifer Todd, dated May 22, 2026, submitted in opposition to NYCPS' first motion to enforce.

The need for this relief also is clear from the outcome in cases where funds were not preserved or appropriations expired. *See, e.g., County of Suffolk v. Sebelius*, 605 F.3d 135, 137 (2d Cir. 2010) (plaintiffs' claims were moot because "HHS had awarded the funds at issue to other grant recipients"); *City of Houston v. Department of Housing & Urban Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (affirming decision that case was mooted by expiration of the relevant appropriation. "The instant case is moot because the panel can offer no relief which 'can redress [appellant's] asserted grievance,' namely, the denial of over $2.6 million in CDBG funds"). *Cf. Washington v. United States Dep't of Education*, *supra,* 813 F. Supp.3d at 1248 (noting that "at

oral argument, the Department's counsel suggested that the necessary funds have been set aside and the Department's ability to access those funds will not expire at the end of the year").

The other preliminary injunction factors are likewise met here. The balance of hardships weighs entirely in NYCPS' favor. There is no hardship to Defendants in being required to take steps that are necessary so that they can comply with this Court's remedial order. Nor is there any question of where the public interest lies. Congress has determined that the "best interest" of the United States supports the continued funding of magnet schools, 20 U.S.C. § 7231(a)(4). There is no public interest in denying NYCPS such continued funding due solely to Defendants' failure to preserve appropriated funds or the lapse of the appropriation pending a remedial order by this Court.

Plaintiff therefore requests immediate relief to ensure that sufficient funding from the MSAP FY2026 appropriation is preserved and that payment may be made after the lapse of the appropriation.

## CONCLUSION

For the foregoing reasons , this Court should issue a preliminary injunction and temporary restraining order to protect its ability to provide an effective remedy, and should grant summary judgment to NYCPS and (1) hold unlawful, vacate, and set aside in all respects the FY2026 June 9 GANs; (2) direct Defendants to issue new, lawful, full year FY2026 continuation awards, including GANs, consistent with past practice, that do not impose punitive or otherwise onerous terms or conditions, except as permitted by and in accordance with applicable MSAP and/or GEPA procedures, and that do not include the Gender Ideology EO condition; (3) grant preliminary and permanent injunctive relief as sought in the Complaint; (4) issue such other appropriate declaratory and injunctive relief as required to effectuate (1) – (3); (5) retain jurisdiction of this case for the purpose of supervising the Department's full compliance with the

Court's remedial order; (6) award NYCPS reasonable attorney's fees and costs in bringing this litigation; and (7) grant such other and further relief as this Court may deem proper.

Dated: August 26, 2026

Respectfully submitted,

STEVEN BANKS
Corporation Counsel of the City of
New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov

*/s/ Melanie C.T. Ash*
By: Melanie C. T. Ash
June R. Buch
Hope Lu
Gavin Mackie
Emeline Kong

**<u>Certificate of Compliance with Local Rule 7.1(c)</u>**

As required by Local Civil Rule 7.1(c), I certify that the document contains 9,403 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

*/s/ Melanie C.T. Ash*

Melanie C.T. Ash