UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

Defendants.

------------------------------------------------------------------------x

No. 25-cv-08547 (AS)

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF SECOND MOTION TO ENFORCE SUMMARY JUDGMENT ORDER**

Dated: New York, New York
September 4, 2026

STEVEN BANKS
Corporation Counsel of
the City of New York
100 Church Street
New York, New York 10007
(212) 356-2276

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 2

A. The Court Has Jurisdiction to Grant the Relief Sought ..... 2

B. Defendants Violated the April 8 and June 4 Orders by Issuing Truncated FY2026 Grant Awards to NYCPS and Imposing an Onerous Reimbursement Pay Condition ..... 5

(1) NYCPS' Reduced FY2026 Grant Awards, Inextricably Linked to USDE's Original Unlawful—and Since Vacated—Non-Continuations, Violate the Letter and Spirit of this Court's Orders ..... 6

(2) This Court May Review the Reimbursement Condition as a Violation of the June 4 Order ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquavit Pharms., Inc. v. U-Bio Med, Inc.*,
2020 WL 1900502 (S.D.N.Y. Apr. 17, 2020)....6

*Degen v. United States*,
517 U.S. 820 (1996)....5

*Institute of Cetacean Research v. Sea Shepherd Conservation Society*,
774 F.3d 935 (9th Cir. 2014)....6

*John B. Stetson Co. v. Stephen L. Stetson Co.*,
128 F.2d 981 (2d Cir. 1942)....6

*Ozturk v. Trump*,
779 F. Supp 3d 462 (D. Vt 2025)....6

*United States v. Spallone*,
399 F.3d 415 (2d Cir. 2005)....5

*Washington v. United States Department of Education*,
25-cv-1228 (KKE)....*passim*

*Washington v. United States Department of Education*,
26-cv-2409 (KKE)....*passim*

**PRELIMINARY STATEMENT**

Plaintiff, the Board of Education of the City School District of the City of New York, operating as New York City Public Schools ("NYCPS"), respectfully submits this reply memorandum of law in further support of its Second Motion to Enforce the Summary Judgment Order entered on April 8, 2026 (the "April 8 Order").

Defendants have again failed to comply with the April 8 Order and, as of June 9, 2026, with the Court's Order dated June 4, 2026 (the "June 4 Order") as well. In response to the April 8 Order, the United States Department of Education ("USDE") made new grant continuation determinations with respect to each of NYCPS' five Magnet School Assistance Program ("MSAP") grants, but without issuing the necessary continuation awards. In response to the June 4 Order, they issued grant continuation awards on June 9, 2026 (the "June 9 GANs"), but for the reasons described in NYCPS' moving papers and below, those awards failed to comply with the Court's direction, in the June 4 Order, that they be appropriate.

This Court has jurisdiction to grant the relief sought and has the inherent authority to enforce its orders and to protect its proceedings, and should do so here.

**BACKGROUND**

The relevant facts are set forth in the declarations and exhibits previously submitted in this action, including the Declaration of Todd Levitt in Support of Plaintiff's Second Motion to Enforce This Court's Orders, dated July 10, 2026 ("Levitt July 10 Decl." ECF No. 108), and exhibits thereto, which was previously submitted in support of this motion. NYCPS also relies on the declarations submitted by Defendants in response to the Court's July 13, 2026 Order (ECF No. 113-1, 113-2, 113-3), and the administrative record (ECF No. 113-4, 113-5, 113-6, the "Record").

## ARGUMENT

For the reasons described herein, Defendants' Opposition to NYCPS' Second Motion to Enforce (the "Opposition" or "Opp.") (ECF No. 120) fails to rebut NYCPS' entitlement to the relief sought, and this Court should accordingly exercise its authority to grant Plaintiff's motion to enforce; vacate the June 9 GANs; require that USDE make new, appropriate full-year grant awards for FY2026; and order USDE to issue new GANs effectuating such awards.

