UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Plaintiff,

-against-

UNITED STATES DEPARTMENT OF EDUCATION, LINDA MCMAHON, in her capacity as Secretary of the United States Department of Education, CRAIG W. TRAINOR, in his capacity as Acting Assistant Secretary for Civil Rights, LINDSEY M. BURKE, in her capacity as Deputy Chief of Staff for Policy and Programs,

Defendants.

25-CV-8547 (AS)

OPINION AND ORDER

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Plaintiff,

-against-

UNITED STATES DEPARTMENT OF EDUCATION, LINDA MCMAHON, in her capacity as Secretary of the United States Department of Education, MURRAY BESSETTE, in his capacity as Principal Deputy Assistant Secretary and Acting Assistant Secretary of Education, JENNIFER TODD, in her capacity as Director of the Division of Family Empowerment and Education Choice, LAVANNA WEEMS, in her capacity as Supervisory Management Program Analyst,

Defendants.

26-CV-6584 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

This is the third round in a long-running fight between New York City's education board and the federal Department of Education. The battle is over millions of dollars in grant funds that the federal government has repeatedly denied, but which city officials insist are vital to nineteen public magnet schools operating across four of the five boroughs. Just like the first two rounds, the city argues that the federal government violated the law by refusing to award funds. Once again, the city is right. The Court granted summary judgment and related relief to the board in an order dated September 24, 2026. Order at 2, *Bd. of Educ. of City Sch. Dist. of N.Y. v. U.S. Dep't of Educ.*, No. 26 Civ. 6584 (S.D.N.Y. Sept. 24, 2026), Dkt. 43. This opinion fleshes out the reasoning behind that order, which the Court previewed at the hearing on the parties' motions.

## BACKGROUND

This case was brought by the Board of Education of the City School District of the City of New York (the "Board") against the United States Department of Education and its officials. In an April 8, 2026, opinion, the Court held that defendants violated the Administrative Procedure Act ("APA") in declining to continue several grants issued to schools operated by the Board. *See Bd. of Educ. of City Sch. Dist. of N.Y. v. U.S. Dep't of Educ.*, 2026 WL 948205, at *6–7 (S.D.N.Y. Apr. 8, 2026).

Defendants terminated those grants based on concerns about transgender policies that allegedly violated Title IX. *Id.* at 1–2. But as the Court explained, defendants failed to follow the procedures specified in Title IX for taking such action. *Id.* at 6–7. After the Court's ruling, defendants, acting "in protest," continued the grants for FY 2026 (from October 2025 to September 2026). Dkt. 94 at 1.[1] Nevertheless, they dragged their feet on awarding any money, which led the Board to file a motion to enforce the Court's judgment. Dkt. 85. On June 4, 2026, the Court granted that motion. Dkt. 104.

Defendants then issued the grant awards, but not consistent with their prior practice. Instead of issuing awards for the amount that was "requested and recommended" under the grants, they (1) awarded zero dollars in new funds for the first nine months of the fiscal year and (2) reduced the amount of funding for the last three months based on the availability of carryover funds from FY 2025. Dkt. 125 ¶¶ 44–45. The total deficit across all the grants, in the Board's calculation, is over $11 million. *See* Dkt. 113-1 ¶ 7.

In addition to this curtailment of funds, defendants also transitioned the grants into so-called "reimbursement" status. Dkt. 125 ¶ 45. That means that instead of getting grant funds in advance, the Board and schools must justify their expenditures to defendants as they are incurred, presumably with defendants having the right to decline their requests for reimbursement. *Id.* That is a massive change from how things had previously been done and imposes a burden on the Board and schools' ability to conduct their affairs. *Id.* ¶¶ 45–49.

[1] All docket entries, unless otherwise noted, are from *Board of Education of City School District of New York v. United States Department of Education*, No. 25 Civ. 8547 (S.D.N.Y.).

In response to defendants' actions, the Board filed a second motion to enforce. Dkt. 107. It also filed a new lawsuit, and on August 26, 2026, moved for summary judgment, arguing that defendants had yet again violated the APA. Motion for Summary Judgment, No. 26 Civ. 6584 (S.D.N.Y. Aug. 26, 2026), Dkt. 22. On August 28, 2026, the Court, with the parties' input, granted a temporary restraining order that enjoined defendants from disbursing $11,754,296 of appropriated funds to prevent the case from becoming moot. Dkt. 31.