### A. The Court Has Jurisdiction to Grant the Relief Sought

In the Opposition Defendants once again assert that this Court lacks jurisdiction because NYCPS' claims sound in contract and the relief it seeks is a contractual remedy. Opp. 8-11. That argument is no more valid at this stage of the proceedings than it was when Defendants first raised it in their memoranda of law in support of their first cross-motion to dismiss (ECF No. 24 at 10-13); then, in support of their cross-motion to dismiss or for summary judgment (ECF No. 57 at 9-13); and subsequently, in opposition to NYCPS' first motion to enforce the April 8 Order (ECF No. 93, at 8-10).

This Court has rejected out of hand each of Defendants' previous attempts to invoke the Tucker Act to deny this Court's jurisdiction. As this Court found in its April 8 Order, "Defendants' arguments fall flat. The source of the right that NYCPS seeks to vindicate is not rooted in contract," and "[i]n this case, NYCPS' summary judgment motion does not seek to have this Court order that any money be paid out." ECF No. 83, at 4, 5.

After this Court vacated the non-continuation determinations for FY2026 and directed Defendants to make new determinations, Defendants determined to continue the grants, but they inexplicably failed to make timely grant awards, causing NYCPS to move to enforce the April 8 Order. In opposing the motion, Defendants argued that the Tucker Act barred jurisdiction in this Court to order them to make the grant awards, ECF No. 93 at 9 ("Where, as here, the prime

objective of the plaintiff is to obtain money from the Government, the Court lacks jurisdiction.") (internal quotations and citations omitted), and this Court again rejected the argument, accurately noting that "all plaintiff is seeking is for the defendants to determine the amounts of funding. If they determine the amounts of funding and then fail to actually disburse funds, plaintiff would have to go to the Court of Federal Claims under *NIH*. But there's clearly no Tucker Act issue here." Tr. of Arg. June 4, 2026, attached as Exhibit A to this memorandum of law, at 33.

In response to this Court's June 4 Order requiring Defendants to determine the FY2026 grant awards (ECF No. 104), Defendants applied an unprecedented and unlawful procedure when determining the grant awards, which resulted in a truncated grant award, inconsistent with all prior years. Levitt July 10 Decl., ECF No. 108, ¶¶ 9-14. As a result, NYCPS again asks this Court to enforce the April 8 Order, and now also the June 4 Order.

This Court directed Defendants to determine "the appropriate continued award amount" for the FY2026 grants. ECF No. 104. Defendants have instead issued anomalous awards that are utterly unsupported by the Record and can only be understood as a further consequence of Defendants' non-continuation of the FY2026 grants in September 2025. NYCPS thus seeks to have the June 9 GANs vacated, and an order directing Defendants to issue new, full-year awards for FY2026 that are appropriately consistent with their own unvarying prior methodology and not the further consequence of Defendants' unlawful finding of a Title IX violation. An order that vacates a determination and orders the agency to make a new, lawful determination does not direct the disbursement of funds. As was the case with this Court's June 4 Order, "there's clearly no Tucker Act issue here." Tr. of Arg., Exhibit A at 33.

Defendants attempt to create a jurisdictional issue by casting the original GANs as contracts, the MSAP regulations as contractual provisions, and NYCPS' anticipation of receiving

the consistent annual amount of MSAP funding set out in the initial GANs (and all subsequent GANs, up to FY2026) as a contractual expectation. Opp. at 9. In so doing, Defendants mischaracterize what the initial GANs actually stated—they specified that the grant awards for future years were not binding, but also that "the Secretary anticipates future funding for this award according to the schedule identified in Block 6." Record, ECF No. 113-6, at 2622-2623; 2745-2746; 2992-2993; 2858-2859; 2920-2921. Defendants also fail to acknowledge NYCPS' argument: that this anticipation *by the Secretary* of a consistent flow of funds during the five-year period was borne out by Defendants' actual practice of providing consistent funding in the continuation GANs., Pl. Mem. (ECF No. 116), at 6, 20-21. The point is that the Department itself anticipated that it would provide a consistent level of funding throughout the five-year grant period but abruptly switched course in FY2026. It first non-continued the grants altogether, and then, when this Court invalidated the non-continuations and ordered the Department to make new determinations, it acted contrary to *its own* prior practice and expectation when it came to the grant amounts. NYCPS challenges the June 9 GANs because Defendants made that change without any explanation, either in the Record or after the fact, and with every indication that it was a further consequence of the September 2025 unlawful non-continuation.