The parties briefed cross-motions for summary judgment, and this Court heard oral argument on September 24, 2026. For the following reasons, as well as those stated on the record at the September 24 hearing, the Board's motion for summary judgment is GRANTED.

## LEGAL STANDARDS

Agency action is arbitrary and capricious where it is not "reasonable and reasonably explained," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), or does not "offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public," *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019). Review under the arbitrary-and-capricious standard does not allow the court to "substitute its own policy judgment for that of the agency." *Prometheus Radio Project*, 592 U.S. at 423. Rather, it "ensures that the agency . . . has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

## DISCUSSION

The Court first addresses its jurisdiction over the current dispute. Defendants reprise their argument that this Court lacks jurisdiction based on the Tucker Act. This Court has addressed this argument before, and it reaches the same conclusion now. *See Bd. of Educ. of City Sch. Dist. of N.Y.*, 2026 WL 948205, at *3–4. Bottom line, the Board charges defendants with violating the APA because their actions were "arbitrary" and "capricious" and "not in accordance with law." 5 U.S.C. § 706(2). It points to regulations that defendants failed to follow and their failure to consider the facts and rationally explain their chosen course of conduct. These are arguments that district courts routinely address, even if they are precluded from ordering the federal government to pay money to plaintiffs under grant contracts.

Defendants argue that the incorporation of certain regulations into the grant contracts means this case sounds in contract, rather than in generally applicable law. However, nothing in the Board's arguments is based on the contracts or their incorporation of any regulation. The Board's arguments rely on the APA's requirements and the legal framework that applies to the grant award determinations regardless of the grants' terms. So for the reasons set forth in the Court's prior order, *see Bd. of Educ. of City Sch. Dist. of N.Y.*, 2026 WL 948205, at *3–4, the Tucker Act poses no jurisdictional limitation here. *Cf. Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring) ("That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim founded upon contract that only the [Court of Federal Claims] can hear." (cleaned up)).

On the merits of the Board's motion for summary judgment, it says that there is no explanation in the administrative record for defendants zeroing out the FY 2026 funds for the first nine months of the year. Defendants resist the Board's characterization that they "zeroed" out that funding, but that is plainly what occurred. The agency's rationale is set forth in the declaration of Murray Bessette, the Principal Deputy Assistant Secretary of Education. *See* Dkt. 113-1. Bessette's declaration shows that defendants, in computing how much should be awarded for each grant, first determined that the "annual requested & estimated average award amount" was $3,000,000 (rounded up from the $2,999,999 amount in the initial grant awards). *Id*. at ¶¶ 3–7 (capitalization altered). They then eliminated all funding except for the amount that corresponded to the last three months of the fiscal year (July 1, 2026, to September 30, 2026) and subtracted from that prorated three-month award any remaining carryover funds that the Board and its schools had retained from FY 2025. *Id.* This meant that the total FY 2026 award for each of the five grants ended up being between $497,869 and $750,000, rather than the full $2,999,999 amount contemplated. *Id*. ¶ 7.

To justify this, the Grant Award Notifications and Mr. Bessette's declaration point to a purported budget furnished to defendants by the Board in connection with this litigation. But as the Board explains, that documentation was provided to defendants to support the Board's use of FY 2025 funds in the current fiscal year, a measure the defendants initially opposed. Motion for Summary Judgment at 15–19, No. 26 Civ. 6584 (S.D.N.Y. Aug. 26, 2026), Dkt. 23. In other words, the use of the FY 2025 funds was an "interim" stopgap given defendants' initial non-continuation of the grants, and it had nothing to do with evaluating the funds needed for activities contemplated in FY 2026. *Id.* Indeed, the Board complains that as a result of defendants' actions leading up to this dispute, the schools at issue have been operating on a shoestring budget and have been unable to engage in many of the activities that the five-year grants were intended to cover, depriving children across the city of much-needed services. *See* Dkt. 125 ¶¶ 52–55. None of these issues are mentioned, let alone addressed, in the administrative record. In fact, while defendants' briefing on their cross-motions suggests that they considered the "MSAP Annual Performance Reports" submitted by the Board, *see* Cross Motion to Dismiss at 6, No. 26 Civ. 6584 (S.D.N.Y. Sept. 4, 2026), Dkt. 36, the administrative record doesn't reflect that, as defendants conceded at oral argument, *see* Transcript of Sept. 24, 2026, Proceeding at 3, No. 26 Civ. 6584 (S.D.N.Y. Sept. 25, 2026), Dkt. 44 [hereinafter Sept. Transcript] ("I did not find a particular reference that would support that.").