Defendants also miscast the relief NYCPS seeks, arguing that "Plaintiff seeks additional funding from the Government, which this Court cannot grant under the Tucker Act." Opp. at 10. As Defendants characterize the argument, "the basis for Plaintiff's claimed relief is contractual; without the GANs Plaintiff could not claim to expect additional funds." *Id.* at 10.

To the contrary, NYCPS actually seeks vacatur of the June 9 GANs and an order directing the issuance of new appropriate lawful grant awards. NYCPS does not claim that Defendants breached a term of the GANs and does not seek a contractual remedy. As the courts have

consistently held, the mere existence of a grant agreement does not mean that a claim based on statutes or regulations is one for breach of the agreement. "That the Grantees have a contractual relationship with the Department [of Education] does not transform any claim between these parties into a contract claim." *Washington v. United States Department of Education*, 26-cv-2409 (KKE) (*"Washington II"*) (filed on July 10, 2026, as a related case to *Washington v. United States Department of Education*, 25-cv-1228 (KKE) ("*Washington I"*)), ECF No. 50, at 8 (Order dated July 27, 2026 granting application for temporary restraining order).

This Court has repeatedly rejected Defendants' attempts to dismiss this action based on the Tucker Act, and none of Defendants' present arguments warrants a different result here.

**B. Defendants Violated the April 8 and June 4 Orders by Issuing Truncated FY2026 Grant Awards to NYCPS and Imposing an Onerous Reimbursement Pay Condition**

In their opposition, Defendants seek to narrowly constrain the ability of this Court to enforce its Orders by asserting first, that "[t]he Court's order prohibiting an unlawful non-continuation decision has no connection to § 75.253(e) and has no logical relationship [to the carryover] because [the Department] *continued* the grants," Opp. at 15, and second, that NYCPS' inability to "point to any language in the Court's orders prohibiting reimbursement pay status" is fatal to the motion. Opp. at 16. However, this Court is not bound by—and should not accede to—Defendants' narrow reading of its inherent authority.

As noted in NYCPS' moving papers, "[a] federal court has at its disposal an array of means to enforce its orders," including "by inherent authority." *Degen v. United States*, 517 U.S. 820, 827 (1996). Those means include the power to clarify, construe and interpret the language of its prior judgment. *See United States v. Spallone*, 399 F.3d 415, 422 (2d Cir. 2005) ("[T]he power to construe a court decree is essential to its enforcement."). Significantly, in deciding whether its orders have been violated, a court is not limited to the "strict letter" of the orders.

Rather, "it is proper to observe the objects for which the relief was granted and find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *John B. Stetson Co. v. Stephen L. Stetson Co.,* 128 F.2d 981, 983 (2d Cir. 1942). *See also, Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935 (9th Cir. 2014) (rejecting a claim of "technical compliance" with a "self-serving interpretation" of an injunction that is contrary to the spirit of the injunction) (cited in *Washington I*, 2026 WL 1429284 at *5 (W.D. Wa. May 21, 2026) (order denying, without prejudice, plaintiffs' second motion to enforce judgment). *Stetson* "remains good law in [the Second] Circuit, standing for the proposition that 'it is the spirit of the order, not the letter, that must be obeyed.'" *Ozturk v. Trump*, 779 F. Supp 3d 462, 497 (D. Vt 2025) (quoting *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, 2020 WL 1900502 at *6 (S.D.N.Y. Apr. 17, 2020).

**(1) NYCPS' Reduced FY2026 Grant Awards, Inextricably Linked to USDE's Original Unlawful—and Since Vacated—Non-Continuations, Violate the Letter and Spirit of this Court's Orders**

As described in detail in NYCPS' opening brief, USDE's issuance of the June 9 GANs flouted this Court's April 8 and June 4 Orders, which required first, that USDE make new continuation determinations, and second, that each be accompanied by a grant award that USDE determined to be the "*appropriate* continued award amount" for each MSAP Project, and third, that USDE issue new GANs reflecting those appropriate awards. June 4 Order, ECF No. 104 (emphasis added).