Defendants also point to 34 C.F.R. § 75.253(e). This provision allows the Secretary of Education to determine the amount of funds that will be made available for a subsequent budget period (in this case, FY 2026) based on unobligated funds from a prior budget period. *See* 34 C.F.R. § 75.253(e)(2)(ii) ("The Secretary may determine the amount of new funds . . . after considering the statement the grantee provides under paragraph (e)(2)(i) of this section . . . ."). But consistent with the APA's requirements, the Secretary must still explain *why* it is taking the course of action it is taking—here drastically reducing the funds awarded for FY 2026. In fact, the regulation itself contemplates that the Secretary will only make a decision after considering "any other information available to the Secretary about the use of funds under the grant," *id*., and "whether the

unobligated funds made available are needed to complete activities that were planned for completion in the prior budget period," *id.* § 75.253(e)(3).

Here, the administrative record provides no explanation why funds were curtailed or how the awarded funds would accommodate the programs and activities for which the grants were intended. Instead, Bessette's declaration simply recounts the basic math used to (a) zero the grant awards that correspond to the first nine months of the fiscal year, (b) prorate the requested amount for the remaining three months, and (c) subtract the remaining carryover funds from that prorated amount. Dkt. 113-1 at ¶¶ 5–7.

Defendants' grant award determinations are plainly arbitrary and capricious. There is no explanation of why defendants believed the existence of carryover funds from the prior fiscal year warranted the reduced grant awards, and there is no discussion whatsoever of any of the programs and activities that the grants were intended for. Nor is there any reasoning provided for the Department's change in position from its prior practice, where the existence of carryover funds did not automatically reduce a grant award in a subsequent budget period. *See FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests."); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."). The record before the Court certainly does not contain any example of prior practice matching what happened here, as defendants agreed at the hearing. *See* Sept. Transcript at 6 (Court: "So there was also an argument in the Board's briefing that this type of approach to a continuation award had never been done in the past." Defendants: "We were unable to cite to prior examples.").

Moreover, the Board argues that defendants' actions have had real consequences for thousands of students across the nineteen schools at issue, consequences that defendants failed to consider: The Board contends that "[d]ue to this unexplained grant reduction, [it] was forced to eliminate or reduce planned programming and activities in the nineteen impacted magnet schools, including end-of-year, summer and upcoming school year thematic programming, special events and recruitment planning." Dkt. 39 at 19; *see* Dkt. 125 ¶¶ 53–54. The Board goes on, saying that "[t]he continu[ed] funding uncertainty makes it very difficult for the schools to perform essential functions to prepare for the 2026–2027 school year," Dkt. 125 ¶¶ 53–54, such as hiring and retaining staff, providing adequate training to teachers, or obtaining supplies and equipment necessary for magnet programming, Dkt. 39 at 19. As a result of all this, the Board stresses that "these schools will become less appealing to prospective families, leading to a decrease in enrollment." *Id.* at 20. Defendants' failure to consider these consequences is further indicia that their decision was arbitrary and capricious. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) ("[W]hen an agency changes course . . . it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." (cleaned up)); *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 137 (D. Mass. 2025) (highlighting that "[t]hough

Plaintiffs are not entitled to receive future . . . grants," "Plaintiffs' reliance interest extends beyond its dependence on the terms of existing grants").