The Court's instruction that *appropriate* continued awards must be issued should be understood as arising out of the particular context in which the June 4 Order was made. Since this Court awarded summary judgment to NYCPS on April 8, USDE has engaged in a series of actions described as "in protest" of this Court's orders, following which this Court found that Defendants had failed to comply with the April 8 Order, and ordered that Defendants issue *appropriate*

awards. The Department's actions since that time have culminated in the June 9 issuance of unprecedented, truncated, 3-month grant awards for each MSAP Project, also made "in protest," for which USDE has offered no reasonable explanation. The inevitable conclusion is that notwithstanding this Court's Orders, USDE is intentionally taking steps to perpetuate the harmful effects of the original, unlawful, non-continuation determinations vacated by this Court, which were based on purported Title IX violations. Just as the Record fails to provide any substantive explanation for Defendants' actions that is not tethered to the unlawful non-continuations that are the subject of this action, so too Defendants' July 20, 2026 declarations and their Opposition Memorandum of Law also fail to provide any lawful justification—even after the fact—for limiting the June 9 grant awards to truncated funding covering only 3 months out of the year.

Defendants have unconvincingly attempted to recast the three-month awards for FY2026 (which saw the grantees receive only between $497,869 and $750,000 in new funding), when combined with the carryover funds that remained on October 1, 2025 at the start of FY2026, as USDE having given NYCPS' five MSAP Projects "access to" between 74 and 123% of their "annual requested and estimated average award amount," depending on the Project. Opp. at 1, 5-6. The falsity of this logic—conflating carryover from FY2025 with new funding for FY2026—has been exposed as such by USDE's complete failure to reckon with the realities created by the truncated 3-month awards.

First, the carryover funding that makes up the bulk of the supposed funds to which "access" was granted was actually not made available to NYCPS until December 8, 2025, and then only in connection with a consent agreement so ordered by this Court as a resolution of NYCPS' motion seeking preliminary relief during the pendency of the litigation.

Second, any attempt to credit NYCPS's forced depletion of its carryover funding,

undertaken to survive non-continuation determinations that this Court has since ruled unlawful, as "NYCPS having access to $14,958,933 for FY2026" must be summarily rejected, not only because it misleadingly obscures what can only be accurately understood as a 75%+ reduction in FY2026 funding for the MSAP Projects, but also because it carries with it the certainty of continuing harm to the nineteen magnet schools funded by the grants for the remainder of the Projects' lifespan as a result of the unlawful non-continuation. Depletion of the Projects' carryover funding from FY2025, when combined with the truncated grants for FY2026 that allow for no carryover funds going forward, guarantees the schools' future hardship. The schools use the current year's carryover funds in the summer and at the beginning of the following school year before new grant funds are made available on October 1, and they use carryover funds during the year following each Project's final award of grant funding to fully complete planned programming and to ensure a gradual and orderly transition to self-sufficiency. *See, i.e.,* Levitt July 10 Decl., ECF No. 108, ¶¶ 14-15; May 14, 2026 Declaration of Todd Levitt, ECF No. 87, ¶¶ 15-25; October 15, 2025 Declaration of Melissa Aviles-Ramos, ECF No. 6, ¶ 11. These are some of the very same harms this Court was acting to prevent when it ordered the vacatur of the unlawful non-continuations in the first place.

For all of these reasons, this Court should find that while USDE purports to have determined an *appropriate* continued award amount for FY2026, what it has actually done is anything but. By basing its continuation award on the interim carryover budget intended to fund the schools pending the resolution of the litigation, USDE has effectively denied NYCPS the benefit of the April 8 Order that vacated the non-continuation determinations and directed USDE to start the continuation process anew, and the June 4 Order that directed USDE to make an appropriate award of new funding. And all of this was done without USDE ever acknowledging

the fact that this Court's decision vacating the non-continuation determinations was also bringing to an end the parties' need to rely on the interim measure adopted until the validity of those determinations could be adjudicated.

Once this Court granted NYCPS' motion for summary judgment, vacated the non-continuation determinations, and ordered new continuation determinations to be made, and once USDE determined to continue the FY2026 grants, the temporary use of carryover funding as a stop-gap measure—intertwined as it was with the pending summary judgment motion—was no longer needed and so should have ended and been promptly replaced by new full year FY2026 grant funding, determined in a manner consistent with prior practice. Defendants' continued reliance on the carryover funding to replace *any part of the FY2026 grant funds* was not contemplated in the Consent Order and was without any lawful basis. *See* ECF No. 42.