Defendants' actions with respect to the grant awards clearly violated the APA. And the same is true with respect to their movement of the grants to reimbursement status. The Board says that defendants violated the relevant regulation—2 C.F.R. § 200.208—which requires defendants to follow specific procedures before they may move a grantee to reimbursement status. Defendants don't argue that they followed this regulation. Instead, they just point to the statute governing the Secretary of Education's authority to determine the way in which payments are made under grants, 20 U.S.C. § 1226a-1. That statute says that "[p]ayments pursuant to grants . . . may be made . . . as the Secretary may determine." But obviously the Secretary's discretion is constrained by any applicable regulations. *See Bergamo v. Commodity Futures Trading Comm'n*, 192 F.3d 78, 79 (2d Cir. 1999) ("An agency is bound to follow procedures required by its own regulations, even if these regulations were not statutorily or constitutionally mandated."); *Soho Hotel Owner, LLC v. U.S. Small Bus. Admin.*, 838 F. Supp. 3d 392, 401 (S.D.N.Y. 2026) ("Because it is axiomatic that an agency is bound by its own regulations, courts must likewise set aside agency action that flouts the agency's own regulations." (cleaned up)). And 2 C.F.R. § 200.208 makes clear that "[p]rior to imposing specific conditions, the Federal agency or pass-through entity must notify the recipient or subrecipient as to":

(1) The nature of the specific condition(s);
(2) The reason why the specific condition(s) is being imposed;
(3) The nature of the action needed to remove the specific condition(s);
(4) The time allowed for completing the actions; and
(5) The method for requesting the Federal agency or pass-through entity to reconsider imposing a specific condition.

2 C.F.R. § 200.208(d). It also requires that "any specific conditions . . . be promptly removed once the conditions that prompted them have been satisfied." *Id.* § 200.208(e).

To the extent that defendants argue that these regulatory requirements don't apply to the Department of Education, they are mistaken. Defendants point to 2 C.F.R. § 3474.1, which states that the "Department of Education adopts the . . . [g]uidance in 2 CFR part 200, except for . . . 2 CFR 200.207(a) [and] gives regulatory effect to the . . . guidance." (2 C.F.R. § 200.208 was located at 2 C.F.R. § 200.207 at the time of section 3474.1's enactment.) But as the Board noted in its brief in opposition to defendants' cross-motion to dismiss, section 3474.1 was meant solely to clarify that "[t]he Secretary . . . may, in appropriate circumstances, designate the specific conditions established under 2 C.F.R. 200.20[8] as 'high-risk conditions,'" a term that section 200.208 didn't itself reference. 2 C.F.R. § 3474.10; *see* Opposition to Cross Motion to Dismiss at 13–17, No. 26 Civ. 6584 (S.D.N.Y. Sept. 11, 2026), Dkt. 39. There is no indication that any other modification was intended, including any purported opt-out of the advance notification requirement in section 200.208(d) or removal requirement in section 200.208(e). Indeed, the Board argues that defendants have affirmatively invoked those provisions in prior cases. At the hearing, defendants offered no

substantive response to the Board's arguments on this front. *See* Sept. Transcript at 4–6. Finally, even on defendants' own argument, the Department of Education opted out of what is now section 200.208(a) and "adopted" the rest of part 200. But the procedural requirements that defendants failed to follow aren't in section 200.208(a). They are in sections 200.208(d) and (e), which the Department didn't even arguably "opt out of."

So defendants violated the APA on this front as well. Their decision was arbitrary and capricious and "not in accordance with law." 5 U.S.C. § 706(2).

***

Once again, the Court issues no decision concerning defendants underlying Title IX concerns. If the defendants wish to challenge the continuation of the grants on those grounds in the future, they need only follow the appropriate procedures under the statute. If they don't want to do so, then they need to follow the law concerning the grant-award process.

## CONCLUSION

For these reasons and those stated on the record at the September 24, 2026, hearing, the Board's motion for summary judgment in No. 26 Civ. 6584, Dkt. 22, is GRANTED. Defendants' cross-motion to dismiss the complaint, or alternatively for summary judgment, in No. 26 Civ. 6584, Dkt. 35, is DENIED. The Board's second motion to enforce the judgment in No. 25 Civ. 8547, Dkt. 107, is DENIED as moot given the Court's ruling on the Board's motion for summary judgment. Defendants' Grant Award Notifications are hereby vacated and set aside, 5 U.S.C. § 706(2), and relief is granted consistent with the Court's September 24, 2026, order, in 26 Civ. 6584, Dkt. 43, as amended by Dkt. 47.[2]

SO ORDERED.

Dated: October 5, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge

[2] While they opposed the Board's motion for summary judgment, and cross-moved for summary judgment, defendants did not raise any objections to the relief afforded by the Court, which required the defendants to promptly re-do the grant awards at issue in accordance with the law, apart from those arguments already rejected by the Court in *Board of Education of City School District of New York*, 2026 WL 948205, at *7–8.