**(2) <u>This Court May Review the Reimbursement Condition as a Violation of the June 4 Order</u>**

The Department next argues, relying on *Washington I*, 25-cv-1228, ECF No. 50, that this Court has no jurisdiction to review USDE's imposition of grant-management conditions, because the June 4 Order did not expressly address and prohibit such conditions. Opp. at 16. However, USDE's narrow reading of *Washington I* is inapposite. In *Washington I*, while the Court refused to vacate the Department's imposition of grant-management conditions—namely, the imposition of reimbursement pay status and limited, six-month funding periods—it did so because it found the letter and spirit of its orders prohibited only conditions that would be so burdensome as to essentially constitute a discontinuation of the grants in disguise. *Id.* at *5 (holding that "neither the express terms nor the spirit of the Court's prior orders were directed at grant-management conditions"). In contrast, this Court's Orders, taken together, are broader in scope, requiring not simply that Defendants make new continuation determinations—as per its April 8 Order—but

that once they determined to continue the grants, it also issue "appropriate" continued grant awards—per the June 4 Order. Those Orders, *in letter and in spirit*, not only *require* the issuance of *appropriate* GANs containing the new grant awards that necessarily accompany any grant continuation, but also should be read *to prohibit* the imposition in those grant awards, of grant-management conditions that, in the circumstances are *not appropriate*. It is worth noting that in a stark contrast to this case, in *Washington I*, USDE's continuation notices provided some purported justification for the imposition of the grant-management conditions—namely, as a response to "concerns about the rapid use of federal funds and the difficulty of the Department to recover those funds once spent," *id*. at *4. In this case, Defendants have offered no justification for the imposition of reimbursement pay status, whether in the Record, or after the fact in the Declarations submitted on July 20, 2026. ECF Nos. 113-1, 113-2, 113-3, 113-5, 113-6. Given the complete absence of any justification, the imposition of such onerous conditions was not *appropriate*, and thus was not in compliance with this Court's Order, whether in letter or in spirit.

## CONCLUSION

For the reasons described herein, it is apparent that USDE failed to comply with the letter or the spirit of this Court's April 8 and June 4 Orders. With the only possible reasoning provided by USDE for their funding determinations and grant-management conditions being their supposed "concerns" with the grants, and the only "concerns" ever articulated by USDE being those relating to Title IX, the June 9 GANs can only be read as the next step in their continuing effort to deny federal grant funding to NYCPS' magnet schools based on the same asserted supposed Title IX "concerns" that motivated USDE's September 16, 2025 unlawful non-continuation determinations.

Accordingly, this Court should exercise its inherent power to enforce its orders by granting this motion to enforce; vacating the June 9 GANs; and ordering Defendant USDE to

forthwith issue GANs with appropriate grant awards that are consistent with USDE's prior practice (*i.e.* for the full funding year, based on what was acknowledged in the June 9 GANs as the starting point: "the annual requested and recommended average award amount" for each grant[1]), without consideration of or reliance on the budget provided by NYCPS to facilitate interim relief under the November 20, 2025 Consent Order or otherwise perpetuating the harmful effects of USDE's unlawful—and since vacated—September 16, 2025 non-continuation determination, and without imposing punitive or otherwise onerous terms and conditions based explicitly or implicitly on Title IX findings or "civil rights violations" related to Title IX without following Title IX procedures; and/or grant such other and further relief as the Court deems proper.

Dated: September 4, 2026

Respectfully submitted,

**STEVEN BANKS**
Corporation Counsel of the City of
New York
100 Church Street
New York, NY 10007
(212) 356-2276
mash@law.nyc.gov

By: Melanie C.T. Ash
June Buch
Gavin Mackie
Emeline Kong

[1] Levitt July 10 Decl. ¶¶ 9, Exhibit A, Block 10, Item 6; ECF No. 113-6, USDOE-Continuation_000784 – 001076.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE**

As required by Local Civil Rule 7.1(c), I certify that the document contains 3447 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c) ("These limits do not include the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but do include material contained in footnotes or endnotes.").

Melanie C.T. Ash